1  **Berkeley Homeless Union**
   1349 Hearst Avenue
2  Berkeley, California 94702
   Tel: 510-575-0563
3

4  **Adrien Bouchard**
   1349 Hearst Avenue
5  Berkeley, California 94702
   Tel: 510-575-0563
6

⑤
IFP
NP

FILED

FEB 1 1 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7  **Nicholas Johnson**
   1349 Hearst Avenue
8  Berkeley, California 94702
   Tel: 510-575-0563
9

10 **Frank Moore**
   1349 Hearst Avenue
11 Berkeley, California 94702
   Tel: 510-575-0563
12
   *Pro Se Plaintiffs*
13

14          UNITED STATES DISTRICT COURT

15         NORTHERN DISTRICT OF CALIFORNIA

16 BERKELEY HOMELESS UNION, ADRIEN      Case No.: CV 25-1414
   BOUCHARD, NICHOLAS JOHNSON AND
17 FRANK MOORE                          **COMPLAINT FOR INJUNCTIVE RELIEF**

18          Plaintiffs,                 **HSG**

19        vs.

20 CITY OF BERKELEY, THOMAS GREGORY,
21 PAUL BUDDENHAGEN, PETER RADU,
   OKEYA VANCE-DOZIER, RASHI
22 KESERWANI, DOES 1-10

23          Defendant.

24

25

26

27

28

---

**COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiffs BERKELEY HOMELESS UNION, ADRIEN BOUCHARD, NICHOLAS JOHNSON and

FRANK MOORE ("Plaintiffs") complain and allege as follows:

## INTRODUCTION

1.     Plaintiffs Berkeley Homeless Union and individually named plaintiffs seek an emergency Temporary Restraining Order (TRO) and Preliminary Injunction to halt the City of Berkeley's scheduled encampment abatement and enforcement actions, which are set to begin after February 10, 2025. Immediate court intervention is necessary to prevent irreparable harm to disabled and unhoused residents, including imminent loss of shelter during severe winter storms, violations of the Americans with Disabilities Act (ADA), and constitutional due process violations.

2.     Without court intervention, Plaintiffs will be forcibly displaced into hazardous weather conditions, exposed to life-threatening harm, and denied their fundamental civil rights.

3.     Since the US Court's last order in *Prado v. City of Berkeley*, 23-cv-04537-EMC (N.D. Cal. Aug. 6, 2024) situations have developed for unhoused people in the City of Berkeley. Plaintiffs in the *Prado* case have engaged in expressive conduct protesting the City of Berkeley's anti-homeless policies. The policy being used to displace Plaintiffs was recently passed on September 24, 2024, with the vote of all the Berkeley city council members and Mayor Arreguin. The new encampment policy outlines specific criteria under which the City of Berkeley can abate and close encampments. In the resolution, the City affirmed its commitment to comply with the 2018 Martin v. Boise ruling, which restricts the enforcement of anti-camping ordinances unless adequate shelter is available. However, the City amended Chapter 14.48 of the Berkeley Municipal Code, titled Miscellaneous Use of Streets and Sidewalks, to create six specific exceptions that allow for the removal of encampments under certain conditions.

4.     Plaintiffs are disabled individuals, who rely on their tents and encampment setups for safety, shelter, community and essential accommodations, and the removal of these will likely lead to the rapid deterioration of their physical and mental health. Forced displacement will expose residents to unsafe conditions, including an atmospheric river storm and cold weather, which poses significant risks to elderly individuals and those with chronic illnesses such as arthritis and cardiovascular conditions. Many residents, due to physical disabilities and mental disabilities, lack

1  the ability to pack their belongings or move their possessions without assistance, putting them at risk
2  of losing critical items such as medications, identification, and mobility aids, which are often
3  irrecoverable as the City does not consistently store unhoused people's property, and has only stored
4  belongings on 34 occasions since the inception of the Homeless Response Team. **(Exhibit E)**
5  According to a public records request, 23-1365, there are no records of storing unhoused people's
6  property prior to 2021. This survival gear are items essential to their well-being.

7      5.      Additionally, the stress and uncertainty caused by forced removal will exacerbate
8  mental health conditions like PTSD, anxiety and depression, destabilizing even further their already
9  precarious lives. Proceeding with this encampment closures without providing proper
10  accommodations or alternative housing options will cause irreparable harm to the health, safety, and
11  rights of these unhoused residents.

12      6.      Over the years, unhoused Berkeley residents at this encampment have endured
13  repeated evictions by the City of Berkeley, each one causing immense harm. These evictions have
14  led to the loss of essential possessions such as RVs, trailers, cars, tents, makeshift shelters, survival
15  gear, medical equipment, tools, and other items critical to their daily survival. [See Reporting:
16  'Everything Is Gone, and You Become More Lost': 12 Hours of Chaos as Berkeley Clears
17  Encampment" *San Francisco Public Press* (December 22, 2022):
18  https://www.sfpublicpress.org/everything-is-gone-and-you-become-more-lost-12-hours-of-chaos-as-
19  berkeley-clears-encampment/]. These belongings are often irreplaceable due to financial constraints,
20  leaving residents even more vulnerable to the elements and unable to meet basic needs. Beyond
21  material losses, these evictions have caused community members to be displaced further into
22  surrounding neighborhoods, forcing them to scatter and severing the connections that provide vital
23  support. Each time, individuals are uprooted from their networks of mutual aid, friends, and loved
24  ones, intensifying their isolation and instability.

