UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERKELEY HOMELESS UNION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BERKELEY, et al.,<br><br>Defendants. | Case No. 25-cv-01414-HSG<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 6 |

Pending before the Court is a motion for a temporary restraining order. Dkt. No. 6. The Court directed service on Defendants, Dkt. No. 10, and the City of Berkeley has since filed its opposition to the motion, Dkt. No. 11. Having considered the parties' filings, the Court **GRANTS** the motion for a temporary restraining order until a hearing can be held on February 20, 2025, at 2:00 p.m.

Under Federal Rule of Civil Procedure 65, a temporary restraining order may enjoin conduct pending a hearing on a preliminary injunction. *See* Fed. R. Civ. P. 65(b). The standard for issuing a temporary restraining order and issuing a preliminary injunction are substantially identical. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839, n.7 (9th Cir. 2001). Such an order may be issued only where the plaintiff has established: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to plaintiff in the absence of preliminary relief; (3) the balance of equities tips in plaintiff's favor; and (4) that an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under the Ninth Circuit's sliding scale approach, a plaintiff may alternatively establish that there are "serious questions going to the merits" if "a hardship balance [also] tips sharply towards the plaintiff," and the other two *Winter* factors are satisfied. *See All. for the Wild Rockies v. Cottrell*,

632 F.3d 1127, 1134–35 (9th Cir. 2011).

The Court finds that Plaintiffs have shown that there are serious questions going to the merits of at least one of their claims.[1]  Specifically, the parties dispute what the Americans with Disabilities Act ("ADA") requires before the City may evict disabled and unhoused individuals when clearing an encampment, and whether the City has complied with these requirements.  Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The Ninth Circuit has held, and the City appears to acknowledge, that "compliance with municipal code enforcement can constitute a benefit of the services, programs, or activities of a public entity under Title II." *See* Dkt. No. 12 at 14 (citing *McGary v. City of Portland*, 386 F.3d 1259, 1269 (9th Cir. 2004)).  Title II's implementing regulations, in turn, require state agencies to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

Here, Plaintiffs state that the City failed to engage in a good-faith interactive process to explore reasonable accommodations for their disabilities, and ultimately failed to provide them with any accommodation at all.  All three named Plaintiffs appear to have requested, at least in the first instance, an opportunity to stay at 8th and Harrison Streets rather than relocate.  *See* Dkt. No. 1 ("Compl.") at pp. 4 (¶¶ 19, 22), p. 8 (¶ 8).[2]  Mr. Bouchard has "severe mobility impairments"

---

[1] The Court notes that although listed as a plaintiff in this case, the Berkeley Homeless Union ("BHU") is not currently represented by counsel.  Two individuals, Gordon Gilmore and Yesica Prado, suggest that they are representatives of BHU, and each filed declarations in support of the motion for temporary restraining order.  *See, e.g.*, Dkt. No. 6-1; Dkt. No. 6-5.  However, because neither Mr. Gilmore nor Ms. Prado appear to be attorneys, they are not permitted to represent anyone but themselves.  *See In re Am. W. Airlines*, 40 F.3d 1058, 1059 (9th Cir. 1994) (per curiam) ("Corporations and other unincorporated associations must appear in court through an attorney."); Civil L.R. 3-9(b) ("A corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court.").  And because neither Mr. Gilmore nor Ms. Prado are listed as named Plaintiffs in this case, the Court only considers the claims as brought by Plaintiffs Adrien Bouchard, Nicholas Johnson, and Frank Moore.

[2] The complaint does not use consecutive paragraph numbering, so the Court cites both the PDF

and "cannot relocate independently." *See id.* at p. 4 (¶ 19). Mr. Johnson "is a neurodivergent individual diagnosed with autism and ADHD." *See id.* at p. 4 (¶ 22). And Mr. Moore has "chronic back pain from a prior tailbone injury, limit[ing] his mobility and making frequent relocation impossible." *See id.* at p. 5 (¶ 25). According to Plaintiffs, the City's ADA Coordinator, Thomas Gregory, denied their requests as unreasonable without proposing any alternatives, simply informing Plaintiffs to "'remove themselves' from the area." *See id.* at p. 8 (¶ 8), p. 10 (¶ 11).

