OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
Northern District of California

CIVIL MINUTES

**Date:** June 10, 2025     **Time:** 10:33-12:01     **Judge:** EDWARD M. CHEN
1 Hour, 28 Minutes

**Case No.:** 25-cv-01414-EMC     **Case Name:** Berkeley Homeless Union v. City of Berkeley

**Attorney for Plaintiffs:** Anthony Prince
**Attorneys for Defendants:** Marc Shapp, Laura Mattes

**Deputy Clerk:** Vicky Ayala     **Court Reporter:** Ruth Ekhaus

PROCEEDINGS

Motion for Preliminary Injunction - held (In-Person)

SUMMARY

Parties stated their appearances.

The Court granted in part and denied in part Plaintiff Berkeley Homeless Union's motion for a preliminary injunction. The Court found the following:

**Irreparable Harm:** Berkeley Homeless Union ("BHU") established a likelihood of irreparable injury from imminent displacement for its members residing in the encampment at 8th and Harrison Streets in Berkeley, California ("Harrison Corridor").

**Public Interest and Balance of Equities:** The balance of hardships and public interest do not tip decidedly in favor of the BHU. The continuing public health hazard, emergencies at the Harrison Corridor, and financial and administrative burden on the City tip both factors in the City's favor. As an encampment continues over time and if health and safety hazards persist, the government's interest in closure increases. And where advance notice of an intent to eventually close an encampment is given, the reliance interests of residents tends to diminish. In this case, the City has provided reasonable responses to the four specific potential harms faced by residents if the encampment is closed (including e.g. access the public restrooms, food and medical services provided by public agencies.) Although BHU has demonstrated irreparable harm and potentially worsening conditions if resident lose the encampment, the hardship does not tip decidedly in BHU's favor, and thus BHU must demonstrate a likelihood of success on the merits, not merely the raising of serious questions on the merits.

**Likelihood of Success:** As an initial matter, regarding associational standing, BHU easily satisfies the first two prongs of the *Hunt* associational standing test. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344–45 (1977). Because BHU's Americans with Disabilities Act ("ADA") claim requires substantial individualized evidence, BHU does not clearly satisfy the third prong of the *Hunt* test. However, because the third prong is prudential, the Court allows BHU to bring its claims on behalf of its members.

- **ADA Claim:** BHU is likely to succeed on its ADA claim that the City has not completed the interactive process to identify a reasonable accommodation for its members living in the Harrison Corridor for whom BHU has submitted accommodation requests. On the potential merits of the reasonable accommodation claims, BHU's argument that the City has failed to provide a reasonable accommodation by refusing to allow BHU members to continue residing in the Harrison Corridor indefinitely or by failing to obtain interim or permanent housing for these individuals is less certain because such accommodations could well constitute a fundamental alteration of the City's program to abate and close the encampment or place a burden on the City which cannot be met (there currently is limited housing availability). *See Tennessee v. Lane*, 541 U.S. 509, 532 (2004). At this juncture, the City reports that only limited congregate housing is available. No non-congregate housing is currently available. On the other hand, claims of entitlement to sufficient time to get things in order before the move and physical assistance in moving are likely reasonable requests.

- **Fourteenth Amendment Claim**: BHU is unlikely to succeed on its Fourteenth Amendment claim because it fails to demonstrate that the City's action will place its members residing in the Harrison Corridor in a state-created danger related to a loss of 1) "bathrooms," 2) "access to food and water" such as from the "Dorothy Day House," 3) "mutual protection" from "community watch groups and buddy systems," and 4) "medical and case management services" from "Lifelong Medical and Bay Area Community Services." Prado Decl. 1 ¶ 7 (Dkt. 72-2). First, regarding access to restrooms, the City states that it maintains "multiple public restrooms throughout Berkeley," including one "located a few blocks from the Harrison Corridor" in "the Tom Bates Regional Sports Complex" that is "accessible at all hours." Vance-Dozier Decl. ¶ 5 (Dkt. 82-2). Second, regarding access to food and water, the City states that its Homeless Response Team ("HRT") coordinates the provision of services with providers including the Dorothy Day House for those throughout the City. Vance-Dozier Decl. ISO City's Opp'n to Plaintiffs Bouchard and Johnson's Mot. for PI ¶ 13 (Dkt. 56-2). The City further states that the Dorothy Day House is located "2.5 miles" from the Harrison Corridor and it is unaware of "any Harrison Corridor residents who walk from the encampment to Dorothy Day [H]ouse for services, and certainly not individuals who have mobility limitations." Vance-Dozier Decl. ¶ 4. BHU does not establish that its members would lose access to these services because of the City's abatement and closure of the Harrison Corridor. Third, regarding mutual protection, because the "City has no prohibition from unhoused individuals living alongside others" and seeks "to abate and close this particular encampment" due to the "severe public health and safety threats," BHU does not establish that its members will necessarily loss access to mutual protection from the City closing this encampment. Opp'n at 24 (Dkt. 82). Fourth, regarding continual access to medical and case management services from Lifelong Medical and

>Bay Area Community Services, BHU does not demonstrate that its members would lose access to these services from the City's abatement and closure of the Harrison Corridor.

**Limited Injunctive Relief:** Accordingly, within 60 days, the parties shall complete the interactive process for those BHU members currently residing in the Harrison Corridor. To facilitate the interactive process, the City may request and BHU shall provide reasonable documentation demonstrating a nexus between the individual's disability and the associated need for the requested accommodation. Further, the City shall allow recordings of the interactive process when requested. These individuals may not be evicted until the interactive process is fairly completed, absent further order. This injunctive relief is limited to those BHU members currently residing in the Harrison Corridor for whom BHU has already submitted a written accommodation request. Within 60 days, the parties shall file a joint status report. On an emerging basis, Judge Robert Illman is available to mediate individual claims for accommodations.

Any other Harrison Corridor encampment resident is not afforded such protection. However, the City must give at least one week's notice before moving on their property.

Should BHU seek reconsideration of this Court's ruling, BHU must file a motion for reconsideration pursuant to the Local Rules. *See* Civil Local Rule 7-9.