Anthony D. Prince (SBN # 202892)
General Counsel, California Homeless Union/Statewide Organizing Council
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
Tel: 510-301-1472

UNITED STATES COURT

DISTRICT OF NORTHERN CALIFORNIA

|  |  |
|---|---|
| BERKELEY HOMELESS UNION ET AL<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF BERKELEY ET AL<br><br>Defendant | Case No.: 3:25-cv-01414-EMC(RMI)<br><br>DECLARATION OF YESICA PRADO IN SUPPORT OF EX-PARTE APPLICATION FOR ORDER TO ENFORCE PRELIMINARY INJUNCTION; HALTING SEPTEMBER 15 ABATEMENT OF HARRISON STREET TO CORDONOCIES CREEK; AND REQUEST FOR EMERGENCY HEARING |

1. I, Yesica Prado, do declare I have personal knowledge of all facts in this declaration and if called to testify could and would do so competently. I am a representative of the Berkeley Homeless Union and a resident of the 8th and Harrison Streets encampment, where I've lived for 7 years.

2. On September 8, 2025, the City posted numerous copies of a "Notice of Encampment Closure" on tents and handed to individual residents a Notice of Encampment Closure." The geographic area involved is much larger than and includes the Harrison Corridor encampment in its entirety. The Notice makes no distinction between those who are

DECLARATION OF YESICA PRADO IN SUPPORT OF EX-PARTE APPLICATION FOR ORDER TO ENFORCE PRELIMINARY INJUNCTION; HALTING SEPTEMBER 15 ABATEMENT OF HARRISON STREET TO CORDONOCIES CREEK; AND REQUEST FOR EMERGENCY HEARING - 1

protected by the Court's order of June 10, 2025 and those who are not. The Notice instructs everyone to leave with their belongings by Monday, September 15, 2025 or be charged with a misdemeanor. Attached in **Exhibit A** is a true and correct copy of the notice posted in Harrison Corridor.

3. This area has always been a part of the encampment, and BHU members with disabilities who had applications for reasonable accommodations on file have lived there and still do. There are others who had applications on file who fled to different parts of this area after they were physically evicted by the City from 8th and Harrison on June 4, 2025

4. Attached hereto as **Exhibit B** is a true and correct copy of the list of BHU members who had applications for reasonable accommodations on file as of June 10, 2025. Adrien Bouchard and Nick Johnson's cases have settled after receiving accommodations. Many of the 17 others were either evicted in the June 4th police raid or fled in fear and have not returned to 8th and Harrison but remain in the area designated by the City now as an "encampment" set to be closed on Monday.

5. The City claims that only those who either remained or came back to the Encampment after June 4 are covered by the Court order.

6. On September 8, 2025, I received a call from Lewanda Parnell, a camp resident of 8th and Harrison Streets and Berkeley Homeless Union member, who sounded really scared and anxious as she watched city staff post notices on people's tents along 8th Street. Her immediate thought was that we were all getting evicted from the encampment and told me she was feeling desperate about the whole situation.

7. I reached out to other BHU members to verify the city's actions. One of our members sent me a video of Epsilon Galloway from the Homeless Response Team, posting notices and taking pictures of them. He did not talk to anyone in the encampment that day and quickly left as he realized he was being recorded.

8. The Notice has led to panic and anxiety throughout the encampment, especially among those who have not even had an interactive process meeting. Out of the 19 people who had applications on file only three were included in an in-person interactive process meeting.

9. Since the Notice was posted on September 8, the City has sent Homeless Response Team outreach workers Okeya Vance and Epsilon Galloway into the encampment to put pressure on residents including Lewanda Parnell and Shareef Muwakkil, both of whom are covered by the June 10 Order.

10. Epsilon Galloway told Mr. Muwakkil that the City might remove his belongings if "they weren't better secured". Galloway tried to have Ms. Parnell - 71 years old with severe mobility disabilities - go to a motel room that has no grab bars or rails and is not ADA compliant.

11. The area listed on the notice has always been a part of our encampment, and since before the preliminary injunction BHU members protected by the Court's order have lived there, and many of them still do.

12. Between January 17 and April 25, 2025, the BHU has submitted 19 requests for ADA accommodations for encampment residents at 8th and Harrison Streets.

13. The violent and unannounced sweep that occurred at 8th and Harrison Streets on June 4, 2025, disrupted our operations at that site directly. This forced dispersal shattered the stability of the encampment and interrupted our systematic effort to identify and document every resident living with a physical or mental disability. We were on track to collect the necessary information for all BHU members at that location prior to our court hearing on June 10. But because of the City's actions, including its failure to provide notice and its refusal to coordinate with BHU leadership, we were not able to complete the process.

14. On June 20, 2025, counsel for the Berkeley Homeless Union submitted to the City a list of individuals who had filed ADA accommodation requests prior to the Court's June 10 hearing. That list originally included 19 individuals, but it was subsequently narrowed to 17 after two BHU members reached individual settlements with the City.

15. In response, the City further reduced the list to only eight individuals, limiting its recognition of ADA protections solely to those who were physically present at the encampment at the specific date and time of the June 10 hearing. I was one of the eight individuals acknowledged by the City. However, the City has since refused to engage in

1    the interactive process with the other nine BHU members whose accommodation requests
2    were already on file and who are still active members of our unhoused community.

3    16. Although the Berkeley Homeless Union disagreed with the City's narrow list of eight
4    BHU members deemed eligible, we nevertheless participated in good faith to avoid
5    further delays. Unfortunately, the in-person meetings organized by the City were deeply
6    flawed and counterproductive. City staff conducted the sessions in a hostile and
     dismissive manner that caused significant emotional distress to our members.

7    17. Out of the eight members identified by the City, only three ultimately participated in the
8    scheduled interactive process meetings. Two of them were brought to tears during the
9    sessions and were forced to walk out early in order to protect their mental health and
10   emotional well-being. In each case, the distress was triggered by the conduct of City
11   representatives.

12   18. Moreover, a licensed nurse practitioner who was present at these meetings explicitly
13   warned City staff in advance about potential psychological triggers and the vulnerability
14   of the individuals involved. These professional warnings were ignored. The City's failure
15   to create a trauma-informed and respectful environment not only disrupted the interactive
     process but caused harm to already vulnerable individuals seeking reasonable
16   accommodations.

17   19. On July 23, 2025, the City Attorney Iris Mattes unilaterally canceled all the in-person
18   meetings for members with ADA requests pending, including myself. Since that time, the
19   City has insisted that these interactions continue exclusively through email
20   correspondence.

21   20. However, this mode of communication presents a significant and well-documented
22   barrier for me personally as I am in charge of submitting these requests for our union
23   members. I have been diagnosed with Attention-Deficit Hyperactivity Disorder (ADHD),
     which makes organizing my thoughts and composing written responses extremely
24   difficult and time-consuming, especially tight deadlines. Writing even a single
25   email can take me several hours, often between four to six hours because it involves
26   describing the medical history and accommodation needs of multiple individuals, so I

27
28   DECLARATION OF YESICA PRADO IN SUPPORT OF EX-PARTE APPLICATION FOR ORDER TO
     ENFORCE PRELIMINARY INJUNCTION; HALTING SEPTEMBER 15 ABATEMENT OF HARRISON
     STREET TO CORDONOCIES CREEK; AND REQUEST FOR EMERGENCY HEARING - 4

also need to do research on each health condition. I also frequently require assistance from a third party to help me edit and structure these communications, which adds further delay.

21. The City's refusal to accommodate in-person dialogue, despite knowing my disability and leadership role in the union, has hindered BHU's ability to meaningfully participate in the interactive process as required by law and by the Court's injunction.

I swear under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Dated: September 11, 2025                                        /s/ Yesica Prado

Executed at Berkeley,

DECLARATION OF YESICA PRADO IN SUPPORT OF EX-PARTE APPLICATION FOR ORDER TO ENFORCE PRELIMINARY INJUNCTION; HALTING SEPTEMBER 15 ABATEMENT OF HARRISON STREET TO CORDONOCIES CREEK; AND REQUEST FOR EMERGENCY HEARING - 5

# Exhibit A



City Manager's Office

# **PUBLIC NOTICE**

Date Posted: Sept 8, 2025

To:     Persons encamped on the east side of 8ᵗʰ St between Harrison and
        Codornices Creek

From:    City of Berkeley

Subject:   **Notice of Encampment Closure**

Please be advised that this location is within a no-lodging area and Temporary Non-Commercial
Item (TNC) Prohibited Area. You are not permitted to lodge here or store personal property here,
pursuant to California Penal Code Section 647(e) and City of Berkeley Administrative Regulation
10.2.

**Please vacate the TNC Prohibited Area by Sept 15, 2025.** All personal property in the above
location will be subject to removal on or after this date pursuant to Administrative Regulations
10.1 and 10.2. Vehicles in the above location will be subject to tow after this date, if authorized
by the Vehicle Code and community caretaking doctrine. Failure to comply with this notice may
result in citation or arrest.

The City's primary goal is to end encampments by moving all people indoors. Those interested in
shelter or permanent housing should refer to Attachment 2.

**PROPERTY STORAGE AND RETRIEVAL**
The City can temporarily store a limited amount of certain types of personal property up to 90
days, depending on value. Requests for property storage should be directed to the Homeless
Response Team at homelessresponseteam@berkeleyca.gov. Personal property left unattended
may be collected and stored pursuant to the City's policy, if it meets certain requirements,
described in more detail below:

1.  **Personal property that *may* be stored up to 90 days** includes property of a personal
    nature such as identification; photos/photo albums; tents, sleeping bags, bedding (which
    is deemed to be in serviceable condition); luggage, backpacks, purses; clothing;
    documents (together in a packet bound or secured in some way); jewelry; medication;

eyewear; electronic equipment; tools; bicycles and other non-motorized methods of transportation which are in working order.

2. **Items that will not be stored and are subject to disposal if left on public property at the time of the abatement include but are not limited to**: soiled or moldy items; loose or scattered papers; wet or damp clothing, bedding or sleeping bags; perishable food or personal products; personal hygiene products such as toothbrushes or hairbrushes; bike carcasses and parts; mattresses, futons, furniture; shopping carts (items easily identified as personal belongings and meeting the criteria for storage may be stored); broken or disassembled items or items stripped of parts; weapons; items that attract rodents or insects (containers for recycling or food storage); hazardous or explosive items such as gasoline cans, propane tanks, batteries.

Individuals who wish to reclaim their stored property may make an appointment to retrieve it. To do so, please call "311" to contact the City's Customer Service Center during regular business hours (Monday – Friday, 9:00 AM to 3:00 PM), or call (510) 981-2489 or (510) 981-CITY. Alternatively, information regarding retrieval of unattended and stored property is available in the lobby of the Berkeley Civic Center, 2180 Milvia Street, Berkeley, during regular business hours.

---

### LODGING WITHOUT PERMISSION PROHIBITED
You are hereby notified that Penal Code 647(e) provides that a person "[w]ho lodges in a building, structure, vehicle, or place, whether public or private, without the permission of the owner or person entitled to the possession or in control of it" is guilty of a misdemeanor.

**Lodging is prohibited on the streets, sidewalks, and other public rights-of-way on Harrison St from 10th St to 6th St and 8th St from Gilman St. to Codornices Creek.**

### SIDEWALK NUISANCE CONDITIONS
You are hereby notified that pursuant to **Berkeley Municipal Code 14.48.020**, "It is unlawful for any person to place or cause to be placed anywhere upon any sidewalk or roadway, any object which obstructs, restricts, or prevents the use of any portion of such sidewalk or roadway."

You are further notified that pursuant to **Berkeley Municipal Code 14.48.120 and Administrative Regulation 10.2**:
- "TNC Objects are prohibited on Sidewalks in Residential Districts, except Objects in Transit pursuant to BMC §14.48.030 or as otherwise specifically authorized by the BMC"
- "TNC Objects may not be placed in TNC Prohibited Areas." A TNC Prohibited Area is defined as "a public location where notices have been posted in reasonably visible locations delineating a geographic area where TNC Objects are prohibited."

You are further notified that pursuant to **Berkeley Municipal Code 14.48.160**, "Anything placed or permitted to remain upon any sidewalk or roadway in violation of this Chapter, is declared to constitute a nuisance and the City is authorized and empowered to abate such nuisance by removing the same to the custodian of lost property in the Police Department or the Corporation Yard of the City, or other location designated by the City."

**VEHICLES**

You are hereby notified that pursuant to **California Vehicle Code 22651(b) and (o)**, "A peace officer...or a regularly employed and salaried employee, who is engaged in directing traffic or enforcing parking laws and regulations, of a city, county, or jurisdiction of a state agency in which a vehicle is located, may remove a vehicle located within the territorial limits in which the officer or employee may act, under the following circumstances... If a vehicle is found or operated upon a highway, public land, or an off street parking facility under any of the following circumstances... (b) If a vehicle is parked or left standing upon a highway in a position so as to **obstruct the normal movement of traffic or in a condition so as to create a hazard to other traffic upon the highway** . . . (o) With a **registration expiration date in excess of six months** before the date it is found or operated on the highway, public lands, or the off street parking facility."

You are further notified that pursuant to **California Vehicle Code 22669(d)**, "Motor vehicles which are parked, resting, or otherwise immobilized on any highway or public right-of-way and **which lack an engine, transmission, wheels, tires, doors, windshield, or any other part or equipment necessary to operate safely on the highways of this state**, are hereby declared a hazard to public health, safety, and welfare and may be removed immediately upon discovery by a peace officer or other designated employee of the state, county, or city."

ATTACHMENT 1

## FACT SHEET

- This area has been declared a no-lodging area and a TNC Prohibited Area.
  - ○ Lodging is prohibited on the streets, sidewalks, and other public rights-of-way on Harrison St from 10th St to 6th St and 8th St from Gilman St. to Codornices Creek.
  - ○ Personal property cannot be stored on the streets, sidewalks, or other public rights-of-way in TNC Prohibited Areas.
- You have until Sept 15 to find another location for yourself and your belongings. By this date, you must leave the encampment and take anything of value with you. The City may come to clean up and permanently close this encampment at any time after Sept 15 without further notice.
- You have until Sept 15 to ensure any vehicle in the area is in safe working order and properly licensed and registered or remove it from the closure area. The City will be enforcing against illegally parked vehicles in this area on or after Sept 15. After that date, remaining vehicles may be subject to tow and impounding.
- The City can store a limited amount of personal property up to 90 days. Some property cannot be stored and is subject to being discarded. This includes:
  - ○ Soiled or moldy items
  - ○ Loose or scattered papers
  - ○ Wet or damp clothing, bedding, or sleeping bags if storing it would cause it to mold
  - ○ Perishable food or personal products that will spoil in storage
  - ○ Personal hygiene products such as toothbrushes, hair brushes
  - ○ Bike carcasses and parts
  - ○ Mattresses, futons, furniture
  - ○ Shopping carts (shopping carts will be returned to the identified stores where possible and clearly identifiable valuables in the carts will be stored).
  - ○ Broken or disassembled items or those stripped of parts (i.e. flat tires, electronics, torn up clothes)
  - ○ Weapons



- o Any item that may attract rodents or insects (containers for recycling or food storage)
- o Hazardous or explosive items such as gasoline cans propane tanks, batteries
- If your property is removed and stored, you may make an appointment to reclaim your property by:
  - o Contacting 311 Customer Service Center by dialing 311 or (510) 981-2489, or
  - o Visiting the lobby of the Berkeley Civic Center, 2180 Milvia St., Berkeley, during regular business hours.

The City's primary goal is to end encampments by moving all people indoors. Those interested in shelter or permanent housing should refer to Attachment 2.

The City of Berkeley's primary goal is to end unsheltered homelessness by connecting those living in this encampment to interim and permanent housing.

*Interim Housing*
The City has a limited number of shelter beds available. Those interested in shelter can:
- Talk to a member of the Homeless Response Team (HRT) at any point during their regular outreach to this encampment.
- Call **211** or 1-800-799-7233 or 1-800-787-3224 (TTY) for services, shelter and housing information. 211 Alameda County is available 24 hours a day, seven days a week.
- Visit in person:
  - North County Housing Resource Center (homeless adults only):
    - **Bay Area Community Services**
      **In person drop-in hours:** Mon., Wed., Fri., 9:00 am – 12:00 pm
      **Call-in hours:** Mon. – Fri. 8:30 am – 4:30 pm
      **Address:** 2809 Telegraph Avenue Suite 202, Berkeley, CA 94705
      **(510) 495-0131\**
  - North County Housing Resource Center (homeless families only):
    - **Women's Daytime Drop-in Center**
      **Food and hygiene services:** Monday – Friday 9:00 am – 2:00 pm
      **All other services:** Monday – Friday 8:00 am – 4:00 pm
      **Address:** 2218 Acton Street, Berkeley, CA 94702
      **(510) 548-2884**

*Permanent Housing*
By Federal regulation, the City of Berkeley does not control access/referrals to permanent supportive housing for people experiencing homelessness, even for those housing programs located within the City. Alameda County, through its Coordinated Entry process, oversees these referrals. However, the Homeless Response Team can assess people for eligibility and help connect anyone interested. During the Coordinated Entry assessment, the HRT will ask you about your:
- History of homelessness
- Barriers to housing (prior evictions, length of time since last lease)
- Disability and vulnerability

Providing full and honest answers will help ensure you are matched to the most appropriate services for your needs.

Anyone interested in a Coordinated Entry Assessment should:
- Talk to a member of the Homeless Response Team (HRT) at any point during their regular outreach to this encampment.
- Email homelessresponseteam@berkeleyca.gov to request a housing assessment. Please provide a phone number and/or a location and date/time the team can use to locate you.

# Exhibit B

## Re: Information regarding City Notice

From:  Yesica Prado (yesica.prado13@gmail.com)

To:     princelawoffices@yahoo.com

Date:  Thursday, September 11, 2025 at 09:12 AM PDT

Here's the list one more time, with the dates the request was submitted: (19 people total)

| Name of Requester | Disability | Date Sent | Sent By | Last Reply Date |
|---|---|---|---|---|
| Adrien Bouchard | Physical | 01/22/25 | Yesica | 02/03/25 |
| Brenda Bolares | Mental | 02/03/25 | Yesica | 02/03/25 |
| Erin Spencer | Mental + Physical | 02/03/25 | Gordon | 02/03/25 |
| Felicia Avelino | Physical | 02/06/25 | Gordon | - |
| Frank Moore | Mental + Physical | 01/22/25 | Yesica | 02/03/25 |
| Janet Bright | Physical | 02/03/25 | Gordon | 02/03/25 |
| Jermaine White | Mental + Physical | 01/17/25 | Yesica | 01/21/25 |
| Justin Wilson | Mental + Physical | 02/06/25 | Gordon | - |
| Lewanda Parnell | Physical | 01/22/25 | Yesica | 02/03/25 |
| Merced Dominguez | Physical | 01/22/25 | Yesica | 02/03/25 |
| Nick Johnson | Mental | 02/03/25 | Yesica | 02/04/25 |
| Ray Johnson | Mental | 02/03/25 | Yesica | 02/03/25 |
| Rufus White | Physical | 01/17/25 | Yesica | 01/21/25 |
| Vanessa Bichard | Mental | 02/03/25 | Yesica | 02/03/25 |
| William Baird | Mental + Physical | 02/03/25 | Gordon | 02/03/25 |
| Yesica Prado | Mental | 02/03/25 | Yesica | 02/03/25 |
| Austin White | Mental + Physical | 04/25/25 | Yesica | 04/25/25 |
| Shareef Muwakkil | Mental + Physical | 04/25/25 | Yesica | 04/25/25 |
| Eric Kaiser | Mental + Physical | 04/25/25 | Yesica | 04/25/25 |