Farimah Faiz Brown, City Attorney (State Bar No. 201227)
Marc Shapp, Deputy City Attorney (State Bar No. 266805)
Laura Iris Mattes, Deputy City Attorney (State Bar No. 310594)
Nubyann Scott, Deputy City Attorney (State Bar No. 331584)
BERKELEY CITY ATTORNEY'S OFFICE
2180 Milvia Street, Fourth Floor
Berkeley, CA 94704
Telephone: (510) 981-6997
Facsimile: (510) 981-6960
Email: MShapp@berkeleyca.gov
         LMattes@berkeleyca.gov
         NScott@berkeleyca.gov
Attorneys for Defendant
CITY OF BERKELEY

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERKELEY HOMELESS UNION, et al.<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BERKELEY, et al.<br><br>Defendants. | Case No.  3:25-CV-01414-EMC<br><br>**DEFENDANTS' OPPOSITION TO BERKELEY HOMELESS UNION'S EX-PARTE APPLICATION FOR ORDER AND EMERGENCY HEARING TO ENFORCE PRELIMINARY INJUNCTION AND HALT SEPTEMBER 15 ABATEMENT**<br><br>Judge: Hon. Edward M. Chen |

## OPPOSITION TO EX-PARTE APPLICATION[1]

I.    **INTRODUCTION**

The Court's June 10, 2025 preliminary injunction order, Dkt. No. 104, is clear, and Defendants have at all times complied with its requirements. Defendants have provided one week's notice of the City's intent to prohibit camping in a limited one block area of the City of Berkeley on the east side of Eighth Street between Harrison and Codornices Creek due to significant concerns posed to the general public and residents in this location. As the materials submitted by Berkeley Homeless Union ("BHU") in support of the instant Ex-Parte Application show, the September 8, 2025 Notice of Encampment Closure ("Notice") and the intended closure operation fall squarely within the "Limited Injunctive Relief" granted by the Court. The Court limited the injunction's application to "those BHU members currently residing in the Harrison Corridor for whom BHU has already submitted a written accommodation request. . . . *Any other Harrison Corridor encampment resident is not afforded such protection*." *Id.* (emphasis added).

Not a single one of the individuals residing within the one block area of the Harrison Corridor subject to the Notice had already a submitted written accommodation requests as of June 10, 2025. Nor does the City or the Court have any evidence that anyone residing within the one block closure area is even a BHU member. BHU does not attempt to argue otherwise in its Ex-Parte Application. Rather, the Ex-Parte Application combines misdirection with an improper and untimely attempt to relitigate and broaden the scope of the June 10, 2025 preliminary injunction.

If the Court were to grant the Ex-Parte Application, not only would doing so be contrary

---

[1] Defendants file this Opposition to BHU's Ex-Parte Application in accordance with the Court's instruction to do so by 7:00 am on September 12, 2025. Dkt. No. 138. The Ex-Parte Application was filed at approximately 4:08 pm on September 11, 2025, and the Court's instruction to Defendants was not issued until after 6:00 pm on September 11, 2025. Because of these filings so late in the day, Defendants have not been afforded the opportunity to obtain declarations from all City staff with relevant firsthand knowledge of the claims asserted by BHU. The undersigned therefore make offers of proof as to any factual assertions in this Opposition not otherwise supported by a declaration.

1  the conditions set forth in the Court's own June 10, 2025 ruling, but it would do so at great

2  expense to the public. As demonstrated below, residents in the area impacted by the Harrison

3  Corridor encampments—and specifically by the area subject to closure under the Notice—are

4  enduring conditions that threaten their safety and businesses. Halting the noticed action would

5  extend the scope of the current preliminary injunction without any showing by BHU that such

6  additional injunctive relief is warranted, and would do so at the expense of the general public.

7  **II.    ARGUMENT**

8      **A.    The City is Complying with the Preliminary Injunction.**

9          On June 10, 2025, the Court issued an order providing "Limited Injunctive Relief" to

10  certain individuals encamped within the area referred to throughout this litigation as the Harrison

11  Corridor. Dkt. No. 104. This limited relief applies to "those BHU members currently residing in

12  the Harrison Corridor for whom BHU has already submitted a written accommodation request."

13  *Id.* at 3. This language is not ambiguous—it sets temporal and geographic limits for who is

14  covered by the injunction based on their status at the time the injunction was issued. At its most

15  expansive, the furthest back the injunction reaches is 12:01 p.m., when the Court adjourned the

16  hearing on June 10, 2025. Any individuals who were not residing in the Harrison Corridor at that

17  time, or who were residing there but did not have a pending ADA accommodation request, are

18  not covered by the Court's limited injunctive relief. Anyone else encamped within the Harrison

19  Corridor is entitled only to at least one week's notice before the City "mov[es] on their

20  property." *Id.*

21          All of the City actions complained of in the Ex-Parte Application comply with these

22  limitations.

23          **1.    The Notice Complies with the Preliminary Injunction.**

24          The Notice and the closure action it precedes both comply with the limitations imposed

25  by the June 10, 2025 order. First, the individuals targeted by the Notice have been given at least

26  one week to comply. *See* Declaration of Epsalon Galloway, filed concurrently herewith

27  ("Galloway Dec."), Ex. A (Notice of Encampment Closure dated September 8, 2025 indicating a

28

compliance deadline of September 15, 2025). BHU does not argue otherwise.

Second, none of the individuals targeted by the Notice are among those afforded the "Limited Injunctive Relief" because none of them had pending ADA accommodation requests. The Notice is specifically directed to "Persons encamped on the east side of 8th St between Harrison and Codornices Creek." *Id.* Prior to posting the Notice, the City ensured that the individuals encamped in this "Eighth Street Block" did not have pending ADA accommodation requests. On August 29, 2025, City of Berkeley Social Services Specialist Epsalon Galloway went to the Eighth Street Block of Harrison Street and determined that five individuals were encamped there: Jacqueline Mendoza, Bradford Raynor, Deshante Willis, Vicky Dunbar, and Robert Pearce. *Id.*, ¶¶ 3,5. On September 9, 2025, Mr. Galloway returned to the Eighth Street Block and conducted a second census. *Id.* ¶ 7. He found that the same five individuals were present and identified a sixth, Bryan Smyth. *Id.*

BHU claims that the Notice was posted "in an area in which are currently residing BHU members who are among the nineteen (19) residents who had official disability accommodations requests on file as of the Court's" June 10, 2025 preliminary injunction order. Dkt. No. 135 at 1. ***This is false***. First, other than the unsupported declaration of BHU representative Yesica Prado, the City has received no evidence or indication that anyone residing in the Eighth Street Block are BHU members. Second, Ms. Prado's declaration offers a list of 19 people she contends had submitted ADA accommodation requests as of June 10, 2025. Dkt. No. 135-1 at 14. There is no overlap between the six individuals identified by Mr. Galloway as subject to the Notice and the 19 individuals identified by BHU. Ms. Prado asserts that some BHU members "who had applications for reasonable accommodation on file have lived there and still do." *Id.* at 2, ¶ 3. Ms. Prado fails to name a single person among the 19 individuals this assertion purportedly applies to, and her claim should be discounted accordingly. Finally, Ms. Prado's claim must be read in light of her misunderstanding that the Notice "includes the Harrison Corridor encampment in its entirety." *Id.* at 1, ¶ 2.[2] Since this understanding is obviously erroneous on the

---

[2] Ms. Prado's understanding appears to rely in part on the Notice's Fact Sheet that says that lodging is prohibited on Harrison St from 10th St to 6th St and 8th St from Gilman St. to

1  face of the Notice, Ms. Prado's claim is based on a false premise and therefore is irrelevant.

2      The only relevant evidence before the Court is that six individuals subject to the Notice

3  have been provided one week's notice, just as this Court required.

4          **2.    The City Has Not Moved to Evict Any Person Afforded "Limited**

5              **Injunctive Relief."**

6      BHU claims the City is threatening to evict to individuals it claims the parties agree are

7  subject to the "Limited Injunctive Relief" under the June 10, 2025 preliminary injunction order.

8  However, the only evidence BHU offers in support of this claim is that Mr. Galloway offered

9  one person a motel room and warned another to secure his belongings. Dkt. No. 135-1 at 3, ¶ 10.

10 As a preliminary matter, Defendants object to this evidence as inadmissible hearsay. Ms. Prado

11 admits that she received information from others and she does not claim to have witnessed the

12 conversations described in her declaration. The Court should not consider her inadmissible

13 statements in support of the Ex-Parte Application. In any event, even if these conversations took

14 place in the way Mr. Prado describes, there is no allegation that the City took or even threatened

15 to take anyone's property or that any person was coerced to vacate the Harrison Corridor.

16     BHU also argues that Defendants will violate the preliminary injunction because the

17 Notice "evicts protected persons before the end of the interactive process." Dkt. No. 135 at 4.

18 However, since none of the six people living in the Eighth Street Block have ADA

19 accommodation claims, even under BHU's expansive interpretation of the injunction, no

20 interactive process was ever initiated as to these individuals and so the injunction simply does

21 not apply to them. Accordingly, BHU's claims that the City has "unilaterally" ended the

22 interactive process are inaccurate and irrelevant to the narrow question before the Court.[3]

23         **B.    The Ex-Parte Application Is an Untimely and Improper Attempt to**

24 

---

25 Codornices Creek. Although the City has designated this entire area a no lodging zone and has
26 put up signs to this effect, the City has not enforced the no lodging prohibition due to the Court's
   June 10, 2025 order, ***and the City is not now attempting to do so***.

27 [3] Defendants request that the Court set a deadline within the next week for the parties to submit a
28 joint status update as to the interactive process. Due to the mere hours Defendants were afforded
   to oppose the Ex-Parte Applicaiton, Defendants cannot meaningfully address the significant

**Relitigate the Preliminary Injunction.**

Far from presenting a narrow question to the Court based on the limited action described in the Notice, BHU actually seeks to revisit issues that were decided on June 10, 2025. *See* Dkt. No. 135 at 5 ("The City's abatement must be halted until the dispute over who is protected by the Court's Order of June 10, 2025 is resolved and, where it is actually and accurately determined that person is not protected …."). BHU's attempt to relitigate and broaden the scope of the Court's ruling should be rejected for multiple reasons.

First, the Ex-Parte Application was filed in violation of the Northern District's Civil Local Rules and this Court's prior orders.

> Unless otherwise ordered by the assigned Judge, a party may file an ex parte motion, that is, a motion filed without notice to opposing party, only if a statute, Federal Rule, local rule, or Standing Order authorizes ex parte filing. The motion must include a citation to the statute, rule, or order which permits the use of an ex parte motion to obtain the relief sought.

Civil L.R. 7-10. The Court never granted BHU leave to file an ex parte motion, and BHU fails to cite any statute, Federal Rule, local rule, or Standing Order authorizing it to do so otherwise. On the contrary, the Court specifically ordered, "Should BHU seek reconsideration of this Court's ruling, BHU must file a motion for reconsideration pursuant to the Local Rules. *See* Civil Local Rule 7-9." Dkt. No. 104 at 3. Civil Local Rule 7-9 expressly requires *leave of court* prior to the filing of any such motion. Civil L.R. 7-9(a). BHU's failure to follow applicable rules is a recurring theme that this Court previously warned BHU about. *See* Dkt. No. 69 at 2. ("BHU is forewarned that any future request for expedited or preliminary relief must comply with Federal Rule of Civil Procedure 65 and Civil Local Rules 6[4] and that ex parte applications that do not satisfy Rule 65(b)'s requirements will be denied."). The Court would be well within the bounds of reason and fairness to summarily deny the instant Ex-Parte Application accordingly.

Second, BHU offers no explanation why it is now raising issues with the Court about the

_____

concerning inaccuracies in BHU's allegations regarding the interactive process. These issues are also irrelevant to the narrow question before the Court as to the propriety of the September 8, 2025 Notice, and the Court should not rule on them until Defendants have been given a meaningful opportunity to respond to BHU's claims.

[4] BHU did not file a motion to change time, either. Civil L.R. 6-3.

scope of the preliminary injunction that it has asserted **months ago** to the City. A mere three days after the Court issued the June 10, 2025 order, counsel for BHU provided Defendants with a draft joint motion for clarification regarding the scope of the order. Declaration of Laura Iris Mattes, filed concurrently herewith ("Mattes Dec."), ¶ 3. BHU's argument was then, as it is now, that the June 10, 2025 order applies to BHU members including those who are no longer residing in the Harrison Corridor. *Id.* Defendants provided their portion of the joint motion on June 16, 2025, but Mr. Prince never filed the joint motion or reopened the issue with Defendants. *Id.*, ¶¶ 4, 5. Ms. Prado also admits that she provided BHU's list of 19 individuals to the City on June 20, 2025 and that the City responded by agreeing to eight. Dkt. No. 135-1 at 3, ¶¶ 14-15. Ms. Prado further claims that Defendants "unilaterally" canceled in-person interactive process meetings on July 23, 2025. *Id.* at 4, ¶ 19.

Finally, BHU's interpretation of the Court's June 10 order does not makes sense under the ADA. By definition, individuals are only entitled to an accommodation under the ADA if they are "excluded from participation in or be denied the benefits of the *services, programs, or activities of a public entity*, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). Here, the planned closure action applies only to the one block area "the east side of 8th St between Harrison and Codornices Creek." Galloway Dec., Ex. A. Other unhoused residents within the Harrison Corridor (let alone those outside the Harrison Corridor) are not presently subject to a City service, program or activity that would necessitate an accommodation, and so there is no basis to extend the injunction to them.

BHU now brings these issues to the Court as if they are brand new but that is patently false. BHU offers no excuse for its failure to bring these issues to the Court's attention when it was fully aware of the 60-day deadline the Court imposed for the interactive process. The Court has already extended the timeline of the preliminary injunction beyond the original 60 days without affording Defendants an opportunity to be heard or file a status update as had been initially ordered. Accordingly, the Court should not unduly expand the scope of the injunction

1    on a rushed schedule.[5]

2    ### C.    A New Injunction Would Cause Severe Public Harm.

3    Absent from BHU's Ex-Parte Application is any concern for the public harm that will

4    result from an order halting the closure action. Mr. Galloway, who regularly visits the Harrison

5    Corridor, and specifically including the Eight Street Block, characterizes the current conditions

6    as "shocking." Galloway Dec., ¶ 4. Despite ongoing cleanup efforts:

7    
8    > the area is once again littered with trash, drug paraphernalia, and vermin. One is
       forced to walk down the middle of the street because the sidewalks are crowded
       with debris. The residents, patrons, and employees in this area are essentially
9    > imprisoned by the encampment as they are forced to stay inside because they are
       surrounded by unsanitary and dangerous conditions.

10    *Id.*

11    If anything, the situation has gotten worse. "The encampments in the Harrison Corridor

12    have proliferated since the court order halting the City's cleanup of the area in early June 2025."

13    Declaration of Tom Parrish, filed concurrently herewith ("Parrish Dec."), ¶ 6. Despite the

14    increasingly dire conditions throughout the Harrison Corridor, the Notice targets a specific one

15    block location because community members *in that location* are facing imminent harm if that

16    specific location is not addressed.

17    Berkeley Repertory Theater ("Berkeley Rep") owns the City block bounded by Eighth

18    Street and Ninth Street along Harrison Street in Berkeley.[6] *Id.*, ¶ 2. Over the past three years,

19    Berkeley Rep and its employees have endured significant adverse impacts due to the presence of

20    homeless encampments, including harassment from encampment residents, vandalism, rat

21    infestations, human waste and garbage being thrown or dumped onto Berkey Rep's property,

22    and even gunfire directed at their building. *Id.*, ¶¶ 4, 6. The encampments completely block the

23    sidewalk, forcing people to walk in the middle of the street to enter Berkeley Rep's building. *Id.*

24    

25    [5] Ms. Prado's claims about the removal of a dumpster during the June 4, 2025 Harrison Corridor
     closure operation in her Supplemental Declaration, Dkt. No. 136, are similarly far beyond the
26    scope of issues raised in the Ex-Parte Application. These allegations have nothing to do with any
     of the arguments in the Ex-Parte Application or the terms of the June 10, 2025 preliminary
27    injunction, and should be ignored by the Court as irrelevant.
28    [6] The street numbers in this section of Berkeley increase from west to east, meaning that the
     block bounded by Eighth Street and Ninth Street includes the east side of Eighth Street.

1   Berkeley Rep also suffered property damage after a fire caused by the encampment on Eighth

2   Street lit a tree on fire adjacent to their building on August 21, 2024. *Id.*, ¶ 5. Berkeley Rep is

3   threatened by nearby RV fires as well. *Id.* These conditions not only harm Berkeley Rep and its

4   employees directly, they also threaten Berkeley Rep's business. Berkeley Rep's insurance

5   underwriter is expected to visit the location in the next few weeks. *Id.*, ¶ 7. If these conditions

6   cause Berkeley Rep to lose coverage, it would be devastating to this non-profit organization that

7   has been part of the Berkeley community for nearly 60 years. *Id.*

8   **III.    CONCLUSION**

9          The foregoing demonstrates that the September 8, 2025 Notice of Encampment Closure

10  was issued in full compliance with the June 10, 2025 preliminary injunction order and that no

11  cause exists to prevent the City from conducting this properly noticed and lawful action to

12  prevent further public harm due to the encampment conditions on the east side of Eighth Street

13  between Harrison and Codornices Creek. The untimely and improperly noticed Ex-Parte

14  Application should be denied in its entirety.

15

16      Dated: September 11, 2025                    Respectfully submitted,

17                                                   BERKELEY CITY ATTORNEY'S OFFICE

18

19                                                   By: _____

20                                                        Farimah F. Brown
                                                         Marc Shapp

21

22                                                   Attorneys for Defendant City of Berkeley

23

24

25

26

27

28