**Brigitte Nicoletti (CA BAR NO. 336719)**
bnicoletti@ebclc.org
EAST BAY COMMUNITY LAW CENTER
2001 Center Street, Fourth Floor
Berkeley, CA 94704
Tel:   (510) 548-4040

**Emily Roznowski** *(Pro Hac Vice)*
eroznowski@dralegal.org
DISABILITY RIGHTS ADVOCATES
300 S. Wacker Drive, Floor 32
Chicago, Illinois 60606
Tel:   (332) 217-2328

**Thomas Zito (CA BAR NO. 304629)**
tzito@dralegal.org
**Michael Nunez (CA BAR NO. 280535)**
mnunez@dralegal.org
**Sean Betouliere (CA BAR NO. 308645)**
sbetouliere@dralegal.org
**Jameelah Najieb (CA BAR NO. 349644)**
jnajieb@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, California 94704-1204
Tel:   (510) 665-8644

Attorneys for *Amici Curiae*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BERKELEY HOMELESS UNION and FRANK MOORE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BERKELEY, THOMAS GREGORY, PAUL BUDDENHAGEN, PETER RADU, OKEYA VANCE-DOZIER, RASHI KESARWANI, and DOES 1-10,<br><br>Defendants. | Case No. 3:25-cv-01414-EMC<br><br>**[Proposed] Brief of Plaintiffs and the Putative Class in *Prado v. City of Berkeley*, No. 3:23-cv-4537-EMC (N.D. Cal.) as *Amici Curiae* in support of Plaintiff's Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment and in support of Neither Party with respect to City's Motion to Dissolve the Injunction**<br><br>Date:   March 20, 2026<br>Time:   10:00 a.m.<br>Crtrm.:   5 - 17th Floor<br><br>Judge:   Edward M. Chen |

Case No. 3:25-cv-01414-EMC

[Proposed] Brief of Plaintiffs and the Putative Class in *Prado v. City of Berkeley* as *Amicus Curiae* in support of Plaintiffs

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................1

I.  BECAUSE THE CITY HAS APPEALED THE COURT'S INJUNCTION, THE COURT LACKS JURISDICTION TO DISSOLVE ITS INJUNCTION. ....................................................1

II. THE RELEVANT PROGRAM UNDER THE ADA IS THE CITY'S HOMELESS RESPONSE PROGRAM, WHICH ENCOMPASSES A WIDE RANGE OF CITY SERVICES FOR UNHOUSED RESIDENTS. ...............................................................................3

III. THE CONSTITUTIONALITY OF THE CITY'S PROPERTY SEIZURE AND DESTRUCTION IS A FACT ISSUE FOR TRIAL. ..................................................................7

IV. THE COURT SHOULD DENY THE CITY'S MOTION FOR SUMMARY JUDGMENT ON THE STATE CREATED DANGER CLAIM ......................................................9

V.  ANY DECISION SHOULD BE LIMITED TO FACTS PRESENTED ........................................10

CONCLUSION .......................................................................................................................10

i    Case No. 3:25-cv-01414-EMC

[Proposed] Brief of Plaintiffs and Putative Class in *Prado v. City of Berkeley* as *Amici Curiae* in support of Plaintiffs

# INTRODUCTION

*Amici Curiae* are the Plaintiffs and the Putative Class in the related case of *Prado v. Berkeley*, No. 23-cv-04537-EMC (N.D. Cal.).[1] As some BHU members may also class members, but not all class members are BHU members, *amici* file this brief to provide the Court with additional briefing on legal issues that neither party adequately briefed, provide a factual and legal framework for the relevant program definition under the ADA, and offer *amici*'s perspective on factual issues regarding BHU's Fourth and Fourteenth Amendment claims that preclude summary judgement on those claims.

# ARGUMENT

## I. BECAUSE THE CITY HAS APPEALED THE COURT'S INJUNCTION, THE COURT LACKS JURISDICTION TO DISSOLVE ITS INJUNCTION.

The Court should deny the City's Motion to Dissolve the Injunction (ECF No. 207) entirely, and deny the City's Motion for Summary Judgment (ECF No. 219) to the extent that it requests that the Court dissolve the injunction protecting the eight BHU members, because this Court currently lacks jurisdiction to do so. On June 10, 2025, this Court entered an injunction barring the City from sweeping or removing eight members of BHU. ECF No. 104. The City did not timely appeal that order. *See* Fed. R. App. P. 4(a)(1)(A)(thirty days to appeal order); 28 U.S.C. §1292(a)(1)(preliminary injunction appealable interlocutory order). Instead the City appealed different orders of this Court.

The City has filed two separate notices of appeal, opening two distinct appeals of this injunction with the Ninth Circuit. *See* ECF No. 172 (Notice of City's first appeal); ECF No. 233 (Notice of City's second appeal). The Ninth Circuit has accepted those appeals but has questioned its own jurisdiction to hear those appeals because the City did not appeal the initial injunction, but rather subsequent orders of this Court. *See* ECF No. 172 (appealing the Court's order extending time for BHU to file a status report (ECF No. 162)); ECF No. 233 (appealing the January 13, 2026 order setting summary judgment briefing schedule (ECF No. 202)); *BHU v. City of Berkeley et al.*, No. 25-7341, (9th Cir.), Dkt. Nos. 6.1 (Order

---

[1] The defined Class is defined as "All unhoused persons who have a 'disability' as defined under the Americans with Disabilities Act, 42 U.S.C. § 12101, who reside in a vehicle or other shelter in public spaces in Berkeley, California, or who reside in temporary or transitional shelters in Berkeley, California." *See Prado v. Berkeley*, No. 23-cv-04537-EMC (N.D. Cal.) ("*Prado* Case"), ECF No. 157 (Mot. Class Cert.) at 1.

to Show Cause re. jurisdiction of appeal), 15 (Ordering parties to address the court's jurisdiction over appeal in merits briefing); *BHU v. City of Berkeley et al.*, No. 26-842, (9th Cir.), Dkt. No. 3 (Ordering parties to address court's jurisdiction over appeal in merits briefing). In its opening brief, the City asserted that the Ninth Circuit Court of Appeals has jurisdiction over the injunction at issue in this case. *BHU v. City of Berkeley et al.*, No. 25-7341 (9th Cir.), Dkt. No. 18-1 at 48-53 (arguing that the Ninth Circuit has jurisdiction over the appeal of this Court's injunction).[2]

These two separate appeals have stripped this Court of the jurisdiction to dissolve or otherwise adjudicate the end of its injunction. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 790 (9th Cir. 2018). With respect to a preliminary injunction, "[a] district court lacks jurisdiction to modify an injunction once it has been appealed except to maintain the status quo among the parties." *Prudential Real Estate Affiliates, Inc. v. PRP Realty*, Inc., 204 F.3d 867, 880 (9th Cir. 2000); *see also E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1105 n. 3 (N.D. Cal. 2018), *aff'd*, 950 F.3d 1242 (9th Cir. 2020), and *aff'd sub nom. E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021) (noting that once an injunction is appealed the District Court lacks jurisdiction to dissolve that injunction, but can instead enter a second injunction). The status quo between the parties is that the City is prohibited from removing those BHU members protected by the injunction from their encampments because of their pending reasonable accommodation requests. The parties dispute whether the interactive process has been completed, but that is one of the merits issues in this case, and a determining factor over the continuation or end of the injunction. Until the Ninth Circuit has ruled on its own jurisdiction in the pending appeals, this Court lacks the jurisdiction to dissolve this injunction or otherwise do anything other than maintain the status quo. *Id.*

*Amici* do not contend or concede that either of the City's appeals are properly before the Ninth Circuit, but *amici*'s position on that issue is irrelevant. "While a preliminary injunction is pending on appeal, a district court lacks jurisdiction to modify the injunction in such manner as to finally adjudicate

---

[2] *Amici* assume that this Court has access to the dockets of the Ninth Circuit appeals filed in this matter.

substantial rights directly involved in the appeal." *A & M Records Inc. v. Napster, Inc.*, 284 F.3d 1091, 1099 (9th Cir. 2002) (internal citation omitted). Because the injunction is currently before the Ninth Circuit on two separate appeals, unless and until the Ninth Circuit dismisses the City's multiple appeals, this Court lacks jurisdiction to dissolve the injunction.[3]

## II. THE RELEVANT PROGRAM UNDER THE ADA IS THE CITY'S HOMELESS RESPONSE PROGRAM, WHICH ENCOMPASSES A WIDE RANGE OF CITY SERVICES FOR UNHOUSED RESIDENTS.

By claiming that Plaintiffs' reasonable accommodation requests would fundamentally alter the City's "encampment management program," ECF No. 219 (Defs.' Mot. Summ. J.) at 11, the City artificially narrows the relevant program. The nature of the City's programs, services, or benefits is a question to be determined by this Court. *See Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1084 (9th Cir. 2004) (determining that the "nature of the service provided by" a theater was "screening films"); *Martin v. PGA Tour, Inc.*, 204 F.3d 994, 1000 (9th Cir. 2000), *aff'd*, 532 U.S. 661, 683 n.39 (2001) (determining that golf tournament provided a "competition in shot-making"); *see also Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503-05 (4th Cir. 2016) (rejecting defendant's overly-broad definition, and holding that the program at issue was "absentee voting," not just the ability to vote).

As shown by the City's own statements in the record and on City websites, the relevant program that this Court should consider is the City's "homeless response program," which involves a wide range of services provided to unhoused residents, as discussed in more detail below. When considered as reasonable accommodations to the homeless response program, which includes shelter and a multitude of other services and benefits, Plaintiffs' requests are not a fundamental alteration, and the City failed to provide sufficient evidence to prove that such requests would constitute an undue burden. The City's Motion for Summary Judgment on Plaintiffs' ADA claims should therefore be denied.

### A. The City's Homeless Response Program is the Program at Issue

Programs under Title II of the ADA include "anything a City does." *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002). The appropriate program to consider in this case is

---

[3] The City could remedy this procedural problem and return jurisdiction over the injunction to this Court by dismissing its appeals.

the City's homeless response program, as managed by the interdepartmental Homeless Response Team. The homeless response program includes everything that the City does in response to homelessness, including encampment management, sidewalk enforcement, provision of portable restrooms and dumpster services, seizure and storage of property, provision of temporary shelter, and parking enforcement, among others. In the words of former City Manager Dee Williams-Ridley, the Homeless Response Team "strives to assist people who are homeless primarily through guiding them to housing (interim or permanent) and supportive services, while also ensuring the conditions of their encampments are as safe and clean as possible." ECF No. 15-1 at 28.

The City's filings in this case confirm the broad nature of the homeless response program. In a December 2024 memo describing history of engagement and service provision efforts at encampments including Harrison, Assistant to the City Manager, Peter Radu, identified 738 shelter offers, 18 encampment operations such as deep cleanings and closures, and the City's lease of the Campus Motel. ECF No. 15-1 at 1. Similarly, in an August 2023 memo describing history of service efforts specifically at the Harrison encampment, Mr. Radu describes a wide range of services provided at the Harrison encampment, including dumpsters with service multiple times per week, two port-a-potties with regular service, free mobile shower and laundry service weekly, the Safe RV Parking program, closures of the encampment, deep cleanings of the encampment, targeted treatment of rodent burrows, and over 100 offers of shelter to residents. ECF No. 15-1 at 3-4.

City reports similarly reflect the wide range of services offered by the homeless response program. A July 2025 Audit Report of the Homeless Response Team lists the following encampment interventions provided by the program: shelter referrals; health and hygiene (provide dumpsters and voluntary trash removal, toilets and wash stations, mobile showers and laundry); public noticing (provide Berkeley Municipal Code notices, encourage individuals to voluntarily relocate or comply with rules); deep cleaning (remove excess debris, trash and/or hazardous materials, provide pest control treatments, perform street sweeping, pressure wash sidewalks, provide belongings storage); and closure (remove debris, tents, and/or other items, require relocation of individuals and their possessions, provide

belongings storage).[4] Finally, the original encampment closure notice in this case also emphasizes the broad scope of the homeless response program. ECF No. 13-1 (referring to health nuisance conditions, sidewalk nuisance conditions and violation of Administrative Regulation 10.2, vehicles, personal property storage and disposal; fact sheet informing residents about interim housing and shelter).

The City cites *Where Do We Go Berkley v. California Department of Transportation* (hereinafter "Caltrans") as support for its argument that the relevant program does not extend beyond encampment closures, but those cases are very different factually. Caltrans is a different public entity, focused specifically on transportation, with programs that are more limited than the City of Berkeley's programs. 32 F.4th 852 (9th Cir. 2022). Whereas Caltrans "collaborate[d] with local partners" to connect encampment residents with services and housing solutions, "Caltrans itself [did] not provide those services." *Id.* at 861. By contrast, the City's filings and public statements make plain that, through it's homeless response program, the City directly offers a variety of different services to unhoused residents, from encampment clean-ups, to shelter placement, to provision of portable restrooms and dumpsters.

**B.    The City must make individualized determinations for each accommodation and prove that each request would unduly burden or fundamentally alter its program**

When considered as requests for accommodations to the homeless response program, Plaintiffs' reasonable accommodation requests are not *ipso facto* fundamental alterations. Indeed, many of Plaintiffs' requests are services that the City has offered to encampment residents in the past, including port-a-potties and trash pick-ups. *See* Defs.' Mot. Summ. J. at 3 (describing "wide range of hazard-reducing services" provided to Harrison corridor). The City must first assess the reasonableness of any of these requests before rejecting them. *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 77–78 (2d Cir. 2016) (citing cases and holding "Title II of the ADA, therefore, requires that once a disabled [person] requests a non-frivolous accommodation, the accommodation should not be denied without an individualized inquiry into its reasonableness"). The City does not appear to have done that here and has

---

[4] Berkeley City Auditor, *Homeless Response Team: Opportunities Exist to Strengthen Procedures and Better Track Outcomes* (July 16, 2025), 13 https://berkeleyca.gov/sites/default/files/documents/Homeless_Response_Team_-_Opportunities_Exist_to_Strengthen_Procedures_and_Better_Track_Outcomes.pdf. The Court may take judicial notice of public records pursuant to Federal Rule of Evidence 201(b), including "records and reports of administrative bodies." *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003).

instead jumped to the conclusion that all of the requests would fundamentally alter its program.

To begin, the requirement that a reasonable accommodation inquiry be **individualized** means that the City cannot—in considering a request—deny it based on the hypothetical impact or burden of granting a similar request for everyone. *See Wright,* 831 F.3d at 77–78 (discussing cases). Moreover, in considering a fundamental alteration defense, the Supreme Court has expressly rejected the contention that "all the substantive rules . . . are sacrosanct and cannot be modified under any circumstances." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 689 (2001). To the contrary, courts must "carefully weigh the purpose, as well as the letter, of [a given] rule before determining that no accommodation would be tolerable." *Id.* at 691

Importantly, the City bears the burden of pleading and proving that any of these requests would fundamentally alter the City's homeless response program. 28 C.F.R. § 35.130(b)(7)(i) (requiring public entities to make "reasonable modifications in policies, practices, or procedures" when "necessary to avoid discrimination on the basis of disability, unless **the public entity can demonstrate** that the modifications would fundamentally alter the nature of the service, program, or activity" in question) (emphasis added); *see also Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 845 (9th Cir. 2004).

The City claims that many of Plaintiffs' accommodation requests would fundamentally alter City programs because the accommodations would violate City code or enforcement policies, *see, e.g.*, Defs.' Mot. Summ. J. at 16-17 (sidewalk enforcement), 17-18 (parking enforcement), but accommodations to municipal code enforcement can be required by the ADA. *McGary v. City of Portland*, 386 F.3d 1259, 1268-69 (9th Cir. 2004) (holding that plaintiff adequately pleaded disability discrimination where City denied extension of time to comply with City nuisance ordinance).

Additionally, state law and municipal law, as related to sidewalk enforcement or parking (including 72 hour parking or motor vehicle registration) cannot bar an otherwise reasonable accommodation request under the Supremacy Clause. Multiple courts, including the Ninth Circuit, have held that the ADA's reasonable modification requirement can preempt conflicting state and local laws. *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996) (holding that reasonable modification requirement of the ADA can require modifying conflicting state administrative regulation); *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 162 (2d Cir. 2013) (finding "nothing in the statutory phrase

'reasonable modification' to suggest that Congress intended to exclude modifications that require violation or waiver of mandatory state statutes in some circumstances"); *Hindel v. Husted*, 875 F.3d 344, 349 (6th Cir. 2017) (holding "a state procedural requirement may not excuse a substantive ADA violation," and "[r]equiring public entities to make changes to rules, policies, practices, or services is exactly what the ADA does") (internal quotation marks omitted); *Lamone*, 813 F.3d at 508-09 (rejecting "that the mere fact of a state statutory requirement insulates public entities from making otherwise reasonable modifications to prevent disability discrimination").

Courts have reached similar results when considering situations in which state and local laws conflict with other aspects of the ADA, or with analogous federal antidiscrimination statutes. *See Hubbard v. SoBreck, LLC*, 554 F.3d 742, 747 (9th Cir. 2009) (holding that state law permitting award of attorneys' fees to prevailing defendants conflicted with the ADA and was thus preempted); *Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1232-33 (10th Cir. 2009) (rejecting argument that modifying a state driving statute would be a "*per se* not reasonable" modification under the Rehabilitation Act, and holding that "[r]eliance on state statutes to excuse non-compliance with federal laws is simply unacceptable under the Supremacy Clause"). The City cannot hide behind its ordinances or state law and claim that modifying its enforcement of those laws on a case by case basis would fundamentally alter its homeless response program. At the very least, whether Plaintiffs' requests are a fundamental alteration of the City's homeless response program is a fact issue for trial.

The City also fails to present sufficient evidence to prove that Plaintiffs' accommodation requests would constitute an undue burden. Other than vague statements in declarations about City budget shortfalls, *see, e.g.*, Decl. Peter Radu, ECF No. 219-4, ¶ 11, the City has not provided any evidence that it has "consider[ed] all resources available for use in the funding and operation" of the program as required by federal regulations, *see* 28 C.F.R. § 35.164. Because unsupported statements in declarations are not sufficient to prove undue burden, the Court should deny the City's Motion for Summary Judgment.

### III. THE CONSTITUTIONALITY OF THE CITY'S PROPERTY SEIZURE AND DESTRUCTION IS A FACT ISSUE FOR TRIAL.

The Court should deny the City's Motion for Summary Judgment on Plaintiffs' Fourth

1  Amendment claims because there are disputed issues of material fact. As a preliminary matter, the Court
2  should disregard the City's arguments regarding due process and notice under the Fourteenth
3  Amendment, *see* Defs.' Mot. at 23-24, because Plaintiffs do not allege that the City violated the
4  Fourteenth Amendment in its seizure and destruction of property, *see* Compl. ¶¶ 61-65 (Third Cause of
5  Action alleging Fourth Amendment violations), ¶¶ 66-69 (Fourth Cause of Action alleging parallel state
6  constitutional claims). Regarding the Fourth Amendment claims, there are factual disputes about the
7  constitutionality of City's policies and practices, and the Court should deny summary judgment.

8        The City's Motion ignores disputed factual issues in the record regarding property claims. In
9  support of its Motion on Plaintiffs' property claims, the City cites to City of Berkeley Administrative
10 Regulation 10.1 ("A.R. 10.1") regarding temporary storage of unattended property and the Declaration
11 of Assistant to the City Manager Peter Radu, which states that the City follows that regulation and stores
12 property that is not wet or moldy. Defs.' Mot. at 24; Radu Decl. ¶ 16 & Ex. A. The City purports that
13 A.R. 10.1 is "constitutional on its face" but cites no law or prior legal determination to support this
14 contention, nor does it argue why or whether it complies with the Fourth Amendment.

15       Any seizure of property without a warrant is "*per se* unreasonable under the Fourth
16 Amendment." *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017). "The Fourth Amendment protects
17 individuals from unreasonable government seizures of their property, even when that property is stored
18 in public areas." *Garcia v. City of Los Angeles*, 11 F.4th 1113, 1119 (9th Cir. 2021). There are few
19 exceptions, but A.R. 10.1 concerns the exception to the Fourth Amendment where the City "holds the
20 property for its return and notifies the property owner." *Prado v. City of Berkeley*, No. 23-CV-04537-
21 EMC, 2024 WL 3697037, at *12 (N.D. Cal., Aug. 6, 2024) (*citing Lavan v. City of Los Angeles*, 693
22 F.3d 1022, 1030 (9th Cir. 2012). However, A.R. 10.1 does not purport to hold all property, only certain
23 property, and only for a certain amount of time with no guarantee that the property owner is properly
24 notified. Whether, and to what extent, the City actually stores property pursuant to A.R. 10.1 is a
25 disputed factual question that cannot be resolved at summary judgment.

26       More importantly, under A.R. 10.1, the City does not store and in fact destroys "loose papers;"
27 bike parts; and tents, bedding, or clothes that are merely, in the subjective determination of City
28 employees, "soiled" or "wet". There is no Fourth Amendment exception allowing warrantless seizure of

"loose papers," "bike parts," or property that is merely "soiled" or "wet" – particularly when nearly everything an unhoused person owns may appear "soiled" in the subjective determination of City employees, and where property that is necessarily left out in the elements in inclement weather will inevitably get wet. *See, e.g. Garcia*, 11 F.4th at 1117 (holding no exception under Fourth Amendment for "bulky items" and holding that L.A. municipal code "on its face" violated the Fourth Amendment); *Lavan*, 693 F.3d at 1030 (destruction of property renders seizure unreasonable).

Setting aside the City's argument that A.R. 10.1 is constitutional on its face, which *amici* dispute in their litigation, there is a factual dispute as to whether the City follows A.R. 10.1. For example, in a February 19, 2026 Notice of Encampment Closure, the City states that it will not "sort through or store" any items from the Harrison encampment, and that any items left in the encampment will be summarily destroyed. *See* ECF No. 248 at 7; ECF No. 249-2 at 3 (stating that property "will not be stored by the City and will be discarded."). The City apparently has no plans to conduct an individualized assessment of any property to assess whether it is contaminated with leptospirosis bacteria; it is applying a blanket policy to destroy any remaining property. *Id.* Given the discrepancies between A.R. 10.1 and the City's latest notice, there is a genuine dispute of material fact as to whether the City's property seizure and destruction policies and practices comply with the Fourth Amendment and California Constitution, and the Court should deny summary judgment on these claims.

## IV.     THE COURT SHOULD DENY THE CITY'S MOTION FOR SUMMARY JUDGMENT ON THE STATE CREATED DANGER CLAIM

Similarly, the Court should deny the City's motion for summary judgment on BHU's state created danger claim because there remain factual issues for trial. The City argues that BHU cannot make out any of the prongs of a state created danger claim, i.e. "that (1) a state actor's affirmative actions created or exposed him to an actual, particularized danger [that he] would not otherwise have faced, (2) that the injury he suffered was foreseeable, and (3) that the state actor was deliberately indifferent to the known danger." Defs.' Mot. Summ. J. at 26 (quoting *Sinclair v. City of Seattle*, 61 F.4th 674, 680 (9th Cir. 2023)). Factual issues preclude summary judgment on each of these prongs.

As this Court held in the related case "[w]hen Plaintiffs' shelter and personal belongings are destroyed, and they have no safe shelter alternative nor means to protect themselves from the elements,

the state has made plaintiffs' conditions worse." *Prado*, 2024 WL 3697037, at 31. The City posted notice that it intends to destroy people's necessary shelter and personal belongings in an impending sweep. *See* ECF No. 248 at 7; ECF No. 249-2 at 3. It also ordered people to scatter throughout the City without that shelter or their belongings if they cannot remove them in time. *Id.* The City's notice alone raises serious material facts precluding summary judgment on the state created danger claim.

The City's actions definitively places community members in a worse condition and particularized danger that those people would not have faced absent those actions. The City's proposed actions are intentional, and the scattering of individuals throughout the City without shelter creates foreseeable harm. Therefore, at the very least, this latest notice in addition to the City's history in prior sweeps as described in prior testimony in this case raise material factual questions as to whether the City's sweep and destruction of BHU members' shelter put them in a state created danger. *See e.g.* ECF No. 63-6, ¶¶ 18-30 (describing City's history of destroying survival gear, and failure to store property over a four year period); ECF No. 97, ¶¶ 7, 9 (describing destruction of survival gear).

### V.    ANY DECISION SHOULD BE LIMITED TO FACTS PRESENTED

Finally, while *amici* request that the Court deny the City's motion for summary judgment in its entirety, if the Court is inclined to rule for the City on any discrete issues, *amici* request that the Court, to the extent that it makes any determinations in favor of the City in this matter, limit those determinations to the evidence presented or not in this case, or in these instances, and not to City policies and practices as a whole that *amici* challenge in the *Prado* Case. The Court denied *amici*'s motion to consolidate the cases and *amici* have not been directly involved in the BHU litigation on behalf of *Prado* Plaintiffs or the putative class. Thus to the extent that any determinations in this matter could foreclose the class's litigation of those matters in *Prado*—without an opportunity to fully litigate the facts in that case—the *Prado* plaintiffs and the class would be unduly prejudiced.

### CONCLUSION

For the foregoing reasons, *Amici Curiae* respectfully urges this Court to deny the City's Motion to Dissolve the Preliminary Injunction and deny the City's Motion for Summary Judgment.

DATED: March 4, 2026

Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

By: _____
Thomas Zito
Attorneys for *Amici Curiae*