**Anthony D. Prince** (SBN # 202892)
General Counsel, California Homeless Union/Statewide Organizing Council
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
Tel: 510-301-1472

UNITED STATES COURT

DISTRICT OF NORTHERN CALIFORNIA

BERKELEY HOMELESS UNION

    Plaintiff,

vs.

CITY OF BERKELEY, et al

    Defendant

**PLAINTIFF BERKELEY HOMELESS UNION'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER PREVENTING THE CITY FROM PREEMPTIVELY BARRING 8TH AND HARRISON RESIDENTS FROM RELOCATING TO AND TEMPORARILY REMAINING IN AREAS WHERE THEY ALREADY HAVE A LEGAL RIGHT TO BE and FOR AN ORDER RESTRAINING THE CITY FROM INTERFERING WITH THE INTERACTIVE PROCESS FOR DISABILITY ACCOMMODATIONS. DECLARATION OF ANTHONY D. PRINCE; DECLARATION OF YESICA PRADO**

### INTRODUCTION

There is no need to sanction a location in which a person already has right to reside. BHU has never asked and is not now asking the Court to order the City "to affirmatively designate a sanctioned encampment." That is a fake straw man and a red herring which the City has invented

1

by mischaracterizing and falsely perverting what the BHU has sought all along: protection against being swept from areas where the City initially admitted displaced 8th and Harrison residents homeless would have a right to go. (See Declaration of Anthony D. Prince)

### *Grants Pass* does not prohibit the Court from restraining the City of Berkeley from immediately sweeping displaced persons out of areas to which they relocate.

In its March 7, 2026 Order in *Prado v. City of Berkeley,* as it did in *BHU v. City of Berkeley*, this Court has ruled that element of irreparable harm necessary to obtain a TRO or preliminary injunction is present and that the balance of equities weigh in plaintiffs' favor. In Prado, the Court found that plaintiffs had not shown a likelihood of success on the merits in asserting relief in the form of and order requiring the City of Berkeley to "designate a sanctioned encampment site."

But what BHU has sought from the beginning and now by way of this motion is for the City to identify those areas that the homeless *already have a right to be* because there is not a city-wide camping ban. All that Union has sought from the beginning, especially now since the onset of the leptospirosis situation and the City Health Officer's instructions, is to be able to have persons displaced from 8th and Harrison be allowed to go to such areas and *not be immediately subject to removal.*

What BHU is asking the Court to do now is to issue a *prohibitive* injunction restraining the City from immediately removing persons from areas where camping is already permitted absent a specific prohibition, such as in public parks. Asking the City to identify specific areas is in no way legally equivalent to asking the Court to order the City to "designate a sanctioned encampment."

2

In the post *Grants Pass* case of *Alfred v. City of Vallejo*, 2:24-cv-03317-DC-SCR, the Court found that because there was no place for Evelyn Alfred to go, that the City could not remove her from her current location. Here, although initially expressly declaring that the City has since June 10, talked out of both sides of its mouth: on the one hand insisting, as it during the June 10, 2025 hearing, that there *were* areas where people could go but now, on the other hand, saying that the City's various restrictions on land use are such that there is nowhere where homeless people can legally remain. See, Declaration of Peter Radu, DKT No. The situation here differs from *Alfred* in that here the City's representation that there is no camping ban is, in fact, a lie: the City is instituting one by fait accompli: fencing off areas, posting "No Lodging Area" signs in every location where homeless people have sought shelter and hardscaping other public areas with boulders to keep out those who have no other place to be and to sleep.

### *Grants Pass* did not disturb the prohibition against criminalizing based on their status; That is exactly what City of Berkeley is doing.

In the March 6, 2026 hearing and its Order granting in part and denying in part the Motion for Temporary Restraining Order filed by plaintiffs in the related case of *Prado v. City of Berkeley*, this Court referenced *Grants Pass* in ruling that it had no authority to order the City of Berkeley to "designate a sanctioned encampment site as a precondition for abatement [of the Harrison Corridor encampment.]" However that decision held only that the measures taken by the City of Grants Pass did not constitute cruel and unusual punishment and, therefore, did not violated the 8th Amendment. The Supreme Court left open other constitutional pathways to relief including the validity of the 14th Amendment as one of the remaining constitutional protections untouched by the *Grants Pass* decision.

3

*Grants Pass* found that the City of Grants Pass criminalization and prohibition of the possession and use of articles of survival such as blankets and sleeping bags did not violate the 8th Amendment because possession and use of these items was **conduct.**

*Grants Pass* left undisturbed the principal holding in *Robinson v. California* and its progeny, i.e, that people cannot be punished based on their **status.** What the City of Berkely is doing is precisely that. The City is punishing and exercising prior restraint against the BHU members for no other reason than their status as being homeless. The City gazes into its unconstitutional crystal ball and predicts for certain that any person displaced from 8th and Harrison will bring "the problems" that the City alleges have pervaded the encampment for years, that a homeless person so displaced is a traveling nuisance  person goes to an area they have a legal right to be, but is kept out or immediately removed because the City has already decided that the person is going to create a health and safety crisis.

> **The City is now rushing a truncated, overly narrow version of the interactive process and is denying - without proposing alternative acccommodations - every one of the most recent requests for accommodations.**

In the Order Granting in Part and Denying in Part Plaintiffs' Motion for Temporary Restraining Order in the related case of *Yesica Prado, et al. v. City of Berkeley, et al.* Case No. 23-cv-04537 this Court held, *inter alia*, that the City cannot remove approximately 15 encampment residents who have submitted applications requesting reasonable accommodations under Title II of the Americans With Disabilities Act (ADA) until the interactive process is complete.

However, the City and the City's ADA Coordinator Thomas Gregory have already violated this part of the Order by making a "final determination" denying nearly every one of the 15 requests for reasonable accommodation request filed. The law requires that a determination

4

that a request would constitute a fundamental alteration of the program be made by the head of the public entity or someone designated by the head of the public entity. Although the City has never produced any evidence that Mr. Gregory was ever officially designated by the City Manager for the purpose of determining whether or not a requested accommodation would constitute a fundamental alteration.

Repeatedly, BHU would request that the actual department heads responsible for different aspects of the City's Homeless Encampment Program be included in the interactive process. Not only has the City ignored this request, but Mr. Gregory has and continues to repeatedly tell BHU that he was and is powerless to do anything that involved any city agency or department in providing accommodations. In fact, Mr. Gregory's alleged helplessness is the opposite of City's official position description which expressly vests in the ADA Coordinator the authority to coordinate City agencies and departments in providing reasonable accommodations. (See, Exhibit A to Declaration of Anthony Prince).

Mr. Gregory's principal role has been to falsely portray the city's Program for Homeless Encampments as being limited only to the eviction of persons and their belongings from homeless encampments when in fact, the program enacted in October, 2024 expressly includes provision of housing, shelter and other direct assistance and placements by way of City-owned Shirek Apartments, Campus Motel and other benefits the denial of which constitute a violation of Title II. (See Exhibit B to Declaration of Anthony Prince).

For a solid year, it was Thomas Gregory who was making the "final decision" to deny accommodations. However, this all changed when for the first time since February, 2025, it was City Manager Paul Buddenhagen who suddenly signed and sent letters in which *he* and not Mr. Gregory announced the "final decision" to deny nearly every request. What happened? What

5

happened was that on January 13, 2026 this Court ordered cross motions for summary judgment on the issue of whether, pursuant to the Court's June 10, 2025 order, the interactive process had been completed "fairly" and in conformity with the requirements of the ADA. What happened was that in order to make a show of complying with the ADA the "head of the entity" City Manager Buddenhagen, as City Manager, would make the final determination that nearly every request would work a fundamental alteration and on that basis denied them.

But now, faced with at least 15 more requests for accommodations, the City wants to rush a narrowed, truncated interactive process and it is now again Mr. Gregory, who has made the "final decision" to deny every one of the requests of the fifteen persons who cannot be removed per this Court's March 7, 2026 Order until the interactive process is complete. (See, Declaration of Yesica Prado).

The denial of a request does not under ADA end the process. If that were the case, all an entity subject to Title II would have to do to escape the mandate of the ADA altogether is simply refuse every requested accommodation.

**The City of Berkeley is systematically instituting a camping ban by *fait accompli*, discriminatorily establishing new zones and using existing zoning to make it impossible for the homeless to camp anywhere without being immediately swept.**

The City concedes that in addition to the seven BHU residents already protected by this Court's order of June 10, 2025, another 15 residents of 8th and Harrison have submitted applications for reasonable disability accommodations. This is already a majority of the approximately 40 residents. In fact, as set forth in the declaration of BHU President Yesica Prado concurrently filed in support of this motion, there are even more residents on whose behalf BHU has either submitted or is now preparing requests for accommodations. Accordingly, the issue of

6

disability discrimination is inseparable from consideration of the closing of the encampment with no alternative area available.

In *Bay Area Addiction Research and Treatment, Inc. v. City of Antioch* the Ninth Circuit reversed the denial of a preliminary injunction ruling that the City of Antioch, California had discriminated against persons with disabilities when, reacting to the planned opening of an addiction treatment center, enacted an urgency ordinance prohibiting the operation of methadone clinics within 500 feet of residential areas, thereby precluding the use of the proposed site.

The Court rejected City of Antioch's contention that zoning is not a service, program, or activity, and therefore found that Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-65, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794, §12132 applied.

Said the Court:

> "Congress' stated purposes in enacting the ADA also support its application to zoning. Within the text of the ADA, Congress set forth its broad goal of "provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1) (1999).
>
> This sweeping language-most noticeably Congress's analogizing the plight of the disabled to that of "discrete and insular minorit[ies]" like racial minorities, see United States v. Carolene Prods. Co., 304 U.S. 144, 153 n. 4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938) (defining religious, national, and racial minorities as "discrete and insular minorities"),- strongly suggests that § 12132 should not be construed to allow the creation of spheres in which public entities may discriminate on the basis of an individual's disability.

Here, the City is effectively illegally Zoning the unhoused residents of Berkely out of the City based on nothing more than on the basis of their status, on nothing more than the application of a false and malicious stereotype based on nothing more than their status as being homeless residents of 8th and Harrison. The City sees plaintiffs by definition as a human plague.  This is an echo of the worst aspects of American history including racial prejudice. "We know what will

7

happen if we let *them* into this neighborhood." This was the racist justification for segregation, for discriminatory zoning, for restrictive covenants and mob violence.

**CONCLUSION**

Plaintiff BHU's motion hereby filed has satisfied the elements of entitlement to a TRO to protect its members set to be displaced from 8th and Harrison. As noted above, the Court has already found that the elements of irreparable harm and the balance of equities are in place. The City is effectively preventing the homeless from going to other areas by preemptively asserting that each such unhoused person is a travelling nuisance without more.

BHU seeks not an order for the city to designate sanctioned encampments but an order prohibiting the City from immediately removing persons who leave 8th and Harrison from whatever areas they re-congregate for their mutual aid and protection. The TRO would be in the public interest because rather than having dozens of persons walking exiled and scattered all over town with items potentially contaminated with leptospirosis bacteria, persons displaced from 8th and Harrison would be in a handful of areas where, as it has been for years at 8th and Harrison, medical care can continue to be efficiently provided, donors of necessities can effectively provide support and the mutual assistance provided by the community of unhoused themselves can effectively continue.

With regard to the ADA, BHU seeks an order, perhaps in the nature of a writ of mandate that the process set forth by law for the determination of reasonable accommodations be strictly observed, or, in the alternative, that the City be restrained from interfering or disregarding those requirements or prematurely ending the interactive process until the Court can, as with the seven persons currently protected by the June 10, 2025 limited injunction, determine whether the process has been *fairly* completed.

Dated: March 9, 2026    Respectfully Submitted,

/s/<u>Anthony D. Prince</u>

Attorney for Plaintiff