UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERKELEY HOMELESS UNION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF BERKELEY, et al., <br><br> Defendants. | Case No.  25-cv-01414-EMC <br><br> **ORDER DENYING MOTION TO DISSOLVE JUNE 2025 PRELIMINARY INJUNCTION AND GRANTING IN PART AND DENYING IN PART MARCH 11, 2026 MOTION FOR PRELIMINARY INJUNCTION** |

Docket Nos. 207, 264, 282, 284

This order concerns Defendants' motion to dissolve the Court's June 2025 preliminary injunction (the "First Preliminary Injunction"), dkt. 207, and BHU's March 10, 2026 motion for a temporary restraining order ("TRO") and preliminary injunction (BHU's "Second Motion for Preliminary Injunction").  Dkts. 264; 282.

The Court's First Preliminary Injunction protected seven Harrison Encampment residents with pre-existing ADA accommodation requests from the City's abatement operations prior to completion of the interactive process.  Dkts 90; 104.  BHU's Second Motion for Preliminary Injunction seeks to prohibit the City from moving Harrison Encampment residents after abatement and to prohibit the City from removing 16 disabled individuals with more recent ADA accommodation requests from the Harrison Encampment until the completion of the interactive process and extension of reasonable accommodations.  Dkt. 264.

The Court **DENIES** Defendants' motion to dissolve, dkt. 207, and **GRANTS IN PART AND DENIES IN PART** BHU's Second Motion for Preliminary Injunction.

I.      <u>**DEFENDANTS' MOTION TO DISSOLVE PRELIMINARY INJUNCTION**</u>

Defendant City of Berkeley filed a motion to dissolve the First Preliminary Injunction.

United States District Court
Northern District of California

Dkt. 207.  It raises four key arguments: (1) the condition precedent to dissolution was the completion of the Americans with Disabilities Act ("ADA") interactive process, and this condition was satisfied; (2) Berkeley Homeless Union ("BHU") failed to engage in the interactive process in good faith and therefore violated the terms of the preliminary injunction itself; (3) changed factual circumstances, particularly the leptospirosis outbreak and worsening public health conditions shift the *Winter v. Nat. Res. Def. Council* factors, 555 U.S. 7 (2008); and (4) the duration of the preliminary injunction exceeds the Court's authority under the ADA.

The motion to dissolve the existing preliminary injunction is denied for two reasons.  First, the City has filed two interlocutory appeals concerning the scope of the preliminary injunction and its duration.  Nos. 25-7341; 26-842.  Filing a notice of appeal generally divests the district court of "its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58–61 (1982).  Those appeals remain pending.  The proper vehicle for this Court to act to dissolve or modify the appeal preliminary injunction (and not deny or defer ruling on the motion) would be to render an indicative ruling under Federal Rule of Civil Procedure 62.1, which the City has not sought.

Second, by the ruling on the parties' cross-motions for summary judgment, the effect of the First Preliminary Injunction has effectively been rendered moot.  *See, e.g.*, *Burbank-Glendale-Pasadena Airport Auth. v. City of L.A.*, 979 F.2d 1338, 1340 n.1 (9th Cir. 1992) ("The validity of the preliminary injunction is mooted, however, by the subsequent granting of summary judgment."); *Franco-Gonzalez v. Holder*, 2013 WL 3674492, at *16 (C.D. Cal. Apr. 23, 2013) ("In light of the Court's order granting in part Plaintiffs' motion for partial summary judgment and granting permanent injunctive relief, the motion for a preliminary injunction is DENIED as moot."); *Museum of Handcar Tech. LLC v. Transp. Agency for Monterey Cnty.*, 778 F. Supp. 3d 1065, 1074 (N.D. Cal. 2025) ("[A] request for a preliminary injunction becomes moot once the plaintiff has 'obtained the relief he sought.'"); *Ruffin Gaming, Inc. v. Doplex Trading, Ltd.*, 2006 WL 3613243, at *1 (9th Cir. Dec. 11, 2006) (mem.) (dismissing interlocutory appeal of preliminary injunction as moot because the "preliminary injunction at issue was superseded by a permanent injunction").

Accordingly, Defendant's motion to dissolve is **DENIED**.

## II.    BHU'S SECOND MOTION FOR PRELIMINARY INJUNCTION

BHU's Second Motion for Preliminary Injunction seeks to prohibit the City from "immediately removing persons who leave 8th and Harrison from whatever areas they re-congregate for their mutual aid and protection," and to restrain the City from displacing 16 disabled individuals who submitted ADA accommodation requests. Dkt. 264 at 21. In its motion, BHU attests that it submitted ADA accommodation requests for 16 individuals residing at the Harrison Encampment after receiving notice of the City's planned abatement of the Encampment in February.[1] *Id.* at 4 ("In response [to abatement notices posted in February 2026], BHU began assisting encampment residents in submitting requests for disability-related accommodations."). These individuals were not the subject of the 2025 First Preliminary Injunction. BHU principally argued that the City failed to grant reasonable accommodations requested and that the scheduled abatement would violate the Fourth and Fourteenth Amendment rights of the 16 individuals who are BHU members. *Id.* at 9, 13–16. On the record thus far, BHU has presented evidence that these 16 individuals have disabilities as represented and which are tied to their requests for accommodations sufficient to show a likelihood of success on the merits as to those elements of their ADA claims. *See* Dkt. 272, Exs. A-C.

The Court held a hearing on the TRO on March 11, 2026 and granted the TRO with respect to the 16 disabled claimants, finding, *inter alia*, that the interactive process had not been sufficiently completed. The Court subsequently issued an order directing parties to brief the motion for preliminary injunction. The hearing on the Second Motion for Preliminary Injunction was held on March 20, 2026.

The Court has reviewed the parties' briefing and evidence in support. The claimants' requests for relief are categorized as follows:

1. Indefinite pause on abatement, permission to stay in place, guarantee of non-

---

[1] The 16 individuals are: Alice Barbee, Erik Alexander Johnson Coon, Hector Navarro, Jacob Clakley, Jason Charette, Jonny Ruel Holder, Kevin Martinez, Lisa Saechao-y-chain, Monique Williams, Quinton Cocklereese, Robbie Peddycoart, Robert Pearce, "Shawman," Thomas Barnett, Brenda Bolares, and Jermaine Lee White. Dkt. 272, Exs. A-C.

United States District Court
Northern District of California

congregate housing or specific shelter placement.

2. Designation of enforcement-free zones, creation of a City-sanctioned or City-owned encampment, and a map or list of enforcement-free areas.

3. A safe location to relocate vehicles and exemptions from towing or parking enforcement.

4. Exemptions from sidewalk space regulations limiting individuals from taking up more than 3x3 feet on sidewalks.

5. Physical assistance with relocation and the provision of storage of personal property.

6. Sanitation services, including the installation of portable restrooms and trash receptacles, provision of clean water, and trash pickup.

7. Cognitive and communication accommodations including step-by-step relocation instructions, executive functioning assistance, low-stimulation meetings, designated City staff points-of-contact, and peer support.

8. Language access for Spanish speakers.

9. Extended advance written notice of at least 30 days before any enforcement actions.

10. Recognition of animals, tents, and vehicles as medical equipment.

11. Noise and sensory modifications during abatement operations.

For reasons previously stated, the Court finds BHU has established a likelihood of irreparable harm. However, the balance of hardships and public interest factors lie in relative equipoise because of the significant public health crisis impacting the Harrison Encampment and its potential to spread beyond the borders of the Encampment. *See* Dkts. 194-3; 207-2; 284. Accordingly, the dispositive factor here is the Court's assessment of likelihood of success on the merits.

For the reasons set forth below, BHU's motion for preliminary injunction is **GRANTED IN PART AND DENIED IN PART**.

4

United States District Court
Northern District of California

1.     **<u>Relief Category #1: Indefinite pause on abatement, permission to stay in place, guarantee of non-congregate housing or specific shelter placement</u>**

The following claimants request relief in the form of a pause on abatement, permission to remain in the Harrison Encampment, or a guarantee of non-congregate housing or a specific shelter placement: Alice Barbee, Hector Navarro, Jacob Clakley, Jason Charette, Jonny Ruel Holder, Kevin Martinez, Lisa Saechao-y-chain, Monique Williams, Quinton Cocklereese, Robbie Peddycoart, "Shawman," Robert Pearce, Thomas Barnett, Brenda Bolares, and Jermaine Lee White.  Dkt. 272, Exs. A–C.

The Court finds that claimants have not demonstrated likelihood of success on the merits with respect to this category of relief.  Pursuant to the Court's order on the cross-motions for summary judgment, these accommodation requests are unreasonable and would constitute a fundamental alteration to the City's relevant program.  Dkt. 288.

Accordingly, this request for preliminary injunctive relief is **DENIED**.

2.     **<u>Relief Category #2:  Designation of enforcement-free zones, creation of a City-sanctioned or City-owned encampment, and a map or list of enforcement-free areas</u>**

The following claimants request relief in the form of designated enforcement-free zones, the creation of City-sanctioned or City-owned encampments, and a map or list of enforcement-free areas for relocation: Alice Barbee, Erik Alexander Johnson Coon, Hector Navarro, Jacob Clakley, Jonny Ruel Holder, Kevin Martinez, Lisa Saechao, Quinton Cocklereese, Robbie Peddycoart, Shawman, Robert Pearce, Thomas Barnett, Brenda Bolares, Jermaine Lee White.  Dkt. 272, Exs. A–C.

The Court finds that claimants have not demonstrated a likelihood of success on the merits with respect to this category of relief.  Pursuant to the Court's order on the cross-motions for summary judgment, these accommodation requests are unreasonable and would constitute a fundamental alteration to the City's relevant program.  Dkt. 288.

Accordingly, this request for preliminary injunctive relief is **DENIED**.

United States District Court
Northern District of California

### 3.   Relief Category #3: A safe location to relocate vehicles and exemptions from towing or parking enforcement

The following claimants request relief in the form of a safe location to relocate their vehicles, towing exemption, and parking relief: Jason Charette, Monique Williams, and Thomas Barnett.  Dkt. 272, Exs. A–C.

The Court finds that BHU has demonstrated likelihood of success on the merits with respect to Mr. Charette and Mr. Barnett.

As discussed in the Court's order on the cross-motions for summary judgment, the City may only impound vehicles under the community caretaker exception if the City concretely demonstrates that the vehicle impedes traffic or threatens public safety and convenience — mere noncompliance with parking regulations or inoperability do not suffice.  Dkt. 288; *Lavan v. City of L.A.*, 693 F.3d 1022, 1025, 1029 (9th Cir. 2012) ("Violation of a City ordinance does not vitiate the Fourth Amendment's protection of one's property. Were it otherwise, the government could seize and destroy any illegally parked car or unlawfully unattended dog without implicating the Fourth Amendment.").

The City has identified potential public health and safety concerns associated with specific vehicles.  For example, rodent droppings were found near Mr. Barnett and Mr. Charette's vehicles, and rodent burrows were found near Mr. Charette and Ms. William's vehicles.  *Prado v. City of Berkeley*, No. 23-cv-04537-EMC, Dkts. 193; 205.  The City also observed moisture and potential accumulations of sewage near Mr. Charette and Ms. Williams's vehicles, and their vehicles were found to potentially serve as rodent harborage sites. *Id.*

Mr. Barnett lives with physical and mental disabilities that impair his ability to lift and move items and to stay focused on organizational tasks — conditions directly relevant to the cleanliness and rodent harborage findings that the City cites as grounds for abatement and vehicle seizure. No. 23-cv-04537-EMC, Dkt. 202 ¶ 3. Mr. Charette's PTSD and depression similarly affect his executive functioning and capacity to maintain cleanliness standards in and around his RV. No. 23-cv-04537-EMC, Dkt. 204 ¶ 3. The nexus requirement is sufficiently satisfied at this stage. *See Navarro v. City of Mountain View*, 2021 WL 5205598, at *2 (N.D. Cal. Nov. 9, 2021)

("Those individuals face disproportionate harm if they are forced to move into public shelters or if they are too far from their medical providers and social support networks. Individuals with mental health disabilities also risk serious exacerbation of their conditions if they lose their private, safe spaces.").

There is thus a basis under the ADA for the requested accommodations. The requested accommodations, including temporary parking exemptions or renewable permits and assistance with vehicle remediation or rodent abatement are reasonable, in that they directly implicate Mr. Barnett and Mr. Charette's access to City roadways. The City's submissions do not demonstrate that temporary, individualized exemptions for a small number of disabled claimants would meaningfully obstruct these functions to a substantial degree. Thus, on the record before the Court, it is not obvious that the requested accommodation would constitute a fundamental alteration or impose an undue burden on the City. *See Martin v. PGA Tour, Inc.*, 204 F.3d 994, 1001 (9th Cir. 2000); *Birdwell v. AvalonBay Communities, Inc.*, 742 F. Supp. 3d 1024, 1041 (N.D. Cal. 2024).

Accordingly, the Court **GRANTS** BHU's motion for a preliminary injunction with respect to Mr. Barnett and Mr. Charette's vehicle-related accommodations. The City may not impound or destroy their vehicles without first engaging in a good-faith effort to provide reasonable accommodations to these claimants, which may include temporary parking permits or exemptions, alternative enforcement mechanisms, assistance with vehicle remediation and rodent treatment, and cooperation with efforts to bring their vehicles into compliance with applicable health and safety standards. *See* Dkt. 288.

The Court, however, finds an inadequate showing of likelihood of success on the merits with respect to Ms. Williams. Ms. Williams does not reside in her vehicle – she lives at the Campus Motel and uses her minivan primarily for storage. No. 23-cv-04537-EMC, Williams Declaration (Dkt. 201) ¶¶ 4–13. Her accommodation request rests principally on the prospective fear that she may be evicted from the Campus Motel and would then have nowhere else to go. *Id.* ¶¶ 13–15. An ADA accommodation must be tethered to a present disability-related need for access to a specific program, not a speculative future contingency. *See* 28 C.F.R. § 35.130(b)(7)

United States District Court
Northern District of California

United States District Court
Northern District of California

(stating that an accommodation must be "necessary to avoid discrimination on the basis of disability"). The nexus that Ms. Williams identifies between her current disabilities and the requested vehicle-related accommodation is too attenuated to sustain a claim under the ADA. Accordingly, the Court **DENIES** Ms. Williams's request for a preliminary injunction on ADA grounds.

The Court's summary judgment order also emphasized that before impounding or destroying any BHU member's vehicle within the Encampment, the City is obligated under the Constitution to make a specific, fact-based determination that the particular vehicle obstructs traffic or poses a concrete, individualized health or safety threat; provide that vehicle's owner with written notice of those findings and provide a reasonable opportunity to remediate the identified condition or voluntarily relocate the vehicle; and attempt less restrictive alternatives, including targeted cleaning, pest treatment, assisted relocation, or other mitigating measures. Dkt. 288. Outright destruction requires the additional showing that no reasonable alternative remedies could mitigate the identified hazard. *Id.* The City may pursue such forceful measures only upon such a showing, or by demonstrating non-compliance by a vehicle resident following good-faith notice and remediation efforts. *Id.* This directive applies not only to the benefit of Mr. Charette and Mr. Barnett, but also to Ms. Williams and any non-disabled BHU members at risk of vehicle seizure as a result of the abatement.

Accordingly, the Court finds a likelihood of success on the merits with respect to BHU's vehicle seizure claim based on the Fourth Amendment. The motion for a preliminary injunction is **GRANTED** with respect to this claim.

4. **Relief Category #4: Exemptions from sidewalk space regulations limiting individuals from taking up more than 3x3 feet on sidewalks**

Alice Barbee, Hector Navarro, Jacob Clakley, Jonny Ruel Holder, Monique Williams, Robbie Peddycoart, Shawman, Robert Pearce, Thomas Barnett, and Jermaine Lee White seek an exemption from the City's enforcement of Administrative Regulation 10.2 ("AR 10.2") and other code provisions that limit personal property on City rights-of-way to no more than a nine square feet area (the "3x3 rule") and require a path of travel of at least six feet on sidewalks under 14 feet

wide, and a path of travel of 10 feet on wider sidewalks.  Dkts. 264; 272.

For the reasons set forth in the Court's summary judgment order, these claimants have demonstrated a likelihood of success on the merits with respect to the requested accommodation that seeks to modify the 3x3 rule to allow increases in overall space occupied on sidewalks to accommodate mobility devices, medical devices, service or emotional support animals, or other disability-related needs.  Dkts. 264; 272; 288.  The accommodation request is reasonable and not an undue burden.  *Id.*  Nor does the accommodation require the City to undergo a fundamental alteration to an existing program.  *Id.*  Accordingly, the motion for a preliminary injunction is **GRANTED** with respect to enforcement of the 3x3 rule, and the City must undergo an individualized assessment for each claimant named above to ensure they have reasonable space in which to establish their abode.  When evaluating what modified space allocation is reasonable for a given claimant at a given location, the City must account for the claimant's disability-related needs, the actual width and physical characteristics of the sidewalk in question, as well as the public interest in maintaining a reasonable path of travel.  The City retains authority to deny a proposed placement that, on the specific facts of a given location, would unreasonably obstruct pedestrian passage or emergency access (*e.g.*, less than six feet) — but it may not invoke those concerns categorically and without individualized analysis.  The Court retains jurisdiction to evaluate any disputes arising from the City's application of this framework.

For the reasons stated in the summary judgment order, the injunction limiting the City's enforcement of the 3x3 rule is also supported by the constitutional claim of state-created danger. Dkt. 288.

5.    **Relief Category #5: Physical assistance with relocation and the provision of storage of personal property**

Alice Barbee, Hector Navarro, Jacob Clakley, Jonny Ruel Holder, Monique Williams, Robbie Peddycoart, Shawman, Robert Pearce, Thomas Barnett, and Jermaine Lee White request physical assistance during abatement to pack and move their belongings, store their property, and refrain from destroying property left behind.  Dkts. 264; 272.

The Court finds that BHU has demonstrated a likelihood of success with respect to this

9

request for accommodations. The City is to comply with the Court's directive in the order on the cross-motions for summary judgment. Dkt. 288. For individuals with physical disabilities that directly impact their ability to lift and move property, or those with mental impairments that affect their ability to plan, organize, and pack appropriately, the City may not force their relocation without engaging in an individualized assessment to determine the appropriate accommodations. As with the Court's summary judgment order, the City is not required to handle any property at serious risk of leptospirosis contamination. Dkt. 288. But any essential survival equipment — *i.e.*, tents, sleeping gear, and basic clothing — belonging to claimants that is destroyed shall be replaced in accordance with the reasoning of the summary judgment order. *Id.*

With respect to BHU's constitutional property seizure and state-created danger claims, the Court incorporates by reference the rulings and reasoning from the summary judgment order. Dkt. 288.

Accordingly, the Court finds a likelihood of success on the merits and **GRANTS** BHU's motion for a preliminary injunction with respect to physical assistance, storage, and non-destruction of property.

6. **Relief Category #6: Sanitation services, including the installation of portable restrooms and trash receptacles, provision of clean water, and trash pickup**

Alice Barbee, Jacob Clakley, Kevin Martinez, Lisa Saechao-y-chain, Robbie Peddycoart, Shawman, and Brenda Bolares request that the City provide ongoing individualized sanitation services as a disability accommodation, including access to portable restrooms, trash receptacles, and regular waste collection wherever they relocate. Dkts. 264; 272.

For the reasons set forth in the Court's summary judgment order, this requested accommodation would constitute a fundamental alteration. Dkt. 288.

Accordingly, the Court finds that BHU has not demonstrated a likelihood of success on the merits, and the Court **DENIES** BHU's motion with respect to this category of relief.

United States District Court
Northern District of California

**7.    Relief Category #7:  Cognitive and communication accommodations including step-by-step relocation instructions, executive functioning assistance, low-stimulation meetings, designation City staff points-of-contact, and peer support**

Alice Barbee, Hector Navarro, Kevin Martinez, Lisa Saechao, Robbie Peddycoart, Shawman, Thomas Barnett, Brenda Bolares, and Jermaine Lee White request accommodations related to cognitive and communication needs arising from psychiatric and cognitive disabilities. The specific requests include written step-by-step relocation instructions, executive functioning assistance during abatement, low-stimulation meeting formats with the City, a designated City staff point of contact, and peer support with relocation.  Dkts. 264, 272.

In light of the record presented, and for the reasons set forth in the Court's summary judgment order, claimants have been reasonably accommodated.

Accordingly, the Court does not find a likelihood of success on the merits with respect to this category of relief and the motion for preliminary injunction is **DENIED** as to such relief.

**8.    Relief Category #8: Language access for Spanish speakers**

Hector Navarro and Kevin Martinez raise language access concerns.  Dkts. 264; 272.  Both individuals are Spanish speakers.  *Id.*  Mr. Navarro requested that all written notices, accommodation determinations, instructional materials, and meeting communications be provided in Spanish, and that a Spanish-speaking point of contact be designated for all interactions.  Prado Declaration (Dkt. 272), Ex. E at 3–4.  Mr. Martinez noted a preference for Spanish language communications, with Mr. Martinez better able to comprehend instructions in Spanish, but did not represent an inability to engage with English-speaking City staff.  *Id.*, Ex. I at 2–4.

Language access is not a cognizable basis for relief under Title II of the ADA, which addresses discrimination based on disability rather than national origin or language.  *See* 28 C.F.R. 35.130(b)(7) (requiring accommodations "necessary to avoid discrimination on the basis of *disability*") (emphasis added).  To the extent these requests implicate Title VI of the Civil Rights Act, that claim has not been briefed.  However, the Court notes that the claim would be unlikely to succeed.  The City posted a Spanish-language notice of abatement around the Encampment on

March 2, 2026, and represented that translation services through Spanish-speaking staff or a third-party service, would be made available upon request at any encounter — including on the day of enforcement. *Id.* at 7–8. With respect to Mr. Martinez, his request identified Spanish as a preference but not a barrier. *Id.*, Ex. I at 3–4. He did not represent any impediment to access by virtue of his preference for Spanish. *Id.*

Accordingly, Mr. Navarro and Mr. Martinez have been sufficiently accommodated, BHU does not demonstrate a likelihood of success on the merits, and BHU's motion for preliminary injunction is **DENIED** with respect to this request for accommodations.

### 9. Relief Category #9: Extended advance written notice of at least 30 days before any enforcement actions

Alice Barbee, Erik Alexander Johnson Coon, Hector Navarro, Jacob Clakley, Jason Charette, Jonny Ruel Holder, Kevin Martinez, Lisa Saechao, Monique Williams, Quinton Cocklereese, Robbie Peddycoart, Shawman, Thomas Barnett, and Jermaine Lee White each request extended advance written notice before any enforcement action is taken against them. Dkts. 264; 272.

The Court's summary judgment order has already determined that this request for accommodations is not reasonable in light of the City's legitimate and urgent public health concerns. Dkt. 288. The record does not establish a likelihood of success on the merits in light of the Court's analysis.

Accordingly, BHU does not show a likelihood of success on the merits and its motion for preliminary injunction is **DENIED** with respect to this category of relief.

### 10. Relief Category #10: Recognition of animals, tents, and vehicles as medical equipment

Almost all of the 16 new claimants request that the City formally recognize animals, tents, vehicles, and other personal property as medical equipment for ADA purposes, thereby entitling them to heightened protection from enforcement and property seizure. Dkts. 264; 272. Those requesting recognition of animals as medical equipment do so to avoid separation from their animals — presumably in shelters or City-provided housing. *See id.*, Ex. H at 4 (Holder); Ex. L at

United States District Court
Northern District of California

4 (Cocklereese); Ex. M at 4 (Peddycoart). Those requesting recognition of tents as medical equipment do so in order to be exempt from the 3x3 rule on sidewalks. *See, e.g.*, *id.*, Ex. C at 4 (Barbee); Ex. E at 2–3 (Navarro); Ex. R at 10–11 (White). Those requesting recognition of vehicles as medical equipment do so to avoid towing, impoundment, or other enforcement against vehicles. *Id.*, Ex. G at 2–4 (Charette); Ex. K at 2–3 (Williams).

The City's responses to these requests varied by category. With respect to animals, the City denied recognition of animals as medical equipment but responded that it does not intend to separate individuals from their animals, and that City-sponsored shelters comply with applicable requirements for service animals and emotional support animals. *See, e.g.*, *id.*, Ex. H at 9; Ex. L at 8. For tents, the City denied recognition of tents as medical equipment and denied the related requests for exemption from the 3x3 rule on fundamental alteration and undue burden grounds, citing the incompatibility of oversized structures with AR 10.2's path of travel requirements and the City's obligations to maintain accessible sidewalks. *See, e.g.*, *id.*, Ex. C at 8; Ex. H at 8 ("The City does not intend to seize or destroy Mr. Holder's tent. . . . However, consistent with establish practice, the City provides notice specifically to allow individuals to move with their belongings intact."). With respect to vehicles, the City denied recognition of vehicles as medical equipment on that ground that exemptions to parking enforcement would constitute a fundamental alteration, but represented that it "strives to be flexible with unhoused community members regardless of its authority to tow." *Id.*, Ex. G at 7; Ex. K at 5–6.

The City's response to the accommodation request of animals as medical equipment is adequate. The City has represented that service and emotional support animals will be accommodated consistent with applicable requirements, and that it does not plan to separate residents from their animals. *See, e.g.*, *id.*, Ex. H at 9; Ex. L at 8. To the extent claimants are concerned that a future shelter placement will not accommodate their animals, that concern is not yet ripe — no specific shelter placement appears to have denied accommodation on this basis The animal recognition requests are therefore either adequately addressed by the City or not yet justiciable.

With respect to tents, the request for a formal "medical equipment" designation is both

13

facially unreasonable and largely moot in light of this Court's prior ruling on accommodations to the 3x3 rule. No authority supports the proposition that a tent becomes cognizable as "medical equipment" under Title II simply because its owner depends on it for shelter, health, or wellness. The Court has already ruled that disabled individuals must be accommodated in relation to sidewalk size limits. The "medical equipment" label adds no practical legal protection beyond what those accommodations would already provide.

With respect to vehicles, the request is unreasonable and unlikely to succeed on the merits as an ADA claim. Moreover, the constitutional implications of vehicle seizure were addressed separately in the Court's summary judgment order, and the protections afforded in that ruling obviates any incremental value of a "medical equipment" designation.

Accordingly, BHU has not shown a likelihood of success on the merits, and the motion for preliminary injunction is **DENIED** with respect to this category of relief.

**11.** **Relief Category #11: Noise and sensory modifications during abatement operations**

Finally, the Court addresses Erik Alexander Johnson Coon's request for noise and sensory accommodations during abatement. Mr. Coon — a Gulf War veteran living with PTSD and a seizure disorder triggered by acute stress and auditory stimulation — requests that the City modify its abatement operations to eliminate the use of sirens or high-decibel alarms in the vicinity of his tent and employ quieter methods during enforcement. Dkts. 264; 272. The City denied the request to modify abatement operations on fundamental alteration grounds, but offered Mr. Coon a noise-reducing earmuff-style headset as an alternative accommodation to be used during abatement. *Id.* at 6.

The Court finds that the City has adequately accommodated Mr. Coon's sensory needs. The ADA requires an effective accommodation, but not necessarily the claimant's preferred one. *See Mont. Med. Ass'n v. Knudsen*, 119 F.4th 618, 626 (9th Cir. 2024); *Wade v. Solis*, 2009 WL 1186638, at *17 (N.D. Cal. May 4, 2009). The provision of a noise-reducing headset directly addresses the documented sensitivity that underlies Mr. Coon's request, and does so without fundamentally altering the City's abatement operations in ways that could compromise public

safety or emergency responsiveness. *See* Dkt. 272, Ex. D at 6 ("Heavy machinery such as dump trucks and loaders are legally required to utilize audible backup alarms and other warning systems to protect workers and members of the public. . . . The purpose of these audible warnings is to prevent serious injury or death."). Plaintiffs do not argue that the accommodation fails to resolve Mr. Coon's impediment to access. The headset offer constitutes a reasonable, effective alternative accommodation that resolves the access problem without restructuring the essence of the City's operations.

Accordingly, BHU is unlikely to succeed on the merits with respect to this claim, and the motion for preliminary injunction is **DENIED** as to this request for relief.

### III.    CONCLUSION

For the foregoing reasons, the City's motion to dissolve is **DENIED**. BHU's motion for preliminary injunction is **GRANTED IN PART AND DENIED IN PART**. The City may proceed with abatement operations in a manner consistent with this preliminary injunction and the injunctive relief granted in the Court's summary judgment order.[2] Dkt. 288.

Pending final judgment, the City of Berkeley is enjoined as follows:

1. The City must re-engage Mr. Barnett and Mr. Charette through the interactive process and provide reasonable accommodations with respect to their vehicles, and must not proceed to tow, impound, or destroy their vehicles absent compliance with the framework set forth above and in the Court's summary judgment order. Dkt. 288. With respect to non-disabled BHU members' vehicles, the City is prohibited from towing, impounding, or destroying vehicles without first making an individualized determination that the vehicle presents an impediment to traffic or a health or safety threat, providing the vehicle owner with notice and a reasonable opportunity to

---

[2] Plaintiffs are a putative class of indigent unhoused individuals, and the City has not requested a bond as security for the entry of preliminary injunctive relief. Accordingly, Plaintiffs are not required to post bond in this action. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (district court has discretion to determine whether to require bond); *Cota v. Maxwell-Jolly*, 688 F. Supp. 2d 980, 1001 (N.D. Cal. 2010) ("The Court WAIVES the requirement for the posting of a bond as security for the entry of preliminary injunctive relief on the grounds of Plaintiffs' indigency."); *V.L. v. Wagner*, 669 F. Supp. 2d 1106, 1123 (N.D. Cal. 2009) ("The Court waives the bond requirement for Plaintiffs because they are indigent and to ensure their ability to access the courts on behalf of themselves and other class members.").

abate said conditions, and attempting less restrictive alternatives to impoundment or destruction. Prior to the destruction of any vehicle, the City must further demonstrate that no alternative remedy can adequately mitigate the health or safety risk presented by the vehicle.

2. The City shall assist with physical relocation or storage of property of the 16 individual claimants herein unless that property is plausibly contaminated with leptospirosis or presents a genuine health or safety risk. The City is to consider and pursue methods of safely handling and storing items that do not present an obvious risk to health and safety. If property essential to survival (*i.e.* tents, sleeping gear, and clothing) are destroyed in the abatement, the City must provide replacements therefor.

3. With respect to the 3x3 rule, the City must conduct individualized assessments for each claimant named above, in Section II(4), to ensure that they have reasonably sufficient space in which to establish shelter. The City must account for the claimant's disability-related needs, the actual width and physical characteristics of the sidewalk in question, as well as the public interest in maintaining a reasonable path of travel. To the extent abatement and enforcement of sidewalk space limitations would result in the destruction of non-disabled individuals' tents, the City must allow the unhoused individual to retain their tent if it can be relocated in an area which does not unreasonably obstruct sidewalk passage (*e.g.* six-foot corridor) or provide a replacement tent that will accommodate the City's maintenance of reasonable passage (*e.g.* six feet) on sidewalks. Dkt. 288.

**IT IS SO ORDERED**.

Dated: April 3, 2026

_____
EDWARD M. CHEN
United States District Judge

16