Anthony D. Prince (SBN 022892)
General Counsel
California Homeless Union/
Statewide Organizing Council
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
Telephone: (510) 301-1472
Email: princelawoffices@yahoo.com

Attorneys for Plaintiff
BERKELEY HOMELESS UNION

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERKELEY HOMELESS UNION,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF BERKELEY, THOMAS GREGORY, PAUL BUDDENHAGEN, PETER RADU, OKEYA VANCE-DOZIER, RASHI KESERWANI, DOES 1-10<br><br>    Defendants. | Case No.  CV-25-1414-EMC<br><br>**PLAINTIFF BHU'S OPPOSITION TO DEFENDANT CITY OF BERKELEY'S MOTION FOR ENTRY OF FINAL JUDGMENT**<br><br>**Hearing Date: June 25, 2026**<br><br>**Time:**<br><br>**Judge Edward M. Chen** |

# INTRODUCTION

Plaintiff Berkeley Homeless Union ("BHU") respectfully requests that the Court deny Defendants' motion for entry of final judgment under Federal Rules of Civil Procedure 54 and 58. The City's motion is premature and procedurally improper for three independent reasons.

First, the Court's April 3, 2026 Summary Judgment Order (ECF 288 - "MSJ Order") expressly declined to resolve numerous claims pleaded in the First Amended Complaint ("FAC"), including: 1) the ADA accommodation claims of 16 BHU members (ECF 288 at 6: 2-5); 2) BHU's state-law claims under the California Constitution and Government Code § 11135 (FAC ¶¶ 116-119, 125-128, 142-145); 3) the claim of BHU member Austin White regarding emotional support and service animals, which the Court found "not ripe" (ECF 288 at 74:14-16); and 4) BHU's claims regarding citywide practices, including Resolution No. 71,513-N.S-Berkeley's Encampment Policy passed in September 2024 and 5) the City's pattern of serial evictions (FAC ¶¶ 1, 49-59). Final judgment cannot enter when claims on behalf of BHU members remain unresolved.

Second, the MSJ Order did not enter final relief, rather it ordered ongoing individualized assessments and retained jurisdiction to enforce compliance. The Court required case-by-case determinations for vehicle towing (ECF 288 at 72:3-16), tent size exemptions (id. at 72:17-28), physical relocation assistance (id. at 73:7-17), and replacement of destroyed property (id.). A judgment is not final when the Court must continue to supervise compliance.

Third, the City has already appealed interlocutory orders in this case. Before seeking entry of final judgment or modification of the preliminary injunction, the City must seek an indicative ruling under Federal Rule of Civil Procedure 62.1. This Court lacks jurisdiction to enter final judgment while an appeal is pending without such a ruling.

For these reasons, and as set forth below, the City's motion should be denied in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. BHU Filed a Citywide Challenge to Berkeley's Anti-Homeless Policies

BHU filed this action to protect all of its members throughout the City of Berkeley from Citywide practices. (ECF 62 at 1). This was in response to the City adoption of Resolution No. 71,513-N.S. *id.* BHU filed it seeking to "halt the City's dangerous and discriminatory practice of dismantling encampments and then installing hardscaping and signage designed to permanently exclude unhoused people from public spaces into more dangerous circumstances — far away from food, water, protection and social services." *id*

BHU further alleged a widespread practice across the City of property identifying 369 encampment closures and 444 deep cleanings where property was stored in only 34 instances. *id* at 4.  "The items confiscated during these sweeps—tents, clothing, food, medications, mobility devices, and other essential survival gear—are critical to the health, safety, and well-being of unhoused residents." *id*

In response to this city-wide practices, BHU sought to stop the City from abating encampments when doing so would cut people off from food, water, bathrooms, medical care, mutual aid, shelter, and services like Dorothy Day House. *id at* 1.

### B. The Parties Filed Cross Motions For Summary Judgement

On June 10, 2025 this court ordered a limited preliminary injunction halting the City  from removing BHU members with pending disability accommodation requests on from the homeless encampment at 8th and Harrison Streets known as the Harrison Corridor. This order only covered 7 BHU members.

On January 13, 2026, the City ordered cross motions for summary judgement based on six main issues to resolve disputes regarding the interactive process in the preliminary injunction. (ECF 202). Both at the time he instructed the parties to file the motions and in his 74-page ruling of April 3, 2026 the court specifically noted that the summary judgement went only to the issue of whether the interactive process to determine what accommodations the City was required to

provide had been "fairly completed" and that his Order addressed only the related constitutional issues of "BHU members residing in the Encampment" as of June 10, 2025 (ECF 288 at 2) and that only "[s]even BHU members' disability discrimination claims" would be considered.

The court did not opine on any other claims of relief that BHU brought about wider practices of disability discrimination and other policies and customs against dozens more BHU members and other policies and customs outside of the Encampment.

### C. The MSJ Order Did Not Resolve BHU's Broader Claims on Behalf of Its

While the April 3, 2026 MSJ and PI orders had resolved some of the disputes about the Encampment, they did not resolve the broader policies being challenged by BHU on behalf of its members.

In fact, the Court expressly declined to resolve the ADA claims of 16 additional BHU members beyond the original seven. (ECF 288 at 6:2-7), did not address BHU's state-law claims and found that some claims, such as regarding emotional support and service animals for BHU member Austin White – were "not ripe." (ECF 288 at 74:14-16).

The same day, the court issued another narrow preliminary injunction pertaining to the Encampment. The preliminary injunction provided additional protections to disabled and non-disabled residents at the Encampment who had not been protected by the June 10, 2025 order and incorporated.

### D. The City's Reliance on BHU's Ninth Circuit Brief Is Misplaced

On April 28, 2026, BHU filed an answering brief in the City' appeal to the Ninth Circuit - Case No; 25-7341 – challenging the District Court's June 10,2025 order for limited preliminary injunction. Plaintiff/Appellant BHU argued that the City's appeal was moot because the MSJ Order and PI Order had superseded that specific order. (Azizi Decl., Exh. B).

Contrary to the City's representation, BHU asserted only that the specific limited preliminary injunction order on appeal had been rendered moot by subsequent orders addressing the same Encampment. BHU did *not* argue in its 9th Cir. Answering Brief, nor concedes in the

4

least that that the entire case had been resolved by the District Court's April 3, 2026 rulings on the cross motions for summary judgment. [INSERT AUTHORITY ON PARTIAL SUMMARY JUDGMENT EFFECT ON BROADER CASE] BHU's appellate argument is *limited* - the same term used by this Court to describe the original June 10, 2025 injunction. In the Ninth Circuit, the Union is arguing for affirmation of this Court's determination by way of subsequent orders continuing the deadlines, that the injunction remain in place until the interactive process was not merely completed, but "*fairly* completed." (Emphasis added). Based on a number of hearings and a comprehensive record, this Court's 74-page ruling concluded that, for the most part, the process had been completed and issued detailed instructions as to which accommodations were required and how they would be implemented. At all times, this Court emphasized and noted expressly in every order leading up to and including its ruling on the cross motions that it applied *only* to seven individual BHU members with disabilities on file.

Accordingly, this Court should reject the City's attempt to now leapfrog over the still unresolved constitutional and statutory claims that BHU has brought on behalf of the majority of its members, scattered all over the City who were not among the handful of members that were protected under the now-moot limited preliminary injunction of June 10, 2025 and the correctly ordered extensions thereto.

## LEGAL STANDARD

### Federal Rule of Civil Procedure 58(d)

Rule 58(d), states that "[a] party may request that judgment be set out in a separate document as required by Rule 58(a). This provision replaces a former provision of Rule 58 prohibiting attorneys from submitting forms of judgment except on direction of the court. The new provision was added to Rule 58 in 2002 to avoid the delays that were frequently encountered by the former practice of directing the attorneys for the prevailing party to prepare a form of judgment, and also to avoid the occasionally inept drafting that resulted from attorney-prepared judgments. *See* Advisory Committee Notes on the 2002 Amendments to the Federal Rules of

Civil Procedure, Fed. R. Civ. P. 58(d). The purpose of the provision is to allow a party to move for entry of judgment on a separate document in order to protect all needs for prompt commencement of the periods for motions, appeals, and execution or other enforcement. *Id*.

Plaintiffs are not aware of any authority that uses Rule 58(d) being used to enter judgement where the parties dispute the case is resolved. Nor are plaintiffs aware of any precedent for Rule 58(d) being used to convert a preliminary injunction into a permanent injunction.

### Federal Rule of Civil Procedure 54(b)

Federal Rule of Civil Procedure 54(b) "provides that final entry of judgment should be made on individual claims in multiple claim suits 'upon an express determination that there is no just reason for delay.'" *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 954 (9th Cir. 2006) (quoting Fed. R. Civ. P. 54(b)). "The burden is on the party endeavoring to obtain Rule 54(b) certification to demonstrate that the case warrants certification." *Braswell Shipyards, Inc. v. Beazer E., Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993). "Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Morrison-Knudsen Co., Inc. v. Archer,* 655 F.2d 962, 965 (9th Cir. 1981). "Rule 54(b) certification is recognized as the exception rather than the norm." *Braswell*, 2 F.3d at 1335.

Final judgment under Rule 54(b) requires no unresolved claims. The MSJ Order expressly left claims unresolved.

### ARGUMENT

I.    **The Court Should Not Enter Final Judgment Under Rules 54 and 58 Because the MSJ Order Has Not Resolved All Claims**

A. The MSJ Order Expressly Declined to Resolve Numerous Claims

Plaintiff's First Amended Complaint (ECF 62 at 34–36) alleges broad violations of the

6
**BHU OPPOSITION TO DEFENDANT'S MOTION FOR ENTRY OF FINAL JUDGMENT**

constitutional and statutory rights of BHU members across the City, not just at Eighth and Harrison Streets.

For example, at Paragraph 101 the Union alleges as follows:

> "As both a policy of custom, the City of Berkeley, through City Manager Peter Radu and his designees, have created instituted a policy and custom of destroying communities of unhoused people self-created communities within the City of Berkeley that provide BHU Members access to self-constructed shelter, food, water, hygiene facilities, mutual protection from violence and crime. Once these communities are destroyed, the City of Berkeley permanently closes the areas to the unhoused, as they did at Peoples Park, MLK Plaza, Old City Hall, and the Here-There encampments, as well as portions of the Harrison Corridor and Second and Cedar Encampments"

Not only is the Union's challenge to Defendant's city-wide policies not resolved by the Court's April 3, 2026 Order, but neither does the order resolve:

1. ADA accommodation claims of 16 BHU members. See ECF 288 at 6:2-5 ("the Court is not resolving those additional ADA accommodation claims")

2. State-law claims under California Constitution Article I, §§ 7(a) & 13. See FAC ¶¶ 116-119, 125-128.

3. The Court has not adjudicated BHU's claims regarding the City's failure to provide ADA-compliant shelter alternatives for disabled BHU members. See FAC ¶¶ 11-12, 29, 60, 74-75.

4. State-law claim under California Government Code § 11135. See FAC ¶¶ 142-145.

5. Emotional support/service animal claim of BHU member Austin White. See ECF. 288 at 74:14-16 ("not ripe for resolution")

6. Citywide practices and Resolution No. 71,513-N.S. See FAC ¶¶ 1, 49-59.

7. Meaningful opportunity to appeal denials of accommodation requests. See FAC at 36 (Prayer for Relief).

In sum, the court addressed a few key points in its MSJ order, but the Complaint seeks broader relief for city wide practices, and the MSJ explicitly only pertained to the disability

accommodation requests of seven members at the Encampment (these individuals are: Merced Dominguez, Eric Keiser, Shareef Muwakkil, Lewanda Parnell, Yesica Prado, Erin Spencer, and Austin White), and the BHU members constitutional claims at the Encampment.

Defendants cite to *Fair Housing Council of Riverside County, Inc. v Riverside Two,* 249 F. 3d 1132,1136-37 (2001). That case does not cite to Rule 54 or Rule 58 and is not germane to the relief Defendants seek here.

### B. The Court Ordered Ongoing Individualized Assessments – Not Final Relief

The MSJ Order did not enter final, one-time relief. Instead, it ordered the City to conduct case-by-case determinations before taking action against BHU members at the Encampment. These ongoing obligations demonstrate that the Court has not ended the litigation, it has retained jurisdiction to supervise compliance on the following issues:

a) Vehicle towing: The City must make "specific, fact-based determination" for each vehicle; Court "retains jurisdiction to evaluate compliance with this framework on a vehicle-by-vehicle basis." See ECF 288 at 72:3-16

b) Tent size (3x3 rule): The City must conduct "individualized assessment for each claimant" accounting for disability needs, sidewalk dimensions and public interest. See ECF 288 at 72:17-28

c) Physical relocation assistance and replacement of property: The City must provide assistance for each disabled claimant, store non-contaminated property for 90 days and replace essential survival property. See ECF 288 at 73:7-17

A judgment is not final when the court retains jurisdiction to supervise future compliance. As the California courts have long held: "The general test applicable in determining whether a judgment is final or merely interlocutory therefore, is that if anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the judgment is interlocutory only. But if no further questions can come before the court after a judgment has been entered, except such as are necessary to be determined in carrying the

8

**BHU OPPOSITION TO DEFENDANT'S MOTION FOR ENTRY OF FINAL JUDGMENT**

judgment into effect, the judgment is final." See *Zappettini v. Buckles*, 167 Cal. 27, 138 P. 696; *Security–First Nat. Bank v. Superior Ct.*, 132 Cal.App. 683, 23 P.2d 1055.

Here, the Court expressly retained jurisdiction to evaluate compliance "on a vehicle-by-vehicle basis." ECF 288 at 72:16. That is precisely the kind of ongoing supervision that precludes finality.

`C. The Court Has Not Rendered A Final Decision

FRCP 54 (b) states "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." The close of all discovery was set for April 23, 2026. (ECF 183). The court ordered cross motions on summary judgement on six discrete issues all relating to the interactive process for disability accommodations, with opening briefs on those six issues. (ECF 202).

On January 29, 2026 the city filed its motion for summary judgment. (ECF 219). This was 3 months before the close of all discovery, so under FRCP 54(b) the City was only permitted to file summary judgement as "set by… court order". The Court's order was limited to six discrete issues (ECF 202). BHU moved for summary judgement on those six issues, and the court only ruled on those six discrete issues on April 3, 2026 (ECF 298). Just because Defendants tried to jump the gun and file on the entire case, when it only had been ordered to brief six issues, does not make their motion a dispositive one.

In its order, the Court did not adjudicate the entire lawsuit; rather it focused on the key issues it had identified at the Encampment (ECF 202). It only opined on seven BHU members ADA claims, and the constitutional claims of BHU members at the Encampment. (ECF 298). It then applied those findings for a preliminary injunction at Eighth and Harrison (ECF 299). The Court did not opine on broader policies and customs of the City, such as Resolution No. 71,513-N.S, and the City's general practice of serial evictions that place unhoused people in greater danger that was alleged at Paragraph 101 of Plaintiff's Amended complaint quoted above.

Indeed, in its April 3, 2026 ruling this Court noted concerns regarding the serial eviction issue but *did not* make a determination one way or the other as to the constitutionality of such actions. The Court noted that if the City "engage[s] in serial evictions after residents move from the Encampment, that could, at some point, give rise to a legal claim." ECF 288 at 44:25-27.

The Court also expressly acknowledged that its rulings were not final as to BHU's citywide claims. And in its summary judgment ruling on enforcement-free zones, the Court stated that its ruling was 'without prejudice to any future legal challenge, should the City engage in a pattern of serial enforcement actions against relocated residents in a manner that effectively denies them any lawful location to seek shelter.' Id. at 71:21-23. The Court explicitly 'reserve[d] judgment on whether a pattern of such displacement across multiple locations could, on a more developed record, give rise to a viable ADA or constitutional claim.' Id. at 71:23-25. These statements confirm that the MSJ Order did not finally resolve BHU's citywide claims.

To the contrary, the Court invited future challenges on a more developed record. In fact, Plaintiffs Complaint *already expressly asserts* as violations of constitutional and statutory rights the City's serial evictions and enforcement actions.  That issue – clearly and expressly set forth in BHU's Complaint as shown above -- is left unresolved as are other causes of action including Plaintiff's state law claims.

The parties filed cross motions for summary judgement which the court ruled on on April 3, 2026 (ECF 298). While the deadline to file for summary judgement for the entire case was May 21, 2026 - which is 50 days after MSJ order was issued, - neither party filed a dispositive motion on all claims. Defendants misinterpret the purpose of the cross motions of summary judgement, as it pertained to the Encampment.

Instead of properly moving for summary judgment on the entire case by the deadline, Defendants now seek to characterize the limited, court-ordered cross-motions as a final adjudication of the entire lawsuit. That is incorrect as a matter of fact and law.

Defendants cite to *Biscovich v Sharkninja Operating LLC*, 2026 WL 657194 (N.D. Cal.

**BHU OPPOSITION TO DEFENDANT'S MOTION FOR ENTRY OF FINAL JUDGMENT**

February 26, 2026), which pertains to a 12(b)(1) motion—not Rule 54 or 58. This is revealing: Defendants are essentially admitting that their motion for entry of judgement is actually a request for judgement on the pleadings. However, Fed. R. Civ. P 12(c) requires that such a motion be brought "so as not to delay trial". Here, Defendants failed to file for motion for judgement on the pleadings by the May 21 deadline for dispositive motions. The trial date is now only a few months away and Defendant's attack on the pleadings is out of time.

### D. MSJ Does Not Resolve All Claims

As the court noted in its MSJ order, the MSJ only resolved two issues: (1) seven BHU members disability accommodation claims pertaining to the June 10, 2025 preliminary injunction and (2) the constitutional claims of BHU members in the Encampment.

"The Court declines to resolve the ADA accommodation claims of the 16 additional claimants" ECF 288 at 6. "Accordingly, the Court does not issue a ruling with regard to the vehicles not at risk of imminent enforcement action." *id* at 46. The court did not opine on city wide practices making unhoused people unsafe.

Defendants cite to *Natural Grocers v Rollins,* 157 F.4th 1143 (9th Cir. 2025) which undermines rather than supports their position. There the court had entered judgement on all claims. The parties moved for an indicative ruling to clarify the judgement. Here, the court did not enter judgement nor alleged that its order resolved all claims.

II.     **In the Alternative, the Court Should Not Convert the Preliminary Injunction Into a Permanent Injunction**

A.   This Court Lacks Jurisdiction To Enter Judgement Because Of Defendant's Appeals of April 3, 2026 Orders

Filing a notice of appeal generally divests the district court of "its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58–61 (1982). Those appeals remain pending. The proper vehicle for this Court to act to modify the April 3 orders would be to render an indicative ruling under Federal Rule of Civil Procedure 62.1, which the City has not sought.

To enter final judgement would directly impact development in the Ninth Circuit. Right now, the City is appealing interlocutory orders under 28 USC § 1292. If the court were to enter judgement on those orders, then the appeals would be converted into appeals of final judgements under 28 USC § 1291, which, of course, greatly serves the City's interests and is almost certainly what it hopes to achieve by entry of final judgment in this case.

The appeals would suddenly have new standards of review and briefing would have to restart. This is the chaos that jurisdictional divestiture is designed to avoid and the court should find it lacks jurisdiction to ensure those appeals already before the Ninth Circuit proceed in an orderly manner.

The City argues that the MSJ Order resolved all claims. Rule 54(b) says the opposite: any order that adjudicates fewer than all claims "does not end the action as to any of the claims." Because the MSJ Order expressly left the 16 ADA claims unresolved as with other claims properly pled in Plaintiff's Complaint, it adjudicated fewer than all claims. Therefore, under Rule 54(b), it does not end the action.

The City's motion seeks to convert the MSJ Order on the interactive process into a final judgment of all of Plaintiff's claims. This is precisely the result Rule 54(b) is designed to prevent.

Certainly, the long-running dispute on what accommodations the City is and is not required to provide is an important aspect that touches on other causes of action set forth in Plaintiff's complaint. But the resolution, at least for now, of that aspect, is not synonymous with resolution of the entire case as the City wishes were true so that it can more comfortably pursue its appeal of the April 3rd Order.

BHU's ADA claims (involving disability discrimination), constitutional claims (involving property seizure and state-created danger), and state-law claims arise from distinct legal rights and are therefore separate claims.

Accordingly, the MSJ Order is not a final decision under § 1291, and the City has not shown that Rule 54(b) certification is warranted.

The preliminary injunction currently protects certain BHU members at the Harrison Encampment. (ECF 289). It does not protect the 16 BHU members whose ADA claims the Court declined to resolve, nor does it protect BHU members at other locations, who remain vulnerable to the City's abatement practices. Converting the preliminary injunction into a permanent injunction would suggest that the Court has finally resolved all claims on behalf of all BHU members – which it has not. Such a conversion would materially prejudice BHU members whose claims remain unresolved and who continue to face imminent displacement without the protections they have sought in this lawsuit.

### III. The Court Should Not Certify Final Judgment Under Rule 54(b)

A. The City Cannot Meet Its Burden for Rule 54(b) Certification

The City bears the burden of demonstrating that Rule 54(b) certification is warranted. *Braswell Shipyards, Inc. v. Beazer E., Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993). The City has not met that burden.

Moreover, "Rule 54(b) certifications must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Ebrahimi v. City of Huntsville Bd. of Educ.,* 114 F.3d 162, 165 (11th Cir. 1997). "As a prerequisite to Rule 54(b) certification, the district court must evaluate whether there is any just reason to delay the appeal of individual final judgments." Id. at 165. "The question requires the district court to balance judicial administrative interests and relevant equitable concerns." Id. at 165-66.

Rule 54(b) certification is recognized as the exception rather than the norm. It should neither be granted routinely, *Curtis-Wright Corp. v. General Electric Co*., 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980), nor as an accommodation to counsel. *Corrosioneering v. Thyssen Environmental Systems*, 807 F.2d 1279, 1282 (6th Cir.1986) (citations omitted).

Here, there is no pressing need. The MSJ Order provides a legal framework that governs

13

the City's abatement. The City can comply with that framework while the remaining claims proceed. There is no risk of irreparable harm to the City from waiting for final judgment on all claims.

Here, the adjudicated claims (relating to the Harrison Encampment) and the unadjudicated claims (relating to citywide practices, the 16 ADA claims, state-law claims, and Ohlone Park) arise from the same legal framework: the ADA, the Fourth and Fourteenth Amendments and the state-created danger doctrine. They involve the same defendant, the City of Berkeley, and the same type of relief (injunctive relief against encampment abatement). Piecemeal appeal would force the Ninth Circuit to decide the same legal questions multiple times, wasting judicial resources and creating the risk of inconsistent rulings.

C. The City's Purported Need for Clarity Does Not Justify Certification

The City argues that it needs immediate appellate review to obtain "clarity" on the legal standards governing encampment abatement. But the MSJ Order already provides clarity: it sets forth the legal framework that governs the City's conduct. The City does not need a final judgment to comply with that framework. If the City disagrees with the Court's rulings, it can seek interlocutory appeal under 28 U.S.C. § 1292(a)(1) – which it has already done. Rule 54(b) is not a vehicle to circumvent the ordinary rules for interlocutory appeal.

**CONCLUSION**

Ironically, if not cynically, in Defendant's Motion pending before the Ninth Circuit to Consolidate its four previous appeals, the City now looks with disfavor upon "piecemeal litigation." The expression "it takes one to know one" immediately comes to mind, considering the successive, serial appeals to the Ninth Circuit of each of this court's procedural orders continuing the June 10 limited preliminary injunction so that its original objective could be accomplished.

This convenient, expedient "reversal of theory" lays bare the City's "consistency of purpose", i.e., to prevent its unsheltered homeless citizens from having their day in court in a

public trial on the merits, with live witnesses and cross-examination of the policy makers, with consideration by the trier of fact - be it Judge or Jury - of all the facts and the rendering of a verdict,  to see if  plaintiffs meet their burden on whether the City's treatment of its most dispossessed, its most vulnerable: the disabled homeless members of our community, has run afoul of constitutional rights and Congressional acts of which they are the intended and deserving beneficiaries.

For the foregoing reasons, and those set forth in the record and which may be advanced at oral argument, Plaintiff Berkeley Homeless Union respectfully requests that the Court DENY Defendants' motion for entry of final judgment under Rules 54 and 58. In the alternative, the Court should deny the City's requests to convert the preliminary injunction into a permanent injunction or to certify partial judgment under Rule 54(b).

The City's motion is premature, procedurally improper and contrary to the record.

Dated: June 11, 2026                                      Respectfully submitted,

                                                          /s./ Anthony D. Prince
                                                          Attorney for Plaintiff
                                                          Berkeley Homeless Union

**BHU OPPOSITION TO DEFENDANT'S MOTION FOR ENTRY OF FINAL JUDGMENT**