ATKINSON, ANDELSON, LOYA,
RUUD & ROMO
A Professional Law Corporation
Ruth M. Bond        (SBN 214582)
    Ruth.Bond@aalrr.com
Rahi Azizi          (SBN 274800)
    Rahi.Azizi@aalrr.com
Jonathan A. McMahon    (SBN 239370)
    Jon.McMahon@aalrr.com
3 Harbor Drive, Suite 200
Sausalito, California 94965-1491
Telephone:  (628) 234-6200
Fax:  (628) 234-6899

Farimah Faiz Brown, City Attorney  (SBN 201227)
Laura Iris Mattes, Deputy City Attorney  (SBN 310594)
Katrina Eiland, Deputy City Attorney (SBN 275701)
BERKELEY CITY ATTORNEY'S OFFICE
2180 Milvia Street, Fourth Floor
Berkeley, CA 94704
Telephone: (510) 981-6997
Facsimile:  (510) 981-6960
Email:  LMattes@berkeleyca.gov
        Keiland@berkeleyca.gov

Attorneys for Defendants
CITY OF BERKELEY, ET AL.

**EXEMPT FROM FEES
(PER GOV. CODE § 6103)**

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERKELEY HOMELESS UNION, ADRIEN BOUCHARD, NICHOLAS JOHNSON AND FRANK MOORE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BERKELEY, THOMAS GREGORY, PAUL BUDDENHAGEN, PETER RADU, OKEYA VANCE-DOZIER, RASHI KESERWANI, DOES 1-10,<br><br>Defendants. | Case No.        3:25-CV-01414-EMC<br><br>**DEFENDANTS' REPLY TO OPPOSITION TO MOTION FOR ENTRY OF FINAL JUDGMENT UNDER FEDERAL RULES OF CIVIL PROCEDURE 54 AND 58, OR IN THE ALTERNATIVE, FOR ENTRY OF PERMANENT INJUNCTION AND/OR RULE 54(B) CERTIFICATION**<br><br>Judge: Hon. Edward M. Chen<br><br>Date:  July 16, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 5<br><br>Complaint Filed:        February 11, 2025 |

- 1 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................ 6

II.   ARGUMENT ....................................................................................................... 7

      A.    BHU Has Not Identified An Unresolved Claim That Prevents Rule 58
            Judgment ................................................................................................... 7

            1.    The 16 Later, Unbriefed ADA Requests Are Not Pleaded Claims
                  Awaiting Trial ................................................................................. 8

            2.    The California Constitutional Counts Restate Federal Theories the
                  Court Already Decided .................................................................... 9

            3.    The ADA-Compliant-Shelter Request Was Adjudicated in Relief
                  Category #1 ................................................................................... 10

            4.    The Section 11135 Count Tracks the Adjudicated Title II Claim ............ 10

            5.    Austin White's Animal Request Was Held Unripe, Not Reserved for
                  Trial. ............................................................................................. 11

            6.    The Citywide and Serial-Eviction Theory Is Not a Separate Claim,
                  and Was Resolved or Held Unripe ................................................. 11

            7.    The Procedural "Opportunity to Appeal" Theory Was Adjudicated
                  Together with the Merits ............................................................... 12

      B.    Ongoing Compliance Oversight Does Not Defeat Finality ................................. 13

      C.    The Motion Is a Proper Request Under Rule 58, Not a Premature or
            Untimely Dispositive Motion .................................................................. 15

      D.    The Pending Interlocutory Appeals Do Not Bar Entry of Judgment .................... 17

      E.    Rule 54(b) Relief Remains Appropriate in the Alternative ................................. 19

III.  CONCLUSION ................................................................................................... 21

57395530.2/

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*ACF Indus., Inc. v. Cal. State Bd. of Equalization*
42 F.3d 1286 (9th Cir. 1994)...................................................................................21

*Armstrong v. Brown*
857 F.Supp.2d 919 (2012).......................................................................................21

*Biscovich v. Sharkninja Operating, LLC*
2026 WL 657194 (N.D. Cal. Feb. 26, 2026)...........................................................21

*Catlin v. United States*
324 U.S. 229 (1945).................................................................................................21

*Curtiss-Wright Corp. v. Gen. Elec. Co.*
446 U.S. 1 (1980).....................................................................................................21

*Fed. Ins. Co. v. Scarsella Bros., Inc.*
931 F.2d 599 (9th Cir. 1991).....................................................................................8

*Griggs v. Provident Consumer Disc. Co.*
459 U.S. 56 (1982)...................................................................................................21

*Jensen v. Thornell*
2023 WL 2838040 (D. Arizona April 7, 2023)........................................................21

*Jewel v. National Security Agency*
810 F.3d 622 (9th Cir. 2015)...................................................................................21

*Melendres v. Skinner*
113 F.4th 1126 (9th Cir. 2024)................................................................................21

*Mt. Graham Red Squirrel v. Madigan*
954 F.2d 1441 (9th Cir. 1992).................................................................................21

*Nat. Res. Def. Council, Inc. v. Sw. Marine, Inc.*
242 F.3d 1163 (9th Cir. 2001).................................................................................21

*NetChoice v. LLC v. Bonta*
152 F.4th 1002 (9th Cir. 2025)..................................................................................9

*Plotkin v. Pac. Tel. & Tel. Co.*
688 F.2d 1291 (9th Cir. 1982).................................................................................21

*Rodriguez v. Cty. of Los Angeles*
891 F.3d 776 (9th Cir. 2018)...................................................................................21

*SEC v. Platforms Wireless Int'l Corp.*
617 F.3d 1072 (9th Cir. 2010).................................................................................21

*Stillaguamish Tribe of Indians v. Washington*
102 F.4th 955 (9th Cir. 2024) (Bress, J., concurring)............................................21

TABLE OF AUTHORITIES

57395530.2/

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page**

*U.S. Postal Serv. v. Am. Postal Workers Union*
    893 F.2d 1117 (9th Cir. 1990)............................................................................................... 8

*United Farm Workers v. Noem*
    2026 WL 892070 (E.D. Cal. March 11, 2026)....................................................................... 21

*Warth v. Seldin*
    422 U.S. 490 (1975) ............................................................................................................... 9

**STATE CASES**

*Security–First Nat. Bank v. Superior Ct.*
    132 Cal.App. 683, 23 P.2d 1055 .......................................................................................... 21

*Zappettini v. Buckles*
    167 Cal. 27, 138 P. 696 ........................................................................................................ 21

**FEDERAL CODES/STATUTES**

28 U.S.C. § 1291 ......................................................................................................................... 21

28 U.S.C. § 1291(a) ..................................................................................................................... 21

ADA ....................................................................................................................................... 6,8,10,21

**STATE CODES/STATUTES**

Gov't Code § 11135................................................................................................................... 6,10

**OTHER AUTHORITIES**

Amendments and Article I, §§ 7(a) and 13 of the California Constitution.................................... 8

Fed. R. Civ. P. 12(c).................................................................................................................... 21

Fed. R. Civ. P. 23 ........................................................................................................................ 9

Fed. R. Civ. P. 54 ........................................................................................................................ 21

Fed. R. Civ. P. 54(a).................................................................................................................... 21

Fed. R. Civ. P. 54(b) ................................................................................................................. 6,21

Fed. R. Civ. P. 56 ........................................................................................................................ 21

Fed. R. Civ. P. 56(b) ................................................................................................................... 21

Fed. R. Civ. P. 58 ...................................................................................................................... 6,7,21

Fed. R. Civ. P. 58(d) .................................................................................................................... 21

Fed. R. Civ. P. 62.1 ..................................................................................................................... 21

TABLE OF AUTHORITIES

57395530.2/

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page**

Fed. R. Civ. P. 62.1(a)...................................................................................................................... 21

TABLE OF AUTHORITIES

57395530.2/

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

## I.    INTRODUCTION

BHU's Opposition confirms the need for a final judgment, or at minimum Rule 54(b) certification. BHU does not identify any factual issue the Court reserved for trial. Instead, BHU relies on categories that do not defeat finality: (1) state-law captions in the FAC that mirror the same federal theories and seek the same injunctive relief the Court already adjudicated; (2) ADA accommodation requests submitted by nonparty individuals *after* the lawsuit was filed that were not briefed in the cross-motions; (3) the citywide and "serial eviction" theory, which the Court addressed expressly held could be a potential future claim that is not ripe; and (4) hypothetical and speculative future disputes over implementation. None prevents entry of judgment under Rule 58. And if the Court concludes that any pleaded claim technically remains unresolved, those same points establish why the adjudicated claims should be certified under Rule 54(b).

The FAC does not support BHU's premise that this case still contains unadjudicated claims. The FAC is a complaint for injunctive relief only. (Dkt. 62.) Its six causes of action plead three substantive theories: state-created danger, property seizure, and disability discrimination. The federal state-created-danger and Fourth Amendment causes of action have state constitutional analogues. (Dkt. 62 ¶¶ 98-128.) The ADA claim has a Government Code section 11135 analogue. (*Id*. ¶¶ 129-145.) Furthermore, the Prayer requests the same injunctive relief under the federal and state labels: restrictions on property seizure, restrictions on removal absent shelter or housing, and restrictions on disability discrimination in City programs. (*Id*. at 36-37.)

The April 3, 2026 MSJ Order resolved the merits of the claims and categories of relief before the Court and ripe for adjudication, and it left no factual issue reserved for trial. The Court described BHU's action as one for injunctive relief, "claiming that the City is discriminating against persons with disabilities in violation of the [ADA], unlawfully seizing property in violation of the Fourth Amendment and Fourteenth Amendments, and violating the state-created danger doctrine," citing FAC ¶¶ 98-145—the paragraphs containing all six causes of action. (Dkt. 288 at 1:19-23.) It described the cross-motions as concerning "the merits of: (1) seven BHU members' disability discrimination claims under the ADA, and (2) the constitutional property seizure and state-created danger claims asserted on behalf of all BHU members residing in the Encampment." (*Id*. at 2:5-9.)

- 6 -

The Court held that the City violated Title II only in certain respects, that specified vehicle and sidewalk enforcement would violate the Fourth and Fourteenth Amendments absent compliance with the Court's framework, and that the Court "otherwise rejects BHU's remaining claims." (*Id*. at 2:9-16.) The Court dismissed the only individual plaintiff, Frank Moore, for failure to prosecute. (*Id*. at 1 n.1.) The Court also set out by category the relief for each claim. (*Id*. at 71-74.)

Thus, the Court has adjudicated the merits of all of BHU's claims. BHU cannot avoid judgment by recasting state-law analogues or citing hypothetical implementation disputes, potential future claims, or nonparty accommodation requests.  None of these represents an unresolved, ripe claim requiring a trial, and the Court would retain jurisdiction to enforce its order even after final judgment.

BHU's effort to distinguish its Ninth Circuit Answering Brief, in which it took the exact contrary position—i.e., that the pending appeal of the Court's preliminary injunction is moot because the Court has decided the case on the merits—does not change the analysis. The City does not ask the Court to enter judgment merely based on BHU's appellate concession. Rather, the City merely points out that the position BHU took on appeal is consistent with the City's motion for final judgment and in tension with BHU's present assertion that merits issues remain for trial. In other words, the *rationale* underlying BHU's contention in its Answering Brief as to why the appeal is moot supports entry of judgment here.   Accordingly, the City's motion should be granted.

## II.   ARGUMENT

### A.    BHU Has Not Identified An Unresolved Claim That Prevents Rule 58 Judgment

BHU's principal argument is that the MSJ Order did not decide every theory BHU says can be inferred from or read into the FAC. But the Court's own description of the case, the issues, the parties' own arguments in favor of or opposition to the Motions for Summary Judgment and Preliminary Injunctions, and the ultimate disposition from the Court controls. The Court described BHU's operative claims as seeking injunctive relief based on alleged disability discrimination under Title II of the ADA, property seizure under the Fourth and Fourteenth Amendments, and state-created danger. (Dkt. 288 at 1:19-23.) The Court then adjudicated those theories as applied to the abatement framework and the categories of relief BHU requested *(id*. at 2:5-16, 71-74) and

- 7 -

REPLY TO OPPOSITION TO MOTION FOR ENTRY OF FINAL JUDGMENT

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

57395530.2/

"otherwise reject[ed] BHU's remaining claims." (*Id*. at 2:15-16.) Where a decision resolves all issues necessary to establish the parties' legal rights and duties, finality is not defeated by a party's later assertion that some label or subsidiary theory was not separately discussed. (*Fed. Ins. Co. v. Scarsella Bros., Inc*., 931 F.2d 599, 601 (9th Cir. 1991); *U.S. Postal Serv. v. Am. Postal Workers Union*, 893 F.2d 1117, 1119 (9th Cir. 1990).)

BHU's Prayer for Relief confirms that the Court resolved everything BHU requested. The FAC asks for injunctions prohibiting property seizure under the Fourth and Fourteenth Amendments and Article I, sections 7(a) and 13 of the California Constitution; removal absent adequate housing or shelter under the Fourteenth Amendment and Article I, section 7(a); and disability discrimination under Title II and section 11135. (Dkt. 62 at 37.) The MSJ Order addressed each of those requested categories of injunctive relief. It held, among other things, that the City may proceed with abatement without first securing non-congregate housing or shelter placements; that the City need not designate enforcement-free zones, City-sanctioned campsites, or maps of permissible relocation areas; that the City must comply with specific vehicle, sidewalk-space, relocation-assistance, storage, and replacement-property requirements; that the City need not install or maintain individualized sanitation or utility infrastructure; and that the City must honor, but need not expand, its documented communication commitments. (Dkt. 288 at 71-74.) BHU's state-law labels do not change the fact that the Court already decided what injunctive relief BHU's successful claims entitle it to receive.

BHU's opposition nonetheless enumerates seven matters it contends the Court's orders left unresolved. Taken in turn, none is a claim that remains for trial; the Court resolved each one or expressly held it to be unripe.

### 1. *The 16 Later, Unbriefed ADA Requests Are Not Pleaded Claims Awaiting Trial*

The 16 later ADA requesters do not prevent judgment. The Court expressly declined to resolve those individuals' ADA accommodation claims in the MSJ Order because their claims "were not briefed by the parties in relation to the cross-motions for summary judgment." (Dkt. 288 at 6 n.5.) That does not mean a pleaded claim remains for trial. First, those individuals are not named parties. Second, the Court further stated that "the rights of these 16 individuals and other similarly situated will be informed by the analysis herein." (*Id*.) And the Court separately addressed BHU's

- 8 -

57395530.2/

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

request for preliminary relief as to those individuals in the PI Order, applying the legal framework established in the MSJ Order, and granted that preliminary relief "[p]ending final judgment." (Dkt. 289.) There is nothing left for the Court to decide regarding these purely legal questions.  At most, the 16 requests raise implementation or compliance issues governed by the Court's merits rulings that can be resolved even after final judgment. They do not undo the final adjudication of the claims that were pleaded, briefed, and decided.

Indeed, if the Court were to keep the case open on this basis—to adjudicate the future, unripe claims of yet unidentified nonparties—what would stop BHU from demanding that the Court adjudicate future nonparty BHU members' post-hoc interactive process requests ad infinitum? To permit BHU to interject the individualized claims of its nonparty members into the action, without limit, would violate basic standing principles requiring those seeking individualized relief to file their own lawsuits and establish that their claims are ripe for adjudication or meet the stringent requirements of Rule 23.

Such an outcome would stretch the concept of associational standing beyond recognition, allowing BHU to have its cake and eat it too—to not only obtain wider collective relief as an association as to broadly-applicable City policies, but also bootstrap individualized relief on behalf of specific requesters, in perpetuity, without those individuals' claims being subject to dismissal or settlement. (*See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."); *NetChoice v. LLC v. Bonta*, 152 F.4th 1002, 1013 (9th Cir. 2025) (citing third and prudential requirement of associational standing that association must show that "neither the claim asserted nor the relief requested 'requires individualized proof.'").) Such an unprecedented outcome would turn the doctrine of standing on its head.

### 2. *The California Constitutional Counts Restate Federal Theories the Court Already Decided*

BHU's state-law claims under the California Constitution do not require a trial. BHU identifies the California Constitution counts at FAC paragraphs 116-119 and 125-128. Those are not factually distinct claims seeking different relief. The California due-process count under Article

- 9 -

I, section 7(a) repeats the state-created-danger theory and alleges the same danger from the City's asserted policy and practice of removing unhoused people and their property. (Dkt. 62 ¶¶ 116-119.) The California search-and-seizure count under Article I, section 13 repeats the property-seizure theory and alleges the same asserted policy and practice of seizing and destroying unhoused people's belongings. (Id. ¶¶ 125-128.) The FAC itself pleads the state due-process protection as "at least as expansive as" its federal counterpart (id. ¶ 117), and seeks the same injunctive relief under both the federal and state labels (id. at 37). Even where the FAC asserts that the state charter is more protective (id. ¶ 126), BHU identifies no state-law-specific factual issue, remedy, witness, or trial issue that the Court reserved. The Court adjudicated the underlying state-created-danger and property-seizure theories on the merits, and that disposition governs the state analogues.

### 3.    *The ADA-Compliant-Shelter Request Was Adjudicated in Relief Category #1*

BHU's ADA-compliant-shelter argument is not an unresolved claim. The FAC alleged that the City failed to provide ADA-compliant shelter alternatives. (Dkt. 62 ¶¶ 11-12, 29, 60, 74-75; *see id.* at Prayer ("Accessible Shelter and Stability").) The MSJ Order directly adjudicated that issue in Relief Category #1, granting summary judgment for the City on BHU's request for an indefinite pause on abatement, a right to remain in place, and guaranteed non-congregate housing or specific shelter placements. The Court held that the City may proceed with abatement without first securing non-congregate housing or shelter placements for BHU members and that BHU members are not entitled to remain in place pending housing availability. (Dkt. 288 at 71.)

### 4.    *The Section 11135 Count Tracks the Adjudicated Title II Claim*

BHU's claim under California Government Code section 11135 fails for the same reason as its California constitutional claims. The section 11135 count repeats the disability-discrimination theory and alleges that section 11135 is "intended to prohibit all forms of discrimination prohibited under Title II of the" ADA. (Dkt. 62 ¶¶ 142-145; *see id.* ¶ 143.) BHU thus pleads section 11135 as tracking the Title II claim that the Court adjudicated, and identifies no section 11135-specific factual issue, remedy, or trial issue the Court reserved. As with the California constitutional analogues, the Court's resolution of the federal theory governs. The point is not that the federal and state provisions are textually identical in every respect; it is that BHU identifies no distinct state-law factual

- 10 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

predicate, remedy, witness, or trial issue that was reserved after the Court adjudicated the same requested injunctive relief category by category.

**5.    *Austin White's Animal Request Was Held Unripe, Not Reserved for Trial.***

Austin White's animal-related request does not defeat finality. The Court found that "[t]he claim is not yet ripe" because "[t]here is no indication that the City intends to separate Mr. White from his animals." (Dkt. 288 at 74:14-16.) An unripe claim is not a pending merits issue awaiting trial; it is outside the Court's present adjudicatory authority unless and until a concrete dispute arises. (*Biscovich v. Sharkninja Operating, LLC*, 2026 WL 657194, at *2-3 (N.D. Cal. Feb. 26, 2026).) If the Court believes the judgment should expressly dispose of that request, the proper disposition is dismissal without prejudice for lack of ripeness, or a judgment stating that no relief is granted on that request absent a ripe dispute. It is not a reason to deny judgment on all adjudicated claims.

**6.    *The Citywide and Serial-Eviction Theory Is Not a Separate Claim, and Was Resolved or Held Unripe***

BHU's citywide-policy and "serial eviction" theory likewise does not leave a pending claim for trial. As a threshold matter, the citywide allegations are not a separate cause of action. The FAC pleads six causes of action; the citywide policy-and-custom allegations (FAC ¶¶ 100-103; *see id*. ¶ 101) appear within the First Cause of Action for state-created danger and are incorporated by reference into every cause of action (*id*. ¶¶ 98, 116, 120, 125, 129, 142). They are a theory of liability within the state-created-danger and property-seizure claims, not a freestanding claim BHU can carve out as unadjudicated.

Moreover, the Court resolved those causes of action, and to the extent BHU's citywide allegations seek relief the Court did not grant, the Court "otherwise reject[ed] BHU's remaining claims." (Dkt. 288 at 2:15-2:16.) That disposition is not a mere catchall. The Court rejected BHU's state-created-danger theory on the merits, holding that "[t]he fundamental problem with BHU's argument on state-created danger arising from abatement is that it conflates dangers inherent in living without shelter with dangers created by the City," because abatement "displaces individuals who are already unsheltered from one location to others" rather than creating a new danger. (Dkt. 288 at 41:18-41:24.) While applied to the Harrison Encampment, that reasoning is not specific to

- 11 -

57395530.2/

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

any single location; it defeats the premise of BHU's citywide displacement theory wherever the displacement occurs.

To the extent the reach of the "otherwise rejects" disposition is not obvious, the result is the same. The only citywide dimension the Court left open is a future "pattern of serial enforcement actions against relocated residents" across "multiple locations," and the Court held that any such claim "is not ripe" and "reserve[d] judgment on whether [it] could, on a more developed record, give rise to a viable ADA or constitutional claim." (Dkt. 288 at 71-72; *see id*. at 44:25-44:27 (noting that "should the City engage in serial evictions after residents move from the Encampment, that could, at some point, give rise to a legal claim," but that "such a claim is not ripe").) An unripe claim does not remain pending for trial. As the City's motion explained, ripeness goes to subject-matter jurisdiction, and an unripe claim must be dismissed without prejudice, not held for trial. (*Biscovich, supra,* 2026 WL 657194, at *2-3.) Regardless of whether the citywide theory was rejected on the merits as part of the adjudicated causes or, in its only reserved dimension, held unripe, there is no presently triable claim.

### 7. *The Procedural "Opportunity to Appeal" Theory Was Adjudicated Together with the Merits*

BHU's reference to a meaningful opportunity to appeal accommodation denials does not identify a live trial issue. The Court addressed BHU's procedural ADA arguments, including the adequacy of the interactive process, the authority to issue final determinations, and the individualized nature of the City's determinations. (Dkt. 288 at 22-24.) It held that "process deficiencies do not independently supply a basis for liability where no reasonable accommodation was improperly denied," and it resolved process issues in conjunction with the merits of the requested accommodations. (*Id*.) BHU cannot transform those adjudicated procedural theories into a remaining claim simply by citing the FAC's Prayer for Relief.

If the Court concludes otherwise (*i.e.*, if the Court believes any state-law label, later accommodation request, or procedural theory technically remains outside the MSJ Order) that does not justify denying the motion in full. It means the Court should enter Rule 54(b) judgment as to the adjudicated claims and categories of relief, or expressly clarify the disposition of the duplicative

- 12 -

REPLY TO OPPOSITION TO MOTION FOR ENTRY OF FINAL JUDGMENT

57395530.2/

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

state-law theories in the final judgment.

**B.      Ongoing Compliance Oversight Does Not Defeat Finality**

BHU next argues that judgment is impossible because the Court's framework requires vehicle-specific determinations, individualized sidewalk-space assessments, relocation assistance, storage, and replacement of certain essential survival property, and because the Court "retained jurisdiction to enforce compliance." This argument fundamentally misunderstands finality in an injunctive case, and it conflates two different things: a court's retention of jurisdiction to supervise and enforce compliance with an injunction, which is a routine incident of equitable relief and fully consistent with finality, and the reservation of an unresolved claim for future adjudication, which is not present here.

An injunction necessarily governs future conduct. Rule 54(a) defines "judgment" to include a "decree," and final injunctive decrees routinely require compliance, monitoring, and enforcement. If the need to comply with an injunction—or a court's retention of jurisdiction to police that compliance—defeated finality, no permanent injunction could ever be a final judgment. A district court's retention of jurisdiction to oversee compliance with an injunctive decree does not render the underlying judgment non-final. Indeed, district courts routinely retain jurisdiction to oversee compliance with a permanent injunction that has issued. *(See, e.g., Armstrong v. Brown*, 857 F.Supp.2d 919, 948-949 (2012) ("a district court has continuing jurisdiction in support of its judgment, and until the judgment has been properly stayed or superseded, the district court may enforce it"); *Jensen v. Thornell*, 2023 WL 2838040 at *5 n. 6 (D. Arizona April 7, 2023) ("it has long been settled the Court will automatically retain jurisdiction to monitor and enforce the terms of the Permanent Injunction," citing the Supreme Court's recognition that this power is "'inherent in the Court's jurisdiction.'"); *United Farm Workers v. Noem*, 2026 WL 892070 at *20 (E.D. Cal. March 11, 2026) ("generally, a trial court retains jurisdiction to enforce and supervise compliance with the terms of an injunction it entered, even during the pendency of an appeal"); *see also Stillaguamish Tribe of Indians v. Washington*, 102 F.4th 955, 965 (9th Cir. 2024) (Bress, J., concurring) ("when a district court retains jurisdiction over future proceedings following its issuance of an injunction, its continuing jurisdiction derives from its equitable power"); *Melendres*

- 13 -

REPLY TO OPPOSITION TO MOTION FOR
ENTRY OF FINAL JUDGMENT

57395530.2/

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

*v. Skinner*, 113 F.4th 1126, 1132-34 (9th Cir. 2024) (exercising jurisdiction under 28 U.S.C. § 1291(a) and discussing the district court's "inherent equitable powers" to issue subsequent supplemental injunctions, "remedy past wrongs," and "equitable authority to modify its injunctions in light of changed circumstances.").)

BHU's attempt to argue that the MSJ Order's statement that the Court "retains jurisdiction to evaluate compliance with this framework on a vehicle-by-vehicle basis" is refuted by the Court's own words. (Dkt. 288 at 72.) The Court retained jurisdiction to evaluate compliance (*i.e.*, to enforce the orders it entered), not to adjudicate an unresolved claim. The Court already decided what the City may do, what it may not do, and what process and accommodations are required before specified enforcement actions occur. (Dkt. 288 at 71-74.) Vehicle-by-vehicle and location-by-location determinations are the way the City complies with that final framework. They are execution of the judgment, not merits issues for a future trial.

The California appellate authorities BHU cites do not change the analysis. Rather, the cases cited by BHU support the City's argument. Quoting these authorities, BHU's Opposition notes, "'The general test applicable in determining whether a judgment is final or merely interlocutory therefore, is that if anything further in the nature of judicial action on the part of the court is essential to a ***final determination of the rights of the parties***, the judgment is interlocutory only. But if no further questions can come before the court after a judgment has been entered, ***except such as are necessary to be determined in carrying the judgment into effect***, the judgment is final.'" (Dkt. 306 at 8:25-9:2 (emphasis added) (*citing Zappettini v. Buckles*, 167 Cal. 27, 138 P. 696; *Security–First Nat. Bank v. Superior Ct.*, 132 Cal.App. 683, 23 P.2d 1055).) The MSJ Order made a final determination of the rights of the parties, and the only questions that remain relate to how that final determination is carried into effect. By the definition *cited by BHU*, the MSJ Order is final.

Furthermore, as explained in the City's motion, federal law governs the finality of a federal judgment for purposes of Section 1291, and under that standard a decision is final when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." (*Catlin v. United States*, 324 U.S. 229, 233 (1945).) The MSJ Order does exactly that and BHU's own authority refutes its position.

- 14 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

The test BHU quotes treats a judgment as final so long as the only matters that may later come before the court are "such as are necessary to be determined in carrying the judgment into effect." That is precisely what the Court's compliance determinations are. A later dispute over the City's compliance with the framework would be an enforcement dispute, not an unresolved claim.

**C.** **The Motion Is a Proper Request Under Rule 58, Not a Premature or Untimely Dispositive Motion**

BHU next makes the spurious argument that the City somehow "jumped the gun" because it filed its Motion for Summary Judgment three months before the close of discovery. FRCP 56(b), however, simply sets a deadline for when a summary judgment motion must be filed. [1] It does not, nor does any authority cited by BHU, state that a party must wait to file such a motion until that deadline. More importantly, FRCP 56(b) sets the deadline for filing a motion for summary judgment as 30 days after the close of discovery "[u]nless a different time is set by local rule or the court orders." (FRCP 56(b).) The Court's January 13, 2026 Order Setting Summary Judgment Briefing Schedule (Dkt. 202) did just that, and set the deadline for January 29, 2026—exactly the date on which the City filed its motion.

What is most troubling is BHU's mischaracterization of the Court's January 13, 2026 order. (*Compare* Dkt. 306 at pp. 9:8-11:7 *with* Dkt. 202.) In its Opposition, BHU contends that, "The court ordered cross motions on summary judgment on six discrete issues all relating to the interactive process for disability accommodations, with opening briefs on those six issues." (Dkt. 306 at pp. 9:8-9:14.) The Court's Order Setting Summary Judgment Briefing Schedule did no such thing. (*See* Dkt. 202.) The Court's January 13, 2026 order stated, "The Court has reviewed the parties' Joint Status Report (Dkts. 194, 200) regarding completion of the interactive process proceedings. The parties continue to dispute the reasonableness and feasibility of certain accommodations requested by Plaintiffs and the adequacy of the City's explanations for denying them. The Court directs the parties to file cross-motions for summary judgment. The motions shall

---

[1] BHU's Opposition continually cites to FRCP, rule "54(b)" which does not govern briefing for motions for summary judgment. (*See, e.g.*, Dkt. 306 at p. 9:8-9:10.) The correct rule governing summary judgment briefing is rule 56, which is the citation used by the City herein.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

address, *inter alia*, the following matters [].” (Dkt. 202 at p. 1:13-1:17.) The order then identified the six matters that the parties’ briefing was required to address. (*Id*. at pp. 1:18-3:7.) ***Nowhere in the order did it state that the briefing was limited to these six topics***. (Dkt. 202.) Furthermore, the order specifically directs the parties to file cross-motions for “summary judgment,” not “partial summary judgment” or “summary adjudication.” (*Id*. at pp. 1:16-1:17, 3:7-3:8.) Finally, the order set a briefing schedule. (*Id*. at p. 3:7-3:11.)

To remove any doubt, the transcript of the January 13, 2026 status conference confirms that the Court intended to resolve the entire matter. The Court explained its intentions during the proceeding: “I think we’ve spent enough time now going back and forth. I was hoping something would get resolved, but apparently, you know, a little was resolved, and so ***I need to adjudicate this thing, and I think this is adjudicatable on a summary judgment***, maybe a cross-motion for summary judgment.” (Dkt. 205 at 4:21-4:25 (emphasis added).) Later, the Court stated: “We’re going to set it [for a summary judgment hearing]. I’m the judge. We’re going to set it. We’re going to cross – here’s what we’re going to do: ***We’re going to resolve this by summary judgment***. If you want to bring a motion to resolve the injunction, you can do that. You have to bring that by motion. But, ***I'm expediting summary judgment so we can get this thing closed one way or another***.” (Dkt. 205 at 9:13-9:19 (emphasis added.) During the status conference, the Court could not have been clearer: it intended to fully resolve this matter.

BHU’s Opposition also repeatedly characterizes the City’s motion as a late dispositive motion, a Rule 12(c) motion, or an attempt to expand the summary-judgment briefing after the fact. It is none of those. Rule 58(d) expressly permits a party to request that judgment be set out in a separate document. The City is not asking the Court to decide new merits issues. It is asking the Court to enter the judgment that follows from the merits rulings already made.

This motion is not a dispositive motion, and no dispositive-motion deadline governs a Rule 58 request to reduce existing rulings to a separate judgment. If anything, the fact that the deadline for filing dispositive motions has passed cuts against BHU. By its own account, the dispositive-motion deadline came and went and neither party moved for summary judgment on any supposedly unresolved claim, which confirms that nothing remains to be adjudicated by motion. Nor does the

- 16 -

City's citation of *Biscovich*, 2026 WL 657194 (N.D. Cal. February 26, 2026), convert its motion into an untimely motion for judgment on the pleadings. The City cited *Biscovich* only for the narrow, jurisdictional proposition that an unripe claim must be dismissed.

The Court received full briefing from both parties on cross-motions for summary judgment, and it issued a 74-page merits order that dismissed the only individual plaintiff, adjudicated BHU's ADA, property-seizure, and state-created-danger theories category by category, granted and denied relief, and "otherwise reject[ed] BHU's remaining claims." (Dkt. 288.) The question now is not if the City may file another dispositive motion; it is whether the existing merits order should be reduced to a separate judgment. Rule 58 answers yes. The MSJ Order resolved all triable claims and relief, and Rule 58 supplies the procedural mechanism for entering the required separate judgment.

**D.      The Pending Interlocutory Appeals Do Not Bar Entry of Judgment**

BHU's Rule 62.1 argument is overbroad. Rule 62.1 is a procedural mechanism that allows a district court to issue an indicative ruling when a pending appeal prevents the district court from granting requested relief; it does not itself expand the scope of appellate divestiture or bar all further district-court action. A notice of appeal divests the district court only of control over "those aspects of the case involved in the appeal." (*Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).) Rule 62.1 applies only where a timely motion seeks relief the district court "lacks authority to grant because of an appeal that has been docketed and is pending." (Fed. R. Civ. P. 62.1(a).) It presupposes, but does not establish, that the requested relief is barred by the pending appeal.

That threshold condition is not satisfied here. The pending interlocutory appeals concern the scope, duration, and continued effect of preliminary injunctive relief. They do not deprive this Court of authority to proceed with other stages of the case or to enter a separate judgment reflecting merits rulings already made in the MSJ Order. (*See Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982) (district court retained jurisdiction to enter summary judgment while appeal from denial of preliminary injunction was pending); *see also ACF Indus., Inc. v. Cal. State Bd. of Equalization*, 42 F.3d 1286, 1292 n.4 (9th Cir. 1994).)

The Court's PI Order does not support BHU's contrary argument. There, the Court stated that an indicative ruling under Rule 62.1 would be the proper vehicle to dissolve or modify the

- 17 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

preliminary injunction then on appeal. (Dkt. 289 at 2.) The City's primary request here does not ask the Court to dissolve or modify that appealed injunction. It asks the Court to enter the separate judgment contemplated by Rules 54 and 58 based on the Court's merits adjudication. Indeed, the PI Order itself recognized that "by the ruling on the parties' cross-motions for summary judgment, the effect of the First Preliminary Injunction has effectively been rendered moot," and it granted the remaining preliminary relief only "[p]ending final judgment." (Dkt. 289 at 2, 15.) Entry of judgment is therefore the next procedural step contemplated by the Court's own orders, not a modification of an injunction requiring Rule 62.1.

BHU's prediction that entry of judgment would create appellate "chaos" is also mistaken. A merits judgment does not improperly interfere with a preliminary-injunction appeal; it ordinarily supersedes it. Once the merits are adjudicated, appellate review of a preliminary ruling often becomes moot because reversal of the preliminary ruling would have no practical consequence. (*See Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1450 (9th Cir. 1992).) That is precisely what the PI Order recognized when it held that the First Preliminary Injunction had effectively been rendered moot by the MSJ Order. (Dkt. 289 at 2.) Entry of final judgment would permit appellate review on a complete merits record and avoid, rather than create piecemeal litigation.

Nor can BHU reconcile its present position with the position it took in the Ninth Circuit. There, BHU argued that the City's preliminary-injunction appeal was moot because "the District Court has decided the merits." Having argued that the merits ruling mooted the preliminary-injunction appeal, it is disingenuous for BHU to now argue that the same pending appeal prevents this Court from entering judgment on the merits.

BHU's Rule 58(d) objection also misstates the City's request. The City is not asking the Court to use Rule 58(d) itself as the substantive source of permanent injunctive relief. Rule 58 supplies the separate-judgment procedure. The substantive basis for any permanent injunctive relief would be the Court's merits adjudication in the MSJ Order, which determined where BHU succeeded, where it failed, and what prospective restrictions govern the City's abatement operations. If the Court concludes that a separate permanent injunction is necessary to implement those merits determinations before judgment enters, the Court may enter a final equitable decree reflecting the

- 18 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

MSJ Order. That decree need not, and should not, be understood as adjudicating the individual merits of later ADA requests the Court expressly declined to resolve at summary judgment.

At most, Rule 62.1 could be relevant to the City's alternative request if converting the PI Order into permanent injunctive relief would modify an injunction that is on appeal. The divestiture rules, however, are merely prudential, not jurisdictional, and designed to ensure appellate efficiency, which granting final judgment would allow for here. (*Nat. Res. Def. Council, Inc. v. Sw. Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (the rule divesting the trial court of authority "over the matters being appealed" is not jurisdictional; it is "judge-made" and "not [] absolute."); *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 790-91 (9th Cir. 2018) (the divestiture rule is not jurisdictional and does not "deprive a court of the power to act.".) [2]

Moreover, the Court could still grant the City's primary request for entry of judgment under Rule 58, certify adjudicated claims under Rule 54(b), or state under Rule 62.1 that it would enter permanent injunctive relief if the Ninth Circuit remands for that purpose. The pending interlocutory appeals are not a jurisdictional bar to entry of judgment on the merits.

**E.     Rule 54(b) Relief Remains Appropriate in the Alternative**

In the alternative, if the Court concludes that any claim remains unresolved, Rule 54(b) certification is appropriate. Rule 54(b) permits entry of judgment as to "one or more, but fewer than all, claims or parties" if the Court expressly determines there is no just reason for delay. (Fed. R. Civ. P. 54(b).) A properly entered Rule 54(b) judgment is final for purposes of 28 U.S.C. § 1291. (*SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1084-85 (9th Cir. 2010).)

The relevant factors favor certification. In determining whether there is "no just reason for delay," a court considers both the interests of sound judicial administration and the equities, including whether the adjudicated claims are separable from any matters remaining below and whether an appellate court would have to decide the same issues more than once. (*Curtiss-Wright*

---

[2] Indeed, on June 16, 2026, the Ninth Circuit granted the City's motion to consolidate the pending appeals in this case, including the City's appeal of the MSJ Order. (9th Cir. No. 26-2755, 06/16/2026, Dkt. 20.1.) Once judgment is entered, the City can simply seek to consolidate its appeal of the judgment as a procedural formality with the pending consolidated appeals. This would obviate the need for piecemeal review, avoid confusion, and streamline disposition of the appeals.

- 19 -

*Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980).) Here, the claims adjudicated in the MSJ Order, and the relief determinations resolving those claims, are fully developed and separable from the matters BHU now purports to identify. The MSJ Order establishes the legal framework governing the City's abatement operations, including vehicle enforcement, sidewalk-space limitations, relocation assistance, property storage and replacement, sanitation requests, notice, cognitive and communication accommodations, and BHU's state-created-danger theory. (Dkt. 288 at 71-74.) Any matters BHU identifies as supposedly unresolved are different in kind: later ADA accommodation requests by nonparty individuals, future citywide enforcement theories that the Court held unripe, duplicative state-law labels, or implementation disputes governed by the Court's framework.

There is no damages claim, counterclaim, or setoff issue that would be affected by entry of judgment. The public-health conditions and the Court's restrictions on abatement make appellate clarity important now. Certification would reduce, not increase, piecemeal litigation by allowing review of the legal framework that already governs the parties, rather than requiring appellate review of the same legal questions first on appeal of the PI Order and again after final judgment.

BHU's reliance on the general rule that Rule 54(b) certification is reserved for the unusual case does not change the result. This is not an ordinary multi-claim case involving overlapping damages, counterclaims, setoff, or unresolved factual issues that could alter the adjudicated relief. It is an injunctive-relief case in which the Court has already decided the operative merits framework governing the parties' conduct. Cases cautioning against Rule 54(b) certification therefore do not bar certification here. This is not a case like *Jewel v. National Security Agency*, 810 F.3d 622, 628 (9th Cir. 2015), where the certified issue was intertwined with issues remaining in the district court and an interlocutory appeal would only prolong final resolution. Here, any allegedly unresolved matters are either unripe, duplicative of adjudicated theories, or follow-on implementation issues. Certification would narrow the dispute and promote orderly appellate review of the merits ruling that already governs the parties' conduct. Accordingly, if the Court declines to enter final judgment under Rule 58, it should certify the adjudicated claims under Rule 54(b), expressly determine that there is no just reason for delay, and direct entry of judgment.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

Case No.: 3:25-CV-01414-EMC                REPLY TO OPPOSITION TO MOTION FOR
                                           ENTRY OF FINAL JUDGMENT

57395530.2/

### III.    CONCLUSION

For the foregoing reasons and those set forth in its moving papers, the City respectfully requests that the Court grant its motion and enter judgment pursuant to Rule 58 or, in the alternative, certify the judgment as to all claims that have been adjudicated.

Dated: June 18, 2026          ATKINSON, ANDELSON, LOYA, RUUD & ROMO


By:    */s/ Ruth M. Bond*
Ruth M. Bond
Rahi Azizi

Attorneys for Defendants
CITY OF BERKELEY, THOMAS GREGORY, PAUL BUDDENHAGEN, PETER RADU, and OKEYA VANCE-DOZIER

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
3 HARBOR DRIVE, SUITE 200
SAUSALITO, CALIFORNIA 94965-1491
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

Case No.: 3:25-CV-01414-EMC          REPLY TO OPPOSITION TO MOTION FOR ENTRY OF FINAL JUDGMENT

57395530.2/

**CERTIFICATE OF SERVICE**

Case Name:    *Berkeley Homeless Union et al v. City of Berkeley et al*

No.:    3:25-CV-01414-EMC

On June 18, 2026, I filed the following document(s) described as **DEFENDANTS' REPLY TO OPPOSITION TO MOTION FOR ENTRY OF FINAL JUDGMENT UNDER FEDERAL RULES OF CIVIL PROCEDURE 54 AND 58, OR IN THE ALTERNATIVE, FOR ENTRY OF PERMANENT INJUNCTION AND/OR RULE 54(B) CERTIFICATION** electronically through the CM/ECF system.  All parties on the Notice of Electronic Filing to receive electronic notice have been served through the CM/ECF system.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 18, 2026, at Pasadena, California.

*/s/ Ashlie Kennedy*
Ashlie Kennedy

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

57395530.2/