United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERKELEY HOMELESS UNION, et al.,<br>Plaintiffs,<br>v.<br>CITY OF BERKELEY, et al.,<br>Defendants. | Case No. 25-cv-01414-EMC<br><br>**ORDER RE MOTION FOR FINAL JUDGMENT**<br><br>Docket Nos. 288, 289, 301 |

## I. INTRODUCTION AND BACKGROUND

On April 3, 2026, this Court granted in part and denied in part the cross-motions for summary judgment filed by Plaintiff Berkeley Homeless Union ("BHU") and Defendant City of Berkeley ("the City"). SJ Order (Dkt. 288). The SJ Order held that certain aspects of the City's enforcement of sidewalk-space limitations, its vehicle-related enforcement practices, and its denial of physical relocation assistance and property storage violated Title II of the Americans with Disabilities Act ("ADA") and that the City's enforcement practices concerning vehicles and tents used as shelter must conform to the constitutional framework set out in the Order. *Id.* The Court otherwise rejected BHU's claims, including its requests for an indefinite pause on abatement, guaranteed non-congregate shelter, enforcement-free zones, certain sanitation infrastructure, and extended notice of enforcement. *Id.*

That same day, the Court applied the SJ Order's holdings to sixteen additional Harrison Encampment residents whose accommodation requests had not been before the Court on summary judgment, granting them preliminary relief consistent with the SJ Order's framework. Order Denying Motion to Dissolve and Granting PI ("PI Order") (Dkt. 289).

Now, the Court resolves the City's motion for entry of judgment (Dkt. 301), provides

United States District Court
Northern District of California

additional detail regarding the applicability of the SJ Order's holdings, directs that the relief already afforded be extended, on a permanent basis, to all members of Berkeley Homeless Union ("BHU") throughout the City of Berkeley, and directs entry of judgment consistent with Federal Rule of Civil Procedure 58.

The Court assumes familiarity with the factual and procedural background set forth in the SJ Order and the PI Order, and does not repeat it here. BHU's associational standing to bring claims and obtain relief on behalf of its members is not revisited by this Order. *See* Minute Entry, June 10, 2025 (Dkt. 104) at 2; SJ Order at 18–19.

## II. DISCUSSION

A party seeking a permanent injunction must first establish actual success on the merits, as distinct from the showing of a mere likelihood of success required for preliminary injunctive relief. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 392 (1981)). Having established success on the actual merits, the party must then demonstrate: (1) that it is likely to suffer irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Restoration Hardware, Inc. v. Alimia Light*, 2024 WL 4184079, at *10 (N.D. Cal. Aug. 26, 2024); *Heat & Frost Insulators of N. Cal. Local Union No. 16 Health & Welfare Tr. Fund v. Rhodium Integrated Servs.*, 2022 WL 228304, at *2 (N.D. Cal. Jan. 26, 2022).

BHU has established actual success on the merits as to the categories of relief granted below. SJ Order at 71–74. The Court has already found a likelihood of irreparable harm arising from displacement, loss of shelter, and destruction of property absent the accommodations and constitutional protections described in the SJ Order. PI Order at 3–4. BHU seeks injunctive relief to achieve certain systemic reforms at the City-level, together with attorneys' fees and costs — it does not seek damages. *See* FAC (Dkt. 62). And the balance of hardships and the public interest favor the relief granted below; that relief only requires compliance with certain constitutional

minimums and individualized analysis of certain concrete accommodation requests that the Court has already found reasonable and not unduly burdensome to public health and safety interests. *See* SJ Order.

The PI Order extended the SJ Order's determinations beyond the seven originally named claimants to sixteen additional Harrison Encampment residents. *See* PI Order. The Court now takes the same approach with respect to all BHU members throughout the City of Berkeley, for whom BHU has standing to represent herein. The permanent injunctive relief applies to all BHU members, wherever situated within the City, and is not limited to the Harrison Encampment or to any previously identified claimants. The individualized relief already granted to specific claimants (Merced Dominguez, Eric Keiser, Shareef Muwakkil, Lewanda Parnell, Yesica Prado, Erin Spencer, and Austin White) remains in effect as to those individuals. As to other BHU members, the City and BHU members shall apply the standards set forth in the SJ Order and this Order to resolve individual requests for accommodation or claims arising from the same or similar conduct.

Consistent with the SJ Order's disposition of each category of relief, and the PI Order's application of that disposition to a broader population, the City and the individually named Defendants, and all related officers, agents, employees, are **ORDERED** to comply with the following directives.

A. Relief Granted

1. Vehicles

Before towing, impounding, or destroying any vehicle used as shelter by a BHU member anywhere within the City, the City must: (1) make a specific, individualized, fact-based determination — beyond mere parking violations, inoperability, or expired registration — that the vehicle obstructs traffic or poses a concrete, individualized threat to public health or safety; (2) provide the vehicle's owner written notice of those findings and a reasonable opportunity to respond and to remediate the condition or voluntarily relocate the vehicle; and (3) consider and pursue reasonable, less restrictive alternatives, including targeted cleaning, pest treatment, containment orders, and assisted relocation. SJ Order at 46–54. Before destroying any such

vehicle, the City must additionally show that no reasonable alternative could adequately mitigate the identified hazard. *Id.*

2. Sidewalk Space and Tents

The City shall not enforce Administrative Regulation 10.2 or any other sidewalk-space limitation in a manner resulting in the destruction of a BHU member's tent or shelter unless the City first conducts an individualized assessment accounting for the member's disability-related needs, if any, the physical dimensions of the sidewalk or right-of-way at issue, and the public interest in maintaining a reasonable path of travel (presumptively six feet on most sidewalks). Where enforcement would otherwise result in loss of shelter, the City must allow the member to retain or relocate the tent to a location that does not unreasonably obstruct pedestrian passage, or must provide a replacement tent consistent with that standard. This latter requirement applies regardless of disability status. SJ Order at 72–73 ("Hence, under this constitutional doctrine, the City is restrained from enforcing the space limitation in a manner that prevents BHU members from maintaining a tent so long as the tent does not unreasonably interfere with sidewalk passage."); PI Order at 8–9.

3. Physical Relocation Assistance, Storage, and Property Replacement

Where a BHU member's documented disability prevents the member from independently packing, moving, or relocating personal belongings during an abatement, the City shall provide reasonable physical assistance and shall store the member's non-contaminated personal property for no fewer than 90 days, consistent with the City's existing property-retention regulations. SJ Order at 65. Essential survival property — including tents, sleeping gear, and basic clothing — that cannot safely be moved or stored because of contamination, and that is destroyed by City enforcement operations, shall be replaced. *Id.* at 66–67. The City retains discretion to decline to handle property that is observably wet, muddy, or otherwise plausibly contaminated, and to adopt reasonable safety protocols for its personnel. SJ Order at 73; PI Order at 9–10.

4. Notice and Communications

Consistent with the Fourth and Fourteenth Amendments, the City shall provide at least 72-hours written notice before any enforcement action resulting in the seizure or destruction of a



United States District Court
Northern District of California

United States District Court
Northern District of California

BHU member's property. SJ Order at 69; *see also Lavan v. City of L.A.*, 693 F.3d 1022, 1027, 1032 (9th Cir. 2012); *Sullivan v. City of Berkeley*, 383 F. Supp. 3d 976, 981–83 (N.D. Cal. 2019).

The City shall honor its documented commitments to accommodate communication-related disabilities during the interactive process and other discussions with disabled BHU members, including documenting a member's known communication needs and triggers and employing patient, low-stimulation communication consistent with City staff training and claimants' individual needs. SJ Order at 68–69.

B. Relief Denied

The City is not required, as a matter of ADA accommodation, to: (1) pause or delay abatement pending the availability of non-congregate shelter or housing, or guarantee such shelter or housing as a condition of abatement; (2) designate enforcement-free zones and City-sanctioned or City-owned encampments, or create maps or lists of permissible relocation areas (for encampments); (3) install or maintain individualized sanitation or utility infrastructure at relocation sites; or (4) provide phased or extended advance notice (*e.g.*, thirty or fourteen days) beyond constitutional requirements, unless otherwise ordered. *See* SJ Order.

Pursuant to the reasoning in the SJ Order, Ms. Dominguez's request for a housing navigator is **DISMISSED WITHOUT PREJUDICE** as moot. SJ Order at 69. Mr. White's request for permission to retain his emotional support and service animals is **DISMISSED WITHOUT PREJUDICE** as not yet ripe. SJ Order at 70.

C. Pending Matters

BHU's causes of action under Article I, section 7 and Article I, section 13 of the California Constitution and California Government Code § 11135 are coextensive with, and are resolved by, the determinations made in the SJ Order. *See Sanchez v. Cnty. of San Diego*, 464 F.3d 916, 928–29 (9th Cir. 2006) (Article I, § 13 "parallels the Fourth Amendment inquiry); *Simon v. City & Cnty. of SF.*, 135 F.4th 784, 809 (9th Cir. 2025) (holding that Article I, § 13 and Fourth Amendment claims "will rise or fall together"); Cal Gov. Code § 11135(b) (tying the statute's disability-discrimination standard to Title II of the ADA). The Article I, § 7(a) state-created danger claim likewise parallels its federal counterpart: it incorporates the same factual allegations,

FAC ¶ 116, and BHU's prayer for relief seeks a single permanent injunction restraining the City's removal of unhoused people from public property "in violation of the Fourteenth Amendment . . . and Article, I § 7(a)." FAC at 36. BHU has not identified, in its summary judgment briefing or otherwise, any aspect of Article I, § 7(a) that would yield a different result than the federal claim addressed above. Accordingly, Plaintiffs' state constitutional and statutory claims are resolved in the same manner as the corresponding federal claims addressed in the SJ Order and above.

This Order, like the SJ Order, does not resolve, and expressly preserves Plaintiffs' ability to raise, the following claims for relief in this case or another case: (1) the theory that a pattern of serial enforcement across relocation sites may give rise to an independent claim for relief, which the Court has found not yet ripe, SJ Order at 44; (2) the merits of the individual accommodation determinations specific to the sixteen additional claimants identified in the PI Order and to all other BHU members residing in public rights of way or shelters in Berkeley, beyond the general framework that applies to them; and (3) specific allegations in the FAC concerning the Ohlone Park encampment[1] or any other encampments in Berkeley. This Order and the SJ Order resolve all claims pleaded in Plaintiffs' First Amended Complaint and thus this judgement is final under Fed. R. Civ. P. 58.

## III. CONCLUSION

For the foregoing reasons, and for the reasons stated in the SJ Order, the Court **GRANTS** the City's motion for entry of judgment (Dkt. 301) and enters permanent injunctive relief as set forth above. This permanent injunction supersedes the preliminary injunctive relief previously granted in the Courts June 2025 Orders (Dkts. 89, 90, 104, 169). The SJ Order's determinations merge into the judgment entered pursuant to this Order.

///
///
///
///
///

[1] At oral argument, attorney for Plaintiffs conceded that any claims about a potential abatement of the Ohlone Park encampment were no longer live. Of course, to the extent this order applies city-wide as mentioned herein, it may affect residents in Ohlone Park or other encampments within the City.

The Clerk is directed to enter judgment consistent with this Order.

**IT IS SO ORDERED**.

Dated: August 20, 2026

EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California