Farimah Faiz Brown, City Attorney (State Bar No. 201227)
Marc Shapp, Deputy City Attorney (State Bar No. 266805)
Laura Iris Mattes, Deputy City Attorney (State Bar No. 310594)
Nubyaan Scott, Deputy City Attorney (State Bar No. 331584)
BERKELEY CITY ATTORNEY'S OFFICE
2180 Milvia Street, Fourth Floor
Berkeley, CA 94704
Telephone: (510) 981-6997
Facsimile: (510) 981-6960
Email: MShapp@berkeleyca.gov

Attorneys for Defendant
CITY OF BERKELEY

| | |
|---|---|
| BERKELEY HOMELESS UNION, et al.<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BERKELEY, THOMAS GREGORY, PAUL BUDDENHAGEN, PETER RADU, OKEYA VANCE, RASHI KESERWANI, DOES 1-10,<br><br>Defendant. | Case No. 3:25-CV-01414-EMC<br><br>**DECLARATION OF NUBYAAN SCOTT IN SUPPORT OF CITY OF BERKELEY'S STATUS REPORT**<br><br>**Judge:** Hon. Edward M. Chen |

I, Nubyaan Scott, declare as follows:

1. I have personal knowledge of the facts described herein. If called as a witness, I could and would testify competently and truthfully to the facts set forth in this declaration.
2. I am an attorney with the Berkeley City Attorney's Office and counsel of record for Defendant City of Berkeley in this action. I submit this declaration in connection with the Court's August 13, 2026 Order directing Berkeley Homeless Union ("BHU") and the City to "meet and confer in good faith, and in person on the Berkeley streets, before Thursday, August 27, 2026, to determine which locations would be suitable."

3. On August 26, 2026, I participated in an in-person, onsite meeting with representatives of BHU and City staff to assess locations proposed by BHU for potential relocation under the Court's April 3, 2026 orders requiring the City to assess certain accommodations to its 3x3 rule. The parties met from approximately 1:00 p.m. until shortly after 3:30 p.m. During that time, we assessed five locations concerning eleven individuals identified by BHU.

4. The BHU representatives participating in the walkthrough included Yesica Prado, Robbie Powelson, a member of the press, a videographer, and two photographers invited by BHU. BHU's counsel Anthony Prince was not present, and the City has received no communication from Mr. Prince regarding this meet and confer order since the Court's Order was issued.

5. In addition to myself, the City representatives participating in the walkthrough included Joshua Jacobs, Homeless Services Coordinator; Okeya Vance-Dozier, Community Services Specialist; Epsalon Galloway, Social Services Specialist; Shannon Shaffer-Killey, Deputy Fire Marshal; Thomas Gregory, ADA Program Coordinator; Wahid Amiri, Director of Public Works; Gabriel Martinez, Deputy City Attorney; and Andrea Sutherland, Code Enforcement Officer.

6. Deputy Fire Marshal Shaffer-Killey personally participated in the assessment of each location but departed approximately 30 minutes before the walkthrough concluded. Director of Public Works Amiri participated in the initial portion of the walkthrough and departed approximately one hour after the walkthrough began.

7. Before and during the onsite meeting, City representatives advised BHU of several considerations applicable to the proposed locations. First, the City advised BHU that vacant lots and other locations that are not part of the public right-of-way ("PROW") were

not viable locations for purposes of the Court-ordered 3x3 accommodation process, as that rule relates to the size of personal property in the PROW. The City had communicated this issue to BHU before the walkthroughs and reiterated it during the onsite assessments.

8. Second, the City advised BHU that locations within "No Lodging Zones," where overnight camping is prohibited, were not viable locations, as they prevent camping entirely—the restrictions are not based on the size or location of personal property. The City had also communicated this issue to BHU before the walkthroughs and reiterated it during the onsite assessments.

9. Third, the City advised BHU that no makeshift structures could be placed at any relocation site and that only tents could be used because of fire-safety concerns.

**1281 University Avenue**

10. BHU proposed an 11-by-30-foot footprint at 1281 University Avenue for Alice Barbee.

11. The location is a vacant lot that was locked when we arrived. We therefore could not take precise measurements. From outside the gate, the City estimated that the lot was approximately 36 feet wide and 72 feet long.

12. I advised BHU that the location was a vacant lot and was not part of the PROW and therefore was not a viable location under the Court's orders and applicable City regulations.

**1901 Henry Street**

- BHU proposed a 10-by-25-foot footprint at 1901 Henry Street for Hector Navarro and his caregiver. This was offered by BHU as an alternative to the privately-owned lot it previously identified. During the onsite assessment, BHU proposed an 11-by-30-foot footprint.

13. The location is a vacant City-owned parcel that is not part of the PROW. I explained to BHU that the Court-ordered accommodation process concerning the 3-by-3-foot rule

applies to the PROW and does not itself authorize camping on vacant City owned parcels.

- I further explained that there was no existing authorization for encampments on this City-owned parcel and that use of City-owned property for camping is currently prohibited.
- The location also contains a "No Lodging" sign and is within a residential zoning district. I advised BHU that, even if the location were part of the PROW, the site's No Lodging designation and residential zoning would present independent barriers to temporary non-commercial ("TNC") camping.
- The City nonetheless agreed to follow up regarding the parcel's status, zoning, ownership, and applicable restrictions.

**701 Harrison Street**

14. BHU proposed an 11-by-30-foot footprint at 701 Harrison Street for Robbie Peddycoart and Alexander Wilson and a 10-by-30-foot footprint for Robert Pearce.

15. The parties' measurements indicated that the lot was approximately 114 feet long and 31.5 feet wide, including applicable setbacks. Thus, the physical dimensions of the lot could accommodate the proposed footprints. However, in addition to being a City-owned lot and not the PROW, a "No Lodging" sign is located immediately outside the lot.

16. The property is a City-owned parcel that previously served as a parking lot and is adjacent to a family shelter operated by a City vendor. The City also believes that an existing lease agreement with the shelter operator may affect the City's ability to authorize use of the parcel for overnight camping.

17. The location also presented significant fire safety considerations. During the assessment, we discussed the need for separation between tents ("fire breaks") and setbacks from

adjacent buildings and fencing. The site also contains substantial vegetation and foliage that would require mitigation if the parcel were to be used for camping.

18. I advised BHU that these considerations, and particularly the fact that the location is a City-owned parcel rather than PROW, made the location unsuitable. Even if these barriers were not present, the City would need to address the applicable lease, fire safety, and other issues.

- The City agreed to follow up regarding the site-specific information.

**1499 Second Street**

19. BHU proposed an 11-by-20-foot footprint at 1499 Second Street for Shawman, an 11-by-30-foot footprint for Jermaine Lee White, and a 10-by-25-foot footprint for Gregory Grove.

20. The City advised BHU that this location is within a "No Lodging"/TNC-prohibited area and that overnight camping therefore is not permitted at this location regardless of campsite size.

21. The City had specifically communicated this information to BHU before the walkthrough. Notwithstanding that information, the City participated in the onsite assessment at BHU's request.

22. During the assessment, the parties identified several physical constraints, including utility access, power lines, property line setbacks, and large K-rails located throughout the area.

23. Additionally, since that time I have been informed by Code Enforcement that the area is owned by two private companies.

24. BHU asked whether the K-rails could be removed or whether the proposed camping area could extend into the roadway. I advised that the City would need to confirm ownership of

the K-rails and evaluate whether any use of the roadway could be accommodated while preserving necessary parking, utility access, and other access requirements.

**Fourth Street and Camelia Street**

25. BHU proposed an 11-by-30-foot footprint at Fourth Street and Camelia Street for Bradford Raymer and Jackie Mendoza.

26. This was the only location reviewed during the onsite assessment that the City identified as potentially viable for further consideration.

27. The location is on a dead-end street adjacent to a fenced railroad track and an active construction site. The parties identified two potential areas for placement and took measurements at both locations.

28. Although there is sufficient sidewalk length to potentially accommodate two individuals, final viability remains subject to confirmation of the precise dimensions and applicable pedestrian, emergency access, utility access, and other requirements. The City's ADA Program Coordinator informed BHU of pedestrian access and vehicle access requirements, but the Deputy Fire Marshal needs to conduct further assessment to determine whether the City would need to adjust the allowable footprint size based on the need for emergency access, utility access, and utility pole setbacks. The City informed BHU that in the largest area of the sidewalk, which is next to street parking, the maximum depth that could be accommodated is 4.5 feet. Once this assessment is complete, the City will provide BHU with a final assessment confirming which areas of the ROW may be occupied up and what footprint is allowable in each area. Once that information is provided, BHU will need to determine whether its members will accept this location despite the fact that their requested 11x30 footprint cannot be accommodated there.

29. The City can complete this assessment prior to its upcoming abatement of the Harrison Corridor. During the walkthrough BHU was informed that the limited sidewalk depth does not allow for the dimensions proposed by BHU. BHU has not ever communicated whether their members would consider a smaller footprint to allow their tents to fit within the spots they have identified. The City requires this information in order to complete the process.

30. The Fire Department and Code Enforcement identified no immediate disqualifying concerns during the assessment.

31. During the walkthrough, the parties observed that Mr. Raymer had already relocated two pitched tents covered by a tarp to the dead-end area abutting the railroad fence.

32. The tents were present when we arrived. BHU representative Ms. Prado informed City representatives during the walkthrough that the tents belonged to Mr. Raymer and that he had relocated them to that location.

33. The City offered to measure the two tents then present at the site so that their dimensions could be considered as part of the assessment. Ms. Prado declined the offer and stated that Mr. Raymer desired a larger tent.

- The parties identified a second potential placement area that appeared to provide greater sidewalk depth because it did not require vehicle ingress and egress given that no parking is allowed on that section of the sidewalk. Additional review is necessary to confirm the measurements and determine the maximum footprint and number of tents that could be accommodated while maintaining required emergency and utility access. Ms. Prado asked why pedestrian access was necessary for a dead-end street and City staff informed her that the City has a Title II responsibility to preserve pedestrian access and there is no “dead-end street carveout.”

- Additional review is also necessary because certain areas of this location are owned by a private company, so the City must further assess specific areas and property lines.

**Identification of Individuals and Completion of the Assessment Process**

34. The Court;s August 13, 2026 Order directed BHU to provide the City with a list identifying the individuals, the tent sizes necessary to accommodate their respective disabilities, and proposed areas within Berkeley to which they would relocate.

35. Despite the Court's Order, BHU identified Ms. Mendoza for the first time during the August 26 onsite assessment at Fourth and Camelia.

36. Ms. Prado advised City representatives that Ms. Mendoza had previously made a verbal request for an assessment during outreach. The City has no record of such a request and had not understood Ms. Mendoza to be among the individuals for whom BHU had requested an assessment in connection with the Court's August 20 deadline. Nevertheless, the City agreed to conduct the assessment for Ms. Mendoza during the walkthrough.

37. The addition of an individual during the onsite assessment, after the deadline for BHU to provide the information contemplated by the Court's August 13 Order, creates a significant practical difficulty for the City in completing the individualized assessment and relocation process.

38. The City needs to know for whom an accommodation is being sought, as well as their proposed accommodation needs, in order to assess locations and determine what measures would be necessary to accommodate those individuals.

39. The continued addition of individuals at or immediately before the time of an assessment makes it difficult for the City to complete that process and to determine when the assessment and relocation process can be completed.

40. The City has completed the in-person review required by the Court's August 13, 2026 Order. The City remains prepared to continue the good faith process concerning the potentially suitable location and any other locations that BHU properly identifies for assessment.

41. On August 27, 2026, I sent an email to Plaintiffs' counsel, Mr. Prince, and BHU representatives regarding a summary of each site assessment.

42. In my August 27 email, I confirmed that the Fourth and Camelia location is potentially viable and that the City will continue to coordinate assessment of and relocation to this site with BHU in good faith consistent with the Court order and prior to the upcoming abatement.

43. A true and correct copy of my communications with BHU and Mr. Prince regarding the assessments described above, is attached hereto as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on August 27, 2026, in Berkeley, California.

Signed by:
Nubyaan Scott
27C52BAC41E849C

NUBYAAN SCOTT

# EXHIBIT A

**From:** Scott, Nubyaan
**To:** Anthony Prince
**Cc:** Rahi Azizi; Stephens, Sara; Brown, Farimah F.; Eiland, Katrina; Ruth M. Bond; Berkeley Homeless Union; Radu, Peter; Gregory, Thomas; Vance-Dozier, Okeya; Mattes, Laura Iris; White, David; Jacobs, Joshua "Josh"; Martinez, Gabriel
**Subject:** RE: Re BHU, et al. v. City of Berkeley, et al. - City"s proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]
**Date:** Thursday, August 27, 2026 3:44:00 PM

Dear BHU representatives,

Thank you for meeting onsite yesterday for the required assessments. This email summarizes the advisories and information we provided as well as the City's assessment of each location that was reviewed.

**General Notes**

- The City informed BHU both by email prior to the walkthroughs and during the walkthroughs that vacant lots are not viable options because they are not part of the PROW as ordered by the court and as discussed in Administrative Regulation 10.2's "3x3 rule."
- "No Lodging" Signs Which Prohibit Overnight Camping Were Present at Several Location, As Noted Below the City informed BHU both by email prior to the walkthroughs and during the walkthroughs that "No Lodging Areas" are not viable options because camping is prohibited in that area, in the same way it is prohibited in the Harrison Corridor which also has "No Lodging" signs.
- The City informed BHU that no makeshift structures of any kind can be placed at any location and that only tents are allowable due to fire risk concerns.
- The City requested a final list of individuals consistent with the Court order.
- BHU requested clarification on which zones currently prohibit temporary non-commercial ("TNC") items such as tents. I am providing the following clarification; please let me know if you need additional information:
  - Harrison Street from 4th street to San Pablo and from Gilman to Codornices Creek
  - Second Street from Gilman to Cedar and down all the side streets
  - The former Here/There encampment area which is a median area east/west MLK to Adeline and south/north 63rd to 62nd (there's a prominent HERE THERE sculpture and this should be familiar to BHU)
  - Ohlone Park (camping is already prohibited in all parks overnight but this park also has signs prohibited lodging/TNCs at all times)
- Additionally, here is additional information regarding zoning limitations:
  - BMC 14.48.020 prohibits all obstructions on sidewalks except as set forth in Chapter 14.48 or in a regulation promulgated by the City Manager. AR 10.2 is the regulation that governs personal property and allows it in some circumstances, carving out an exception to the general prohibition of sidewalk obstructions.
  - AR 10.2 states that TNC Objects (e.g., tents) are prohibited in Residential Districts. On the City's zoning map, Residential districts are listed in BMC 23.202 and can be viewed on the City's zoning map. These zones all include "R" in the label (e.g. R-1, R-2, ES-R, R-

SMU).

- AR 10.2 provides rules for TNC Objects (e.g., tents) in Commercial and Manufacturing Districts, including the 3x3 rule and other restrictions.
- Commercial districts are listed in BMC 23.204 and can be viewed on the City's zoning map. These zones all include "C" in the label (e.g. C-C, C-U, C-W, C-DMU, etc.)
- Manufacturing districts are listed in BMC 23.206 and can be viewed on the City's zoning map. These zones all include "M" in the label (e.g. M, MM, MU-LI, etc.).
- AR 10.2 prohibits TNCs (e.g., tents) within a BART Access Corridor, defined as "a wide plaza area, on the same side of the street as a BART Station entrance, within 25 feet of such entrance. In the downtown area, the BART Access Corridor includes all sidewalk and plaza areas on the west side of Shattuck Avenue from Addison Street to Allston Way."

**Location Specific Assessments**

**1281 University Avenue**

**Individual: Alice Barbee**

- BHU proposed footprint: 11x30
- City assessment: This site is a vacant lot owned by the City. Under the current Court orders and City policy, vacant lots are not viable for TNC overnight camping. The lot was locked and could only be approximately measured from the exterior. This lot approximately measures 36 feet wide and 72 inches long.

**1901 Henry Street**

**Individuals: Hector Navarro and Caregiver**

- BHU proposed footprint: 10x25 (previously requested by email) and 11x30 (requested during walkthrough)
- City assessment: This site is a City-owned vacant parcel that is not part of the PROW. Accommodations from Administrative Regulation 10.2, as ordered by the court, do not apply to vacant parcels. Only City Council can authorize camping on City owned land and it has taken no such action. This site also contained a "No Lodging" Sign and is zoned residential. Camping is prohibited in residential areas even if it were within the public right of way.

**701 Harrison Street**

**Individuals: Robbie Peddycoart, Robert Pearce, Alexander Wilson**

- BHU proposed footprints: Peddycoart 11x30, Pearce 10x30, Wilson 11x30
- City assessment: This parking lot is a City-owned parcel adjacent to a family shelter and youth sports field. Although physically large enough to contain the proposed tents, the site is not viable because it is a City-owned lot rather than the PROW. Additionally, the lot may not be available because it may be subject to an existing lease agreement with the shelter operator. Fire Department spacing requirements would require significant fire breaks and setbacks. There is also a "no lodging" sign directly outside the lot. The site contains significant vegetation

and foliage that would require mitigation if the Court were to order use of the lot and BHU has indicated that open flames may be used for cooking which would further elevate fire risk.

**1499 Second Street**
**Individuals: Shawman, Jermaine Lee White, Gregory Grove**
**BHU proposed footprints: Shawman 11x20, White 11x30, Grove 10x25**

- City assessment: This location has a "no lodging" sign and is in a temporary non-commercial ("TNC") (e.g., tents) prohibited area, so overnight camping is not allowed here regardless of campsite size. There are multiple utility access needs, power lines, and large k-rails that restrict usable areas. Expansion into the roadway would require verification of k-rail ownership and consideration of parking and utility access requirements. Additionally, portions of this site are privately owned by East Bay Municipal Utility District and Jones Development Co.

**Fourth and Camelia (Previously Identified as Third and Camelia)**
**Individuals: Bradford Raymer and Jackie Mendoza**
**BHU Proposed Footprints: Both Individuals 11x30**

- City assessment: This is the only potentially viable location reviewed during the assessment for the reasons explained above. There is sufficient sidewalk length to potentially support two individuals. The location is on a dead-end street adjacent to a fenced railroad track and an active construction site with intermittent dust and heavy equipment operation. Across the street is a commercial brewery. Measurements were taken at two possible locations for placement. Fire Department and Code Enforcement indicated no immediate disqualifying concerns, though final viability depends on confirmation of precise sidewalk dimensions, pedestrian access requirements, Fire Department emergency ingress needs, and utility access considerations. Additionally, I have been informed that portions of this area are privately owned, so further assessment must be done to confirm which areas are privately owned.
- BHU informed staff that Bradford Raymer relocated two tents to the dead-end directly against the railroad fence.

The City will provide the requested follow up information regarding pedestrian, emergency, and vehicle access requirements when available and will continue to coordinate relocation to this site with BHU in good faith consistent with the Court Order. The City's final assessment of the Fourth and Camelia location, and any other locations, does not amount to a sanctioned encampment and any overnight camping will remain subject to the City's enforcement of all encampment policies consistent with the Court's Order. Further, the City has conducted these accommodation assessments consistent with the Court's Order and this accommodation request/location placement is subject to reassessment if caselaw changes.

Further, I agreed to follow up regarding Ms. Mendoza, as Ms. Prado stated onsite that she made a verbal request for a 3x3 assessment during Mr. Gregory's outreach. Mr. Gregory's outreach notes from June 29 reflect that when she was offered accommodations, she reported the following disabilities: experiencing ADHD and PTSD and stated that her anxiety prevents her from

independently relocating. The only noted response Ms. Mendoza provided to the offered accommodations was “nobody touching my shit,” indicating that she was not interested in packing or moving assistance. Neither Ms. Prado nor Ms. Mendoza identified her as a BHU member during outreach, and she was not identified as such until we arrived at the Fourth and Camelia site yesterday. Additionally, BHU has not provided a nexus for why Ms. Mendoza’s ADHD and PTSD require an 11x30 footprint.

Please let me know if you require any clarifications.

**Nubyaan Scott**
Deputy City Attorney
**City of Berkeley**

---

**From:** Stephens, Sara <sstephens@berkeleyca.gov>
**Sent:** Tuesday, August 25, 2026 3:54 PM
**To:** Berkeley Homeless Union <berkeley.homeless.union@gmail.com>
**Cc:** Scott, Nubyaan <NScott@berkeleyca.gov>; Anthony Prince <princelawoffices@yahoo.com>; Rahi Azizi <rahi.azizi@aalrr.com>; Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; Ruth M. Bond <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>; Mattes, Laura Iris <LMattes@berkeleyca.gov>; White, David <DWhite@berkeleyca.gov>; Jacobs, Joshua "Josh" <JJacobs@berkeleyca.gov>; Martinez, Gabriel <GMartinez@berkeleyca.gov>
**Subject:** RE: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Ms. Prado,
Please see my response below in blue. City staff will be there at 1pm tomorrow.
Best,
Sara

Sara Stephens
Deputy City Attorney
City Attorney’s Office
2180 Milvia Street, 4th floor
Berkeley, CA 94704
**Cell:** 510.295.8490
sstephens@berkeleyca.gov
Pronouns: she / her

---

**From:** Berkeley Homeless Union <berkeley.homeless.union@gmail.com>
**Sent:** Monday, August 24, 2026 10:11 PM
**To:** Stephens, Sara <sstephens@berkeleyca.gov>
**Cc:** Scott, Nubyaan <NScott@berkeleyca.gov>; Anthony Prince <princelawoffices@yahoo.com>; Rahi Azizi

<rahi.azizi@aalrr.com>; Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; Ruth M. Bond <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>; Mattes, Laura Iris <LMattes@berkeleyca.gov>; White, David <DWhite@berkeleyca.gov>; Jacobs, Joshua "Josh" <JJacobs@berkeleyca.gov>
**Subject:** Re: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Ms. Stephens,

We have reviewed your email and provide the following clarifications.

**1. Missing accommodation requests:** Please clarify whether the City intends to engage with accommodation requests from individuals who are not on the list of 23 people. The City has also not explained how it compiled that list of individuals, and as noted, the list does not account for all requests submitted.

We understand that not all email requests were for 3x3 exemptions. However, that is because we did not know which accommodations the City would be willing to accept until after the April 3 order.

To clarify this issue: during outreach in July, I communicated to Thomas Gregory that all of our members would be requesting the accommodations provided for in the Court's order. If the City requires us to re-submit each individual request, please let us know and we will do so.

Our previous email explained how we compiled the list. I will reiterate again that if there are additional requests for the 3x3 accommodation that have already been made, please indicate who made them. The Court's order required that we provide this accommodation to people who requested it, not to people who did not request it. If there are additional disabled BHU members who are now requesting 3x3 accommodations for their disabilities, please provide us those requests by name. Please keep in mind that the Court's most recent clarification order expressly applies only to the 23 individuals who have already been granted this accommodation.

**2. Meeting time:** We are grateful the Court granted us an extension for our brief late on Friday, so we are now available to meet.

We propose meeting on <u>Wednesday, August 26 at 1:00 PM</u> at <u>701 Harrison Street</u>. City staff are welcome to join us. We will visit the locations identified by our members and document the sites for the Court.

City staff will join you at this location tomorrow at 1pm.

**3. Proposed locations:** We understand the City's position regarding the proposed locations. However, we respectfully note that we are working with information provided by the City. On January 16, 2026, Assistant City Attorney Chris Jensen provided BHU counsel with a list of places where people at the encampment could relocate. (See attached email thread.) In that thread:

- The Union requested a list of places where people could relocate;
- Chris Jensen replied that he would discuss it with Farimah Brown, the City Attorney; and
- Chris Jensen's final message provided a link to the 20-page letter from City Manager Buddenhagen with a list of city-owned properties.

The publicly available list of properties was an informational item merely informing Council of vacant City-owned properties, without making any recommendation that any of them be used for shelter or camping. Council took no action on that item, and the City has never agreed to allow people to move onto those lots nor did our office state that this was the City's position. While the list itself is public, it was provided to BHU counsel in the context of settlement negotiations and therefore the communication itself and/or BHU's reliance or interpretation of this communication is inadmissible under the federal rules of evidence. Furthermore, this discussion occurred prior to the Court's April 3 ruling, and the Court's order is limited to the public right-of-way. The City does not now and has not ever agreed to have BHU move onto vacant City-owned lots.

Accordingly, we will be assessing all of the locations identified by our members and propose this order for visiting them:

- 1100 Fourth Street (enter via 701 Harrison Street)
- 1499-1451 Second Street
- 3rd and Camelia
- 1281 University Avenue
- 1631 Fifth Street (if sold, we will assess 1901 Henry Street as an alternative)

We are prepared to present our arguments to the Court regarding why these locations are appropriate. The City may also present its objections to the Court at the status conference. We will not engage in a back-and-forth email argument about these sites.

**4. Vehicles used as shelter:** The City's position on vehicles remains unclear. The City states it is "not requiring vehicles to move," but also states that "all property outside of vehicles must be removed from the right-of-way" and that "items cannot be temporarily moved but must be permanently removed" because the area is a TNC Prohibited Area.

We have members who live in vehicles that also use the space around their vehicles for essential belongings. If the City is requiring property to be removed from the right-of-way, then the City is, in effect, addressing vehicle residents' living situations.

To clarify: Merced Dominguez, among others, has requested an exemption to the 3'x3' rule for items stored outside her vehicle.

We ask the City to clarify:

- If the City is not addressing vehicles, why is the City requiring removal of their property?

If an exemption to the 3x3 rule is needed for vehicle residents, will the City participate in the interactive process to assess the footprint at the Harrison encampment?

Yes, we are addressing property owned by vehicle dwellers which is outside their vehicles; we have always been clear about that. We are not requiring vehicles to move, and we will not tow any vehicles at this time. I don't think there's any other way to explain it. Under AR 10.2, personal property is not allowed at all in TNC Prohibited Areas. For this reason, accommodation requests related to the 3x3 rule do not apply in the Harrison Corridor, which is a TNC Prohibited Area. BHU can submit requests for alternative locations as it has for its other members. We have also already offered to assist residents with relocating their items inside of their vehicles or into storage for up to 90 days. However, you have not yet stated an intention to accept either of these types of assistance.

**5. New accommodation requests**: We understand the City's position. We respectfully disagree and will address this with the Court at the status conference. The Court contemplated that a large number of people would need accommodations, as the City represented that more than 80 people are living at the encampment.

Again, camp residents should be informed of their right to request accommodations when they receive new abatement notices.

Thank you,

**Yesica Prado**
President, Berkeley Homeless Union

On Fri, Aug 21, 2026 at 5:36 PM Stephens, Sara <sstephens@berkeleyca.gov> wrote:

> Ms. Prado,
>
> 1. **Missing accommodation requests**: We never said we only processed 23 accommodation requests. We have processed every request that has come in, which exceeds 23. However, not all accommodation requests ask for an exception to the 3x3 rule. For example, many of the requests came from people who live in RVs who did not request an accommodation to the 3x3 rule because they do not live on a sidewalk. As we said before, if you indicate who you believe requested such an accommodation that is not on this list, we will review that request again. We will process any request already provided to the City requesting an exemption to the 3x3 rule. We identified the 23 by reviewing the court

orders, all of the email accommodation requests, as well as notes compiled by Thomas during each of his in-person meetings with individuals. To our knowledge, these 23 are the only individuals who have requested an accommodation to the 3x3 rule for their new campsite.

2. **Meeting time**: The Court's order requires that we "meet and confer in good faith, and in person on the Berkeley streets, ***before*** Thursday, August 27, 2026". Our understanding is that meeting on the 27th does not comply with this order. Moreover, BHU was granted an extension by the Ninth Circuit and its brief is now due on September 25. Please provide your availability to meet prior to the 27th.

3. **Proposed locations**: The City has conducted an initial review of the proposed locations you provided yesterday. As we have communicated before, the court's order and 3x3 accommodations are limited to the public right-of-way. As such, the following locations are not available as campsites: 1281 University, 1631 Fifth Street, 1100 Fourth Street. Moreover, the City recently sold 1631 Fifth Street, so it is now private property. The 1499-1451 Second Street location is within a No Lodging / TNC Prohibited Area where camping is prohibited entirely, regardless of campsite size. We are still willing to meet at these locations to discuss, but we wanted to communicate this early in case you would rather focus on the remaining site (3rd and Camelia) or identify additional sites for the City to assess.

4. **Vehicles used as shelter:** As stated previously, the City is not requiring vehicles to move, but all property outside of vehicles must be removed from the right-of-way. The area is also a TNC Prohibited Area so items cannot be temporarily moved but must be permanently removed from the right-of-way in this area. As we've mentioned, the City is also willing to help relocate items inside of vehicles or store non-contaminated property for 90 days at the Corp Yard. We have not received an accommodation request to store more than 9 square feet of items outside of a vehicle from anyone on this list of 23 and we would process such a request if we received it. Our email yesterday also clearly explained the accommodations that the City is prepared to provide to vehicle dwellers with respect to their property outside of their vehicles.

    a. Relatedly, we would like to note that our records reflect that everyone on the list lives in a tent or structure, not a vehicle, and was requesting a 3x3 accommodation for a larger campsite. Can you confirm that the individuals you marked as living in a vehicle no longer need a 3x3 accommodation to relocate their campsite, despite your prior communications? If they have a campsite as well as a vehicle, they will need to relocate the campsite, even though their vehicle can remain.

5. **New accommodation requests:** The Court's most recent clarification order expressly applies only to the 23 individuals who have already been granted this accommodation. The Court's requirement to assess proposed 3x3 accommodation locations before August 27 applies only to those individuals.

Best,
Sara

CITY OF BERKELEY

Sara Stephens
Deputy City Attorney
City Attorney's Office
2180 Milvia Street, 4th floor
Berkeley, CA 94704
Cell: 510.295.8490
sstephens@berkeleyca.gov
Pronouns: she / her

---

**From:** Berkeley Homeless Union <berkeley.homeless.union@gmail.com>
**Sent:** Friday, August 21, 2026 2:37 PM
**To:** Stephens, Sara <sstephens@berkeleyca.gov>
**Cc:** Scott, Nubyaan <NScott@berkeleyca.gov>; Anthony Prince <princelawoffices@yahoo.com>; Rahi Azizi <rahi.azizi@aalrr.com>; Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; Ruth M. Bond <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>; Mattes, Laura Iris <LMattes@berkeleyca.gov>; White, David <DWhite@berkeleyca.gov>
**Subject:** Re: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Ms. Stephens,

Thank you for your response. We have reviewed your email and provide the following clarifications and follow-up items.

**Missing accommodation requests**

We have followed the City's instructions and submitted accommodation requests via email. As you noted, you have access to these same records. However, to date, we have not received an explanation regarding how the City compiled its list.

We ask that the City:

- Clarify why only 23 individuals' requests were processed; and
- For any requests not processed, accept those requests and engage in the interactive process with those individuals before any abatement occurs.

We are prepared to provide a supplemental list if the City confirms it will process these requests.

**Locations for assessment**
We understand the Court's order requires BHU to "furnish the City with a list identifying these individuals, the tent sizes necessary to accommodate their respective disabilities, and proposed areas within Berkeley to which they would relocate." See ECF 322 at 26-28.

We have complied with this order and provided the requested information.

For clarity: BHU's records reflect more than 23 members have requested accommodations. We followed the City's list in good faith to comply with the Court's directive—though we note that had BHU not identified the individuals needing accommodations, there would have been no starting point for this process.

Going forward: Is the City prepared to engage with BHU's full list, rather than limiting the process to the individuals the City identified?

**In-Person meeting**
We propose the following:

Date: August 27, 2026
Time: 10:00 AM
Starting Location: 1100 Fourth Street (entrance is next 701 Harrison Street)

We propose the following route:

1) 1100 Fourth Street (meet at 701 Harrison Street)
2) 1499-1451 Second Street
3) 1631 Fifth Street
4) 3rd and Camelia
5) 1281 University Avenue

Please confirm that this time, date and route work for the City. We are currently working on our Ninth Circuit brief, which is due on August 26 and requires our full attention through that deadline. We respectfully request that the City accept a meeting on August 27, so we can fulfill the Court's requirement prior to the status conference.

We are also open to adjusting the route if the City has different priorities.

**Vehicles used as shelter**
We appreciate the City's clarification that vehicles will not be required to relocate at this time. We would like further clarity on the following:

- If people living in vehicles cannot store their personal property inside their vehicles

or at the Corporation Yard, and cannot place it across the street, <u>where does the City propose they place it during the abatement?</u>

Residents are open to removing items from the sidewalks that need to be cleaned, but they would need a nearby location to place those items temporarily.

We also respectfully note that people living in vehicles are not waiving their requests for 3’x3’ rule accommodations. We did not include footprints or relocation areas for these members because the City has indicated that accommodations for vehicles are not being processed at this time.

**<u>New accommodation requests</u>**
We understand the City's position regarding new accommodation requests. However, we respectfully disagree.

The ADA requires the City to engage in the interactive process with individuals with disabilities. This obligation is ongoing. Additionally, the Court has required the City to post new notices for abatement at the encampment, and residents should be informed of their right to request accommodations when they receive those notices.

We ask that the City accept accommodation requests and engage in the interactive process with any resident who needs an accommodation. Alternatively, we request that this issue be addressed at the August 28 status conference.

**<u>Next steps</u>**
We are prepared to proceed with the members on the City's list and will continue working to identify suitable relocation locations. We look forward to the in-person meeting and to working collaboratively with the City to comply with the Court's order.

Thank you,

**Yesica Prado**
President, Berkeley Homeless Union

On Thu, Aug 20, 2026 at 1:27 PM Stephens, Sara <sstephens@berkeleyca.gov> wrote:

> Ms. Prado,

Thank you for sending the City this information. We have responded to your email below in red.

Best,

Sara

Sara Stephens
Deputy City Attorney
City Attorney's Office
2180 Milvia Street, 4th floor
Berkeley, CA 94704
**Cell:** 510.295.8490
sstephens@berkeleyca.gov
Pronouns: she / her

---

**From:** Berkeley Homeless Union <berkeley.homeless.union@gmail.com>
**Sent:** Thursday, August 20, 2026 11:59 AM
**To:** Stephens, Sara <sstephens@berkeleyca.gov>
**Cc:** Scott, Nubyaan <NScott@berkeleyca.gov>; Anthony Prince <princelawoffices@yahoo.com>; Rahi Azizi <rahi.azizi@aalrr.com>; Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; Ruth M. Bond <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>; Mattes, Laura Iris <LMattes@berkeleyca.gov>
**Subject:** Re: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Ms. Stephens,

Thank you for providing the list of 23 individuals. We appreciate the City's cooperation in sharing this information. We have reviewed the list against BHU's records and have several questions and clarifications to ensure we are on the same page moving forward. Please see below:

**1. Discrepancy Between City's List and BHU's Records**
Our records reflect that more than 30 people have submitted accommodation requests to the City, either through written submissions from BHU or directly to Thomas Gregory during outreach. We are concerned that several people may have been omitted from the City's list.

Could you please clarify:

- How did the City determine which requests are pending or active?

There are presently no pending requests related to the "3x3 rule" from those at the Harrison encampment. The City has granted each of the 23 requests made to date and has provided you with that information, despite the Court ordering BHU to provide this information to the City, after Mr. Prince informed Judge Chen during the most recent hearing that BHU had this information. If you believe there are additional individuals

who have made this request and have somehow been excluded, please point to an email chain reflecting this or name a specific person who spoke with Mr. Gregory and made this request but is not reflected on the list. You have repeatedly stated that you have recorded these interactions so we expect that BHU could easily identify any individual that it believes made this request but and not granted such between both email and video records available to you.

- Were verbal requests made directly to Thomas Gregory during outreach accepted and recorded?

Yes, as reflected in Mr. Gregory's declaration filed in response to BHU's most recent TRO/PI briefing.

- What is the process for residents who are not on the current list but need an accommodation?

The Court's most recent order applies to individuals who have already been granted this accommodation. Questions regarding new accommodation requests should be addressed at our upcoming status conference, as it is the City's present position that the Court's most recent order does not contemplate new accommodation requests.

We would appreciate clear guidance on these points so we can inform residents and ensure they are not excluded from the accommodation process.

**2. Vehicles Used as Shelter**
We understand that the City does not intend to tow vehicles used as shelter during the abatement. Given that some of these members appear on the City's list, we would like clarity on how the City intends to proceed with residents who use vehicles as shelter.

Specifically:

- Will the City consider temporary relocation across the street for the duration of the abatement?

The City is not asking vehicles to relocate at this time. The City is asking individuals to remove any items stored on the sidewalk adjacent to vehicles as they are present conditions of rodent harborage which the City needs to abate. Items adjacent to vehicles should either be removed or individuals may request storage and should do so prior to the abatement. Items cannot simply be relocated across the street as that would not address the rodent harborage issues as explained by the City's Public Health Officer.

- What accommodations are available for residents who rely on vehicles as shelter?

The Court's Orders have addressed this question. As explained above, members should be prepared to relocate or store items adjacent to their vehicles. If a BHU member requires assistance relocating items off of the public-right-of-way and into their vehicles or into storage, they should schedule this assistance with HRT or by BHU responding to this email with specific individuals' names and what specific type of relocation or storage assistance they seek. These requests should be made as soon as possible.

We want to ensure that residents with vehicles are not overlooked and that we can coordinate with the City to facilitate the abatement process.

**3. List of locations for assessment**
Please see the attached list of the members identified by the City, along with information regarding tent sizes, footprints and proposed locations. We have provided the information as reported by our members. We are available to provide additional details or clarification as needed.

The City would appreciate clarification regarding BHU's position on the proposed locations. In the list BHU provided pursuant to the Court's August 13, 2026 Order, BHU opposed placement on the public-right-of-way for certain individuals and instead identified publicly or privately owned lots. The Court's Orders, including the August 13 clarification, consistently state that accommodations for the 23 individuals granted an exemption from the 3x3-foot rule are to be located on areas of the public-right-of-way, notwithstanding BHU's prior requests to use lots.
We also want to note two specific concerns regarding alignment with the Court's directives:

1. BHU asked the City to provide a list of the 23 individuals who received this accommodation. Under the Court's Order, BHU is responsible for furnishing the City with this information, along with tent sizes and proposed relocation areas.
2. Of the 9 relocation areas BHU proposed for the 23 individuals, 5 are located on lots rather than on the public-right-of-way. These proposed locations do not align with the criteria set out in the Court's Orders.

To help ensure that planning remains consistent with the Court's directives and to support a productive meet-and-confer process on the Berkeley streets, the City would welcome clarification from BHU regarding its approach to identifying relocation areas and any considerations that may be guiding these proposals.

**4. Scheduling the In-Person Meeting**
The Court ordered the parties to "meet and confer in good faith, and in person on the Berkeley streets, before Thursday, August 27, 2026." We are prepared to participate in this meeting and have identified potential locations in West Berkeley.

Please let us know:

- A proposed time and place for the meeting
- Whether the City has any logistical considerations we should be aware of

We would like to bring affected members to the meeting, so we can walk the streets together and identify suitable relocation sites. We believe this in-person engagement will be productive and are committed to working collaboratively with the City to comply with the Court's order.

We look forward to your response.

City staff are available from 8:00 a.m. to 5:00 p.m. on August 24, 25, and 26 to conduct the required in-person assessments on the Berkeley streets. Because BHU has identified 9 individuals who would like their proposed locations evaluated, we defer to BHU to select a starting location for the meet-and-confer. Given the City's full availability across all three days, it may be most efficient for BHU to choose a starting point based on the availability of the individuals whose locations are being assessed. Once BHU confirms the meeting time and initial location, City staff will be present and prepared to walk through and evaluate each proposed area in coordination with BHU, consistent with the Court's directive. The City only asks that BHU confirm a meeting time and location by noon on the prior day, so that staff have adequate time to plan.

Thank you,

**Yesica Prado**
President, Berkeley Homeless Union

On Fri, Aug 14, 2026 at 4:42 PM Stephens, Sara <sstephens@berkeleyca.gov> wrote:

> Ms. Prado,
>
> We have received your request for the list of individuals with 3x3 accommodation requests; we have pasted your emails below to maintain a single email thread.
>
> As a courtesy, the City provides below the list of individuals we have on record as requesting an accommodation to the 3x3 rule. We want to remind you that the Court instructed BHU, not the City, to provide this information: "**BHU shall endeavor to furnish the City with a list identifying these individuals**, the tent sizes necessary to accommodate their respective disabilities, and proposed areas within Berkeley to which they would relocate." All requests for this accommodation have come from you by email, and approvals have likewise been sent to you by email, so you have as much access to these records as the City.
>
> We look forward to receiving the information from you about requested tent sizes and proposed areas by noon on August 20. Please note that the City's assessment of 3x3 rule accommodations will require proposed *footprints* (i.e. total space that will be occupied by personal property), and not just tent sizes, if individuals expect to store property outside of their requested tent. We would also like to remind you that the 3x3 rule only applies to the

public right-of-way, not other City property, and therefore accommodations to the rule would also be limited to the public right-of-way. This was confirmed in Judge Chen's order after yesterday's hearing, where he required the City "to engage in individualized assessments to assess disabled claimants' accommodation needs and conditions on public rights-of-way..." (Dkt. 322).

Individuals requesting 3x3 rule accommodations

1. Alice Barbee
2. Hector Navarro
3. Jacob Clakley
4. Jonny Ruel Holder
5. Monique Williams
6. Robbie Peddycoart
7. "Shawman"
8. Robert Pearce
9. Thomas Barnett
10. Jermaine Lee White
11. Shareef Muwakkil
12. Erin Spencer
13. Lewanda Parnell
14. Austin White
15. Erik Alexander Johnson Coon
16. Kevin Martinez
17. Alexander Wilson
18. Jeremy Casimir
19. Whitney Chappelle
20. Gregory Grove

21. Patrick Ford

22. Bradford Raymer

23. Lisa Saechao,y-chain

Best,

Sara

Sara Stephens
Deputy City Attorney
City Attorney's Office
2180 Milvia Street, 4th floor
Berkeley, CA 94704
**Cell:** 510.295.8490
sstephens@berkeleyca.gov
Pronouns: she / her

**From:** Berkeley Homeless Union <berkeley.homeless.union@gmail.com>
**Sent:** Friday, August 14, 2026 12:21 PM
**To:** Gregory, Thomas <TGregory@berkeleyca.gov>
**Subject:** Re: Accommodations for 3x3 rule

**WARNING:** This is not a City of Berkeley email. Do not click links or attachments unless you trust the sender and know the content is safe.

Hi Mr. Gregory,
I am following up on this request. BHU is prepared to work with the City to identify suitable locations for assessment. Once again, to begin this process, we require the list you referenced in your declaration.

Please provide the list by the end of today, August 14, 2026. Any delay on your end will impede our ability to complete this process in the timeframe the Court anticipates.

I also want to clarify that BHU's records reflect that more than 23 individuals require this accommodation. No person can realistically live within a 3'x3' footprint, and many residents have disabilities that necessitate additional space. However, given that the Court's order is focused on the individuals you identified, we will begin with those people.

I look forward to hearing from you today.

Sincerely,

**Yesica Prado**

Berkeley Homeless Union Representative

On Thu, Aug 13, 2026 at 11:00 PM Berkeley Homeless Union <berkeley.homeless.union@gmail.com> wrote:

Hi Mr. Gregory,

I'm reaching out to ask for a copy of the list of the 23 people you have identified that requested a modification to the 3'x3' rule. Pursuant to Judge Chen's request at today's hearing, BHU is to work on providing you with locations to assess for those 23 people.

Please provide the list as soon as you are able to, so we can begin that process.

Thank you,

**Yesica Prado**
Berkeley Homeless Union Representative

---

**From:** Stephens, Sara
**Sent:** Monday, July 27, 2026 3:27 PM
**To:** 'Berkeley Homeless Union' <berkeley.homeless.union@gmail.com>
**Cc:** Scott, Nubyaan <NScott@berkeleyca.gov>; Anthony Prince <princelawoffices@yahoo.com>; Rahi Azizi <rahi.azizi@aalrr.com>; Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; Ruth M. Bond <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>
**Subject:** RE: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re

Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Ms. Prado,

We are unable to extend the compliance deadline at this time. You made this request after 5pm on Friday, and today our staff are posting notices and preparing for the abatement, which will take place following the August 3 compliance deadline (which has already been extended by one week). It has been over three months since the court's order was issued and the City must act to address the leptospirosis situation. You have known our abatement timeline since May 29, but did not submit any proposed locations for a 3x3 accommodation until last week, days before our originally communicated compliance deadline. We have invited you to make requests for an extension based on disability-related reasons, which you have not done.

Not only are we not rushing the process, given the long runway we provided, we are also not required to proactively identify places for people to camp. The court order requires us to grant accommodations to the 3x3 rule and analyze a proposed placement based on whether it is a reasonable space to accommodate disabilities while also preserving pedestrian passage and emergency access. We have engaged promptly with the proposed placements provided. The court order does not require us to search the City for acceptable camping spots. If it is nearly impossible to find a spot for a campsite at a proposed size, that is consistent with what we told the court, that it is unlikely the City's right-of-way can accommodate many large campsites while maintaining a path of travel. Judge Chen refused to require that we provide a map or list of relocation sites.

We are confident that we have and will continue to comply with the court's order.

Sara Stephens
Deputy City Attorney
City Attorney's Office
2180 Milvia Street, 4th floor
Berkeley, CA 94704
**Cell:** 510.295.8490
sstephens@berkeleyca.gov
Pronouns: she / her

---

**From:** Berkeley Homeless Union <berkeley.homeless.union@gmail.com>
**Sent:** Friday, July 24, 2026 5:13 PM
**To:** Stephens, Sara <sstephens@berkeleyca.gov>
**Cc:** Scott, Nubyaan <NScott@berkeleyca.gov>; Anthony Prince <princelawoffices@yahoo.com>; Rahi Azizi <rahi.azizi@aalrr.com>; Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; Ruth M. Bond <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>; Morris, Kathleen <KMorris@berkeleyca.gov>

**Subject:** Re: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Ms. Stephens,

Thank you for your response. We have reviewed it and disagree with many of the factual claims. We have audio recordings, videos, photos, detailed notes and email records that document the timeline and events. Should the court need to review further evidence to shed light on the truth, we will provide it.

Rather than engage in a prolonged back-and-forth, we propose a productive meeting to resolve the outstanding accommodation issues. We are concerned about how the interactive process will conclude for our members and how the provision of accommodations will play out during the abatement. These are pressing points that need discussion before any enforcement takes place.

Our specific concerns include:

**1. The "Relocation Location" Requirement Is Impossible to Meet Without City Assistance**

For many of our members, it has not been possible to identify a relocation location that meets the City's criteria, specifically locations that 1) leave a 6-foot path of travel and 2) are not immediately subject to enforcement due to camping bans and no trespassing signs. The City requires residents to propose a specific location and footprint, but does not provide any guidance on where camping is permissible. Residents have asked outreach workers where they could go, but have received no meaningful assistance.

Some key aspects that also make it difficult to find a relocation location include the need to:

- Fit the dimensions of a tent in which a person can stand (a 6-person tent is 10'x9');
- Be within reach of essential services such as food, water, electricity, and restrooms;
- 
- Avoid residential and busy commercial areas to minimize complaints;
- Not be near busy traffic lanes, train tracks or pedestrian foot traffic;
- Be in a relatively safe neighborhood.

The City's position in rushing this process is concerning, as it appears to be: "We will not suggest any relocation areas; we will only assess what you propose, and if you cannot propose anything, we will abate and destroy property without providing accommodations."

This is not a good-faith interactive process. The ADA requires the City to work with individuals to identify reasonable accommodations, and not to set impossible conditions, impose unilateral deadlines, and then use residents' failure to meet those conditions (which don't take into account their disability-related needs) as a pretext to deny accommodations altogether.

**2. Tent Size and Location Are Inseparable**

During outreach, residents were asked what tent size they wanted. Some requested bigger tents than a two-person tent being issued by the City for all campers based on their specific needs. However, many residents could not provide an answer at the time of outreach because they do not yet know where they will relocate or what tent size would feasibly fit in a given area.

Tent size and location are inseparable. A resident cannot determine what size tent will fit until they know where they can relocate. The City cannot separate these two issues and then blame residents for not providing tent sizes.

**3. The Compliance Deadline Should Be Extended**

Given that the compliance deadlines were a "proposal" as you framed them, and given that the City itself needs time to assess proposed relocation areas, we ask that the compliance deadline be extended so that a proper accommodation process can play out for each of our members with requests on file.

Two of our members have been able to find relocation areas, and one member just had their area approved today. This demonstrates that the process could work, but only if residents are given adequate time and assistance to identify viable locations. We want every member to have that same chance, not to be rushed through under duress. We respectfully ask that the process not be rushed in a way that undermines its success.

Our goal is simple: ensure that BHU members with disabilities receive the accommodations the court ordered. We believe this can be accomplished collaboratively if both parties can work together.

**Agenda**

We propose the following agenda for a meeting:

1. Reviewing pending accommodation requests for BHU members.
2. Clarifying the City's process for evaluating proposed relocation areas.
3. Ensuring outreach covers the entire encampment, and every resident has received outreach to file an accommodation request and obtain the materials the City is offering.
4. Confirming the City's position on vehicles and how the interactive process will

be completed for vehicle residents.

5. Clarifying how the City will replace destroyed essential survival gear, and discussing how the City will ensure no property is destroyed during the abatement.

**Please confirm by Monday, July 27 whether you are available to meet.** If we do not hear from you by 2:00 p.m. on Monday, we will have no choice but to seek immediate court intervention.

We remain committed to resolving this collaboratively and look forward to hearing from you soon.

Sincerely,

**Yesica Prado**
President, Berkeley Homeless Union

On Fri, Jul 17, 2026 at 4:50 PM Stephens, Sara <sstephens@berkeleyca.gov> wrote:

> Mr. Prince and BHU representatives,
>
> For a number of operational reasons, the City has decided to postpone the originally communicated compliance deadline, by one week. The previously compliance deadline of **July 27** will now shift to **August 3**. Notices will be posted well in advance of this date and include the updated compliance deadline. The City continues to welcome any additional information that will allow us to provide the accommodations in the court order.
>
> Best,
>
> Sara
>
> Sara Stephens

Deputy City Attorney
City Attorney's Office
2180 Milvia Street, 4th floor
Berkeley, CA 94704
**Cell:** 510.295.8490
sstephens@berkeleyca.gov
Pronouns: she / her

---

**From:** Stephens, Sara
**Sent:** Thursday, July 16, 2026 7:29 PM
**To:** Berkeley Homeless Union <berkeley.homeless.union@gmail.com>
**Cc:** Scott, Nubyaan <NScott@berkeleyca.gov>; Anthony Prince <princelawoffices@yahoo.com>; Rahi Azizi <rahi.azizi@aalrr.com>; Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; Ruth M. Bond <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>; Morris, Kathleen <KMorris@berkeleyca.gov>
**Subject:** RE: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Ms. Prado,

My responses are below in red.

Ms. Stephens,

I am in receipt of your email. However, your email contains numerous factual inaccuracies and misrepresentations that need correction. Please see below:

**1) Distortion of the timeline**

You claim BHU has "failed to meet proposed deadlines, suggest alternatives, or provide any substantive information." The record does not support this claim.

The record shows:

- April 3: Summary Judgment Order issued.
- April 6 – April 20: The City changed meeting dates six times and took 20 days to hold the first implementation meeting.
    - This is an exaggeration; our records do not show that the City rescheduled this many times. Furthermore, there was no significant urgency at this stage.
- April 24: During this phone meeting, the City requested that BHU draft a plan on how the City would need to implement accommodations for the closure.

BHU agreed, but only after receiving information from the City about its operational constraints. The City did not provide that information. Nevertheless, BHU had already provided extensive information on disability accommodation needs for over 20 of its members.

- The City did not request BHU to draft a plan. The City asked you to explain your members' needs and you agreed. But instead, the following week, Mr. Prince emailed to say he would not provide this information until the City first gave him more information.
- All but four of the accommodation requests were submitted *prior to* the Court's order, and do not include the information we requested to allow us to comply with the order (e.g. proposed relocation spots, tent size requests).

- May 13 – May 15: BHU repeatedly asked Thomas Gregory for clarity on the ADA interactive process that needs to be completed. He took a two-week vacation without providing answers.

    - This misstates Mr. Gregory's good-faith communications with you. On 5/11 Mr. Gregory proactively informed you that he would be on vacation 5/15 to 6/1 and gave you the contact information for the individual filling in for him during that time (Chris Evans). He told you he would be available to discuss accommodation inquiries through 5/15 at noon. You sent him an email on 5/13. You followed up on 5/14 and he had a phone conversation with you the same day. He left on vacation at noon the next day. You chose not to submit any accommodation requests to Mr. Evans while Mr. Gregory was out.
    - The City's email on 5/29 and meeting on 6/5 answered most of the questions in your 5/13 email. Nonetheless, when you followed up on this email on 6/18, the City provided a comprehensive written response on 6/25.

- May 29 (late evening): The City finally sent a proposal with a June 6 deadline for all ADA requests. The plan did not include abatement of shelter vehicles.

    - This description of the "deadline" is false; we requested that *new* accommodation requests be submitted by June 6, for people who had not already made requests. We did not communicate that requests could not be made after that date.

- June 1: BHU requested a meeting to discuss the City's proposal.
- June 5: BHU sent written feedback on the City's proposal and met with the City to discuss it. The City promised to respond by June 12.
- June 10: BHU re-sends an accommodation request for one member.

- June 12: The City responded to BHU's feedback, and declined every request. The City also failed to provide clear answers about the ADA interactive process.
    - We strongly disagree with this characterization.
- June 17: Thomas Gregory finally responded to accommodation requests sent on March 19 and October 4, 2025. BHU submits two more accommodation requests for its members.
    - This was not the first date that Mr. Gregory responded to these requests.
        - He initially responded to the March 19 request on March 24. He explained that a substantive response would come after the court issued its order.
        - Mr. Gregory initially responded to the October 4 request on October 10. He explained that there was no pending City abatement and asked you to clarify what circumstances were prompting the request. You did not respond until June 10. Mr. Gregory provided a substantive response on June 17.
- June 25: City Attorney Sara Stephens responds to ADA questions BHU had been asking since May 13, over six weeks later.
    - June 25 was not the first time we answered most of these questions. Most of these questions were addressed in the 5/29 email, 6/5 phone call, and subsequent emails in this thread.
- June 26: The City posted notices at the encampment, unilaterally imposing a July 3 deadline for all disability requests. BHU provides five specific objections to the City's notice.
    - We first emailed you and Mr. Prince alerting you that we would do this because you failed to provide the information we needed from BHU members despite our multiple requests.
    - The July 3 date was not described as a deadline. The notice stated "You are encouraged to submit requests by July 3, 2026, for greater likelihood that your requests can be accommodated." The City continued to conduct in-person outreach at the encampment focused on accommodation requests during the three weeks of field operations, most recently on July 14, 2026 during one of the multiple visits made to the encampment by the ADA Program Coordinator.
    - We responded to your objections in writing on June 30.

- June 30-July 9: The Homeless Response Team engages in the interactive process without BHU representation. On June 29 and July 6, two residents proposed relocation areas.

  - You were present for the majority of interactions. At least once, staff were told "I don't want Yesica to speak for me." On multiple occasions, you interfered with residents attempting to communicate with City staff.
  - The June 29 request was to relocate to a privately owned parking lot. You told Thomas Gregory you would follow up with specifics about the relocation request but did not do so.
  - Mr. Gregory reports no relocation requests, or any other accommodation requests, were made on July 6. HRT staff report that no one has proposed a relocation spot to them. If HRT had received such a request, they would have referred them to Thomas to assess the accommodation request.

- July 3: BHU submits two more accommodation requests.
- July 10: To date, the City has not provided a determination on the feasibility of the proposed locations nor responded to the four additional accommodation requests BHU submitted on behalf of its members.

  - Only one location was proposed and it was on private property. You did not provide additional information promised, but it is clear that the location is not feasible. Moreover, the City has now responded to all four accommodation requests.

Despite your claim that BHU has provided "no substantive response," BHU has provided written feedback, attended meetings, submitted accommodation requests and requested clarity for months.

- The "substantive response" referred to in my email below is "substantive information that will assist the City in implementing the Court's order"; namely, information about BHU members' needs related to the court-ordered accommodations. You have provided pages of feedback on how you believe our abatement plan is objectionable, but no new information that will help us implement the court's order, as we've requested. We have still not received responses to our requests for "tent and sleeping bag size information and the proposed relocation location for each individual seeking a tent related accommodation" that we requested on May 29.

In contrast, the City imposed arbitrary deadlines without BHU's agreement. When BHU requested reasonable time, taking into account people's disabilities, the City refused to extend any deadlines.

- The City is not required to get BHU's approval in order to establish a

compliance deadline and interim operational timelines.

- The City has explained that the timeline is not arbitrary, but necessary to both address the urgent public health concerns and to comply with the court order.
- In response to your objection to the City setting *any* kind of timeline, on June 9 we explained that "if there are disability-related reasons that you need additional time on those deadlines, please provide those requests promptly and we will evaluate them based on whether such extensions would create an undue burden or fundamental alteration of the City's program." We received no such request. As a result, we have proceeded with our original timeline.

**2) The City has interfered with BHU representation**

You claim that "no City staff interfered" with BHU's participation. The record does not support this claim.

Observed violations of the Union's right to representation:

- June 30: HRT supervisor Okeya Vance overrode BHU's advocacy efforts to represent its member Thomas Barnett, who has a documented memory impairment. Despite his inability to respond, Ms. Vance demanded an immediate tent size from Mr. Barnett and excluded BHU from the conversation.
  - According to Ms. Vance,  Mr. Barnett told her that he used his RV for storage but did not live in it, at which point you interrupted and said that wasn't true. You told him that he should say he lives in the RV so he wouldn't have to leave. When Ms. Vance asked him if he wanted a tent and what size tent he wanted, you continued to interrupt to the point that Ms. Vance was unable to continue the conversation, and when Mr. Barnett appeared obviously confused, she told Mr. Barnett she would speak with him at another time.
- July 1: In a discussion about shelter options, Ms. Vance gave BHU member Patrick Ford an ultimatum: she would not engage in a conversation with both him and BHU at the same time. She stated that if she was having a conversation with BHU, she would not answer any of Mr. Ford's questions. This forced BHU to choose between representation and our member's access to services.
  - Mr. Ford was discussing shelter options with Ms. Vance, stating he did not want to be on the streets. You then interrupted to the point the conversation could not continue. Ms. Vance asked Mr. Ford if he wanted you to speak on his behalf and he clearly said "no" and that he

wanted to continue the conversation with Ms. Vance, which is what happened. This is only one example of when it was clear that a resident did not give informed consent to you representing them in the conversation.

- July 7: HRT outreach worker Monique tells camp residents: "Yesica don't want the City to issue gift cards," falsely blaming BHU for the denial of services. This misrepresentation undermines residents' trust in BHU and interferes with our ability to represent our members.
    - This is not a misrepresentation; you have communicated that you do not think gift cards comply with the court order.

Therefore, the City has actively obstructed and misrepresented the Berkeley Homeless Union during its outreach efforts.

- Your accounts do not align with how staff describe these incidents. If anything, it is BHU who has interfered with residents' abilities to receive needed services and accommodations. Most people living there were not even aware that the City was planning to clear the area until staff spoke with them, despite BHU representatives having this information this since May 29.

**3) Outreach has been inconsistent, misleading and inadequate**

Despite your public notice stating staff would be present at 10 AM daily, the City has arrived late every day or sometimes have not been present. The City cannot claim urgency while showing up hours late, then leaving within 30 minutes to an hour.

- The outreach area is quite geographically large so it is unlikely you have observed exactly when City staff arrive somewhere in the abatement area. Staff informed us that on at least one occasion they conducted outreach without you being present because it was in an area not visible from your RV.

***Most importantly, camp residents are being misinformed.*** HRT outreach workers are telling residents the City is giving away "free items" without explaining the actual court's mandate. Residents have not been told:

- They are entitled to a tent as large as their disability requires.
- The City must replace destroyed clothing and essential gear.
- The City cannot enforce the 3x3' rule if it means losing a tent, for anyone.
- Once a tent size is accepted, residents will be constrained to that footprint.
- HRT is not asking residents if they have a disability, which is the very condition that entitles them to the court's accommodations.

- We disagree with many of these interpretations of the court order, and to our knowledge staff have not made any false statements. Mr. Gregory is using a

script and is absolutely asking people if they have a disability. Furthermore, it is not the City's role to inform BHU members of their legal rights. That should be handled by their organizational and legal representatives.

As a result, some residents have made uninformed decisions without understanding their rights. Furthermore, the interactive process is being conducted without BHU's participation and the ADA Coordinator. On June 30, Thomas Gregory himself clarified to BHU that questions about tent size are part of the interactive process. Yet HRT has been conducting these inquiries every day without BHU's participation and adequate training to carry out such a process. Additionally, the City failed to assess the disability needs of the entire encampment by its own unilateral July 3 compliance deadline. To date, not all residents of the encampment have been spoken to about the upcoming abatement.

- HRT is offering tents to *everyone,* regardless of disability status, and staff ask what size tent they would like in order to purchase the tent that they prefer. This is separate from the interactive process Mr. Gregory conducts with respect to the tent size needed to accommodate a disability.
- At this point, staff believe they have spoken to everyone. Notices about services to prepare for the upcoming abatement have been posted throughout the area. More importantly, you and BHU's attorney, representatives for all BHU members, have known since May 29 of the abatement date. If they have not been spoken to about the abatement, that is a failure of representation by BHU.

**4) The City's treatment of vehicle residents contradicts its own plan**

Your own staff stated: *"The City would like to clarify that it will not be enforcing against vehicles at this time."* (Rahi Azizi, May 29 proposal).

Yet HRT is pressuring vehicle residents, such as Thomas Barnett, who is explicitly named in the court's order as needing to complete the interactive process regarding their vehicles—to select tent sizes.

You cannot claim you are "not enforcing against vehicles" while pressuring vehicle residents to accept tent accommodations without undergoing the interactive process. Please clarify what is the City's position in regards to this issue.

- Staff have been very clear with people (and in the posted notice) that vehicles are not being required to relocate at this time. Mr. Barnett told HRT staff very clearly that he does not live in his RV but uses it for storage, and requested a new tent. Moreover, even if staff did offer a tent to someone who lived in an RV, this is hardly a violation of the court order. Staff have never pressured anyone to accept a new tent. Additionally, as I explained above, HRT is not managing the interactive process but rather offering tents to any individual at the encampment who would like them.

**5) Gift cards are not compliance with the court's order**

You argue that gift cards are acceptable because "the Court did not specify exactly how the City must replace destroyed survival gear."

The court was clear: *"Providing such minimal but essential property would permit disabled residents to move in compliance with the abatement order while preserving their basic health and safety."* (Order, p. 64)

A gift card—issued before the abatement—does not replace destroyed property. If the City destroys a resident's tent, sleeping bag, or clothing, they must provide a replacement, not a voucher to shop while unsheltered. Moreover, not all camp residents are welcomed in retail stores to shop and many have faced discrimination, rendering a gift card to replace items useless in practice.

The court did not require the City to "complete personal shopping," but it did require the City to replace essential survival property that is destroyed. Please clarify how there will be adequate compliance with this part of the court's order.

- As we have stated, we believe that providing gift cards is an acceptable method of complying with the court's order. Further, everyone will be offered tents of their chosen size and a $100 gift card they can use to purchase a sleeping bag or clothing items as needed. When HRT staff have discussed replacement survival gear with residents, they have not received one objection to the provision of a gift card, and residents have expressed a preference to buy their own gear rather than have the City supply the items.

**Next steps**

Ms. Stephens, we take serious issue with several factual claims in your emails. If these inaccuracies continue, BHU is prepared to report this matter to the California State Bar.

Of course, our preference is to resolve this collaboratively and avoid unnecessary conflict. If you wish to engage in good-faith collaboration, BHU remains available and willing.

We are available to meet this coming week to clarify any issues and agree on a path forward that serves both our members and the City's obligations. Please confirm by Tuesday, July 14 whether you are open to a meeting.

- It is clear to us that you are not willing to work in good faith or act in the best interests of BHU members; therefore, we decline this offer

Sincerely,

**Yesica Prado**

President, Berkeley Homeless Union

Sara Stephens
Deputy City Attorney
City Attorney's Office
2180 Milvia Street, 4th floor
Berkeley, CA 94704
Cell: 510.295.8490
sstephens@berkeleyca.gov
Pronouns: she / her

---

**From:** Berkeley Homeless Union <berkeley.homeless.union@gmail.com>
**Sent:** Friday, July 10, 2026 5:22 PM
**To:** Stephens, Sara <sstephens@berkeleyca.gov>
**Cc:** Scott, Nubyaan <NScott@berkeleyca.gov>; Anthony Prince <princelawoffices@yahoo.com>; Rahi Azizi <rahi.azizi@aalrr.com>; Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; Ruth M. Bond <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>; Morris, Kathleen <KMorris@berkeleyca.gov>
**Subject:** Re: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Ms. Stephens,
I am in receipt of your email. However, your email contains numerous factual inaccuracies and misrepresentations that need correction. Please see below:
**1) Distortion of the timeline**
You claim BHU has "failed to meet proposed deadlines, suggest alternatives, or provide any substantive information." The record does not support this claim.

The record shows:

- April 3: Summary Judgment Order issued.
- April 6 – April 20: The City changed meeting dates six times and took 20 days to hold the first implementation meeting.
- April 24: During this phone meeting, the City requested that BHU draft a plan on how the City would need to implement accommodations for the closure. BHU agreed, but only after receiving information from the City about its operational constraints. The City did not provide that information. Nevertheless, BHU had already provided extensive information on disability accommodation needs for over 20 of its members.
- May 13 – May 15: BHU repeatedly asked Thomas Gregory for clarity on the ADA interactive process that needs to be completed. He took a two-week vacation without providing answers.

  May 29 (late evening): The City finally sent a proposal with a June 6 deadline

for all ADA requests. The plan did not include abatement of shelter vehicles.

- June 1: BHU requested a meeting to discuss the City's proposal.
- June 5: BHU sent written feedback on the City's proposal and met with the City to discuss it. The City promised to respond by June 12.
- June 10: BHU re-sends an accommodation request for one member.
- June 12: The City responded to BHU's feedback, and declined every request. The City also failed to provide clear answers about the ADA interactive process.
- June 17: Thomas Gregory finally responded to accommodation requests sent on March 19 and October 4, 2025. BHU submits two more accommodation requests for its members.
- June 25: City Attorney Sara Stephens responds to ADA questions BHU had been asking since May 13, over six weeks later.
- June 26: The City posted notices at the encampment, unilaterally imposing a July 3 deadline for all disability requests. BHU provides five specific objections to the City's notice.
- June 30-July 9: The Homeless Response Team engages in the interactive process without BHU representation. On June 29 and July 6, two residents proposed relocation areas.
- July 3: BHU submits two more accommodation requests.
- July 10: To date, the City has not provided a determination on the feasibility of the proposed locations nor responded to the four additional accommodation requests BHU submitted on behalf of its members.

Despite your claim that BHU has provided "no substantive response," BHU has provided written feedback, attended meetings, submitted accommodation requests and requested clarity for months.
In contrast, the City imposed arbitrary deadlines without BHU's agreement. When BHU requested reasonable time, taking into account people's disabilities, the City refused to extend any deadlines.

**2) The City has interfered with BHU representation**

You claim that "no City staff interfered" with BHU's participation. The record does not support this claim.

Observed violations of the Union's right to representation:

- June 30: HRT supervisor Okeya Vance overrode BHU's advocacy efforts to represent its member Thomas Barnett, who has a documented memory impairment. Despite his inability to respond, Ms. Vance demanded an immediate tent size from Mr. Barnett and excluded BHU from the conversation.
- July 1: In a discussion about shelter options, Ms. Vance gave BHU member Patrick Ford an ultimatum: she would not engage in a conversation with both

him and BHU at the same time. She stated that if she was having a conversation with BHU, she would not answer any of Mr. Ford's questions. This forced BHU to choose between representation and our member's access to services.

- July 7: HRT outreach worker Monique tells camp residents: "Yesica don't want the City to issue gift cards," falsely blaming BHU for the denial of services. This misrepresentation undermines residents' trust in BHU and interferes with our ability to represent our members.

Therefore, the City has actively obstructed and misrepresented the Berkeley Homeless Union during its outreach efforts.

**3) Outreach has been inconsistent, misleading and inadequate**

Despite your public notice stating staff would be present at 10 AM daily, the City has arrived late every day or sometimes have not been present. The City cannot claim urgency while showing up hours late, then leaving within 30 minutes to an hour.

***Most importantly, camp residents are being misinformed.*** HRT outreach workers are telling residents the City is giving away "free items" without explaining the actual court's mandate. Residents have not been told:

- They are entitled to a tent as large as their disability requires.
- The City must replace destroyed clothing and essential gear.
- The City cannot enforce the 3x3' rule if it means losing a tent, for anyone.
- Once a tent size is accepted, residents will be constrained to that footprint.
- HRT is not asking residents if they have a disability, which is the very condition that entitles them to the court's accommodations.

As a result, some residents have made uninformed decisions without understanding their rights. Furthermore, the interactive process is being conducted without BHU's participation and the ADA Coordinator. On June 30, Thomas Gregory himself clarified to BHU that questions about tent size are part of the interactive process. Yet HRT has been conducting these inquiries every day without BHU's participation and adequate training to carry out such a process. Additionally, the City failed to assess the disability needs of the entire encampment by its own unilateral July 3 compliance deadline. To date, not all residents of the encampment have been spoken to about the upcoming abatement. **4) The City's treatment of vehicle residents contradicts its own plan**

Your own staff stated: *"The City would like to clarify that it will not be enforcing against vehicles at this time."* (Rahi Azizi, May 29 proposal).

Yet HRT is pressuring vehicle residents, such as Thomas Barnett, who is explicitly named in the court's order as needing to complete the interactive process regarding their vehicles—to select tent sizes.

You cannot claim you are "not enforcing against vehicles" while pressuring vehicle residents to accept tent accommodations without undergoing the interactive process. Please clarify what is the City's position in regards to this issue.

**5) Gift cards are not compliance with the court's order**

You argue that gift cards are acceptable because "the Court did not specify exactly how the City must replace destroyed survival gear."

The court was clear: *"Providing such minimal but essential property would permit disabled residents to move in compliance with the abatement order while preserving their basic health and safety."* (Order, p. 64)
A gift card—issued before the abatement—does not replace destroyed property. If the City destroys a resident's tent, sleeping bag, or clothing, they must provide a replacement, not a voucher to shop while unsheltered. Moreover, not all camp residents are welcomed in retail stores to shop and many have faced discrimination, rendering a gift card to replace items useless in practice.
The court did not require the City to "complete personal shopping," but it did require the City to replace essential survival property that is destroyed. Please clarify how there will be adequate compliance with this part of the court's order.
**Next steps**
Ms. Stephens, we take serious issue with several factual claims in your emails. If these inaccuracies continue, BHU is prepared to report this matter to the California State Bar.
Of course, our preference is to resolve this collaboratively and avoid unnecessary conflict. If you wish to engage in good-faith collaboration, BHU remains available and willing.
We are available to meet this coming week to clarify any issues and agree on a path forward that serves both our members and the City's obligations. Please confirm by Tuesday, July 14 whether you are open to a meeting.
Sincerely,

**Yesica Prado**
President, Berkeley Homeless Union

On Tue, Jun 30, 2026 at 2:31 PM Stephens, Sara <sstephens@berkeleyca.gov> wrote:

Mr. Prince,

I am responding to the email you sent on Friday, June 26, which is copied below and attached, in order to keep all communications in one email thread.

We have made multiple attempts to communicate with residents through BHU as their representative, but BHU has failed to meet proposed deadlines, suggest alternatives, or provide any substantive information that will assist the City in implementing the Court's order. We have repeatedly requested information from you about your members' needs, beginning with the meeting on April 24, and have received no substantive response.

You have been on notice since May 29 that we would begin field operations beginning this week (June 29). We have not received a response from you since June 4, and Ms. Prado has continued to ask the same questions that we have made multiple attempts to answer both verbally and in writing rather than providing the information we've requested. She has also, as recently as yesterday, personally supervised (and to some extent participated in) all of the City's ADA Program Coordinator's outreach efforts at the encampment, and no City staff interfered with her in doing so. Even your email below reflects a lack of good faith participation in this implementation process, as you on one hand state that you are "collecting" information (which you have said for nearly one month), and on the other hand appear to be stating that BHU members will refuse to relocate or participate in this process if the City will not promise that they will never experience another abatement or ever be asked to relocate. Ms. Scott first informed you on our June 4 call that the City cannot do so, as enforcement and abatement actions are based on the conditions and impacts occurring at that point in time. I reiterated this in my June 12 email where I informed you that even the Court's order confirmed that your request is speculative in nature. I will repeat here that the City cannot promise that an individual will never be asked to relocate. However, we have repeatedly informed you that people will be able to remain in their locations if they follow the City's policies and codes, consistent with the Court's order.

The Court ordered the City to provide reasonable accommodations to Harrison Corridor residents. We are concerned that BHU is creating a barrier to residents receiving needed accommodations and services. We also strongly disagree with your assessment that any engagement the City has directly with a resident is de facto not part of the interactive process. Given BHU's lack of substantive communication and the City's need to coordinate across multiple departments to conduct the abatement and address the significant vector control issues acknowledged by the Court, the City risks violating the court order if it does not directly engage with residents in advance of the planned abatement. The City hopes that BHU members will work with its staff to relocate in as organized a fashion as possible prior to the abatement; instead, the approach you are taking appears to be putting members in a position of still being present on the date of abatement, which would effectively leave them without many of the accommodations we are attempting to provide.

Further, we do not agree that the gift cards violate the court order. The City will offer some clothing items, but it is not operationally feasible for City staff to complete personal shopping for each individual whose clothing may be destroyed during abatement due to the presence of leptospirosis. As such, everyone will be offered tents of their chosen size and a $100 gift card they can use to purchase a sleeping bag or clothing items as needed. The Court did not specify exactly how the City must replace destroyed survival gear. In any event, the City is offering the gift cards prior to the abatement even taking place. So, it

is premature to claim that the City has failed to comply with the Court's requirement that we replace gear that is destroyed.

Regarding the July 3 date on the notice—this is not a hard "deadline" but merely signals the operational reality that accommodation requests received after that date may be more difficult to provide and more likely to be an undue burden on the City. Keep in mind that BHU representatives have had over two months to provide these requests and related information to the City, not four days as you claim.

We again decline to make some kind of promise about future enforcement actions, which is not required by the Court as a prerequisite to abating the serious public health conditions in the Harrison Corridor. The Court expressly refused to require any kind of moratorium on enforcement. "The City is not required to designate, create, or identify, enforcement-free relocation zones or City-sanctioned campsites. BHU members may relocate to permissible locations of their choosing subject to the City's existing conditions-based enforcement framework." Dkt. No.288 p.71.

As we have already emphasized, we invite and encourage BHU to provide information about the needs of its members so the City can adequately accommodate them prior to the July 27 compliance deadline.

Sara Stephens
Deputy City Attorney
City Attorney's Office
2180 Milvia Street, 4th floor
Berkeley, CA 94704
Cell: 510.295.8490
sstephens@berkeleyca.gov
Pronouns: she / her

**From:** Anthony Prince <princelawoffices@yahoo.com>
**Sent:** Friday, June 26, 2026 4:18 PM
**To:** Stephens, Sara <sstephens@berkeleyca.gov>; rahi.azizi@aalrr.com; Brown, Farimah F. <FBrown@berkeleyca.gov>
**Cc:** berkeley.homeless.union@gmail.com; robbiepowelson@gmail.com
**Subject:** Notice posted today, June 26,

**WARNING:** This is not a City of Berkeley email. Do not click links or attachments unless you trust the sender and know the content is safe.

1. You did not provide us in advance with a copy of the Notice that you posted today, June 26,2026 at 8th and Harrison. That notice informs residents that City officials will be available at the encampment at specific times so that residents can discuss issues relating to relocation and disability accommodations.

The City continues to act as if our members have not designated the Union as their representative for purposes of determination and implementation of disability accommodations. This is to advise you that any

discussions that any City official has with any resident entitled to accommodations that without the involvement of a designated Union representative is not appropriate and will not constitute any valid agreement or be considered part of the interactive process.

2. The offer of gift cards -- the value of which you have not designated -- to our members to purchase sleeping bags is inconsistent with the Court's order and is hereby rejected. You previously asked to be provided with information regarding the size of the tents and sleeping bags, information that we are collecting. The idea is for the City to purchase these items, not to make our members, most of whom have mobility-related disabilities, go shopping.

3. The notice states that the city will evaluate whether it can accommodate a tent-size that may be needed in a particular location. Again, to the extent that the notice suggests that this determination will be unilaterally made by the City it is inconsistent with the law and the Court's order. Rather, the determination is subject to the interactive process for which the Union is the representative of each covered member.

4. Today's posted notice states that requests made by July 3 have a "greater likelihood" of being accommodated.
Since the Notice states that City officials will be in the camp on June 29, to talk with residents, the arbitrary deadline for "greater likelihood" of a requested accommodation being provided would be only four days later.
In any event, there is no legal justification for setting a deadline for submission of a request for a reasonable accommodation under the law.

5. Finally, regarding identification of areas to which our members might be relocated, based on Sarah Stephens' response of June 12 to the concerns raised in Union president Prado's previous email of the City continues to refuse to provide any assurance whatsoever that people so relocated will not be immediately swept.

This is the main concern of our members. Unless the City agrees that this will not happen, our members are fearful of moving anywhere. While the Court found on April 3 that the issue of serial evictions was not yet ripe, the City's failure to even discuss let alone provide a process or reassurances has now made that issue ripe and, absent an agreement, the Union intends to proceed accordingly.

Anthony Prince

---

**From:** Stephens, Sara
**Sent:** Thursday, June 25, 2026 2:45 PM
**To:** Scott, Nubyaan <NScott@berkeleyca.gov>; 'Anthony Prince' <princelawoffices@yahoo.com>; 'Berkeley Homeless Union' <berkeley.homeless.union@gmail.com>; 'Rahi Azizi' <rahi.azizi@aalrr.com>
**Cc:** Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; 'Ruth M. Bond' <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>; Morris, Kathleen <KMorris@berkeleyca.gov>
**Subject:** RE: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Mr. Prince and BHU Representatives,

Pursuant to the implementation plan that we shared with you on May 29, the City intends to conduct field operations in the Harrison corridor starting on Monday, June 29 through

July 17. During this time, staff will offer and provide packing, storage, and relocation assistance and replacement of survival gear to any unhoused individuals residing at the encampment.

In order to provide these services, as well as engage in the interactive process regarding tent size and relocation proposals, the City must receive requests and additional information from BHU members. Thus far, you have insisted that we only obtain this information through BHU representatives. As reflected in our May 29 implementation plan, we requested information from BHU representatives regarding where its members intend to relocate by July 19. However, you have neither requested an extension nor provided substantive responses to the City's emails on this topic since June 9. So that we can begin implementation within the timeline that we have explained is operationally feasible for the City, and in order to comply with the court's order, our ADA Coordinator and HRT staff will begin requesting this information directly from residents of the encampment. Beginning this week, HRT will post notices informing residents of the services the City will make available beginning next week, as well as how they can make accommodation requests directly. The City's ADA Coordinator will also speak with individuals and give them an opportunity to make requests to him in-person. This notice will *not* include a compliance deadline and will not require immediate relocation. As previously explained, subsequent notice will be posted about the abatement action at least 72 hours before the compliance deadline.

You are still more than welcome to submit accommodation requests or provide the additional requested information outlined in the implementation plan (i.e., tent and sleeping bag size information; list of individuals who would like to accept packing, storage, or relocation assistance) on behalf of your members, as we have already invited you to do.

Sara Stephens
Deputy City Attorney
City Attorney's Office
2180 Milvia Street, 4th floor
Berkeley, CA 94704
**Cell:** 510.295.8490
sstephens@berkeleyca.gov
Pronouns: she / her

---

**From:** Stephens, Sara
**Sent:** Friday, June 12, 2026 4:54 PM
**To:** Scott, Nubyaan <NScott@berkeleyca.gov>; 'Anthony Prince' <princelawoffices@yahoo.com>; 'Berkeley Homeless Union' <berkeley.homeless.union@gmail.com>; 'Rahi Azizi' <rahi.azizi@aalrr.com>

**Cc:** Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; 'Ruth M. Bond' <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>
**Subject:** RE: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Mr. Prince and BHU Representatives,

Below is a response to your comments on the City's plan for the Harrison Corridor.

We would also like to request an update from you on your progress on the first two steps: (1) identifying BHU members not covered by the injunction who have accommodation requests, and (2) determining tent size and proposed relocation locations for individuals seeking tent-related accommodations. Please let us know if you believe we are ready to schedule another call to discuss next steps.

I. Correcting the record: Information sharing

- The City disagrees with this characterization of the April 24th meeting. We did not ask BHU to draft a closure plan, but requested information from BHU about the accommodation needs of its members. You concede that the City needs to "gather sufficient information from the individual requesting accommodations" which is what we are trying to do. As you have insisted, we are only to request such information through BHU as the members' representative. We are not required to provide details of our operational plan in order for BHU to submit accommodation requests. Rather, our plan will be tailored, where feasible, to the requests we receive.

II. Correcting the record: Austin White's incident

- We have seen video footage of the incident as well and the City absolutely did not file a "false police report." Regardless of whether we agree on what took place, the City's policy and legal obligation has always been to maintain a safe workplace for its employees. The ADA does not require employees to provide in-person assistance to individuals who make direct threats against them. To be clear, we are not at this time intending to avoid direct contact with encampment residents, nor altering our plan based on prior events. We are merely explaining what will happen should threats of violence arise in the future. While we hoped you would agree with this basic position, your disagreement will not change the City's intended response should employees face unsafe circumstances in the future.

III. Threat-based cessation provision is in bad faith and must be removed

- I believe we largely addressed this point in the prior paragraph. The ADA allows the City to protect its employees from disability-related safety risks when they present a direct threat. The court order does not overrule this precedent nor does it prevent the City from protecting its employees should threats arise in the future.

- We have no intention of "cutting off accommodations entirely" but will simply limit in-person contact with the individual if a credible threat is made.
- We are not seeking your agreement on this statement in our email. Should you refuse to cooperate with implementing the Court's order on the basis that the City is "insist[ing] on addressing safety concerns," we will seek court intervention to resolve the matter.

BHU's proposed revisions to the City's proposal

- July 13 cutoff for packing, storage, and relocation assistance
  - You note that the Court does not expressly authorize a cutoff date for providing relocation or storage assistance, but neither did the Court require the City to postpone abatement indefinitely. The Court recognized the need to address the public health concerns in the Harrison Corridor and found that an indefinite pause on abatement would not be a reasonable accommodation. Likewise, it rejected as unreasonable the request for guaranteed shelter placement on the basis that it "could delay abatement indefinitely and for a long period" which "would work a substantial non-speculative obstruction of the City's effort to maintain public health and safety in this case." (Dkt. No.288, pp. 37-39) Thus, establishing a timeline for providing accommodations and abating the area is consistent with the court order. It is also operationally necessary. The City must plan well in advance before conducting this type of operation and leaving the timeline entirely undefined would make implementation impossible.
  - To clarify, the City has blocked off three full weeks for field operations, with the week of July 13 being the final week. We are offerring storage, packing, and relocation assistance from June 29 through July 17.
  - As we have already explained, the City will consider disability-related requests to adjust these timelines and make changes if they do not result in an undue burden or fundamental alteration.
  - While we have blocked off these three weeks for relocation assistance and early packing and storage, the City will also comply with the court order and legal mandates with respect to storage of any non-hazardous, unabandoned property that remains in the Harrison Corridor at the time of the abatement.

- No serial evictions
  - We are aware of the Court's reasoning that "should the City engage in serial evictions after residents move from the Encampment, that could, at some point, give rise to a legal claim. But at this juncture, as noted below, such a claim is not ripe." We do not understand this to require any affirmative commitment by the City as to future enforcement of its ordinances, which

we decline to do now because to do so would be speculative.

- You also request at least a week's notice before any proposed enforcement action. The City typically does give at least a week's notice, but we are not required by law to do so, and in some circumstances we must act more rapidly based on imminent health or safety concerns. As a result, we decline to make this commitment. Further, as explained during our call, the City's operational plan aims to complete the relocation of all eligible BHU members prior to an abatement. BHU has already been provided with notice as of the date of our May 29 letter. If the City is provided with the requested information on a reasonable and timely basis, we hope to collaborate to minimize the direct impact of abatement on BHU members on the date the abatement occurs.

- Tent location evaluation – missing individualized balancing test

  - You note that the summary of our abatement plan does not enumerate all of the factors the Court instructed the City to consider when assessing proposed tent locations. We intend to comply with the court order and our email was not meant to be an exhaustive description of how we will assess accommodation requests. We are not refusing modifications of the 3x3 rule, as you suggest. But the Court does allow us to consider the standards in AR 10.2. "The Court's ruling on the 3x3 rule does not, however, relieve BHU members of all space-related constraints, nor does it necessarily displace the path of travel requirements set forth in A.R. 10.2. Those requirements serve legitimate purposes, including pedestrian safety and accessibility. The Court concludes that the path of travel requirements under A.R. 10.2 are part of the individualized assessment that the City must conduct for each claimant." (Dkt. No. 288 p. 59)

- Closure date – must be tied to completion of accommodations

  - We provided this plan and timeline for the purpose of completing accommodations prior to the scheduled abatement. Unless BHU fails to cooperate, providing accommodations prior to the closure date is the intent. We did not "set a closure deadline that ignores these obligations" but instead scheduled it far enough in advance so we can meet these obligations.
  - As a reminder, the Court found that as to the original accommodation requests, "the interactive process was sufficiently complete." Dkt. No. 288, p.22. The Court also emphasized that failure to engage in an interactive process in good faith, by itself, does not give rise to a cause of action. Id. Legal liability turns on whether accommodations were properly granted or denied, and the City of course intends to comply with the Court's order.

- June 6 deadline for submitting ADA accommodation requests
  - You say that "[t]he City has stated that it will not accept requests after this date" but this is inaccurate. We provided this date as a request so we can better accommodate these individuals. We will receive requests anytime before the closure and never said otherwise. But it is important to note that accommodations are more likely to create an undue burden if we have limited time to evaluate and provide them.
  - As we stated on the call, we have received the accommodation requests for Melissa Zajac and Alexander Wilson and we are in the process of evaluating those requests in light of the court order.
  - You insist that the June 6 request was done in bad faith, but it was not. It was established in an effort to best evaluate new accommodation requests. Because we are only requesting names and accommodation requests of a limited number of people (those who have not submitted one in the past 1.5 years since the original notice was posted) and a limited universe of reasonable accommodations (those identified in the court's order), and because it has been over three months since the Court issued its order, and Mr. Prince stated that BHU believes the Court's order is clear, we saw this as a reasonable timeline.

- Additional clarifications needed
  - Storage duration: we intend to comply with AR 10.1 and the court order which provides for 90 days of storage.
  - Replacement of essential property: As you have requested, we are inviting requests for replacement through BHU, in the same manner as you have submitted other accommodation requests. Replacements will be provided during the field operations weeks. Once we receive requests, we will work through the logistics with you.
  - Sterilite tubs: we recognize this is not required by the Court, but the Court (and our public health officer) noted that City employees are not required to sort through hazardous materials. Tubs will allow the City to safely transport or store items that employees would not otherwise be able to handle directly.
  - Communication needs: we do not state that we will directly communicate with individual residents; we intend to communicate through BHU unless absolutely necessary (e.g. during field operation dates, we may need to directly interact with individuals). We recognize that BHU leadership is the representative of BHU members, unless we are told otherwise.

Sara Stephens
Deputy City Attorney
City Attorney's Office
2180 Milvia Street, 4th floor
Berkeley, CA 94704
Cell: 510.295.8490
sstephens@berkeleyca.gov
Pronouns: she / her

---

**From:** Stephens, Sara
**Sent:** Wednesday, June 10, 2026 9:11 AM
**To:** Scott, Nubyaan <NScott@berkeleyca.gov>; 'Anthony Prince' <princelawoffices@yahoo.com>; 'Berkeley Homeless Union' <berkeley.homeless.union@gmail.com>; 'Rahi Azizi' <rahi.azizi@aalrr.com>
**Cc:** Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; 'Ruth M. Bond' <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>
**Subject:** RE: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Mr. Prince and BHU Representatives,
As promised, attached is the flyer that the City will be distributing to encampment residents later today.
Best,
Sara

Sara Stephens
Deputy City Attorney
City Attorney's Office
2180 Milvia Street, 4th floor
Berkeley, CA 94704
Cell: 510.295.8490
sstephens@berkeleyca.gov
Pronouns: she / her

---

**From:** Stephens, Sara
**Sent:** Tuesday, June 9, 2026 5:06 PM
**To:** Scott, Nubyaan <NScott@berkeleyca.gov>; Anthony Prince <princelawoffices@yahoo.com>; Berkeley Homeless Union <berkeley.homeless.union@gmail.com>; Rahi Azizi <rahi.azizi@aalrr.com>
**Cc:** Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; Ruth M. Bond <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>
**Subject:** RE: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re

Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Dear Mr. Prince and BHU Representatives,

I am writing to follow up after our phone conversation on Friday, June 5. The following has occurred thus far:

- On **April 24, 2026** our office had a call with you about the Court's order which was issued on **April 3**. At that time the City requested information from BHU about the needs of its members consistent with the order.
- On **April 30**, you declined to provide any requested information, stating that you needed more information about the City's abatement plans first.
- On **May 29,** the City provided you with our proposed plan and timeline for abatement in the Harrison Corridor. Our initial request in that email was that you provide by **June 6**: (1) any names and accommodation requests of individuals *not* included in the injunction, and (2) any feedback on the implementation plan.
- On **June 1** you informed us that Ms. Prado would be out until June 3 and it would be impossible to provide the information about accommodations by June 6. You requested a Zoom meeting on Friday, June 5 to discuss the plan.
- On **June 5** you sent us a written response to the plan, and we also met via Zoom to discuss the plan.
- During the call, you explained that June 6 was infeasible for providing accommodation requests for BHU members who are not covered by the injunction, and you refused to provide an alternative date when we requested one. However, Ms. Prado stated that she could start touching base with BHU members and would send us new accommodation requests **beginning Monday, June 8**. She explained that we likely would not receive them all the week of June 8, but we would begin receiving them this week. We have not yet received any accommodation requests.
- We stated that on **Friday, June 12** we will request a status update by email, which we still intend to do. At that time, we will determine if both sides are prepared for another meeting.

We would like to clarify that the City intends to maintain the compliance deadline in our plan of **July 27**, and the **weeks of June 29, July 6, and July 13** are the weeks that the City is planning to conduct field operations (packing, storing, and relocating belongings). These dates for compliance and field operations are not arbitrary but were chosen due to the urgency of the leptospirosis situation and based on what is operationally feasible for the City. The dates in our letter were chosen to give the City enough time to provide recognized accommodations in connection with the operations.

If there are disability-related reasons that you need additional time on those deadlines, please provide those requests promptly and we will evaluate them based on whether such extensions would create an undue burden or fundamental alteration of the City's

program.
However, we do need information from BHU sufficiently in advance of these dates as to (1) any new requests for accommodations from BHU members not already covered by the court's order; (2) the information requested as to individuals covered by the court's order so that the City can engage in the interactive process as required by the court's order.

Please note that if we do not receive any new accommodation requests in a timely manner, we cannot engage in the interactive process with those individuals. It is incumbent upon BHU or its members to initiate that process, as you have represented that BHU is the representative for the interactive process for all BHU members.

If we receive no additional accommodation requests from you, we will proceed with providing the accommodations identified in the Court order for the named individuals, as well as the two BHU members with pending requests. As for these named individuals, you have already been representing them in their requests to the City and have been aware since April 3 that those members would receive the accommodations granted in the Court order. It was our understanding that you have been doing outreach to BHU members since then, and we therefore believe it is reasonable to request information on their needs on the timeline we proposed.

We are drafting responses to your written feedback, which we will provide by Friday. Additionally, we will share the new Health Update with you by early tomorrow, prior to public distribution as you requested, which will take place later in the day. We would appreciate your help in getting the word out about the risks of leptospirosis to people who are unhoused.

Sara Stephens
Deputy City Attorney
City Attorney's Office
2180 Milvia Street, 4th floor
Berkeley, CA 94704
Cell: 510.295.8490
sstephens@berkeleyca.gov
Pronouns: she / her

---

**From:** Scott, Nubyaan <NScott@berkeleyca.gov>
**Sent:** Thursday, June 4, 2026 5:47 PM
**To:** Anthony Prince <princelawoffices@yahoo.com>; Berkeley Homeless Union <berkeley.homeless.union@gmail.com>; Rahi Azizi <rahi.azizi@aalrr.com>
**Cc:** Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; Stephens, Sara <sstephens@berkeleyca.gov>; Ruth M. Bond <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier,

Okeya <OVance-Dozier@berkeleyca.gov>
**Subject:** RE: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Thank you, Mr. Prince. I've included your June 3 response below in hopes we can keep one email chain for continuity.

We appreciate the efforts you all are making to provide some initial feedback on the City's plan prior to our call. I will have to follow up with you regarding your request for an advance copy of any leptospirosis advisory.

In the meantime, I wanted to provide the dial-in information:

**Dial in by phone**
+1 213-279-1690
Phone conference ID: 141 067 362#

**Nubyaan Scott**
Deputy City Attorney
**City of Berkeley**

---

From: Anthony Prince <princelawoffices@yahoo.com>
Sent: Thursday, June 4, 2026 9:31 AM
To: Scott, Nubyaan <NScott@berkeleyca.gov>; rahi.azizi@aalrr.com
Cc: berkeley.homeless.union@gmail.com
Subject: Meeting tomorrow

This is to confirm that meeting at 3:00 pm tomorrow, Friday June 5 is fine. Please send the link.

We are working on a written report today with information, questions and concerns regarding the City's proposed plan which we hope to have to you this afternoon or first thing the in the morning to help make our meeting productive.

Finally, it has come to our attention that the City is planning to post some kind of notice regarding the leptospirosis situation. To avoid any issues and reduce consternation among our members at the encampment, I would appreciate if you would provide me and Ms. Prado an advance copy of the notice prior to being posted.

Thank you,

Anthony

**From:** Scott, Nubyaan
**Sent:** Wednesday, June 3, 2026 1:41 PM
**To:** 'Anthony Prince' <princelawoffices@yahoo.com>; Berkeley Homeless Union <berkeley.homeless.union@gmail.com>; Rahi Azizi <rahi.azizi@aalrr.com>
**Cc:** Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; Stephens, Sara <sstephens@berkeleyca.gov>; Ruth M. Bond <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>
**Subject:** RE: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Good afternoon Mr. Prince,

Thank you for your message. The City appreciates the update regarding Ms. Prado and the need for your internal discussions. We also want to offer some clarification that we hope will help address the concern about the June 6 date. By June 6, the City is only asking for any new accommodation requests from members not already covered by the court's order. We believe that our request to provide this information by June 6 is reasonable under the circumstances.

As you may recall, during our call on April 24, you stated that it was BHU's position that the Court's order was very clear. For that reason, the City requested at that time that BHU provide information about the needs of its members consistent with the order. As you noted in your April 30 message, BHU declined to provide that information at the time, stating that BHU first needed clarification from the City of "to what extent the Union will be involved and the nature of the involvement."

The City has now shared its draft plan and has asked for any new accommodation requests from members not already covered by the Court's order, so that we can better assess operational needs. We don't anticipate that this is a particularly difficult request to fulfill, as the court has already defined the set of reasonable accommodations available to BHU members, and the group of possibly affected individuals is also known. We imagine that BHU maintains a membership list and both BHU and the City have already conducted onsite outreach to determine whether other residents of the encampment have disability-related needs. Further, many BHU members already have accommodations under the court order.

Given this limited universe of accommodations and impacted individuals, and given the discussion in April where BHU confirmed its understanding of the order, we believe it is reasonable to ask BHU to prioritize compiling this information by a reasonable date so that this can be a collaborative effort. Interactive process discussions with respect to tent size, relocation, and other existing reasonable accommodations will occur later in the timeline as described in the letter.

Regarding your request for a meeting, the City is available on Friday, June 5 at 3 p.m. Please confirm whether this time still works for you and I will follow up with dial-in information.

The City intends to continue our discussions in a constructive way and will make best efforts to maintain mutually respectful communication.

**Nubyaan Scott**
Deputy City Attorney
**City of Berkeley**

---

**From:** Anthony Prince <princelawoffices@yahoo.com>
**Sent:** Monday, June 1, 2026 9:04 AM
**To:** Berkeley Homeless Union <berkeley.homeless.union@gmail.com>; Rahi Azizi <rahi.azizi@aalrr.com>
**Cc:** Brown, Farimah F. <FBrown@berkeleyca.gov>; Scott, Nubyaan <NScott@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; Stephens, Sara <sstephens@berkeleyca.gov>; Ruth M. Bond <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>
**Subject:** Re: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

**WARNING:** This is not a City of Berkeley email. Do not click links or attachments unless you trust the sender and know the content is safe.

Mr. Azizi and all:

I am in receipt of the City's proposed plan which you sent to us this last Friday night. Union President Prado has been out of town and will not be available until Wednesday of this week to discuss the plan with me and other union leadership, as well as each individual member who will be affected. At minimum, it will therefore be impossible for us to provide information regarding required accommodations and communications needs of impacted members by June 6 and, overall, other deadlines will have to be modified.

There are other aspects of the City's proposal that are concerning and which we need to discuss among ourselves and then with the City, To that end, I suggest a Zoom meeting this Friday morning, June 5 either before noon or after 2:30 pm.

Thank you.

On Friday, May 29, 2026 at 07:10:04 PM PDT, Rahi Azizi <rahi.azizi@aalrr.com> wrote:

May 29, 2026

Dear Mr. Prince/BHU Representatives,

I am writing to provide the City's proposed implementation plan for the court order concerning the Harrison encampment. This proposed plan reflects the information available to the City at this stage. The City understands that some individuals may need to make reasonable accommodation requests for additional time during certain steps.

To begin, the City would like to clarify that it will not be enforcing against vehicles at this time. Enforcement activities associated with the closure will apply only to lodging in the public right-of-way.

As you know, the City previously requested information from BHU about the needs of its members, as referenced throughout the Court's order so that this could be incorporated at the outset. BHU declined to provide that information until reviewing the proposed plan. The City is now providing the plan and again requests that BHU supply the needed information by the dates listed below.

As described below, the City intends to post notice of closure of the Harrison encampment. The notice will identify a compliance date, after which no one will be permitted to lodge in the Harrison corridor or anywhere in the Gilman District where No Lodging signs have been installed.

The proposed plan includes the following steps.

**June 6**: BHU provides the names and accommodation requests of any individuals not already included in the injunction who are seeking accommodation. (Note: The City acknowledges receipt of pending requests from BHU on behalf of Melissa Zajac and Alexander Wilson.) The City will engage in the interactive process for these individuals and will complete this step before posting notice of closure. BHU is also welcomed to provide brief information about specific members' current communication-related needs so that the City can share this, as appropriate, with relevant staff to help support clearer and more constructive interactions.

**June 12**: BHU provides tent and sleeping bag size information and the proposed relocation location for each individual seeking a tent related accommodation. The City will then evaluate each proposed location for compliance with the rules governing use of the public right-of-way, including the siting criteria set out in AR 10.2. To assist BHU's members in identifying viable areas, the City directs BHU to the City's zoning map, where residential and commercial/industrial areas are identified: https://berkeley.municipal.codes/BMC/OfficialZoningMap.

**June 19**: BHU identifies individuals who need packing assistance, storage assistance, or relocation assistance. The City will store dry and intact items that are not plausibly contaminated or hazardous and will follow public health guidance when handling property. The City will replace tents, sleeping bags and clothing when those items must be destroyed due to contamination. For items that may be contaminated with leptospira bacteria, the City must ensure that any storage or relocation media will safely contain those items. Accordingly, the City can provide two Sterilite tubs or the equivalent per each resident in the encampment and asks BHU to identify which of its members requires this accommodation..

**Week of June 29**: The City begins the first week of field operations. Staff will be on site to receive packed items, assist individuals who have been granted accommodations, and transport items either to storage at the City's corporation yard or to locations that comply with right-of-way rules.

**Week of July 6**: The City conducts a second week of field operations, if needed.

**Week of July 13:** The City conducts a third and final week of field operations, if needed. The City does not have operational capacity to provide any further assistance with packing, storing, or relocating belongings from the encampment site after this week.

**July 27:** Compliance deadline for closure. The City will post sufficient notice of closure after completing the preceding steps and will include this compliance date in the notice.

---------------

Finally, the City wishes to affirm its commitment to maintaining a collaborative, respectful, and calm environment throughout implementation of this plan. City staff will do their part to communicate clearly and work constructively with BHU and its members. The City is not speculating about or expecting violence or threats from anyone. At the same time, the City has responsibilities to both its employees and community members and must take seriously prior incidents in which threats of violence have been made toward staff by individuals at the encampment. This includes the most recent incident involving BHU member Austin White, who was arrested earlier this year for making threats against City staff.

In light of these past incidents, the City asks for BHU's agreement that any credible threats made against City staff during implementation of this plan will result in the City ceasing direct assistance for that individual. The City raises this now in hopes of preventing any future incidents and ensuring that all parties can engage in productive, solution-focused discussions throughout the process.

The City also understands that some individuals with mental health conditions may need additional time or may communicate more effectively when certain approaches are used. We also respectfully ask that, to the extent possible, BHU work with its members on strategies they can use to help themselves de-escalate, regain calm, or temporarily step away if they become upset during conversations with staff, so that discussions can continue productively and safely for everyone involved.

**By June 6, the City requests that BHU provide the names and accommodation requests** of any individuals not already included in the injunction who are seeking accommodation**, information about specific members' current communication-related needs, along with any feedback on the implementation plan, by that date so we can cooperatively finalize the remaining portions of the plan.**

The City will revise the proposed plan as needed after receiving BHU's input and will continue to communicate throughout the process. **The City also asks that BHU identify the appropriate people to include on email communication throughout this process. The following City staff should be included on all communication so that information remains consistent: Peter Radu, Okeya Vance Dozier, Thomas Gregory, Rahi Azizi, Ruth Bond, Farimah Brown.** To avoid miscommunication, it would be easiest if the parties agree to keep all communication on this email chain.

Thank you.

**Rahi Azizi** | Of Counsel
Atkinson, Andelson, Loya, Ruud & Romo
251 South Lake Avenue, Suite 360, Pasadena, CA 91101
Direct (626) 773-7651 • Main (626) 583-8600 • Fax (626) 583-8610
rahi.azizi@aalrr.com | vcard | bio | website | subscribe

This electronic message transmission contains information from the Firm of Atkinson, Andelson, Loya, Ruud & Romo which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying or distribution or use of the contents of this information is prohibited. If you have received this electronic transmission in error, please notify us by telephone (562-653-3200) or by electronic mail immediately. Thank you.