Farimah Faiz Brown, City Attorney (State Bar No. 201227)
Katrina Eiland, Assistant City Attorney (State Bar No. 275701)
Laura Iris Mattes, Deputy City Attorney (State Bar No. 310594)
Nubyaan Scott, Deputy City Attorney (State Bar No. 331584)
BERKELEY CITY ATTORNEY'S OFFICE
2180 Milvia Street, Fourth Floor
Berkeley, CA 94704
Telephone: (510) 981-6997
Facsimile: (510) 981-6960
Email: LMattes@berkeleyca.gov
KEiland@berkeleyca.gov

Attorneys for Defendant
CITY OF BERKELEY

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERKELEY HOMELESS UNION, et al.<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BERKELEY, THOMAS GREGORY, PAUL BUDDENHAGEN, PETER RADU, OKEYA VANCE, RASHI KESERWANI, DOES 1-10,<br><br>Defendant. | Case No. 3:25-CV-01414-EMC<br><br>**DECLARATION OF SARA STEPHENS IN SUPPORT OF DEFENDANT CITY OF BERKELEY'S STATUS REPORT** |

I, Sara Stephens, declare as follows:

1. I am a Deputy City Attorney for the City of Berkeley ("City). If called as a witness, I could and would testify competently and truthfully to the facts and opinions set forth in this declaration. This declaration is based on personal knowledge and well as discussions with my team and review of records related to this case.

2. On August 13, 2026, the Court issued its Order Clarifying Injunctive Relief. In its order, the Court noted that the City represented that it had granted accommodations from the 3x3-foot rule to 23 individuals, and the Court ordered that "BHU shall endeavor to furnish the City

with a list identifying these individuals, the tent sizes necessary to accommodate their respective disabilities, and proposed areas within Berkeley to which they would relocate." Dkt. No. 322 at 1. Despite this directive, BHU emailed the City on August 13 at 11:00pm, asking that *the City* provide *BHU*with the list of 23 people. BHU repeated its request the next morning, asking for the names by the end of the day, warning that the City's delay would "impede our ability to complete this process in the timeframe the Court anticipates." That afternoon, as a courtesy, the City provided BHU with this list, noting that the Court required BHU, not the City, to compile the list. A true and correct copy of the email correspondence between the City and BHU and Anthony Prince, between August 13, 2026 and the time of this filing, is attached as Exhibit A.

3. Between August 20 and August 24, Ms. Prado repeatedly questioned how the City compiled its list of 23 people, and I repeatedly explained how we did so. (*See* Ex. A.) We reviewed all email accommodation requests, notes from in-person meetings of the City's ADA Program Coordinator, as well as names of BHU members to whom the Court expressly ordered that the City grant an accommodation to the 3x3 rule. While we requested, and BHU offered, to provide additional names that were left off our list, the City never received additional names. BHU did state that one RV dweller wanted a 3x3 accommodation to keep items outside her vehicle, but she did not intend to leave the Harrison Corridor at this time.

4. On August 20, we received a table from Ms. Prado containing the names of each of the 23 individuals, updates about whether they still needed a 3x3 accommodation, their proposed tent size and footprint, and proposed location. Of these 23 individuals, Ms. Prado represented that 10 withdrew their requests. According to BHU, six of these 10 people have found alternative living arrangements ("found a place," in a hotel room, with family, or other housing), and four purportedly live in vehicles.

5. That left13 individuals with active 3x3 accommodation requests. One of these remaining individuals is Lewanda Parnell, whose proposed location has already been assessed and approved. The table indicates that three of the 13 individuals did not identify locations because two are in criminal custody and one was feeling sick. A true and correct copy of the table provided by BHU is attached as Exhibit B.

6. For the remaining nine people with identified sites, BHU proposed five locations. Of these five, only two are located on the public right-of-way. The other three are real property owned in fee simple: two by the City of Berkeley, and one by a private party as a result of the City selling the lot earlier this year. Additionally, 1499-1451 Second Street is within an area marked with signs designating it a No Lodging / TNC Prohibited Area. Thus, camping at that location is not permitted, even with an accommodation from the 3x3. A summary of these locations, proposed footprints, and who is requesting to relocate there, is below:

| LOCATION | STATUS | NAMES AND PROPOSED SIZE |
|---|---|---|
| 1281 University (lot) | City-owned lot | Alice Barbee, 11x30 |
| 1631 Fifth Street (lot) | Privately-owned lot | Hector Navarro, 10x25 |
| 1100 Fourth Street (Harrison House lot) | City-owned lot | Robbie Peddycoart, 11x30<br>Robert Pearce, 10x30<br>Alexander Wilson, 11x30 |
| 1499-1451 Second Street (behind K-rails) | Right-of-way within a No-Lodging / TNC Prohibited Area | Shawman, 11x20<br>Jermaine Lee White, 11x30<br>Gregory Grove, 10x25 |
| 3rd and Camelia (sidewalk) | Right-of-way | Bradford Raymer, 11x30 |

7. Less than two hours after receiving the list, I responded to BHU highlighting that we did not believe that locations on City lots were within the Court's orders, which consistently provide that accommodations must be assessed as to the 3x3 rule, which is a limitation on property placed on t*he public right-of-way*. (Ex. A at 9-13.) The next day, August 21, I stated that the City lots are not available as campsites, and neither is 1499-1451 Second Street since it is located in a No Lodging / TNC Prohibited Area. This left 3rd and Camelia as the only potentially

viable location, and I suggested that BHU may want to identify additional sites in light of this information. (Ex. A at 4-5.)

8. On August 24, BHU responded and did not provide additional sites, except to propose 1901 Henry Street (another City lot) as an alternative to 1631 Fifth Street, which is owned by a private party. (Ex. A at 1-2). BHU insisted that the City proceed with assessing the identified City-owned lots as proposed relocation spots during our in-person meet-and-confer, and asserted that it was "working with information provided by the City." (Ex. A at 2.) According to BHU, in January 2026, then-Assistant City Attorney Chris Jensen "provided BHU counsel with a list of places where people at the encampment could relocate." (Id.) BHU attached an email thread which contained confidential settlement conversations that did not result in an agreement to allow encampments on City property. The "list of places where people at the encampment could relocate" was no such list, but merely a publicly available informational item to City Council wherein City leadership informed Council of vacant City-owned properties, but made no recommendation that or granted any approval for any of them be used for shelter or camping. Council took no action on that item, and neither the City nor the City Attorney's Office ever represented that the City had made those properties available for encampments. I communicated this in my response to BHU on August 25. (Ex. A at 1-3). In fact, the City has consistently asserted in this litigation that City-owned lots are not available for camping.

9. On August 20, the City initially told BHU that staff would be available for the Court-ordered meet-and-confer between 8am-5pm on August 24, 25 and 26. (Ex. A at 13.) On August 21, BHU refused these dates but proposed to meet on August 27, to allow BHU to focus on a Ninth Circuit brief that was supposedly due on August 26. (Ex. A. at 7). I responded explaining that the Court directed us to meet *before* August 27, so meeting on the 27th would not be in compliance with the Court's order. (Ex. A at 4.) Moreover, I was aware that their filing deadline had been postponed to September 25. (Id.) On August 24, BHU responded and said that, because the filing deadline had been extended, they were now able to meet on August 26 at 1pm. (Ex. A at 2.) This gave only a few hours for the meet-and-confer to take place before the Court's deadline. The City responded and agreed to meet at this time. (Ex. A at 1-2.)

10. BHU proposed to visit all of the proposed sites, including the City lots, despite the City communicating that these sites are not available for camping. Nonetheless, the City agreed to visit the proposed locations with BHU. (Ex. A at 2-3.)

11. In the email communications, BHU asked repeated questions about City enforcement against vehicles, which we have explained will not be required to move during the noticed abatement. As we have stated in notices, court filings, and emails, we reiterated that the City intends to clear the streets and sidewalks in the Harrison Corridor, including objects surrounding vehicles. On August 20, I recommended that if any vehicle dweller requires a packing accommodation with respect to their property on the right-of-way, they should schedule assistance with HRT or respond to my email with names and specific requests. (Ex. A at 11-12.) Curiously, BHU's email response on August 21 stated that "the City has indicated that accommodations for vehicles are not being processed at this time" and stated that this was why they did not include relocation proposals for vehicle-dwellers. (Ex. A at 8.)

12. Later, on August 21, I explained that we had not received a 3x3 accommodation request from anyone on the list of 23 and we would process it if we received one. (Ex. A at 5.) At the time of this filing, we still have not received such a request, except that BHU stated that Merced Dominguez was requesting an accommodation to retain more than 9 square feet of property outside of her vehicle but intends to remain in the Harrison Corridor. This accommodation request, however, was rejected in the Court's Summary Judgment Order (Dkt. 288 at 55.) As I explained in my response to BHU, the City cannot allow any amount of property on the sidewalks in a TNC Prohibited Area like the Harrison Corridor. (Ex. A at 3.)

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on August 27, 2026, in Berkeley, California.

Signed by:
Sara Stephens
EDF02AF529F54AB...

SARA STEPHENS

# EXHIBIT A

**Stephens, Sara**

| | |
|---|---|
| **From:** | Stephens, Sara |
| **Sent:** | Tuesday, August 25, 2026 3:54 PM |
| **To:** | 'Berkeley Homeless Union' |
| **Cc:** | Scott, Nubyaan; Anthony Prince; Rahi Azizi; Brown, Farimah F.; Eiland, Katrina; Ruth M. Bond; Radu, Peter; Gregory, Thomas; Vance-Dozier, Okeya; Mattes, Laura Iris; White, David; Jacobs, Joshua "Josh"; Martinez, Gabriel |
| **Subject:** | RE: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468] |

Ms. Prado,
Please see my response below in blue. City staff will be there at 1pm tomorrow.
Best,
Sara

**Sara Stephens**
*Deputy City Attorney*
City Attorney's Office
2180 Milvia Street, 4th floor
Berkeley, CA 94704
**Cell:** 510.295.8490
sstephens@berkeleyca.gov
Pronouns: she / her

**From:** Berkeley Homeless Union <berkeley.homeless.union@gmail.com>
**Sent:** Monday, August 24, 2026 10:11 PM
**To:** Stephens, Sara <sstephens@berkeleyca.gov>
**Cc:** Scott, Nubyaan <NScott@berkeleyca.gov>; Anthony Prince <princelawoffices@yahoo.com>; Rahi Azizi <rahi.azizi@aalrr.com>; Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; Ruth M. Bond <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>; Mattes, Laura Iris <LMattes@berkeleyca.gov>; White, David <DWhite@berkeleyca.gov>; Jacobs, Joshua "Josh" <JJacobs@berkeleyca.gov>
**Subject:** Re: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Ms. Stephens,

We have reviewed your email and provide the following clarifications.

**1. Missing accommodation requests:** Please clarify whether the City intends to engage with accommodation requests from individuals who are not on the list of 23 people. The City has also not explained how it compiled that list of individuals, and as noted, the list does not account for all requests submitted.

We understand that not all email requests were for 3x3 exemptions. However, that is because we did not know which accommodations the City would be willing to accept until after the April 3 order.

To clarify this issue: during outreach in July, I communicated to Thomas Gregory that all of our members would be requesting the accommodations provided for in the Court's order. If the City requires us to re-submit each individual request, please let us know and we will do so.

Our previous email explained how we compiled the list. I will reiterate again that if there are additional requests for the 3x3 accommodation that have already been made, please indicate who made them. The Court's order required that we provide this accommodation to people who requested it, not to people who did not request it. If there are additional disabled BHU members who are now requesting 3x3 accommodations for their disabilities, please provide us those requests by name. Please keep in mind that the Court's most recent clarification order expressly applies only to the 23 individuals who have already been granted this accommodation.

**2. Meeting time:** We are grateful the Court granted us an extension for our brief late on Friday, so we are now available to meet.

We propose meeting on Wednesday, August 26 at 1:00 PM at 701 Harrison Street. City staff are welcome to join us. We will visit the locations identified by our members and document the sites for the Court.

City staff will join you at this location tomorrow at 1pm.

**3. Proposed locations:** We understand the City's position regarding the proposed locations. However, we respectfully note that we are working with information provided by the City. On January 16, 2026, Assistant City Attorney Chris Jensen provided BHU counsel with a list of places where people at the encampment could relocate. (See attached email thread.) In that thread:

- The Union requested a list of places where people could relocate;
- Chris Jensen replied that he would discuss it with Farimah Brown, the City Attorney; and
- Chris Jensen's final message provided a link to the 20-page letter from City Manager Buddenhagen with a list of city-owned properties.

The publicly available list of properties was an informational item merely informing Council of vacant City-owned properties, without making any recommendation that any of them be used for shelter or camping. Council took no action on that item, and the City has never agreed to allow people to move onto those lots nor did our office state that this was the City's position. While the list itself is public, it was provided to BHU counsel in the context of settlement negotiations and therefore the communication itself and/or BHU's reliance or interpretation of this communication is inadmissible under the federal rules of evidence. Furthermore, this discussion occurred prior to the Court's April 3 ruling, and the Court's order is limited to the public right-of-way. The City does not now and has not ever agreed to have BHU move onto vacant City-owned lots.

Accordingly, we will be assessing all of the locations identified by our members and propose this order for visiting them:

- 1100 Fourth Street (enter via 701 Harrison Street)
- 1499-1451 Second Street
- 3rd and Camelia

- 1281 University Avenue
- 1631 Fifth Street (if sold, we will assess 1901 Henry Street as an alternative)

We are prepared to present our arguments to the Court regarding why these locations are appropriate. The City may also present its objections to the Court at the status conference. We will not engage in a back-and-forth email argument about these sites.

**4. Vehicles used as shelter:** The City's position on vehicles remains unclear. The City states it is "not requiring vehicles to move," but also states that "all property outside of vehicles must be removed from the right-of-way" and that "items cannot be temporarily moved but must be permanently removed" because the area is a TNC Prohibited Area.

We have members who live in vehicles that also use the space around their vehicles for essential belongings. If the City is requiring property to be removed from the right-of-way, then the City is, in effect, addressing vehicle residents' living situations.

To clarify: Merced Dominguez, among others, has requested an exemption to the 3'x3' rule for items stored outside her vehicle.

We ask the City to clarify:

- If the City is not addressing vehicles, why is the City requiring removal of their property?
- If an exemption to the 3x3 rule is needed for vehicle residents, will the City participate in the interactive process to assess the footprint at the Harrison encampment?

Yes, we are addressing property owned by vehicle dwellers which is outside their vehicles; we have always been clear about that. We are not requiring vehicles to move, and we will not tow any vehicles at this time. I don't think there's any other way to explain it. Under AR 10.2, personal property is not allowed at all in TNC Prohibited Areas. For this reason, accommodation requests related to the 3x3 rule do not apply in the Harrison Corridor, which is a TNC Prohibited Area. BHU can submit requests for alternative locations as it has for its other members. We have also already offered to assist residents with relocating their items inside of their vehicles or into storage for up to 90 days. However, you have not yet stated an intention to accept either of these types of assistance.

**5. New accommodation requests**: We understand the City's position. We respectfully disagree and will address this with the Court at the status conference. The Court contemplated that a large number of people would need accommodations, as the City represented that more than 80 people are living at the encampment.

Again, camp residents should be informed of their right to request accommodations when they receive new abatement notices.

Thank you,

**Yesica Prado**
President, Berkeley Homeless Union

On Fri, Aug 21, 2026 at 5:36 PM Stephens, Sara <sstephens@berkeleyca.gov> wrote:

Ms. Prado,

1. **Missing accommodation requests**: We never said we only processed 23 accommodation requests. We have processed every request that has come in, which exceeds 23. However, not all accommodation requests ask for an exception to the 3x3 rule. For example, many of the requests came from people who live in RVs who did not request an accommodation to the 3x3 rule because they do not live on a sidewalk. As we said before, if you indicate who you believe requested such an accommodation that is not on this list, we will review that request again. We will process any request already provided to the City requesting an exemption to the 3x3 rule. We identified the 23 by reviewing the court orders, all of the email accommodation requests, as well as notes compiled by Thomas during each of his in-person meetings with individuals. To our knowledge, these 23 are the only individuals who have requested an accommodation to the 3x3 rule for their new campsite.

2. **Meeting time**: The Court's order requires that we "meet and confer in good faith, and in person on the Berkeley streets, ***before*** Thursday, August 27, 2026". Our understanding is that meeting on the 27th does not comply with this order. Moreover, BHU was granted an extension by the Ninth Circuit and its brief is now due on September 25. Please provide your availability to meet prior to the 27th.

3. **Proposed locations**: The City has conducted an initial review of the proposed locations you provided yesterday. As we have communicated before, the court's order and 3x3 accommodations are limited to the public right-of-way. As such, the following locations are not available as campsites: 1281 University, 1631 Fifth Street, 1100 Fourth Street. Moreover, the City recently sold 1631 Fifth Street, so it is now private property. The 1499-1451 Second Street location is within a No Lodging / TNC Prohibited Area where camping is prohibited entirely, regardless of campsite size. We are still willing to meet at these locations to discuss, but we wanted to communicate this early in case you would rather focus on the remaining site (3rd and Camelia) or identify additional sites for the City to assess.

4. **Vehicles used as shelter:** As stated previously, the City is not requiring vehicles to move, but all property outside of vehicles must be removed from the right-of-way. The area is also a TNC Prohibited Area so items cannot be temporarily moved but must be permanently removed from the right-of-way in this area. As we've mentioned, the City is also willing to help relocate items inside of vehicles or store non-contaminated property for 90 days at the Corp Yard. We have not received an accommodation request to store more than 9 square feet of items outside of a vehicle from anyone on this list of 23 and we would process such a request if we received it. Our email yesterday also clearly explained the accommodations that the City is prepared to provide to vehicle dwellers with respect to their property outside of their vehicles.
    a. Relatedly, we would like to note that our records reflect that everyone on the list lives in a tent or structure, not a vehicle, and was requesting a 3x3 accommodation for a larger campsite. Can you confirm that the individuals you marked as living in a vehicle no longer need a 3x3 accommodation to relocate their campsite, despite your prior communications? If they have a campsite as well as a vehicle, they will need to relocate the campsite, even though their vehicle can remain.

5. **New accommodation requests:** The Court's most recent clarification order expressly applies only to the 23 individuals who have already been granted this accommodation. The Court's requirement to assess proposed 3x3 accommodation locations before August 27 applies only to those individuals.

Best,

Sara

**Sara Stephens**

*Deputy City Attorney*

City Attorney's Office
2180 Milvia Street, 4th floor

Berkeley, CA 94704

**Cell:** 510.295.8490

sstephens@berkeleyca.gov

Pronouns: she / her

**From:** Berkeley Homeless Union <berkeley.homeless.union@gmail.com>
**Sent:** Friday, August 21, 2026 2:37 PM
**To:** Stephens, Sara <sstephens@berkeleyca.gov>
**Cc:** Scott, Nubyaan <NScott@berkeleyca.gov>; Anthony Prince <princelawoffices@yahoo.com>; Rahi Azizi <rahi.azizi@aalrr.com>; Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; Ruth M. Bond <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>; Mattes, Laura Iris <LMattes@berkeleyca.gov>; White, David <DWhite@berkeleyca.gov>
**Subject:** Re: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Ms. Stephens,

Thank you for your response. We have reviewed your email and provide the following clarifications and follow-up items.

**Missing accommodation requests**
We have followed the City's instructions and submitted accommodation requests via email. As you noted, you have access to these same records. However, to date, we have not received an explanation regarding how the City compiled its list.

We ask that the City:

- Clarify why only 23 individuals' requests were processed; and
- For any requests not processed, accept those requests and engage in the interactive process with those individuals before any abatement occurs.

We are prepared to provide a supplemental list if the City confirms it will process these requests.

**Locations for assessment**
We understand the Court's order requires BHU to "furnish the City with a list identifying these individuals, the tent sizes necessary to accommodate their respective disabilities, and proposed areas within Berkeley to which they would relocate." See ECF 322 at 26-28.

We have complied with this order and provided the requested information.

For clarity: BHU's records reflect more than 23 members have requested accommodations. We followed the City's list in good faith to comply with the Court's directive—though we note that had BHU not identified the individuals needing accommodations, there would have been no starting point for this process.

Going forward: Is the City prepared to engage with BHU's full list, rather than limiting the process to the individuals the City identified?

**In-Person meeting**

We propose the following:

Date: August 27, 2026
Time: 10:00 AM
Starting Location: 1100 Fourth Street (entrance is next 701 Harrison Street)

We propose the following route:

1) 1100 Fourth Street (meet at 701 Harrison Street)
2) 1499-1451 Second Street
3) 1631 Fifth Street
4) 3rd and Camelia
5) 1281 University Avenue

Please confirm that this time, date and route work for the City. We are currently working on our Ninth Circuit brief, which is due on August 26 and requires our full attention through that deadline. We respectfully request that the City accept a meeting on August 27, so we can fulfill the Court's requirement prior to the status conference.

We are also open to adjusting the route if the City has different priorities.

**Vehicles used as shelter**
We appreciate the City's clarification that vehicles will not be required to relocate at this time. We would like further clarity on the following:

- If people living in vehicles cannot store their personal property inside their vehicles or at the Corporation Yard, and cannot place it across the street, where does the City propose they place it during the abatement?

Residents are open to removing items from the sidewalks that need to be cleaned, but they would need a nearby location to place those items temporarily.

We also respectfully note that people living in vehicles are not waiving their requests for 3’x3’ rule accommodations. We did not include footprints or relocation areas for these members because the City has indicated that accommodations for vehicles are not being processed at this time.

**New accommodation requests**
We understand the City's position regarding new accommodation requests. However, we respectfully disagree.

The ADA requires the City to engage in the interactive process with individuals with disabilities. This obligation is ongoing. Additionally, the Court has required the City to post new notices for abatement at the encampment, and residents should be informed of their right to request accommodations when they receive those notices.

We ask that the City accept accommodation requests and engage in the interactive process with any resident who needs an accommodation. Alternatively, we request that this issue be addressed at the August 28 status conference.

**Next steps**
We are prepared to proceed with the members on the City's list and will continue working to identify suitable relocation locations. We look forward to the in-person meeting and to working collaboratively with the City to comply with the Court's order.

Thank you,

**Yesica Prado**

President, Berkeley Homeless Union

On Thu, Aug 20, 2026 at 1:27 PM Stephens, Sara <sstephens@berkeleyca.gov> wrote:

Ms. Prado,

Thank you for sending the City this information. We have responded to your email below in red.

Best,

Sara

**Sara Stephens**

*Deputy City Attorney*

City Attorney's Office
2180 Milvia Street, 4th floor

Berkeley, CA 94704

**Cell:** 510.295.8490

sstephens@berkeleyca.gov

Pronouns: she / her

---

**From:** Berkeley Homeless Union <berkeley.homeless.union@gmail.com>
**Sent:** Thursday, August 20, 2026 11:59 AM
**To:** Stephens, Sara <sstephens@berkeleyca.gov>
**Cc:** Scott, Nubyaan <NScott@berkeleyca.gov>; Anthony Prince <princelawoffices@yahoo.com>; Rahi Azizi <rahi.azizi@aalrr.com>; Brown, Farimah F. <FBrown@berkeleyca.gov>; Eiland, Katrina <KEiland@berkeleyca.gov>; Ruth M. Bond <ruth.bond@aalrr.com>; Radu, Peter <pradu@berkeleyca.gov>; Gregory, Thomas <TGregory@berkeleyca.gov>; Vance-Dozier, Okeya <OVance-Dozier@berkeleyca.gov>; Mattes, Laura Iris <LMattes@berkeleyca.gov>
**Subject:** Re: Re BHU, et al. v. City of Berkeley, et al. - City's proposed implementation plan re Harrison encampment [AALRR-CERRITOS.006547.00033.FID1555468]

Ms. Stephens,

Thank you for providing the list of 23 individuals. We appreciate the City's cooperation in sharing this information. We have reviewed the list against BHU's records and have several questions and clarifications to ensure we are on the same page moving forward. Please see below:

**1. Discrepancy Between City's List and BHU's Records**
Our records reflect that more than 30 people have submitted accommodation requests to the City, either through written submissions from BHU or directly to Thomas Gregory during outreach. We are concerned that several people may have been omitted from the City's list.

Could you please clarify:

- How did the City determine which requests are pending or active?

There are presently no pending requests related to the “3x3 rule” from those at the Harrison encampment. The City has granted each of the 23 requests made to date and has provided you

with that information, despite the Court ordering BHU to provide this information to the City, after Mr. Prince informed Judge Chen during the most recent hearing that BHU had this information. If you believe there are additional individuals who have made this request and have somehow been excluded, please point to an email chain reflecting this or name a specific person who spoke with Mr. Gregory and made this request but is not reflected on the list. You have repeatedly stated that you have recorded these interactions so we expect that BHU could easily identify any individual that it believes made this request but and not granted such between both email and video records available to you.

- Were verbal requests made directly to Thomas Gregory during outreach accepted and recorded?

Yes, as reflected in Mr. Gregory's declaration filed in response to BHU's most recent TRO/PI briefing.

- What is the process for residents who are not on the current list but need an accommodation?

The Court's most recent order applies to individuals who have already been granted this accommodation. Questions regarding new accommodation requests should be addressed at our upcoming status conference, as it is the City's present position that the Court's most recent order does not contemplate new accommodation requests.

We would appreciate clear guidance on these points so we can inform residents and ensure they are not excluded from the accommodation process.

**2. Vehicles Used as Shelter**

We understand that the City does not intend to tow vehicles used as shelter during the abatement. Given that some of these members appear on the City's list, we would like clarity on how the City intends to proceed with residents who use vehicles as shelter.

Specifically:

- Will the City consider temporary relocation across the street for the duration of the abatement?

The City is not asking vehicles to relocate at this time. The City is asking individuals to remove any items stored on the sidewalk adjacent to vehicles as they are present conditions of rodent harborage which the City needs to abate. Items adjacent to vehicles should either be removed or individuals may request storage and should do so prior to the abatement. Items cannot simply be relocated across the street as that would not address the rodent harborage issues as explained by the City's Public Health Officer.

- What accommodations are available for residents who rely on vehicles as shelter?

The Court's Orders have addressed this question. As explained above, members should be prepared to relocate or store items adjacent to their vehicles. If a BHU member requires assistance relocating items off of the public-right-of-way and into their vehicles or into storage, they should schedule this assistance with HRT or by BHU responding to this email with specific individuals' names and what specific type of relocation or storage assistance they seek. These requests should be made as soon as possible.

We want to ensure that residents with vehicles are not overlooked and that we can coordinate with the City to facilitate the abatement process.

**3. List of locations for assessment**
Please see the attached list of the members identified by the City, along with information regarding tent sizes, footprints and proposed locations. We have provided the information as reported by our members. We are available to provide additional details or clarification as needed.

The City would appreciate clarification regarding BHU's position on the proposed locations. In the list BHU provided pursuant to the Court's August 13, 2026 Order, BHU opposed placement on the public-right-of-way for certain individuals and instead identified publicly or privately owned lots. The Court's Orders, including the August 13 clarification, consistently state that accommodations for the 23 individuals granted an exemption from the 3x3-foot rule are to be located on areas of the public-right-of-way, notwithstanding BHU's prior requests to use lots.

We also want to note two specific concerns regarding alignment with the Court's directives:

1. BHU asked the City to provide a list of the 23 individuals who received this accommodation. Under the Court's Order, BHU is responsible for furnishing the City with this information, along with tent sizes and proposed relocation areas.
2. Of the 9 relocation areas BHU proposed for the 23 individuals, 5 are located on lots rather than on the public-right-of-way. These proposed locations do not align with the criteria set out in the Court's Orders.

To help ensure that planning remains consistent with the Court's directives and to support a productive meet-and-confer process on the Berkeley streets, the City would welcome clarification from BHU regarding its approach to identifying relocation areas and any considerations that may be guiding these proposals.

**4. Scheduling the In-Person Meeting**
The Court ordered the parties to "meet and confer in good faith, and in person on the Berkeley streets, before Thursday, August 27, 2026." We are prepared to participate in this meeting and have identified potential locations in West Berkeley.

Please let us know:

- A proposed time and place for the meeting
- Whether the City has any logistical considerations we should be aware of

We would like to bring affected members to the meeting, so we can walk the streets together and identify suitable relocation sites. We believe this in-person engagement will be productive and are committed to working collaboratively with the City to comply with the Court's order.

We look forward to your response.

City staff are available from 8:00 a.m. to 5:00 p.m. on August 24, 25, and 26 to conduct the required in-person assessments on the Berkeley streets. Because BHU has identified 9 individuals who would like their proposed locations evaluated, we defer to BHU to select a starting location for the meet-and-confer. Given the City's full availability across all three days, it may be most efficient for BHU to choose a starting point based on the availability of the individuals whose locations are being assessed. Once BHU confirms the meeting time and initial location, City staff will be present and prepared to walk through and evaluate each proposed area in coordination with BHU, consistent with the Court's directive. The City only asks that BHU confirm a meeting time and location by noon on the prior day, so that staff have adequate time to plan.

Thank you,

**Yesica Prado**

President, Berkeley Homeless Union

On Fri, Aug 14, 2026 at 4:42 PM Stephens, Sara <sstephens@berkeleyca.gov> wrote:

Ms. Prado,

We have received your request for the list of individuals with 3x3 accommodation requests; we have pasted your emails below to maintain a single email thread.

As a courtesy, the City provides below the list of individuals we have on record as requesting an accommodation to the 3x3 rule. We want to remind you that the Court instructed BHU, not the City, to provide this information: "**BHU shall endeavor to furnish the City with a list identifying these individuals**, the tent sizes necessary to accommodate their respective disabilities, and proposed areas within Berkeley to which they would relocate." All requests for this accommodation have come from you by email, and approvals have likewise been sent to you by email, so you have as much access to these records as the City.

We look forward to receiving the information from you about requested tent sizes and proposed areas by noon on August 20. Please note that the City's assessment of 3x3 rule accommodations will require proposed *footprints* (i.e. total space that will be occupied by personal property), and not just tent sizes, if individuals expect to store property outside of their requested tent. We would also like to remind you that the 3x3 rule only applies to the public right-of-way, not other City property, and therefore accommodations to the rule would also be limited to the public right-of-way. This was confirmed in Judge Chen's order after yesterday's hearing, where he required the City "to engage in individualized assessments to assess disabled claimants' accommodation needs and conditions on public rights-of-way..." (Dkt. 322).

Individuals requesting 3x3 rule accommodations

1. Alice Barbee
2. Hector Navarro
3. Jacob Clakley
4. Jonny Ruel Holder
5. Monique Williams
6. Robbie Peddycoart

7. “Shawman”
8. Robert Pearce
9. Thomas Barnett
10. Jermaine Lee White
11. Shareef Muwakkil
12. Erin Spencer
13. Lewanda Parnell
14. Austin White
15. Erik Alexander Johnson Coon
16. Kevin Martinez
17. Alexander Wilson
18. Jeremy Casimir
19. Whitney Chappelle
20. Gregory Grove
21. Patrick Ford
22. Bradford Raymer
23. Lisa Saechao,y-chain

Best,

Sara

**Sara Stephens**

*Deputy City Attorney*

City Attorney's Office
2180 Milvia Street, 4th floor

Berkeley, CA 94704

**Cell:** 510.295.8490

sstephens@berkeleyca.gov

Pronouns: she / her

**From:** Berkeley Homeless Union <berkeley.homeless.union@gmail.com>
**Sent:** Friday, August 14, 2026 12:21 PM
**To:** Gregory, Thomas <TGregory@berkeleyca.gov>
**Subject:** Re: Accommodations for 3x3 rule

**WARNING:** This is not a City of Berkeley email. Do not click links or attachments unless you trust the sender and know the content is safe.

Hi Mr. Gregory,

I am following up on this request. BHU is prepared to work with the City to identify suitable locations for assessment. Once again, to begin this process, we require the list you referenced in your declaration.

Please provide the list by the end of today, August 14, 2026. Any delay on your end will impede our ability to complete this process in the timeframe the Court anticipates.

I also want to clarify that BHU's records reflect that more than 23 individuals require this accommodation. No person can realistically live within a 3'x3' footprint, and many residents have disabilities that necessitate additional space. However, given that the Court's order is focused on the individuals you identified, we will begin with those people.

I look forward to hearing from you today.

Sincerely,

**Yesica Prado**

Berkeley Homeless Union Representative

On Thu, Aug 13, 2026 at 11:00 PM Berkeley Homeless Union <berkeley.homeless.union@gmail.com> wrote:

Hi Mr. Gregory,

I'm reaching out to ask for a copy of the list of the 23 people you have identified that requested a modification to the 3'x3' rule. Pursuant to Judge Chen's request at today's hearing, BHU is to work on providing you with locations to assess for those 23 people.

Please provide the list as soon as you are able to, so we can begin that process.

Thank you,

**Yesica Prado**

Berkeley Homeless Union Representative

# EXHIBIT B

| Name | Tent Size | Footprint | Location |
|---|---|---|---|
| Alice Barbee | 10 person tent | 11' x 30' | 1281 University Avenue (lot) |
| Hector Navarro | 8 person tent | 10' x 25' | 1631 Fifth Street (lot) |
| Robbie Peddycoart | 10 person tent | 11' x 30' | 1100 Fourth Street (Harrison House lot) |
| Shawman | 6 person tent | 11' x 20' | 1499-1451 Second Street (behind K-rails) |
| Robert Pearce | 8 person tent | 10' x 30' | 1100 Fourth Street (Harrison House lot) |
| Thomas Barnett | Vehicle | n/a | n/a |
| Jermaine Lee White | 10 person tent | 11' x 30' | 1499-1451 Second Street (sidewalk behind K-rails) |
| Shareef Muwakkil | In a hotel room | n/a | n/a |
| Erin Spencer | Vehicle | n/a | n/a |
| Lewanda Parnell | 8 person tent | 10' 1" x 45' | 9th and Camelia; approved |
| Erik Alexander Coon | 8 person tent | 10' x 25' | Undecided; feeling sick |
| Alexander Wilson | 10 person tent | 11' x 30' | 1100 Fourth Street (Harrison House lot) |
| Jeremy Casimir | Found a place | n/a | n/a |
| Gregory Grove | 8 person tent | 10' x 25' | 1499-1451 Second Street (sidewalk behind K-rails) |
| Bradford Raymer | 10 person tent | 11' x 30' | 3rd and Camelia (sidewalk) |
| Lisa Saechao,y-chain | Going back with family | n/a | n/a |
| Jacob Clakley | In a hotel room | n/a | n/a |
| Austin White | In Housing | n/a | n/a |
| Jonny Ruel Holder | Vehicle | n/a | n/a |
| Monique Williams | Vehicle | n/a | n/a |
| Kevin Martinez | 6 person tent | 10' x 20' | Undecided; In custody |
| Whitney Chappelle | In a hotel room | n/a | n/a |
| Patrick Ford | 10 person tent | 11' x 30' | Undecided; In custody |