Anthony D. Prince (SBN # 202892)
General Counsel, California Homeless Union/Statewide Organizing Council
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
Tel: 510-301-1472

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BERKELEY HOMELESS UNION,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF BERKELEY, THOMAS GREGORY, PAUL BUDDENHAGEN, PETER RADU, OKEYA VANCE-DOZIER, RASHI KESERWANI, DOES 1-10<br><br>Defendant. | Case No.: 3:25-cv-01414-EMC<br>(Closed Case)<br><br>**STATUS REPORT ON RELOCATION OF 8TH AND HARRISON CAMP**<br><br>Status Conference Date: August 28, 2026<br>Time: 9:00 am<br>Northern District Court-San Francisco<br>Via Zoom<br>Hon. Edward M. Chen |

The following Status Report is presented to the Court in the form of a Memorandum prepared by Berkeley Homeless Union President Yesica Prado who, along with Robbie Powelson, an officer of the California Homeless Union, met in person with representatives of the City of Berkeley on Wednesday, August 26, 2026 in order to assess previously identified areas of the City to which BHU members soon to be displaced from 8th and Harrison may relocate.

Concurrently filed are the Declarations of Yesica Prado and Robbie Powelson.

# Memo from Yesica Prado

**DATE:** Thursday, August 27, 2026

**RE:** Joint site inspection with City of Berkeley — five candidate sites; City's newly asserted siting restrictions under Administrative Regulation 10.2

**MATTER:** Berkeley Homeless Union v. City of Berkeley, N.D. Cal. No. 3:25-cv-01414-EMC

## I. PURPOSE

Contemporaneous notes from the August 26 site visit with City representatives, documenting candidate sites for BHU members identified in the Court's August 20 report, prepared by Yesica Prado and Robbie Powelson. The City raised multiple new restrictions during the inspection—none of which appear in Administrative Regulation 10.2.

## II. EXECUTIVE SUMMARY

The City inspected five sites with BHU officers on August 26, 2026. Across all sites, physical space is generally available, but the City raised multiple new restrictions not found in Administrative Regulation 10.2—including an 18-inch car-door clearance, daylighting restrictions, residential zone exclusions and vacant lot exclusions. The cumulative effect of these rules effectively covers more than 75% of the City’s area. The City offered no alternative locations.

//

//

## III. SITES INSPECTED

### Site 1 — 1110 Fourth Street

The location is intended for three BHU members, with footprints of 11x30 feet in size.

We measured the vacant lot area adjacent to 701 Harrison Street, a homeless shelter, with a length of more than 161 feet and a width of 30 feet. There is ample space for tents with proper setbacks from the adjacent buildings and from the brush.

**Fire Marshal (Shannon Shaffer-Killey):** stated tents should have a 12-foot buffer between each tent because once a tent reaches 700 square feet, it requires a permit and special anchoring. If tents are directly next to each other, she considers that a single tent. She was unsure if a 3-foot buffer would prevent it from being considered one tent. Would get back about legal authority for the position.

**Code enforcement (Andrea Sutherland):** Code enforcement found no issue with location.

**City Attorney (Nubyaan Scott):** The City's attorneys were legal rather than physical: representatives said they were not sure whether the parcel is a right-of-way, and asserted that vacant lots "do not apply," meaning that Administrative Regulation 10.2 does not reach them. (AR 10.2 is the City of Berkeley's policy governing "Temporary Non-Commercial Objects on Sidewalks and in Parklets," which dictates how unhoused individuals can store personal property in public spaces.) Meanwhile, the sidewalk adjacent to the lot, located on Harrison Street at the cul-de-sac, bears a no-lodging designation.

Follow Up:

□ Confirm whether parcel is subject to AR 10.2

□ Confirm fire setback requirements and legal authority

□ Confirm whether multiple tents count as one for permitting (700 sq ft threshold)



***A photo of the vacant lot, next to the family homeless shelter at 701 Harrison Street.***

**Site 2 — 1499-1451 Second Street** (Second and Page Streets).

The location is intended for three BHU members, with footprints of 11x30 and 10x20 feet in size. Large concrete blocks have been pushed outward from the adjacent business's fence line. We measured approximately 13 feet (varying along the stretch) from the fence line to the blocks, and roughly 101 feet of usable frontage overall, which we assessed as likely sufficient for the site.

**City Objections** — City Attorney Nubyaan Scott raised two primary objections:

(a) proximity of telephone and utility poles—one representative stated they needed to consult PG&E regarding required setbacks from both overhead and underground connections; and

(b) uncertainty over ownership of the concrete blocks. The City did not know whether the concrete blocks were City property.

**Ownership & Dumping Concerns:** It appears the concrete blocks—and additional large pipes—may have been illegally dumped, as they are blocking the sidewalk area there. Based on their positioning, it was clear to us that they were not City-made improvements. When we asked whether space constraints could be addressed by moving or abating them, all City employees confirmed they did not know who owned the blocks. If the blocks are indeed illegally dumped material, they are neither a City improvement nor a lawful obstruction, and therefore should not constrain the usable width.

**Fire Marshal (Shannon Shaffer-Killey):** Fire safety concerns require a 12-foot clearance between tents and a setback from the property line. Additionally, our width measurements did not account for a required 3-foot setback, meaning the actual usable width may be shorter. However, it may be possible to extend into the roadway using K-rails. People would need to remain behind the K-rails for safety.

**Code enforcement (Andrea Sutherland):** There are no code enforcement issues with this location.

Follow Up:

□ Confirm ownership of concrete blocks; they are presumptively illegally dumped

□ Obtain PG&E setback standard (or confirmation none applies)



***A photo of the site behind the k-rails, with a view towards Jones Street.***

---

## Site 3 — Camelia Street

This site is for two BHU members, each with an individual footprint of 11x30 feet. Located at the end of a cul-de-sac terminating at the train tracks. The entire usable area is sidewalk.

This is the site where the City raised the most new ground:

**Thomas Gregory:** He stated that the standard six-foot sidewalk clearance would be extended by an additional 18 inches to allow for car doors to open. We have reviewed Administrative Regulation 10.2 and confirmed that it contains no mention of car doors, door clearance, or any 18-inch allowance for that purpose. The basis for his assertion remains unclear.

The City will follow up on the legal authority for this requirement and clarify whether it is part of the six-foot clearance or an additional one.

**Fire Marshal (Shannon Shaffer-Killey):** The Fire Marshal objected to placement at the corners of the block on "daylighting" grounds (visibility for traffic). However, a fence already occupies the relevant sight line, so a tent would not block anything that is not already obstructed. The City showed no interest in engaging with that point. We need further clarity on the authority and purpose of this rule, especially given the existing fence.

On fire lanes, the City's position actually gives us more space than a normal parking zone, because it does not impose the extra 18-inch clearance. The combined effect of the City's stacked restrictions leaves roughly four feet of usable width across the entire sidewalk.



**Code enforcement (Andrea Sutherland):** There are no code enforcement issues with this location.

Follow Up:

□ Identify written authority for 18-inch car-door clearance (or confirm City withdraws the requirement)

□ Identify "daylighting" authority and explain application where existing fence already blocks sight line

□ Confirm whether 18-inch clearance is in addition to or part of the 6-foot requirement

***A photo of the sidewalk with a view towards the train tracks — dead end.***




***A photo of the sidewalk with a view towards adjacent street — Fourth Street.***

## Site 4 — 1281 University Avenue

This site is for one BHU member and is currently gated and locked, but both parties agreed there is ample space for the proposed spot.

Measurements (approximate): The length of the lot is 36 feet, the width is about 75 feet.

**City Objections:** City Attorney Nubyaan Scott raised the issue that this is a vacant lot, not a public right-of-way, and therefore averred it is not open to camping under the judge's order.

**Fire Marshal (Shannon Shaffer-Killey): S**he noted that three-foot setbacks from buildings on either side of the lot are required. But we will need to confirm the exact length of the required setbacks. Additionally, if more than one person is present, set breaks (clearances between tents or occupants) are needed and must be at least 12 inches wide.

**Utilities:** There are no utility poles on the lot, and no further utility access is needed.

**Code enforcement (Andrea Sutherland):** There are no code enforcement issues at this site.

<u>Follow-Up</u>**:**

□ Provide access to lot for proper measurement

□ State City's position on whether vacant lots fall within Court's order (with legal basis)

□ Confirm precise setback dimensions from buildings

//

//

//

//



*A photo of the vacant lot on University Avenue, next to apartment buildings.*

---

## Site 5 — 1904 Henry Street

This site is for two BHU members, with a footprint measuring approximately 11 x 30 feet for tents. With a 3-foot setback, the usable width would be 21 feet 3 inches, and the length is approximately 43 feet (including setbacks from the fence).

**Code enforcement (Andrea Sutherland)**: The parcel is zoned residential. Code Enforcement stated that any camping in this area would be a code violation, because AR 10.2 applies only to non-residential districts and does not permit TNC Objects on sidewalks in residential areas. When asked for the zoning basis for that position, she had no immediate answer.

BHU also asked whether there are any other zoning categories where AR 10.2 likewise does not apply; she had no answer and said she would get back to us. Melissa from Parks and Recreation will also follow up on whether camping is permitted in residential areas at all, and whether there are specific zones where camping is allowed.

**Fire Marshal (Shannon Shaffer-Killey):** Requires a setback away from the building of about 3 feet. The utility box on site requires 36 inches of clearance around it for access. There may be a sprinkler system on site, but it is believed to be old and unused.

**City Objections:**

- The City Attorney Nubyann Scott raised whether there may be a presence of underground cables around the utility box.
- The City asserted that the parcel is probably a park, and would confirm in a follow-up.
- A no-lodging sign was found lying on the ground. The City took the position that the sign was supposed to be there and that the area was therefore designated as a no-lodging area.
- If the area is determined to be a public right-of-way, a 6-foot clearance would be required. However, that issue is contingent on the zoning and ownership determinations.

<u>Follow-Up:</u>

□ Identify zoning basis for excluding residential areas from AR 10.2

□ Confirm whether any other zones are similarly excluded

□ Confirm whether camping is permitted in residential zones

□ Verify ownership and whether the parcel is a park (Melissa from Parks to follow up)

□ Confirm status of no-lodging sign (when posted, authority, when it fell)

□ Confirm required setback from building and sprinkler system status



*A photo of the vacant lot on Henry Street, next to apartment buildings. A full park with five blocks of length, Ohlone Park, is a two-minute walk on the next block.*

---

## IV. ISSUES SUMMARY

*1. New Assertions Raised at Walk-Throughs (Potential Unwritten Rules)*

Each of the following was asserted for the first time during these walk-throughs and should be treated as a potential unwritten rule requiring a formal demand for authority:

- 18-inch car-door clearance – An additional 18 inches of sidewalk clearance beyond the six-foot requirement, purportedly to allow for car doors to open.

- Corner "daylighting" prohibition – A restriction on placement at block corners, applied without regard to whether the sight line is already obstructed by existing structures (e.g., a fence).
- Vacant lots excluded – A claim that Administrative Regulation 10.2 does not apply to vacant lots.
- Residential districts excluded – A claim that AR 10.2 does not apply to residential districts, and that camping in such districts constitutes a code violation. It remains unclear which districts are affected.
- No-lodging sign – The City treated a no-lodging sign found lying on the ground as establishing a valid no-lodging designation at the Henry Street site.
- PG&E setbacks – Undefined setback requirements from telephone and utility poles, purportedly to be consulted with PG&E.

*2. Follow-up Questions That City Will Clarify*

A. <u>18-inch clearance:</u> Identify the written authority for this requirement. If it exists, cite the regulation, standard, or administrative memorandum; if it does not, confirm that the City withdraws the requirement.

B. <u>Daylighting:</u> Identify the authority and standard for the corner restriction, and explain its application where an existing fence already obstructs the sight line.

C. <u>Residential districts:</u> Produce the Administrator's written ruling that AR 10.2 does not apply to residential areas, including its date and issuing authority.

D. <u>Other excluded zones</u>: Confirm whether the City contends that AR 10.2 does not apply in any other zoning districts. (Ms. Sutherland committed to following up.)

E. <u>Vacant lots:</u> State the City's position on whether AR 10.2 applies to vacant lots, and provide the legal basis for that position.

F. Harrison Street right-of-way: Confirm whether the Harrison Street parcel is a right-of-way, and produce the record on which that determination rests.

G. Concrete blocks (Second Street): Confirm ownership of the concrete blocks. If the City does not own them and cannot identify an owner, they are presumptively illegally dumped material and should not reduce usable width.

H. PG&E setbacks: Produce the PG&E setback standard the City intends to rely on for telephone and utility poles, or confirm that no such setback applies.

I. University Avenue access: Provide access to the University Avenue lot so it can be walked and measured, or state the City's position on access.

J. Henry Street no-lodging sign: Produce the posting record for the sign—when it was installed, under what authority, and when it fell.

K. Henry Street park classification: Confirm whether the City contends the Henry Street parcel is a park, and produce the basis for that classification.

*3. Field Observations*

The pattern across all five sites is consistent: physical space is generally available, but the constraints are being generated by restrictions the City announces on site, rather than by anything on the ground or in the published regulation.

The City's formal response confirms that only one site (Third and Camelia) may be viable, but even that site is subject to further conditions and private ownership concerns. The cumulative effect at Camelia Street—six feet of path travel, plus 18 inches for car doors, plus corner exclusions, plus fire lane width—reduces a full sidewalk to roughly four feet. This illustrates clearly how the stacked unwritten requirements operate in practice.

The City has effectively rejected four of the five sites based on categorical exclusions. The Court required individualized assessments. The City is applying blanket prohibitions instead.

## V. CITY'S RESPONSE

City Attorney Nubyaan Scott provided BHU with the City's determinations on each site in an email on August 27 at 3:44 p.m. Her response doesn't include all the follow-up items discussed during inspection.

**City's Formal Assessment for Site One:** "Although physically large enough to contain the proposed tents, the site is not viable because it is a City-owned lot rather than the PROW. Additionally, the lot may not be available because it may be subject to an existing lease agreement with the shelter operator. Fire Department spacing requirements would require significant fire breaks and setbacks. There is also a 'no lodging' sign directly outside the lot. The site contains significant vegetation and foliage that would require mitigation... and BHU has indicated that open flames may be used for cooking which would further elevate fire risk."

*Follow-Up:*

□ Confirm whether lease actually exists and whether it would preclude camping

□ Request specific fire break and setback requirements with legal authority

□ Confirm whether "no lodging" sign outside the lot applies to the lot itself

□ Request mitigation plan for vegetation if needed

**City's Formal Assessment for Site Two:** "This location has a 'no lodging' sign and is in a temporary non-commercial ('TNC') (e.g., tents) prohibited area, so overnight camping is not allowed here regardless of campsite size. There are multiple utility access needs, power lines, and large k-rails that restrict usable areas. Expansion into the roadway would require verification of k-rail ownership and consideration of parking and utility access requirements. Additionally, portions of this site are privately owned by East Bay Municipal Utility District and Jones Development Co."

*Follow-Up:*

□ Confirm ownership of concrete blocks; if City doesn't own them, they are presumptively illegally dumped

□ Obtain PG&E setback standard (or confirmation none applies)

□ Confirm which portions are privately owned and by whom

□ Confirm whether utility access can be maintained with tents in place

**City's Formal Assessment for Site Three:** "This is the only potentially viable location reviewed during the assessment... There is sufficient sidewalk length to potentially support two individuals. The location is on a dead-end street adjacent to a fenced railroad track and an active construction site with intermittent dust and heavy equipment operation. Across the street is a commercial brewery. Measurements were taken at two possible locations for placement. Fire Department and Code Enforcement indicated no immediate disqualifying concerns, though final viability depends on confirmation of precise sidewalk dimensions, pedestrian access requirements, Fire Department emergency ingress needs, and utility access considerations. Additionally, I have been informed that portions of this area are privately owned, so further assessment must be done to confirm which areas are privately owned."

*Follow-Up:*

□ Confirm which portions are privately owned and by whom

□ Provide precise sidewalk dimensions and access requirements

□ Confirm whether Brad Raymer's existing tents can remain

□ Process Jackie Mendoza's accommodation request (made a verbal request to Thomas Gregory)

**City's Formal Assessment for Site Four:** "This site is a vacant lot owned by the City. Under the current Court orders and City policy, vacant lots are not viable for TNC overnight camping. The lot was locked and could only be approximately measured from the exterior. This lot approximately measures 36 feet wide and 72 inches long."

*Follow-Up:*

□ Provide access to lot for proper measurement

□ State City's position on whether vacant lots fall within Court's order (with legal basis)

□ Confirm whether City Council has ever considered authorizing camping on this lot

**City's Formal Assessment for Site Five:** "This site is a City-owned vacant parcel that is not part of the PROW. Accommodations from Administrative Regulation 10.2, as ordered by the court, do not apply to vacant parcels. Only City Council can authorize camping on City owned land and it has taken no such action. This site also contained a 'No Lodging' Sign and is zoned residential. Camping is prohibited in residential areas even if it were within the public right of way."

*Follow-Up:*

□ Identify zoning basis for excluding residential areas from AR 10.2

□ Confirm whether any other zones are similarly excluded

□ Confirm whether "No Lodging" sign was lawfully posted (it was on the ground)

□ Confirm required setback from building and sprinkler system status

## IV. CITY'S ZONING AND LOCATION RESTRICTIONS

A. Zoning Restrictions Asserted by the City

The City's August 27 response provides the following framework for where camping is permitted:

| Zone Type | Label | Camping Permitted? |
|---|---|---|
| Residential Districts | R-1, R-2, ES-R, R-SMU, etc. | NO — AR 10.2 prohibits TNC objects |
| Commercial Districts | C-C, C-U, C-W, C-DMU, etc. | YES — subject to 3x3 rule and other restrictions |
| Manufacturing Districts | M, MM, MU-LI, etc. | YES — subject to 3x3 rule and other restrictions |
| BART Access | Within 25 feet of BART entrance | NO — AR 10.2 prohibits TNC objects |

| | | |
|---|---|---|
| Corridor | | |

B. "No Lodging" Areas Asserted by the City

The City identified the additional "No Lodging" and TNC Prohibited Areas in Commercial and Manufacturing Districts.

- Harrison Street: from 4th Street to San Pablo, Gilman to Codornices Creek
- Second Street: from Gilman to Cedar and down all side streets
- Former Here/There Encampment: median area MLK to Adeline, 63rd to 62nd
- Ohlone Park: camping already prohibited; additional "no lodging" signs

C. Vacant Lots

The City's position: Vacant lots are not viable because they are "not part of the PROW" and "only City Council can authorize camping on City-owned land."

Dated: August 27, 2026

Respectfully submitted,
/s/ Anthony D. Prince
Attorney for Berkeley Homeless Union