Anthony D. Prince (SBN # 202892)
General Counsel, California Homeless Union/Statewide Organizing Council
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
Tel: 510-301-1472

UNITED STATES COURT

DISTRICT OF NORTHERN CALIFORNA

| | |
|---|---|
| BERKELEY HOMELESS UNION<br>Plaintiff,<br>vs.<br>CITY OF BERKELEY<br>Defendant | Case No.:<br><br>EX-PARTE APPLICATION FOR TRO |

The City of Berkeley "COB" is about to destory a disabled Berkeley Homeless Union "BHU" member's dog at a hearing she cannot attend, and about which her lawyer has had no meaningful opportunity to prepare. BHU has requested a disability accommodation and continuance of an administrative hearing scheduled today, September 9 at 1:45pm. (See Declaration

Importantly, COB created the entire situation by displacing the BHU member, Sunny Yow, arresting her, destroying her property, and seizing her animals while her ADA accommodation request sat unanswered on its own ADA Coordinator's desk in violation of this courts judgement. (see Decl Yesica Prado, Anthony Prince, ECF

Euthanasia is irreversible. The Ninth Circuit has recognized that a post-deprivation hearing where the animals have already been killed can violate the Fourth Amendment. See

*Recchia v. City of L.A. Dep't of Animal Servs.*, 889 F.3d 553, 568 n.9 (9th Cir. 2018). This Court's intervention is required now, before 1:45 p.m. today, because after that dog will likely be killed.

Plaintiffs do not ask this Court to decide whether Griz is dangerous. They ask only that the City be required to make that decision through a process that comports with the ADA and the Constitution,  with the owner present, with counsel prepared, and with the accommodations the City has never provided.

## II. STATEMENT OF FACTS

### A. Ms. Yow is a disabled, unhoused member of the plaintiff Union whose accommodation request was pending when the City displaced her.

Sunny Jean Yow is an unhoused member of the Berkeley Homeless Union. Prado Decl. ¶ 3. She has a mental health disability that substantially impairs her executive functioning, decision-making capacity, and ability to process complex instructions under pressure. *Id.* ¶ 4. She relies on her dogs, including Griz, to manage her disability. *Id.* ¶ 5.

On **July 28, 2026**, BHU submitted a comprehensive ADA reasonable-accommodation request on Ms. Yow's behalf to the City's ADA Coordinator, Thomas Gregory. *Id.* ¶ 6, Ex. A. The interactive process on that request was never completed. *Id.* ¶ 7.

On **August 26, 2026**, notwithstanding the pending request, the City abated Ms. Yow's encampment, destroyed her personal property, arrested her for public lodging, and took her dogs to the shelter. *Id.* ¶ 8. Berkeley Police seized her cell phone incident to that arrest, which is a principal reason she has since been unreachable. Prince Decl. ¶ 11; Prado Decl. ¶ 9.

B. The City designated Griz "vicious and dangerous" and set a hearing at which euthanasia is on the table.

On **August 31, 2026**, the City issued a letter determining Griz to be "vicious and dangerous" under BMC § 10.04.170. Prado Decl. ¶ 10, Ex. B.

On **September 3, 2026**, Ms. Prado, on Ms. Yow's behalf, requested an administrative hearing under BMC § 10.04.172(C), asked the City not to euthanize Griz pending that hearing and any appeal, requested additional time as a disability accommodation, and asked what accommodations the City would provide "to ensure Ms. Yow can effectively participate in the hearing, given her PTSD and cognitive limitations." *Id.* ¶¶ 11–12, Ex. C.

On **September 4, 2026**, Deputy City Attorney Sara Stephens granted the hearing request and set the hearing for **September 9, 2026 at 1:45 p.m.** *Id.* ¶ 14, Ex. C. That email:

- stated that Ms. Yow "should also plan to attend, as she is considered an **essential witness** and any testimony from other people would be hearsay and have less weight";
- **did not grant any accommodation**, instead asking Plaintiffs to "explain what type of accommodation is requested" — thereby opening, but never completing, the interactive process; and
- warned that if the determination is upheld, the City Manager or designee may "make such other and further orders reasonable under the circumstances" which **"could include euthanasia."**

*Id.*

On **September 5, 2026**, Animal Services Manager Mike St. Pierre transmitted nine categories of evidentiary documents — bite reports, memoranda, kennel and medical records, a prior hearing decision letter, and the investigation letter — stating they had already "been sent to the hearing officer." *Id.* ¶ 15, Ex. D. He then advised he would be out of the office Monday through Wednesday, i.e., through the day of the hearing. *Id.*

### C. The City refused a short continuance and is proceeding today without the owner or a prepared lawyer.

Counsel Anthony Prince was out of the district from September 3 through September 7, 2026. Prince Decl. ¶ 7. On **September 8, 2026**, he confirmed his representation of Ms. Yow and requested that the hearing be continued to **September 16 or 17**, explaining he had not reviewed the City's documents and had not been able to meet with his client. *Id.* ¶ 8, Ex. E.

On **September 9, 2026 at 7:16 a.m.**, Ms. Stephens responded that the request was received and that the City was "discussing internally as it . . . poses a number of operational and safety concerns to delay this hearing." *Id.* ¶ 10, Ex. F. At **10:56 a.m.**, she confirmed: "As of right now, the hearing is still scheduled for 1:45pm today." *Id.* ¶ 12, Ex. F.

Counsel responded at **11:22 a.m.**, noting that the asserted safety concern is illusory because Griz is impounded and poses no danger to the public; that Ms. Yow has a right to be present and is the City's own designated essential witness; that she is entitled to reasonable accommodations and the interactive process must be completed first; and that proceeding would deprive her of the legal representation to which she is entitled. Counsel requested confirmation by 11:45 a.m. that the hearing would be continued and reserved the right to seek immediate judicial intervention. *Id.*

¶ 13, Ex. G. [**As of the filing of this application, the City has [not responded / responded as follows: ____].** Prince Decl. ¶ 14.]

## III. LEGAL STANDARD

A temporary restraining order requires a showing that the movant is likely to succeed on the merits, likely to suffer irreparable harm absent relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. NRDC*, 555 U.S. 7, 20 (2008). In this Circuit, a TRO may also issue where the movant raises "serious questions going to the merits" and the balance of hardships tips sharply in his favor, so long as the remaining *Winter* factors are satisfied. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

Where, as here, notice has been given to the opposing party, Rule 65(b)(1)'s no-notice requirements are satisfied a fortiori; counsel's efforts to give notice are set out at Prince Decl. ¶¶ 12–15. *See* Fed. R. Civ. P. 65(b)(1)(B); Civil L.R. 65-1(b).

## IV. ARGUMENT

### A. Plaintiffs are likely to succeed on the merits.

#### *1. Title II of the ADA: the City has refused to make reasonable modifications and has never completed the interactive process.*

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A public entity "shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless

the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

The City has been on notice since **July 28, 2026**. Prado Decl. ¶ 6. It was on notice again on **September 3, 2026**, when Plaintiffs expressly requested accommodations for the hearing itself. *Id.* ¶ 12. The City's response — "Please explain what type of accommodation is requested" — opened an interactive process it then simply abandoned, setting the hearing for a date certain and refusing to move it. That is the paradigm Title II violation: the entity acknowledges the request, does nothing, and proceeds anyway.

The requested modifications are modest and impose no fundamental alteration: a **one-week continuance** (to September 16 or 17), sufficient time to locate a client whose phone the City's own police department seized, and a hearing at which the owner and prepared counsel are present. The City's asserted "operational and safety concerns" cannot bear the weight placed on them: Griz is impounded and poses no danger to any member of the public while confined. Prince Decl. ¶ 13.

*2. Fourth and Fourteenth Amendment: destruction of Griz without adequate pre-deprivation process would violate due process.*

A dog is property. The State may not destroy it without constitutionally adequate process. The Ninth Circuit has squarely held that homeless persons' property is protected by the Fourteenth Amendment and that "[t]he government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012). "Violation of a City ordinance does not vitiate the Fourth Amendment's protection of one's

property. Were it otherwise, the government could seize and destroy any illegally parked car or unlawfully unattended dog without implicating the Fourth Amendment" *id*

Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), each factor favors Plaintiffs:

- **Private interest.** The interest is the life of a companion animal on which a disabled person depends. It is unique, irreplaceable, and its destruction is final.
- **Risk of erroneous deprivation and value of added safeguards.** The risk is extraordinary. The City proposes to adjudicate without the owner — whom it has itself called the **essential witness**.
- **Government interest.** Minimal. Griz is impounded. A one-week continuance costs the City boarding fees, not public safety.

*Recchia* confirms that a post-deprivation remedy is no remedy at all once the animal is dead: the court there expressly reserved the question, noting that the plaintiff's "post-seizure hearing could do him no good here because his birds were already dead." 889 F.3d at 568 n.9. That reserved question is this case.

### *4. The City's own ordinance does not authorize euthanasia on a bare "vicious and dangerous" finding.*

BMC § 10.04.172 authorizes destruction in specified circumstances: where a dog cannot be safely impounded (§ 10.04.172(B)); where a dog is not reclaimed (§ 10.04.172(D)); and where the owner fails to comply with the conditions imposed (§ 10.04.172(E)). Subsection (C) — the hearing provision the City is invoking — authorizes the City Manager to order confinement or to "make such other and further orders reasonable under the circumstances."

Plaintiffs respectfully submit that this residual clause does not authorize killing a confined dog whose owner has never been given a hearing she could attend, and that any such order would be *ultra vires* and, in any event, not "reasonable under the circumstances."

To the extent the City relies instead on § 10.04.172(D) (unreclaimed dogs), reclamation is conditioned on compliance with § 10.04.171, including a **$50,000 minimum liability insurance** requirement. Conditioning a disabled, indigent, unhoused person's ability to save her dog's life on a $50,000 insurance policy is precisely the kind of policy that requires modification under 28 C.F.R. § 35.130(b)(7)(i).

**B. Ms. Yow will suffer irreparable harm.**

Death is irreparable. There is no damages remedy that returns a living animal, and no post-hoc hearing that can benefit an owner whose dog has already been killed. *Recchia*, 889 F.3d at 568 n.9. The harm is compounded because Griz is the animal on which Ms. Yow depends to manage her disability, and because she has already lost her shelter, her belongings, and her liberty in the same municipal action that took him. Prado Decl. ¶¶ 8, 17.

C. The balance of equities and the public interest strongly favor relief.

Plaintiffs seek one week. The City faces the cost of continued boarding. Ms. Yow faces the permanent loss of her dog. Where the City is a party, the balance-of-equities and public-interest factors merge, *Nken v. Holder*, 556 U.S. 418, 435 (2009), and there is no public interest in a municipality violating the ADA and the Due Process Clause. There is a strong public interest in the opposite: that a city not kill an animal after a proceeding its owner could not attend.

## V. CONCLUSION

Plaintiffs respectfully request that the Court issue the temporary restraining order set forth in the accompanying [Proposed] Order **before 1:45 p.m. on September 9, 2026**, and set an order to show cause re preliminary injunction.

Dated: September 9, 2026

Respectfully submitted,

/s/Anthony D. Prince

ANTHONY PRINCE Attorney for Plaintiffs