**Anthony D. Prince (SBN # 202892)**
General Counsel, California Homeless Union/Statewide Organizing Council
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
Tel: 510-301-1472

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

BERKELEY HOMELESS UNION,

Plaintiffs,

vs.

CITY OF BERKELEY, THOMAS GREGORY, PAUL BUDDENHAGEN, PETER RADU, OKEYA VANCE-DOZIER, RASHI KESERWANI, DOES 1-10

Defendant.

Case No.: 3:25-cv-01414-EMC

**DECLARATION OF YESICA PRADO IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**

# DECLARATION OF YESICA PRADO

I, Yesica Prado, declare:

1. I am over 18 years of age and competent to testify to the matters set forth herein. I make this declaration based on my personal knowledge, and if called as a witness, I could and would testify competently to the facts stated below.

2. I am the President of the Berkeley Homeless Union ("BHU" or "the Union"), a plaintiff in this action. I make this supplement declaration in support of Plaintiffs' ex parte application for a temporary restraining order. I was present at the Berkeley Animal Shelter this morning when Ms. Yow arrived. Neither me nor Mr. Prince, her attorney, had seen her in at least a week. I had driven all over Berkeley day after day unable to find her. I have read the account of what happened this morning in the City's declarations filed in support of their opposition to our motion to re-schedule the dog hearing. Their description is false. Ms. Yow became upset when the hearing officer declared that he would not re-schedule the hearing to either 9/16 or 9/17 so that Mr. Prince could adequately prepare. Ms. Yow began pleading her case, becoming extremely agitated, begging to see her dog, begging the City to release "Griz" to her care. The representative of the Shelter announced that she didn't believe Ms. Yow could take care of her dog, further provoking Ms. Yow. Mr. Prince intervened as Ms. Yow became increasingly triggered and upset, at one point producing a muzzle that she insisted she would put on the dog if only the City would release him. It was clear from the outset that the City had no intention of conducting a genuine hearing. To go forward as the hearing officer insisted he would under these conditions would have been nothing but a fraud and a "kangaroo court."

**I. Ms. Yow's Representation by BHU and the City's Knowledge Thereof**

3. Ms. Yow consented to being represented by BHU on July 23, 2026, when I found her at her encampment on Murray Street while searching for relocation sites for people at 8th and Harrison. She made me aware that her encampment had been noticed for a sweep, and she needed help from the Union.

4. On July 28, 2026, I made a disability accommodation request on Ms. Yow's behalf, asking the City for the following accommodations: (1) Pause on Enforcement Pending Interactive Process; (2) Designation of a Stable Location (the City has an obligation to consider alternate viable locations for encampment residents to relocate); (3) Physical Relocation Assistance; (4) Exemption from the 3x3 Rule (Ms. Yow requested an accommodation at her current location on Murray Street and 9th Street, near 1000 Murray St., Berkeley, CA 94710, proposing a footprint of at least 10 feet wide by 35 feet long); (5) Extended Time to Move; (6) Replacement of Essential Property; and (7) Cognitive and Communication Accommodations.

5. I have been engaging with ADA Coordinator Thomas Gregory since July 28, 2026, regarding Ms. Yow's accommodation request. The City knew that BHU was representing Ms. Yow throughout this period.

6. On July 3, 2026, I received an automatic reply from Peter Radu regarding an accommodation request for a BHU member, which stated: "I am out of office on a paternity leave from July 2 - Sept 1. I will have no access to email during this time." Mr. Radu has not been working for the City during our engagement about Ms. Yow and has no context of the back-and-forth conversations BHU has had with the City about her.

7. Despite BHU's repeated engagement with the City about Ms. Yow, the City now claims that Ms. Yow is not represented by BHU. This is contradictory given the history of our engagement. See ECF 341-1; Exhibit A: Accommodation Request for Sunny Jean Yow.

**II. The Abatement of Ms. Yow's Encampment and Destruction of Her Property**

8. On August 26, 2026, Ms. Yow's encampment was abated despite the fact that the interactive process was still ongoing and the City had not provided her any accommodation prior to its abatement operations.

9. Before the encampment was abated on August 26, it turns out that Ms. Yow's dog Griz had been impounded by the animal shelter on August 22, 2026. Despite the fact that the City knew of Ms. Yow's encampment location and whereabouts between August 22 to 26, she was not informed that the dog had been impounded as required by California law.

The City had the obligation to notify Ms. Yow right away that the dog had been taken in. Yet, city staff chose not to inform her about Griz, until after her second dog, Briggitte, was also impounded during the abatement operations on August 26.

10. A letter with the "vicious dog" determination was sent to me on August 31, 2026, at 2:52 p.m. by ADA Coordinator Thomas Gregory, following up her accommodation request. See ECF 341-1; Exhibit B: BACS “vicious dog” determination.

11. As a result of the abatement action without any accommodations, Ms. Yow has suffered irreparable harm. All her belongings, including essential survival gear, medication, and family heirlooms, have been destroyed. It has severely impacted her mental health and aggravated her disability, as the City took away all of her supports.

**III. The City's Failure to Conduct an Individualized Assessment**

12. The City destroyed Ms. Yow's tent and property without completing the individualized assessment required by this Court's order. The City had identified a location where her 10' x 35' footprint "could fit," yet it abated her encampment before finalizing the accommodation and without a written determination.

13. The City destroyed Ms. Yow's tent without allowing her to relocate it to the identified location, and without providing a replacement tent. This requirement applies regardless of disability status under this Court's order.

14. Ms. Yow has documented mental disabilities that impairs her executive functioning, decision-making, and ability to handle sudden changes. The City was required to provide physical relocation assistance and to store her property for at least 90 days. Instead, the City destroyed all of her property, and nothing was stored.

15. Essential survival property—including tents, sleeping gear, and basic clothing—that cannot safely be moved or stored because of contamination, and that is destroyed by City enforcement operations, shall be replaced under this Court's order. The City destroyed Ms. Yow's tent, sleeping gear, and clothing. The City has not replaced any of these items. Ms. Yow's belongings were not contaminated and were storable, yet they were destroyed anyway.

**IV. The City's Failure to Honor Communication-Related Accommodations**

16. Ms. Yow requested trauma-informed communication and the opportunity to meet in a low-stimulation environment. The City denied this request as "vague" rather than engaging in the interactive process to identify specific practices. The City also failed to honor its commitments to communicate with Ms. Yow in a manner consistent with her disability.

**V. The City's Failure to Locate Ms. Yow and Improperly Shifting Responsibility to BHU**

17. Given that Ms. Yow has no shelter to return to, she has been moving around from place to place to stay with other unhoused people in the area. It has been very difficult to find her this way to communicate matters about her dogs, as the City displaced her. The City's adverse actions have made it harder for BHU to find her when she needs help.

18. Given that the City did not locate Ms. Yow, on August 31, 2026, Mr. Gregory emailed me a letter with the "vicious dog" determination from Berkeley Animal Services, and dumped the responsibility on BHU to find her. After receiving this letter, I looked for Ms. Yow for days and was unable to find her. It was not until Saturday, September 5, 2026, that I was able to locate her, and we went to pick up the dog that had been captured during the abatement.

19. When I walked into the shelter with Ms. Yow on September 5, 2026, I noted that I was Ms. Yow's representative. As a result, Animal Services Officer White informed me about Griz and BACS' determination. His tone was demeaning towards Ms. Yow, as he said to me that Ms. Yow was not capable of taking care of her dog.

20. I believe being a person with a disability does not disqualify you from being able to take care of an animal. Ms. Yow has had this dog since birth and has taken good care of him.

**VI. The Connection to the BHU Case**

21. This matter relates to the BHU case because the City failed to honor its documented commitments to accommodate communication-related disabilities during the interactive process and other discussions with disabled BHU members, including documenting a

member's known communication needs and triggers and employing patient, low-stimulation communication consistent with City staff training and claimants' individual needs. Ms. Yow requested trauma-informed communication and the opportunity to meet in a low-stimulation environment. The City denied this request as "vague" rather than engaging in the interactive process to identify specific practices.

22. This matter also relates to the BHU case because the Court expressly preserved serial displacement claims. Ms. Yow was forced to vacate her location without an accommodation. The City's pattern of requiring her to move, then destroying her property, then failing to provide an exemption to the 3x3 rule so she can re-camp somewhere in the City to stabilize herself, is exactly the kind of serial displacement the Court preserved for future claims.

23. The dog impoundment is not wholly unrelated to the encampment abatement. The City's actions toward Ms. Yow—including the impoundment of her dog Griz on August 22, the abatement of her encampment on August 26, the impoundment of her second dog Briggitte during the abatement, and the destruction of all her property—are part of a pattern of serial enforcement against her as a BHU member. It is common for BHU members and other unhoused individuals with animals to have their animals impounded in connection with abatements. These animals are often not returned because the owners lack the resources to represent themselves at their administrative hearing.

24. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. This declaration was executed on the 10th day of September, 2026, at Berkeley, California.

Respectfully submitted,

/s/ Yesica Prado

YESICA PRADO