Farimah Faiz Brown, City Attorney (State Bar No. 201227)
Katrina Eiland, Assistant City Attorney (State Bar No. 275701)
Laura Iris Mattes, Deputy City Attorney (State Bar No. 310594)
Stephen Hylas, Deputy City Attorney (State Bar No. 319833)
BERKELEY CITY ATTORNEY'S OFFICE
2180 Milvia Street, Fourth Floor
Berkeley, CA 94704
Telephone: (510) 981-6997
Facsimile: (510) 981-6960
Email: LMattes@berkeleyca.gov
KEiland@berkeleyca.gov
SHylas@berkeleyca.gov

Attorneys for Defendants
CITY OF BERKELEY et al.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERKELEY HOMELESS UNION.<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BERKELEY, et al.<br><br>Defendants. | **Case No. 3:25-CV-01414-EMC**<br><br>**DEFENDANT CITY OF BERKELEY'S MOTION FOR STAY PENDING APPEAL**<br><br>Judge: Hon. Edward M. Chen |

**NOTICE OF MOTION AND MOTION FOR STAY PENDING APPEAL**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on October 29, 2026, at 1:30 p.m., in Courtroom #5, 17th Floor, or at such other time as the Court may order, Defendants CITY OF BERKELEY, PAUL BUDDENHAGEN, THOMAS GREGORY, PETER RADU, OKEYA VANCE-DOZIER, and RASHI KESARWANI (collectively, the "City") will move this Court pursuant to Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1), for an order staying the Court's Final Judgment and Permanent Injunction (Dkts. 326 and 327) and its subsequent orders, including its Order re Individual Accommodations Adjudication and Abatement (Dkt. 342), pending resolution of the City's latest appeals[1] before the Ninth Circuit.

The City makes this motion on the ground that it is likely to succeed on the merits of its appeals; that it will suffer irreparable harm absent a stay; that a stay is in the public interest; and that a stay will cause no substantial injury to another party. This motion is based upon this Notice of Motion, the below Memorandum of Points and Authorities, the complaint and other papers on file in this action, and other matters as may be presented to the Court at or before the time of the hearing.

BERKELEY CITY ATTORNEY'S OFFICE

Dated: September 17, 2026

*/s/ Stephen Hylas*

STEPHEN HYLAS

Attorneys for Defendants

---

[1] The City filed a notice of appeal of the final judgment (Dkt. 327) on September 17, 2026 (Dkt. 375). The City is also considering whether to separately appeal the Court's order dated September 9, 2026 granting injunctive relief (Dkt. 342). This motion to stay is applicable to both potential appeals.

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................................................................ 5

II. LEGAL STANDARD ................................................................................................... 8

III. ARGUMENT ........................................................................................................... 8

A. The City Is Likely to Succeed on the Merits. ....................................................... 8

B. The City Will Face Irreparable Harm Absent a Stay. ............................................ 12

C. A Stay Is in the Public Interest, and BHU Will Not Face Substantial Injury if a Stay Is Granted. ........................................................................................................ 14

IV. CONCLUSION ........................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*3PAK LLC v. City of Seattle*, 174 F.4th 1180 (9th Cir. 2026) ........ 8

*Berkeley Homeless Union v. City of Berkeley*, No. 25-cv-04449-HSG, 2025 WL 1755446 (N.D. Cal. June 25, 2025) ........ 9

*City of Grants Pass, Oregon v. Johnson*, 603 U.S. 520 (2024) ........ 4, 10

*In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693 (9th Cir. 1993) ........ 7

*LA All. for Hum. Rts. v. Cnty. of Los Angeles*, 14 F.4th 947 (9th Cir. 2021) ........ 3, 6

*Lewis v. City of Oakland*, No. 24-CV-04096-SI, 2024 WL 3447513 (N.D. Cal., July 16, 2024) . 9

*Mi Familia Vota v. Fontes*, 111 F.4th 976 (9th Cir. 2024) ........ 5

*Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000) ........ 2

*NetChoice, LLC v. Bonta*, 152 F.4th 1002 (9th Cir. 2025) ........ 6

*Nken v. Holder*, 556 U.S. 418 (2009) ........ 5, 11

*Parent/Pro. Advoc. League v. Springfield, Mass.*, 934 F.3d 13 (1st Cir. 2019) ........ 6

*Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) ........ 3

*Potter v. City of Lacey,* No. 21-35259, 2024 WL 4511612 (9th Cir. Oct. 17, 2024) ........ 8

*Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019) ........ 5

*Snapp v. United Transp. Union*, 889 F.3d 1088 (9th Cir. 2018) ........ 7

*Textile Unlimited, Inc. v. A. BMH and Co.*, 240 F.3d 781 (9th Cir. 2001) ........ 7

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) ........ 4, 6

*United States v. Torres*, 828 F.3d 1113 (9th Cir. 2016) ........ 8

*Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852 (9th Cir. 2022) ........ 7

**Statutes**

Americans with Disabilities Act ("ADA") ........ passim

**Rules**

Federal Rule of Appellate Procedure 8(a)(1) ........ 2

Federal Rule of Civil Procedure 62(d) .......... 2

Rule 23 .......... 4

**Constitutional Provisions**

Article III .......... 2, 4, 9

Fourth Amendment .......... 8, 9

## I. INTRODUCTION

The City respectfully moves under Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1) for a stay of the Court's Final Judgment and Permanent Injunction (Dkts. 326 and 327) and its subsequent orders, including its Order re Individual Accommodations Adjudication and Abatement (Dkts. 342), pending resolution of the City's latest appeals before the Ninth Circuit.

The Court's final judgment goes far beyond what this Court decided on summary judgment, extending beyond the boundaries of Article III and violating the Federal Rules of Civil Procedure. Although the City believes that the Court's summary judgment order was partially legally erroneous, and so has appealed, that order was notably limited to the Harrison Corridor encampment, and its Americans with Disabilities Act ("ADA") rulings expressly applied only to certain individuals whose situations were briefed and argued in court. (Dkt. 288). The court's final judgment, however, improperly and belatedly expands those Harrison-specific rulings into a permanent, citywide injunction that applies to *all* alleged members of the Berkeley Homeless Union, many of whom were never part of this lawsuit and whose circumstances were not presented or decided before final judgment. This is clear legal error.

First, despite indicating that it would give both parties an opportunity to comment on the form of final judgment, the Court's final judgment expanded the scope of its MSJ order without providing the City any notice or opportunity to respond, violating its due process rights.[2] *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 466 (2000) (finding due process violation where court allowed amending in a new party and simultaneously amended the judgment to make the party liable without permitting the party to be heard). Second, the Court's ex-post expansion to reach a scope not contemplated by the complaint or the Court's summary judgment ruling also violates Article III and the Federal Rules of Civil Procedure. Courts have held it improper to even decide

[2] Notably, at the hearing, the City objected to any ex-post expansion of relief in the case. The Court indicated that it would prepare a proposed judgment and permit the parties an opportunity to object. However, the Court never did so, instead issuing the final judgment order on August 21, 2026, with no notice or opportunity for the City to object.

claims raised only in summary-judgment filings and not pled in the complaint, let alone expanding the scope after summary judgment has already been decided. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006); *see also LA All. for Hum. Rts. v. Cnty. of Los Angeles*, 14 F.4th 947, 958 (9th Cir. 2021) (district court "only had equitable power to grant relief on 'the merits of the case or controversy before it,' and 'does not have the authority to issue an injunction based on claims not pled in the complaint'). Given this clear legal error, the final judgment must be stayed pending appeal.

In addition, the Court's September 9 order (Dkt. 342) exacerbates its prior substantive errors by:

(1) continuing to extend "temporary injunctive relief" to individuals simply because their interactive process is not yet "complete," despite the summary judgment order's acknowledgment that such claims are not viable (Dkt. 288 at 22 ["process deficiencies do not independently supply a basis for liability where no reasonable accommodation was improperly denied"]);

(2) requiring the City to provide evidence of its fundamental alteration/undue burden defenses after final judgment for claims not pled in the complaint, not decided on summary judgment, and related to individuals for whom the City had no opportunity to take discovery;

(3) holding that BHU is "likely to succeed" on its claim that the City must allow campers to ignore its "No Lodging/TNC Prohibited Zones" as an accommodation from the 3x3 Rule, even though this particular, distinct request was never previously made or pled in the complaint and was not briefed on summary judgment, and even though such an accommodation is effectively a sanctioned encampment, which this Court properly found at summary judgment is not a reasonable accommodation (Dkt. 288 at 42-45); and

(4) appointing a Special Master to adjudicate further reasonable accommodations claims of 21 individuals for whom this Court *denied* injunctive relief because they were *unlikely* to succeed on the merits.

The Court's orders raise serious Article III and federal procedure concerns, including lack of jurisdiction over claims not pled in the complaint, lack of jurisdiction over individuals' claims not at issue in the Court's pre-judgment orders, failure to give the City due process by giving it a reasonable opportunity to respond to new claims, arguments, and evidence, and issuance of relief to nonparties in violation of controlling Supreme Court authority. The Court's latest orders also demonstrate a primary reason why the City is likely to succeed on the merits of this appeal: this Court continues to issue quasi-classwide, individualized, ongoing discretionary relief for dozens of persons who are not plaintiffs without Rule 23 certification, creating a de facto class action in contravention of Supreme Court precedent. *See Trump v. CASA, Inc.*, 606 U.S. 831, 852-53 (2025).

If not stayed pending appeal, the legal errors in these orders will cause irreparable harm to the City. First, by extending the injunction Citywide to every potential BHU member, with no requirement that BHU actually show that it is a legitimate membership organization or proof of individuals' membership, the Court's latest orders effectively assert jurisdiction to manage municipal homelessness policy across the entire City, absent authorization in the ADA or elsewhere for the Court to do so. Second, the Court's orders affirmatively require, for the first time, the City to consider permitting individuals to camp into areas the City has long designated as no-lodging zones, exposing City residents to new public health and safety risks despite clear precedent establishing that the City is allowed to regulate camping. (*See* Dkt. 338-1); *City of Grants Pass, Oregon v. Johnson*, 603 U.S. 520, 560 (2024). Third, the Court's orders impose an undue burden on City staff to provide dozens of individualized accommodations assessments in real time on an ongoing basis, consuming significant time and diverting emergency, public-health, and outreach personnel from their core duties. (*See* Dkt. 338-1.) Fourth, the burdens imposed by the Court's orders have continued to prevent, at least in part, the City from abating the Harrison Corridor despite the risk of Leptospirosis, which this Court's summary judgment order acknowledged is a serious concern requiring "an urgent public health response." (*See* Dkt. 288 at 69 [noting that 'the leptospirosis outbreak at the Harrison Encampment requires an urgent public health response']). The Court's orders also severely constrain the City's ability to

mitigate other safety hazards, including potentially catastrophic fire risk in encampment areas. (*See* Dkt. 320-2).

For these reasons, the City respectfully requests a stay of the Court's Final Judgment and Permanent Injunction (Dkts. 326 and 327) and its subsequent orders pending appeal. In the absence of relief from this Court, the City intends to seek a stay pending appeal from the Ninth Circuit shortly, likely within the next week.

## II. LEGAL STANDARD

To succeed on a stay pending appeal, a party must show (1) likelihood of success on the merits; (2) irreparable harm absent a stay; (3) no substantial injury to other parties; and (4) that a stay would be in the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Where the government is the movant, the final two factors "merge." *Id.* at 435. The first two factors—likelihood of success and irreparable harm—are the most critical, and courts only reach the remaining factors if those two are satisfied. *Sierra Club v. Trump*, 929 F.3d 670, 687 (9th Cir. 2019) (citing *Nken*, 556 U.S. at 434). The Ninth Circuit has a "sliding scale" approach to the first two factors. *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024). "On one end of the continuum, the proponent must show a 'strong likelihood of success on the merits' and at least 'the possibility of irreparable injury to the [proponent] if preliminary relief is not granted.'" *Id*. On the other end of the continuum, a moving party must show either "a high degree of irreparable injury, or that the balance of equities otherwise tips sharply in their favor." *Id*. at 983 (cleaned up).

## III. ARGUMENT

### A. The City Is Likely to Succeed on the Merits.

In its earlier briefing of the summary judgment appeal, the City extensively demonstrated multiple reversible errors that show why the judgment is unlikely to withstand appellate scrutiny. (*See* 9th Cir. No. 25-7341 (consolidated), Dkt. 46). The City incorporates these arguments herein and will not repeat them in detail. Briefly, these errors include:

<u>Lack of Standing/Lack of Jurisdiction to Consider Nonparty Claims</u>: BHU lacks associational standing to assert ADA reasonable accommodations claims because such claims

are highly-fact specific and so cannot be litigated by associations. *See NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1014 (9th Cir. 2025); *Parent/Pro. Advoc. League v. Springfield, Mass.*, 934 F.3d 13, 34-35 (1st Cir. 2019). But even if associations like BHU could pursue ADA reasonable accommodations claims for their members, the Court erred by never holding BHU to its burden to show that it is a legitimate membership organization, or who its members are, and who they are not, such that any injunction could be reasonably confined to a defined set of individuals. The result is an injunction that extends to "all BHU members," which is an undefined, ever-changing group, in contravention of the Supreme Court's warning against workarounds to class certification and its command that injunctions be limited to the parties to a case. *See CASA, Inc.*, 606 U.S. at 852-53.

The Court's latest orders make this even clearer. The Court's September 9 order further extends injunctive relief to at least 3 individuals—Bradford Raymer, Jackeline Mendoza, and Gregory Grove—who not only were not briefed as a part of the summary judgment motion, but also were not movants for or beneficiaries of the Court's April 3, 2026 preliminary injunction. (*See* Dkts. 289, 342.) The final judgment also applies to "all BHU members throughout the City of Berkeley," even though the complaint is limited to a challenge to the Harrison Corridor abatement and the summary judgment order was so confined. This expansion of the Court's ruling in the final judgment requires the City to continue devoting resources to adjudicating ADA claims from individuals who do not live at Harrison and whose claims have no factual nexus to those pled in the complaint, all without significant proof that these individuals even belong to BHU. (*See* Dkts. 1, 326.) These rulings conflict with the basic principle that courts are limited to adjudicating claims pleaded in the complaint and issuing relief pursued by the parties to the case. *See LA All. for Hum. Rts.*, 14 F.4th at 958 (noting that district court "only had equitable power to grant relief on 'the merits of the case or controversy before it,' and 'does not have the authority to issue an injunction based on claims not pled in the complaint').

<u>Other Procedural Errors.</u> The Court's September 9 order further commits major civil procedure errors by extending ostensibly temporary injunctive relief based on "likelihood of success on the merits," even though the merits have already been fully adjudicated and reduced

to final judgment. (*See* Dkt. 342). A preliminary injunction's purpose is to preserve the status quo and prevent the 'irreparable loss of rights' *before* a final judgment on the merits. *Textile Unlimited, Inc. v. A. BMH and Co.*, 240 F.3d 781, 786 (9th Cir. 2001). A TRO's purpose is similarly to preserve the status quo until the Court can determine whether a preliminary injunction is appropriate. *See id.* Such orders make no sense after final judgment. The Court indicated that it granted injunctive relief pursuant to and to enforce its prior orders (Dkt. 342), but if that was its intent, the proper vehicle is a civil contempt motion, which BHU must duly notice on a normal schedule and prove by "clear and convincing" evidence. *See In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993). BHU has not made this higher showing or even moved for contempt.

Americans with Disabilities Act: As the City argued in its earlier appeal, the Court's ADA program analysis in its summary judgment ruling suffers from two fundamental errors—namely, (a) assuming that the City's *other* services are fused with the relevant program definition simply because the City also offers them; and (b) assuming that the City's choice to exercise enforcement discretion against individuals who camp on the street creates an ADA program authorizing street camping. Based on this erroneous analysis, the Court's summary judgment order requires the City to give BHU members accommodations from an abatement that stymie abatement, fundamentally altering the City's abatement program and rendering it far more complex and resource-intensive. *See Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859-60 (9th Cir. 2022).

The Court's September 9 order goes beyond this, in ways that are even more clearly unmeritorious. First, the Court has continued to extend injunctive relief to individuals simply because their accommodations claims are "pending," and has even appointed a Special Master to handle accommodations requests from individuals whose claims for injunctive relief were denied (*See* Dkt. 342 at 7), despite the summary judgment order's acknowledgment that such claims are not viable (Dkt. 288 at 22 ["process deficiencies do not independently supply a basis for liability where no reasonable accommodation was improperly denied"]); *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). Second, the Court's September 9 order

suggested, for the first time, that the City is not allowed to ban camping in No Lodging/TNC Prohibited Zones by finding that several BHU members were "likely to succeed" on a claim that the City must allow BHU members to ignore those zones as a "reasonable accommodation" to the City's 3x3 rule. (Dkt. 342 at 3-4.). This ruling runs afoul of civil procedure principles by granting "preliminary" relief after final judgment, and doing so on a theory that was never briefed and to which the City did not have a reasonable opportunity to respond. It also conflicts with the summary judgment ruling by possibly requiring the City to provide a sanctioned encampment, which this Court properly found is not a reasonable accommodation (Dkt. 288 at 42-45).

<u>Fourth Amendment</u>: The Court's restriction on the City's removal of RVs and other vehicles from public streets is not supported by Fourth Amendment case law. As the City explained in detail on appeal, a long line of community caretaking cases under the Fourth Amendment establish that cities have wide authority to impound vehicles, including vehicles used as shelter, from public streets for valid health and safety purposes. *See United States v. Torres*, 828 F.3d 1113, 1120 (9th Cir. 2016); *see also Potter v. City of Lacey,* No. 21-35259, 2024 WL 4511612, at *2 (9th Cir. Oct. 17, 2024) (finding that threatened impoundment of a vehicle due to violation of an RV Parking Ordinance was "reasonable under the Fourth Amendment" because "the Lacey City Council enacted the RV Parking Ordinance to serve a similarly valid community caretaking function"). The Court failed to address this case law, instead citing case law regarding real property that does not apply to the context of a public-health impoundment of vehicles on public streets.

<u>State-Created Danger</u>: The Court's state-created danger ruling is legally erroneous because *every* case in which the Ninth Circuit has applied the state-created danger doctrine involved state conduct leading to serious bodily harm to a plaintiff, implicating their life or liberty. *See 3PAK LLC v. City of Seattle*, 174 F.4th 1180, 1185 (9th Cir. 2026) (collecting cases). A state action that may marginally worsen difficulties inherent to homelessness—but that is not going to lead to serious bodily harm such as death or sexual assault—does not meet this high bar. *See, e.g.*, *Berkeley Homeless Union v. City of Berkeley*, No. 25-cv-04449-HSG, 2025

WL 1755446, at *8 (N.D. Cal. June 25, 2025) (finding no state-created danger despite potential increased difficulties in bathroom and water access); *Lewis v. City of Oakland*, No. 24-CV-04096-SI, 2024 WL 3447513, at *4 (N.D. Cal., July 16, 2024) (finding no state-created danger despite loss of community and exacerbation of mental health impairments).

For these reasons, the City is likely to succeed on the merits on its argument that the Court's injunction is overbroad, violates Article III, and is not justified by the ADA, Fourth Amendment, or state-created danger doctrine.

B. **The City Will Face Irreparable Harm Absent a Stay.**

As of this writing, the City has gone ahead with a limited abatement of the Harrison Encampment, consistent with the Court's orders. However, while this abatement helps to address the serious public health crisis in the Harrison Corridor, it does not eliminate the irreparable harm caused to the City by the Court's ongoing orders, especially the new orders improperly expand the Court's April relief to unprecedented areas. Absent a stay, the City will continue to suffer irreparable harm for several reasons.

First, the limited abatement permitted by the Court is not sufficient to allow the City to fully address the Leptospirosis risks posed by the Harrison encampment. (*See* Dkt. 186). As the City's public health officer previously testified, the City must be able to remove all vehicles and tents from the area to eliminate rodent burrows that cause Leptospirosis to spread. (*See id.*). Instead, however, the Court's MSJ order blocks the City from abating vehicles at the site and imposes restrictions on abatement, (*See* Dkt. 288) and its September 9 order further blocks abatement by extending protections to more individuals, including Bradford Raymer, Jackeline Mendoza, Shawman, Jermaine Lee White, Gregory Grove, Lisa Saecheo-y-chain, and Quinton Cocklereese. (*See* Dkt. 342. at 3-4). It is very challenging for the City to effectively abate an encampment while leaving this many individuals in place. The City's ability to abate the public health harms caused by this encampment thus will continue to be seriously compromised by the Court's orders absent a stay.

Second, absent a stay, the Court's orders will effectively prevent City officials from managing municipal homelessness policy for months, until the Ninth Circuit is finally able to

rule on the City's pending appeals. In particular, several aspects of the Court's recent rulings, including its extension of its relief City-wide to all BHU members (Dkt. 326) and its appointment of a Special Master to handle accommodations claims by BHU members in Berkeley, even those where the Court denied injunctive relief (Dkt. 342), subject the City's policymaking to ongoing, programmatic judicial management, and all but prevent elected City officials from democratically governing the complex issue of homelessness, which is their right under the City Charter and controlling precedent. *See Grants Pass*, 603 U.S. at 560 (stating that "a handful of federal judges [cannot] begin to match the collective wisdom the American people possess in deciding how best to handle a pressing social question like homelessness"). Such judicial management is inappropriate absent evidence of systemic, widespread legal violations—evidence that notably is absent from the record. Indeed, this is a limited case challenging the anticipated abatement of one encampment, not a system-wide challenge to the City's policies for addressing homelessness. A systemic injunction in such a limited case goes beyond the scope of the complaint and violates the City's right to manage municipal policy.

Third, absent a stay, the Court's new requirement imposing affirmative obligations on the City to consider allowing individuals to camp in "No Lodging/TNC-Prohibited" areas as a "reasonable accommodation," will expose City residents in previously unaffected areas to additional risks—including public-health and safety concerns—that they did not previously face. (*See* Dkt. 338-1; Dkt. 320-2). The risk of severe harm is especially acute because this accommodation was not pled or briefed prior to judgment. The Court acknowledged that the record is "thin—indeed non-existent" as to why the City adopted the No Lodging designation for these areas (Dkt. 342), but that is so only because the City did not receive its due process right to challenge this requested accommodation *before* the issuance of final judgment. The City had provided only a status report explaining its objections to the Court permitting BHU to belatedly raise a new claim. Had the City been able to fully brief the issue on summary judgment, it could have introduced evidence that would have assisted the Court in considering the harms caused by allowing individuals to camp in no-camping zones. The City's inability to do so will lead to irreparable harm until the Ninth Circuit is able to rule.

Fourth, absent a stay, the Court's approval of new requested locations for BHU members as a reasonable accommodation will cause irreparable harm to City residents. Already, the Court has approved relocation of several individuals to Fourth and Camelia Street, causing health and safety risks to parents of local preschoolers who are desperately concerned about where this Court's orders may lead if left unaltered. (*See* Dkt. 338-1).

Fifth, absent a stay, City staff will continue to endure unprecedented administrative burdens from having to engage in court-supervised interactive process discussions for dozens of individuals in real time, as well as defend against rapidly proliferating ADA claims from nonparties.

Accordingly, the City faces irreparable harm absent a stay pending appeal.

### C. A Stay Is in the Public Interest, and BHU Will Not Face Substantial Injury if a Stay Is Granted.

As for the last two factors of the *Nken* test, a stay is in the public interest, and BHU will not face substantial injury if a stay is granted. Even with this Court's orders stayed pending appeal, BHU will retain all preexisting constitutional and statutory protections, such as a right to notice before abatement or seizure of property, and a right to seek ADA accommodations that are reasonable. Indeed, the September 9 order itself leaves 21 individuals without injunctive relief, confirming that reasonable accommodations claims can be handled without a citywide injunction. Further, as the record shows, the City has already offered housing options, navigation services, storage and extensive outreach, and the City will continue to offer those services even without the injunction. While BHU members could continue suffer hardships such as exposure to the elements or instability in housing, these hardships are inherent to homelessness—they are not caused by the City, or remedied by the Court's injunction, so a stay pending appeal would not substantially injure BHU's membership.

Finally, a stay is also in the public interest. If the Court's orders are stayed, the City will be able to abate and fully address the Leptospirosis, fire hazard, and other serious public safety issues in the Harrison encampment and throughout the City, protecting housed and unhoused residents alike from the public health risks posed by a dangerous bacterial infection and risks of

catastrophic fire and injury caused by open flames near flammable makeshift structures and incursions on the pedestrian and motorist rights-of-way. (*See* Dkt. 320-2).

## IV. CONCLUSION

The Court should grant the motion for stay pending appeal.

Respectfully Submitted,

CITY ATTORNEY'S OFFICE

Dated: September 17, 2026

*/s/ Stephen Hylas*

STEPHEN HYLAS

Attorneys for Defendant City of Berkeley