25      7.      Disabled residents, in particular, suffer disproportionate harm to these type of city
26  actions. They are not only more reliant on their possessions, such as mobility aids or medical
27  devices, but also on the stability and support of their communities for survival. The repeated
28

1  upheaval compounds their physical and emotional challenges, leaving them increasingly traumatized

2  and less able to access life-sustaining resources.

3      8.    The Defendant has notice of the disability related needs of Plaintiffs from ADA

4  accommodation request made by representatives of the Berkeley Homeless Union from January 22

5  to February 6. Plaintiffs have been subject to evictions before and the City has failed to take into

6  account accommodations for these disabilities.

7      9.    In response, Plaintiffs bring this lawsuit seeking to stop Defendant from displacing

8  the unhoused residents of 8th and Harrison Streets until their disability-related needs for access to

9  shelter and preservation of their property have been met. Plaintiffs also seek to prevent Defendant

10  from infringing on their constitutional rights to freedom of speech and association, as they are

11  actively protesting the City of Berkeley's anti-homeless policies. These policies are the core issue

12  being challenged through the protest encampments, and the City's actions to displace residents

13  directly undermine their ability to advocate for systemic change and assert their rights.

14      10.    Plaintiffs therefore request that the Court enter a temporary restraining order

15  preserving the status quo at the protest encampments at 8th and Harrison, so that that they may have

16  an opportunity to present their case for fuller relief, including a request for a preliminary injunction

17  that will protect them from the imminent and irreparable injuries they face.

18                          **JURISDICTION AND VENUE**

19      11.    Plaintiffs' claims arise under the laws and Constitution of the United States, including

20  42 U.S.C. § 12132 and 42 U.S.C. § 1983. Therefore, this Court has jurisdiction over this action

21  pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4).

22      12.    The Federal Rules of Civil Procedure 57 and 65, authorize this Court to grant

23  Plaintiffs the injunctive relief they seek here. An award of attorneys' fees is authorized pursuant to

24  42 U.S.C. § 1988(b).

25      13.    This Court has supplemental jurisdiction over Plaintiffs' related state law claims

26  pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy

27  under Article III of the United States Constitution. Plaintiffs' state law claims share common

28  operative facts with their federal law claims, and the parties are identical. Resolving Plaintiffs'

1  federal and state claims in a single action serves the interests of judicial economy, convenience,

2  consistency, and fairness to the parties.

3       14.     Venue is proper in the United States District Court for the Northern District of

4  California pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because defendant CITY OF BERKELEY

5  is located in this district and a substantial part of the events and/or omissions were committed in this

6  district.

7       15.     Because the events and omissions giving rise to Plaintiffs' claims occurred in

8  Alameda County, this case should be assigned to the Northern District's Oakland or San Francisco

9  Division, pursuant to N.D. Cal. L.R. 3-2(d).

10                                    **THE PARTIES**

11      16.     **Berkeley Homeless Union** is a membership organization advocating for the rights of

12  unhoused individuals in Berkeley, including disabled individuals who have been denied reasonable

13  accommodations. BHU provides direct support, organizes community defense efforts, and advocates

14  for policy changes to protect unhoused individuals from displacement and discrimination.

15      17.     Mailing Address: 1349 Hearst Avenue Berkeley, CA 94702

16      18.     Email: berkeley.homeless.union@gmail.com

17      19.     **Adrien Bouchard** is a disabled unhoused individual who relies on his RV as an

18  accessibility-modified shelter due to severe mobility impairments. The City has denied his

19  reasonable accommodation requests and threatened enforcement actions despite knowing he cannot

20  relocate independently.

21      20.     Mailing Address: 1349 Hearst Avenue Berkeley, CA 94702

22      21.     Email: berkeley.homeless.union@gmail.com

23      22.     **Nicholas Johnson** is a neurodivergent individual diagnosed with autism and ADHD.

24  He has requested reasonable accommodations to remain in a stable location due to his executive

25  functioning challenges. The City has refused to engage in a good-faith dialogue and has not

26  conducted an individualized disability assessment.

27      23.     Mailing Address: 1349 Hearst Avenue Berkeley, CA 94702

28      24.     Email: berkeley.homeless.union@gmail.com

25. **Frank Moore** is a disabled, unhoused individual with chronic back pain from a prior tailbone injury, limiting his mobility and making frequent relocation impossible. He relies on LifeLong Street Medicine and community support for daily needs. Despite requesting reasonable accommodations—including a stable location, mobility aid, and permission to keep his tent—the City has denied his requests without alternatives, putting his health and safety at risk.

26. Mailing Address: 1349 Hearst Avenue Berkeley, CA 94702

27. Email: berkeley.homeless.union@gmail.com

28. Defendant **CITY OF BERKELEY** is a municipal corporation organized under the laws of the State of California.

29. Mailing Address: 2180 Milvia St, Berkeley, CA 94704

30. Defendant **PAUL BUDDENHAGEN** is the City Manager of the City of Berkeley who perpetrates a policy of evicting unhoused disabled Plaintiffs without observing the City of Berkeley's own ADA policies.

31. Mailing Address: 2180 Milvia St, Berkeley, CA 94704

32. Email: pbuddenhagen@berkeleyca.gov

33. Defendant **THOMAS GREGORY**, as the City's ADA Program Coordinator, has repeatedly denied reasonable accommodation requests without proposing alternatives, in direct violation of 28 C.F.R. § 35.130(b)(7).

34. Mailing Address: 2180 Milvia St, Berkeley, CA 94704

35. Email: tgregory@berkeleyca.gov

36. Defendant **PETER RADU** in his official capacity as **Assistant to the City Manager for Neighborhood Services,** has played a key role in enforcing abatement policies that disproportionately impact disabled, unhoused individuals. He has dismissed legitimate disability accommodation requests, failed to ensure compliance with the Americans with Disabilities Act (ADA), and made inflammatory comments questioning the legitimacy of individuals' disabilities. Despite being in a leadership position, he has refused to engage in good-faith discussions with affected camp residents, instead prioritizing punitive enforcement over solutions that would protect disabled individuals from harm.

1    37.    Mailing Address: 2180 Milvia St, Berkeley, CA 94704

2    38.    Email: pradu@berkeleyca.gov

3    39.    Defendant **OKEYA VANCE** is the field supervisor of the Berkeley Homeless

4    Response Team. In her official capacity as a member of the Homeless Response Team (HRT), has

5    demonstrated a pattern of hostility and neglect toward disabled residents at the encampment. She has

6    repeatedly refused to provide necessary assistance to individuals with mobility impairments,

7    cognitive disabilities, and other medical conditions. Her dismissive attitude and refusal to

8    accommodate residents' disability-related needs have created additional barriers for those already

9    facing extreme hardship. Furthermore, she has ignored opportunities to collaborate with advocates

10   and community members seeking lawful, humane resolutions.

11   40.    Mailing Address: 2180 Milvia St, Berkeley, CA 94704

12   41.    Email: ovance@berkeleyca.gov

13   42.    DEFENDANT **Rashi Keserwani**, in her official capacity as City Councilmember for

14   District 1, has refused to engage with unhoused residents in her district despite multiple attempts at

15   collaboration. Instead, she has prioritized policies aimed at eliminating the largest encampments in

16   the city—many of which are located in her district—without ensuring adequate alternatives or

17   meaningful engagement with those directly impacted. Her actions have contributed to the

18   displacement of vulnerable, disabled residents without providing reasonable accommodations or

19   lawful due process.

20   43.    Mailing Address: 2180 Milvia St, Berkeley, CA 94704

21   44.    Email: rkeserwani@berkeleyca.gov

22   45.    DEFENDANTS DOES 1-10 are public and private parties who are currently

23   unknown to Plaintiff, but will be added in by amendment of the complaint.

24   <u>**FACTUAL ALLEGATIONS**</u>

25   I. THE CITY'S ENCAMPMENT ABATEMENT IS CREATING A LIFE-THREATENING

26   DANGER TO PLAINTIFFS

27   1.   **Severe Weather Conditions Threaten Plaintiffs' Survival**

28       The National Weather Service has issued a severe storm warning for the San Francisco Bay

Area, including Berkeley, from February 7–14, 2025. The storm system is expected to bring between 1.5 to 3 inches of rain across most of the region, with up to 5 inches in some coastal mountain areas. Wind gusts of up to 40 mph, freezing temperatures, and flood risks create life-threatening conditions for unsheltered individuals.

2. **Plaintiffs Will Be Displaced Into Dangerous Conditions**

Plaintiffs reside in RVs, vans, cars, and tents, which provide their only source of shelter from the elements. The City's abatement plan will force them into exposure without any assurances of safe, accessible alternatives. Forcing individuals into open-air conditions during an extreme weather event significantly increases their risk of hypothermia, illness, injury and death.

3. **Defendants Have No Plan to Provide ADA-Accessible Shelter**

The City has failed to offer immediate shelter that meets the needs of disabled unhoused individuals, despite Plaintiffs' repeated requests for accommodations under the ADA. Instead, Defendants have issued blanket denials without individualized assessments of each resident's disability-related needs.

4. **The City's Enforcement Plan Will Disrupt Life-Sustaining Services**

Many Plaintiffs rely on a network of service providers, including medical outreach teams, food assistance programs, and community support. The forced displacement will sever these critical connections, leaving Plaintiffs without access to necessary healthcare, medications, and life-sustaining resources.

5. **The City Has Failed to Implement Harm Reduction Strategies**

The Environmental Health Department has mitigation strategies to address encampment-related hazards without resorting to displacement, yet the City has chosen not to utilize them. Plaintiffs have proactively addressed concerns about waste and sanitation, yet the City has ignored these efforts and moved directly to eviction as a punitive measure rather than a health intervention.

6. **The City's Actions Constitute a State-Created Danger**

Like in *Alfred v. City of Vallejo* (2025) by forcing Plaintiffs into life-threatening conditions

1   without a safe alternative, the City has created a *state-created danger* under the Fourteenth

2   Amendment's Due Process Clause. The government cannot take actions that affirmatively

3   place individuals in foreseeable harm, yet the City's abatement policy does exactly that by

4   stripping vulnerable individuals of their only protection against the elements.

5   7.   The City's policy declares the encampment area a no-lodging zone and is closing another

6       nearby encampment, drastically reducing the number of known safe locations where

7       unhoused residents can exist. This mass displacement, without offering viable alternatives,

8       forces people into even more precarious situations—exposing them to extreme weather,

9       violence, and further criminalization. The City is not only failing to provide adequate shelter

10      options but is also actively making it impossible for people to remain in the few places where

11      services providers can find them, and where they have built stability and community support.

12  II. THE CITY HAS VIOLATED THE AMERICANS WITH DISABILITIES ACT (ADA)

13  8.   **The City Has Refused to Engage in a Meaningful Interactive Process**

14  Under Title II of the ADA (28 C.F.R. § 35.130(b)(7)), the City of Berkeley is required to engage in a

15  good-faith interactive process to explore reasonable accommodations for individuals with

16  disabilities. Instead, ADA Coordinator Thomas Gregory has repeatedly denied accommodation

17  requests from Plaintiffs without proposing alternatives or conducting individualized assessments.

18  a.   In response to Plaintiff **Nick Johnson's** request for an accommodation, Mr. Gregory refused

19  to propose any alternatives, stating:

20  "I will not continue to repeatedly clarify the same points… I remain available to consider any/all

21  further (i.e., new) accommodation requests." *(Email, February 4, 2025)*

22  b.   When Plaintiff **Adrien Bouchard** requested to remain in place due to his severe mobility

23  limitations, Mr. Gregory dismissed the request outright without a case-specific evidence, stating:

24  "The ADA does not require the City to fundamentally alter the nature of this activity." *(Email,*

25  *February 3, 2025)*

26  c.   For Plaintiff **Frank Moore**, the City failed to provide any interactive engagement. Instead,

27  Mr. Gregory shifted the burden entirely onto Plaintiffs, writing:

28

"If you have new requests for accommodation (i.e., requests that I have not already denied), I invite you to tell me what they are." *(Email, February 2, 2025)*

9.    **The City Has Issued Blanket Denials Without Individualized Disability Assessments**

Despite Plaintiffs submitting multiple requests citing their specific disabilities, the City has failed to conduct individualized assessments before issuing enforcement orders. The City's position has remained rigid and categorical, without considering how displacement will impact each Plaintiff's unique medical needs.

a.    Mr. Gregory admitted to this failure in an email regarding **Nick Johnson's** request, stating: "You say that the City must provide a 'specific operational or legal reason why allowing a disabled resident to remain in place would be impossible.' That is incorrect. The City need not provide that." *(Email, February 3, 2025)*

10.    **The City's ADA Grievance Process Is Procedurally Deficient**

The City's ADA grievance system lacks fundamental safeguards, rendering it ineffective for disabled individuals seeking relief.

a.    **No Clear Appeals Process** – The City has not provided Plaintiffs with a transparent method for appealing denied accommodations. In response to multiple requests for clarification, Mr. Gregory instead directed Plaintiffs to the City's general grievance webpage, which contains no structured appeal process. *(Email, February 1, 2025)*

b.    **Lack of Transparency** – Plaintiffs were never informed how their grievances were reviewed or who was responsible for making final determinations. When asked for clarification, Mr. Gregory responded dismissively:

"Your opinions and theories regarding the City's ADA obligations are noted." *(Email, February 4, 2025)*

c.    **No Independent Oversight** – The City's grievance process is managed by the same officials responsible for denying accommodations, creating an inherent conflict of interest. The lack of an impartial review mechanism makes it impossible for Plaintiffs to receive a fair evaluation.

11. **Plaintiffs Have Requested ADA-Compliant Shelter, Yet None Has Been Provided**

Plaintiffs have repeatedly requested access to ADA-compliant shelter before being forced to vacate, yet the City has failed to provide any viable options.

a.    Mr. Gregory rejected these requests without proposing alternatives, instead insisting that Plaintiffs "remove themselves" from the area. *(Email, February 5, 2025)*

12. **Plaintiffs Will Suffer Severe Deterioration in Health and Well-Being If Displaced Without Accommodations**

The City's refusal to grant reasonable accommodations will have devastating effects on Plaintiffs with mobility impairments, cognitive disabilities, and chronic health conditions.

a.    Plaintiff **Adrien Bouchard**, who relies on his RV for shelter, will be left exposed to the elements despite his severe mobility impairments.

b.    Plaintiff **Nick Johnson**, who is on the autism spectrum, will experience extreme distress and executive dysfunction if forced to relocate without structured support.

The City's failure to comply with the ADA, its refusal to engage in a genuine interactive process, and its structurally flawed grievance system all constitute violations of Plaintiffs' rights. Without court intervention, these individuals will face immediate and irreparable harm.

III. THE CITY'S ENCAMPMENT ABATEMENT POLICY IS ARBITRARY AND UNCONSTITUTIONAL

13.    The City's abatement policy does not target environmental hazards—it targets unhoused individuals themselves.

14.    Camp residents have actively mitigated all cited health and safety concerns, yet the City still seeks to displace them.

15.    The City's Environmental Department has alternative methods to address health and safety risks that do not involve forced displacement, but these alternatives have been ignored and not used in this case to abate the conditions.

16.    Plaintiffs have no fair way to appeal their removal, despite being told they could individually appeal their cases.

17.    The City's enforcement actions violate:

A.    The Due Process Clause of the 14th Amendment (failure to provide fair process).

B.    The Eighth Amendment's prohibition on cruel and unusual punishment (punishing unhoused individuals for conditions they did not create).

IV. CITY COUNCIL LEADERSHIP HAS ACTED IN BAD FAITH

16.    The City Councilmember, Rashi Keserwani, who drafted the abatement policy has not engaged in good-faith conversations with camp residents.

17.    Instead, Keserwani has prioritized business interests over the basic human rights of disabled and unhoused individuals.

18.    Rather than seeking collaborative solutions, the City's leadership has rushed enforcement actions that will cause irreparable harm.

V. ADA ACCOMMODATION REQUESTS & DISABILITIES IN THE ENCAMPMENT

1.    **The Berkeley Homeless Union (BHU)** is a grassroots membership organization led by unhoused and formerly unhoused individuals advocating for the rights, dignity, and housing stability of unhoused residents in Berkeley.

2.    **From January 22 to February 3, the Berkeley Homeless Union (BHU) submitted ADA accommodation requests for 16 individuals,** including BHU representative Yesica Prado. Each of these individuals has documented disabilities that significantly impact their ability to comply with the City's enforcement actions without reasonable modifications.

3.    **The encampment at 8th & Harrison is home to approximately 47 residents.** Among them, at least **31 individuals have disabilities,** which include a range of physical, cognitive, and mental health conditions, such as:

   o    **Mobility impairments,** including individuals who require canes, crutches, walkers, or wheelchairs to move. Some residents, such as Adrien Bouchard, have chronic pain and severe mobility limitations that make independent relocation physically impossible.

   o    **Neurological and cognitive disabilities,** including individuals on the autism spectrum and those with conditions such as ADHD, traumatic brain injuries (TBI), or

cognitive impairments that affect executive functioning, decision-making, and
adaptability to sudden displacement.

- o **Severe mental health conditions**, including schizophrenia, bipolar disorder, PTSD, and major depressive disorder, which are exacerbated by instability and forced displacement.

- o **Chronic medical conditions**, including epilepsy, diabetes, heart disease, and respiratory illnesses, which require stable living conditions to manage symptoms and avoid medical crises.

- o **Sensory disabilities**, including individuals who experience sensory processing challenges, heightened anxiety, or environmental sensitivities that make congregate shelter settings or abrupt displacement particularly harmful.

**No ADA-compliant shelter alternatives have been offered** to disabled residents. Many individuals with disabilities require housing that accommodates medical equipment, service animals, personal mobility devices, and other disability-related needs. However, the City has failed to provide accessible options, leaving disabled residents at risk of displacement into unsafe conditions without access to necessary services or accommodations.

**B. Berkeley's 2024 Encampment Policy**

46.      On September 10, 2024, Rashi Keserwani, District 1 councilwoman, introduced a new encampment policy that established criteria for the city of Berkeley to abate and close encampments. In the resolution, the City stated that they would abide by the ruling of Martin v Boise 2018 unless certain criteria were met by the encampments, for which City amended Chapter 14.48 of the Berkeley Municipal Code, *Miscellaneous Use Of Streets And Sidewalks*, to allow for six specific exceptions to this practice, which are the following:

- "The Fire Department has determined that an encampment poses a fire hazard or emergency condition as referenced in the Berkeley Fire Code, Berkeley Municipal Code (BMC) Chapter 19.48; or

- The Environmental Health Division of the Health, Housing and Community Services Department has determined that the encampment poses an imminent health hazard as defined in BMC section 11.36.030; or
- The City has determined that a situation constitutes a public nuisance as defined in the BMC and is subject to an abatement pursuant to the BMC; or
- The encampment is located on a City street median, in the roadway, or otherwise in dangerous proximity to traffic pursuant to BMC section 14.32.040; or
- The encampment is located in an area where the City has authorized work (such as for construction, major or minor encroachments, etc.) pursuant to BMC section 13.36.045; or
- The encampment interferes with or impedes city or utility companies' construction or maintenance activities in the public right-of-way, street lighting installation or repair, street tree maintenance, or utilities maintenance or repair.

47.    On September 24, 2024, the resolution was passed with the vote of all the Berkeley city council members and Mayor Arreguin. The new encampment policy would become effective 30 days after this date. According to a city report, the policy authorizes the City Manager "to take enforcement actions to deter re-encampment (after clearing an encampment involving any of the six instances enumerated above) through such means as hardscaping; signage that references state Penal Code Section 647(e)3 ; or citation and arrest, even if a shelter offer cannot be made.

48.    On October 7, 2024, Paul Budenhagen, City Manager for the city of Berkeley, wrote a memo clarifying how the city would implement the new Encampment Policy: "Even if an encampment meets one of the health and safety exceptions enumerated in the resolution, staff will resort to enforcement only if all other service offers and attempts to achieve voluntary compliance have failed. Because encampments are comprised of human beings, each with different needs and mental states, effectuating this process requires a case-by-case approach and is not subject to predictable timelines." But unhoused residents at these protest encampments have not been offered any shelter services.

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### Exposure to State-Created Danger
### Under the Fourteenth Amendment to the U.S. Constitution
### Pursuant to 42 U.S.C. § 1983

49.    Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

50.    Governmental action that affirmatively places a person in a position of danger deprives that person of substantive due process rights guaranteed by the Fourteenth Amendment to the United States Constitution. *See* U.S. Const. amend. XIV.

51.    Local governments violate the substantive due process rights of unhoused people when they place unhoused individuals in more vulnerable situations by confiscating the survival belongings that they use for shelter, warmth, and protection from the elements.

52.    Defendant CITY OF BERKELEY has a policy, custom, and practice of removing unhoused people from public spaces and of seizing and destroying their personal property, such as tents and other survival gear, that is necessary for their protection. Defendant CITY OF BERKELEY engages in these practices without ensuring that shelter and/or housing options are available to unhoused individuals.

53.    Without any other available option for shelter and without their vehicles, tents and survival gear—now destroyed—unhoused residents are forced to live exposed to the elements, without protection from heat, cold, wind, and rain. This severely jeopardizes their physical and mental health.

54.    Defendant CITY OF BERKELEY's actions have placed Plaintiffs and others in a more dangerous situation than the one in which they were found and created and exposed them to a danger which they would not have otherwise faced.

55.    Defendant CITY OF BERKELEY knows or should know that its actions endanger the health and safety of unhoused individuals, and defendant CITY OF BERKELEY has acted with deliberate indifference to this danger. Defendant CITY OF BERKELEY's conduct is shocking to the conscience and further imperils the health and safety of unhoused people.

56.     Defendant CITY OF BERKELEY's policies and practices have and will continue to put Plaintiffs in immediate danger in violation of their substantive due process rights.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**SECOND CAUSE OF ACTION**
**Exposure to State-Created Danger**
**Under Article I, § 7(a) of the California Constitution**
**Pursuant to 42 U.S.C. § 1983**

57.     Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

58.     Governmental action that affirmatively places a person in a position of danger deprives that person of substantive due process rights guaranteed by the California Constitution. Cal. Const. art. I, § 7(a). The substantive due process protections under the California Constitution are at least as expansive as those under the U.S. Constitution.

59.     Defendant CITY OF BERKELEY's policy, custom, and practice of removing unhoused people from public spaces and of seizing and destroying their personal property, such as tents and other survival gear, endangers the health and safety of unhoused people in a way that shocks the conscience. Defendant CITY OF BERKELEY knows or should know that its actions endanger the health and safety of unhoused individuals.

60.     Defendant CITY OF BERKELEY's policies and practices have and will continue to put Plaintiffs in immediate danger in violation of their substantive due process rights under the California Constitution.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**THIRD CAUSE OF ACTION**
**Property Destruction: Unreasonable Search and Seizure**
**Under the Fourth Amendment to the U.S. Constitution**
**Pursuant to 42 U.S.C. § 1983**

61.     Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

62.     The Fourth Amendment prohibits local governments from summarily seizing and destroying the personal property of unhoused individuals. *Garcia v. City of L.A.*, 11 F.4th 1113,

1  1124 (9th Cir. 2021) ("our prior caselaw states clearly that the government may not summarily

2  destroy the unabandoned personal property of homeless individuals that is kept in public areas").

3       63.    Defendant CITY OF BERKELEY has an unwritten policy, custom, and practice of

4  seizing and destroying unhoused people's personal belongings. Defendant CITY OF BERKELEY

5  destroys such property even if that property poses no threat to public health and does not constitute

6  evidence of a crime.

7       64.    Defendant CITY OF BERKELEY's policy, custom, and practice is to evict unhoused

8  residents and, in the process, to destroy their belongings. Witnesses who have worked in the

9  community for many years have observed the Department of Public Works demolishing people's

10  shelters, confiscating their tents, and leaving people exposed to the elements. This has been done

11  both in the pouring rain and in extreme heat. Witnesses have also observed employees of defendant

12  CITY OF BERKELEY destroying property even while the owners of that property have been telling

13  them that it belongs to them and that they want to keep it.

14       65.    Defendant CITY OF BERKELEY's unconstitutional policies and practices continue,

15  subjecting Plaintiffs to persistent and imminent threat of having their personal property seized and

16  destroyed in violation of the Fourth Amendment.

17       WHEREFORE, Plaintiffs pray for relief as set forth below.

18                              **FOURTH CAUSE OF ACTION**
                    **Property Destruction: Unreasonable Search and Seizure**
19                   **Under Article I, § 13 of the California Constitution**

20       66.    Plaintiffs re-allege and incorporate by reference all the above allegations as though

21  fully set forth herein.

22       67.    The California Constitution involves even greater protections than the Fourth

23  Amendment with respect to property seizures. *See* Cal. Const. art. I, § 13.

24       68.    Despite Defendant CITY OF BERKELEY's written policies to the contrary, it has an

25  unwritten policy, custom, and practice of seizing and destroying unhoused people's personal

26  belongings. Defendant CITY OF BERKELEY destroys such property even if that property poses no

27  threat to public health and does not constitute evidence of a crime.

28

69.    Defendant CITY OF BERKELEY's unconstitutional policies and practices continue, subjecting Plaintiffs to persistent and imminent threat of having their personal property seized and destroyed in clear violation of the more expansive protections under Article I, Section 13 of the California Constitution.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### FIFTH CAUSE OF ACTION
**Discrimination Against Persons with Disabilities**
**Under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq.**

70.    Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

71.    Title II of the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Discrimination under Title II of the ADA includes administration of programs in a way that has a discriminatory effect on people with disabilities, or that has the "effect of defeating or substantially impairing the accomplishment of the objectives of the service, program, or activity with respect to individuals with disabilities." 28 C.F.R. § 35.130 (b)(3)(ii).

72.    A local government's removal of homeless individuals and their possessions from public property—as well as the provision of outreach, services, or shelter to unhoused individuals—are programs, services, and/or activities covered by Title II of the ADA.

73.    Failure to provide proper assistance, additional time, or other support to disabled individuals when demanding that unhoused people remove themselves or their belongings from public space is a violation of the ADA.

74.    Failing to provide shelter options to unhoused people that meet their disability needs is also a violation of the ADA because it means that shelter is functionally unavailable to them because of their disability.

75.     Defendant CITY OF BERKELEY discriminates against unhoused individuals by failing to provide adequate notice, time, and assistance to unhoused people with disabilities who are forced to move themselves or their belongings from public space in response to defendant CITY OF BERKELEY's homeless sweeps.

76.     Forcibly removing unhoused residents without first identifying and offering alternative shelter or services that meet the individualized needs of people with disabilities does not serve any sufficiently compelling or bona fide and legitimate interest of defendant CITY OF BERKELEY, and less discriminatory options are available to defendant CITY OF BERKELEY to achieve any interests it claims it is trying to advance.

77.     Plaintiffs ADRIEN BOUCHARD, NICHOLAS JOHNSON and FRANK MOORE have physical and mental disabilities and have been, and will be, injured by Defendant CITY OF BERKELEY's discriminatory response to unhoused residents with disabilities. Though Defendant is on notice of his disability-related needs because of prior accommodation requests he has made, he has made an additional request to this notice that has not been addressed. Members of the Berkeley Homeless Union living in the noticed area also have disabilities and have made accommodation requests that have not been addressed to date.

### SIXTH CAUSE OF ACTION
**Discrimination Against Persons With Disabilities**
**Under Cal. Gov. Code § 11135**

78.     Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

79.     Cal. Gov. Code § 11135 is intended to prohibit all forms of discrimination prohibited under Title II of the Americans with Disabilities Act and, where possible, to be more protective of people with disabilities. *See* Cal. Gov. Code § 11135(b).

80.     By administering its programs for unhoused people and response to homelessness in a manner that has a discriminatory effect on people with disabilities, DEFENDANT CITY OF BERKELEY has violated, and continue to violate, Section 11135.

1    81.    Plaintiffs ADRIEN BOUCHARD, NICHOLAS JOHNSON and FRANK MOORE

2 have physical and mental disabilities and has been injured by Defendant CITY OF BERKELEY's

3 discriminatory response to unhoused residents with disabilities. Members of the Berkeley Homeless

4 Union living in the noticed area also have disabilities and have made accommodation requests that

5 have not been addressed to date. WHEREFORE, Plaintiffs pray for relief as set forth below.

6

**PRAYER FOR RELIEF**

7    WHEREFORE, Plaintiffs respectfully request that the Court:

8    **Temporary Restraining Order:**

9

10 Enter a Temporary Restraining Order to maintain the status quo until the Court has an opportunity to

11 hear a request for fuller relief, including a preliminary injunction, so that Plaintiffs can demonstrate

12 that there are serious questions going to the merits of their claims, and that the balance of hardships

13 tips sharply towards them since there is a likelihood of irreparable injury and an injunction is in the

14 public interest.

    **Disability Accommodations Order:**

15

16 Plaintiffs respectfully request that this Court issue an order requiring the City of Berkeley to comply

17 with its obligations under the Americans with Disabilities Act (ADA) and other applicable laws by

18 providing reasonable accommodations to disabled, unhoused individuals residing at 8th & Harrison

and other impacted locations. Plaintiffs seek relief to ensure that:

19
20    •    No further displacement, enforcement actions, or property confiscation occur until the City

21         fully engages in the required interactive process to assess and grant appropriate

22         accommodations for each disabled individual.

23    •    The City conducts individualized disability assessments before issuing enforcement orders

24         and provides written justifications for any denials.

25    •    The City halts all enforcement actions until its ADA grievance process is transparent,

26         functional, and provides a fair appeals process for individuals whose accommodation

         requests have been denied.

27

28

1    • Plaintiffs and similarly situated individuals are given a meaningful opportunity to appeal
2       denials of their accommodation requests through an impartial and accessible process.
3    B. Accessible Shelter and Stability:
4    Plaintiffs further request that the City be required to identify and provide ADA-compliant shelter
5    options that meet the specific needs of disabled individuals, ensuring:
6    • Stability, so that individuals are not subjected to repeated displacement due to enforcement
7       actions.
8    • Accessibility, including accommodations for mobility impairments, medical conditions,
9       sensory disabilities, and cognitive disabilities that prevent individuals from being placed in
10      unsafe or unsuitable environments.
11   • Access to necessary medical care, social services, and community support networks to
12      prevent further harm.
13      Such relief is essential to prevent ongoing ADA violations, **constitutional violations, and**
14   **life-threatening harm** to Plaintiffs and others similarly situated.
15      **Injunctive Relief:**
16      A.    Grant a preliminary and permanent injunction enjoining and restraining defendant
17   CITY OF BERKELEY from seizing and disposing of homeless individuals' property in a manner
18   that violates the Fourth and Fourteenth Amendments to the U.S. Constitution and Article I, §§ 7(a)
19   and 13 of the California Constitution;
20      B.    Grant a permanent injunction enjoining and restraining defendant CITY OF
21   BERKELEY from removing unhoused people from public property and seizing their property, in the
22   absence of adequate housing or shelter, in violation of the Fourteenth Amendment to the U.S.
23   Constitution and Article I, § 7(a) of the California Constitution;
24      C.    Grant a permanent injunction enjoining and restraining defendant CITY OF
25   BERKELEY from actions that discriminate against people with disabilities in the administration of
26   its programs in violation of 42 U.S.C. § 12131 and Cal. Gov. Code § 11135;
27      **Other Relief:**
28

1    **Other Relief:**

2         A.     Order defendant CITY OF BERKELEY to pay for Plaintiffs' attorneys' fees and

3    costs; and

4         B.     Grant Plaintiffs such further relief as the Court deems just and proper.

5

6    Dated: February 10, 2025

7

8                                            Respectfully submitted,

9

10

11                                       BERKELEY HOMELESS UNION

12

13

14                                       ADRIEN BOUCHARD

15

16

17                                       NICHOLAS JOHNSON

18

19

20                                       FRANK MOORE

21

22

23

24

25

26

27

28

---

**COMPLAINT FOR INJUNCTIVE RELIEF**

Exhibit E

Public

# Homeless Response Team

DATA AND PROGRESS REPORT

OCTOBER 2023

Public

# Outcomes

1. Our residents are sheltered

2. Dangerous encampments are not inevitable

3. Our City is clean

Public

# Outcome #1: People are sheltered



## Client Racial Background

- American Indian, Alaska Native, or Indigenous
- Asian or Asian American
- Black, African American, or African
- Data not Collected
- Multi-Racial
- White
- Native Hawaiian or Pacific Islander

1%  7%  3%
29%
1%
20%
39%

## Client Ethnic Background

- Client doesn't know
- Data not Collected
- Hispanic/Latin(a)(o)(x)
- Non-Hispanic/Non-Latin(a)(o)(x)

2%  16%
12%
70%

Public

# Outcome #1: People are sheltered



### Client Gender

- A gender other than singularly female or male
- Data not Collected
- Female
- Male

### Client Age Distribution

Public

# Outcome #1: People are sheltered



Client Health Conditions

Public

# Outcome #1: People are sheltered

Number of shelter referrals provided to residents:



Shelter Acceptance Rate

Public

# Outcome #1: People are sheltered



Public

# Outcome #2: Dangerous encampments are not inevitable

Number of notices given to tent encampments:

1,151 tents and structures were provided notices for the following reasons:



Public

# HRT Actions



**52 Encampment Closures**
**34 Deep Cleanings**
**11 RV Closures**

Public

# HRT Actions by District



Public

# Outcome #3: Our City is clean



### Total Pounds Removed by Quarter

Public

# Outcome #3: Our City is clean

Storage Notices:
- 34 stored belongings notices

Public

# Thank you

Questions?

◦ Peter Radu, Assistant to the City Manager
  ◦ pradu@cityofberkeley.info

◦ Josh Jacobs, Homeless Services Coordinator
  ◦ jjacobs@cityofberkeley.info