The City urges that it has attempted to work with Plaintiffs, but blames "Plaintiffs' delayed responses, late requests, and repeated insistence on asserting their purported right to stay in place despite an order to leave the area . . . ." *See* Dkt. No. 12 at 15. Although the Court has already acknowledged concerns about the timing of this case, it also cannot rule out that at least some of the perceived delay may be precisely *because* Plaintiffs are unhoused and disabled. Additionally, although the initial site visit may have occurred in December 2024, Plaintiffs appealed the City's decision to close the encampment. The administrative hearing officer did not issue its ruling affirming the City's ability to clear the encampment until January 29, 2025. *See* Dkt. No. 13 at ¶ 6; *see also* Dkt. No. 13-3, Ex. C at 23–26. A notice explaining this decision and requiring Plaintiffs to leave the area was not posted until January 31, 2025—just ten days before the City's February 10 "Compliance Deadline" to leave the area. *See* Dkt. No. 13-3, Ex. C; *see also* Dkt. No. 15 at ¶ 8; Dkt. No. 13 at ¶¶ 7–8. The notice itself directed people to request ADA accommodations by February 3. *See* Dkt. No. 13-3, Ex. C at 18–19. Put in this context, it is not clear that Plaintiffs unduly delayed in requesting any ADA accommodation.[3]

Moreover, despite the City's suggestion that it has attempted to work with Plaintiffs, that is not indisputable from the current record. The City's own exhibits suggest that Mr. Gregory offered no alternatives after denying Plaintiffs' initial requests to remain in place; said he was not a lawyer and had "no good ideas" in response to Plaintiffs' needs; and suggested that Plaintiffs

---

pagination and the relevant paragraph numbers throughout this order for ease of reference.
[3] The City's suggestion that Plaintiffs should have acted before the appeal was heard would seem to render illusory the City's appeals process.

3

were harassing him with their requests. *See* Dkt. No. 14, Ex. A; *see also id*, Exs. B–C. At this stage the Court need not decide whether the City's conduct in fact violated the ADA, but Plaintiffs have raised serious questions going to this fact-specific inquiry. *Cf. Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (indicating that the interactive process under the ADA requires, *inter alia*, "offering an accommodation that is reasonable and effective").

The balance of hardships also tips sharply in Plaintiffs' favor. The City has confirmed that it intends to clear the encampment without further notice and on a date of its own choosing. *See* Dkt. No. 12 at 9. Plaintiffs have clearly shown that immediate and irreparable injury—specifically the removal of Plaintiffs and their belongings from the place they are now living—will occur before a hearing can be held on a motion for preliminary injunction. The harm to Plaintiffs is further compounded by the storm and heavy rain that have hit the Bay Area. The Court does not minimize the burden a temporary restraining order would place on the City. As the City has detailed, it has devoted significant resources to the planned clearing of the encampment and would face challenges in having to reschedule. *See* Dkt. No. 15 at ¶¶ 9–10. Nevertheless, the Court is not persuaded that the City's resource allocation concerns outweigh the hardship and irreparable injury Plaintiffs would otherwise face without a modest delay in the City's plans to clear the encampment to allow the Court to address the merits on a more informed basis. Plaintiffs have also offered evidence that they have engaged in considerable efforts to clean up at least some of the conditions that the City identified as posing health and safety risks. *See, e.g.*, Dkt. No. 11 at ¶¶ 6–13; *see also* Dkt. No. 13-3, Ex. C at 26 (administrative hearing officer commending "substantial cleanup efforts" and removal of "3,000 pounds of waste from the encampment").

Given the imminent nature of the challenged action and resulting irreparable harm shown, the Court finds that the requirements of Rule 65(b) are met and the *Winter* factors weigh in favor of a temporary restraining order.

## I. CONCLUSION

Accordingly, the Court **GRANTS** Plaintiffs' motion for a temporary restraining order, solely to maintain the status quo until the earliest possible hearing on the merits of the temporary restraining order request. This temporary restraining order shall take effect immediately.

Defendants are enjoined from proceeding with the clearing and eviction of those currently residing in and along 8th and Harrison Streets (the "Harrison Corridor") in Berkeley, California, until a hearing can be held on the merits of Plaintiffs' request.

A hearing on whether the temporary restraining order should be further extended is set for Thursday, February 20, 2025, at 2:00 p.m. in Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, CA. All parties shall attend in-person. The Clerk is **DIRECTED** to serve this Order on the Plaintiffs by email at berkeley.homeless.union@gmail.com.

**IT IS SO ORDERED.**

Dated:    2/14/2025

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge